**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**BROODY CAPITAL MANAGEMENT,**
**LLC, et al.**

      **Plaintiffs,**

      **v.**

**NICOLAS D. MUZIN, et al.**

      **Defendants.**

**Civil Action No. 1:19-cv-00150-DLF**

---

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR**
**MOTION FOR EXPEDITED DISCOVERY**

**INTRODUCTION**

In Defendants' Oppositions, they argue that discovery should not proceed, as they will move to dismiss on the basis of derivative sovereign immunity because they are agents of Qatar. They propose no discovery until their motions are resolved. But these motions actually increase the need for discovery now. A moratorium on discovery would prevent plaintiffs from obtaining and presenting evidence directly relevant to those forthcoming motions to dismiss. This is improper. Far from rebutting plaintiffs' demonstration of good cause for targeted, expedited discovery—both to reproduce documents plaintiffs already obtained in the California action and to mitigate the real possibility that evidence will not be preserved for this litigation—defendants' oppositions and announced forthcoming motions underscore the need for obtaining that discovery without delay.

Plaintiffs established good cause to take discovery now. First, there is no reason why discovery that was already completed from a prior case, much of which relates to defendants' claims of purported immunity, should not be re-produced in this action. The already produced

evidence is directly relevant to defendants' forthcoming Rule 12(b)(1) motions.  And reproducing that material would not require significant effort by defendants.  Second, permitting third-party discovery directed at entities mentioned in the First Amended Complaint ("FAC") and a discrete number of social media accounts maintained by outside electronic service providers will preserve vital discovery from destruction or spoliation.  Defendants' arguments fail to grapple with the unique circumstances of this case and the circumscribed nature of the discovery plaintiffs seek.

The need for this discovery is made all the more compelling by defendants' plans to file a Rule 12(b)(1) motion, invoking derivative sovereign immunity.  Many of the documents plaintiffs seek would be *directly relevant* to this defense.  They will illuminate defendants' relationship with Qatar, the scope of their authority to act for that nation, their relationship with other parties paid by Qatar, and other issues that *defendants* have the burden of proving in an evidentiary showing.  *Lewis v. Mutond*, 918 F.3d 142, 145 (D.C. Cir. 2019) ("The defendant bears the burden of proving foreign official immunity.").  The law of this Circuit supports discovery to rebut defendants' jurisdictional immunity defenses.  *See Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000).  Defendants' suggestion that plaintiffs should have no discovery to counter defendants' assertions during the pendency of their Rule 12(b)(1) motion has no legal support.

At the outset, defendants' claims for derivative sovereign immunity, relying solely on their status as paid lobbyists and publicity promoters for Qatar, are likely to fail as a matter of the law.  *U.S. citizens* like the defendants cannot shield their unlawful acts by claiming immunity derived from a foreign power.  There is no support for such "derivative" immunity, and it runs counter to the State Department's well-established position that U.S. citizens cannot hide behind

foreign sovereigns to escape the jurisdiction of U.S. courts.  Moreover, the D.C. Circuit's recent decision in *Lewis v. Mutond* forecloses that defense in cases like this one, where plaintiffs seek relief from alleged foreign agents in their individual capacity only.  918 F.3d at 146–47.  These issues will be fully briefed in the forthcoming motions to dismiss.  Suffice it to say for now that defendants' claims of common law immunity are not well founded.

Even if defendants could overcome these purely legal obstacles, the questions regarding their authority to act for Qatar and whether they exceeded that authority would be heavily fact-dependent.  For instance, while the FAC alleges that defendant Nicholas Muzin is a registered agent of Qatar *for purposes of the Foreign Agents Registration Act* ("FARA"), Doc. No. 18-2, ¶ 13, his FARA registration includes his operative contract with Qatar, which explicitly disclaims any principal-agent relationship and assigns Muzin the responsibility to comply with all applicable laws and regulations.  Ex. A.[1]  His agreement with Qatar raises serious factual questions about the degree to which his actions alleged here were undertaken on his own initiative or at the express direction of Qatar and, if the latter, the scope of his authority in carrying out that direction.  Plaintiffs sought discovery relating to these issues in the California action—for instance, they requested defendant Joseph Allaham's communications with Qatar regarding his retention by and representation of Qatar.  Ex. B (Allaham subpoena, served April 23, 2018).[2]  They also deposed Allaham.  But defendants now improperly seek to conceal that

---

[1] Ex. A to FARA filing of Stonington Strategies, (filed Sept. 3, 2017), at 6-7, *available at* https://efile.fara.gov/docs/6458-Exhibit-AB-20170903-1.pdf ("This Agreement is not intended to establish an employer-employee relationship, or principal-agent relationship. . . .  You shall be solely responsible for compliance with any applicable laws or regulations that govern your performance of this Agreement.").

[2] For example, the subpoena requested, *inter alia*, documents relating to Allaham's "representation of the State of Qatar" and his "retention by the State of Qatar."  Ex. B, at 6 (filed as Dkt. 2-4 in *Broidy Capital Mgmt. v. Allaham*, No. 1:18-mc-00240 (SDNY June 6, 2018).

evidence from this Court while it considers their immunity arguments.  Far from providing a

basis for staying discovery, then, defendants' planned invocation of derivative sovereign

immunity only amplifies the need for that discovery now.

Plaintiffs seek redress in this case relating to the unlawful manner in which defendants

selected Mr. Broidy and his company as the target for hacking.  Defendants participated in a

scheme (along with others in the Qatari Enterprise) to illegally hack Mr. Broidy's emails and

distribute them to the media in carefully curated batches to discredit Mr. Broidy as a critic of

Qatar.  There exists good cause for focused, expedited discovery regarding those illegal actions,

both to reproduce documents plaintiffs already obtained from the California action and to

mitigate the real possibility that evidence in this case will not be preserved.

Defendants resist this common-sense position.  Indeed, they go so far as to argue that

discovery should be categorically stayed until their Rule 12(b)(1) motions are decided.  This

position is contrary to law, especially since defendants have revealed that they plan to invoke the

jurisdictional defense of derivative sovereign immunity.  Defendants provide no basis for

denying plaintiffs the ability to preserve discovery and supply the Court with all the evidence

already in plaintiffs' possession.  Accordingly, the Court should grant plaintiffs' motion for

expedited discovery.

## **BACKGROUND**

Plaintiffs set forth the relevant factual basis for their motion in their opening

Memorandum.  Mem. at 2-6.  Defendants, by contrast, spend much of their oppositions

mischaracterizing the litigation history of the previous California and New York cases in order to

impugn plaintiffs' motives.  But they cannot deny that plaintiffs are victims of a publicly

---

Much of the protected material at issue in Category One was produced by Allaham in response to
the subpoenas for documents and testimony served on him.

recognized hacking scheme and seek expedited discovery to investigate that tortious activity. Although many of defendants' mischaracterizations are entirely irrelevant to this motion, plaintiffs must correct the record on a few points.

First, defendants mischaracterize the California court's denial of a temporary restraining order ("TRO") in that case as a decision on the merits. Stonington Mem. at 3. The key point they omit is that at the time of the TRO application, plaintiffs had none of the evidence they later obtained through jurisdictional discovery, much of which they cannot use here unless this motion is granted. *See Broidy Capital Mgmt., et al. v. State of Qatar*, No. 18-cv-02421-JFW (C.D. Cal. filed Mar. 26, 2018) (the "C.D. Cal. action" or "California action"), Dkt. 37 at 2. In fact, the California court *never* reached a decision on the merits or considered plaintiffs' newly discovered evidence. Rather, the district court dismissed that litigation on the grounds of foreign sovereign immunity as to Qatar, a decision currently on appeal to the Ninth Circuit, and lack of personal jurisdiction as to the remaining named defendants. As a result, plaintiffs sued defendants in this district, which has personal jurisdiction.

Defendants similarly make much of the fact that plaintiffs were denied jurisdictional discovery in the New York action, against former United Nations official Jamal Benomar. *Broidy Capital Mgmt., et al. v. Benomar*, No. 7:18-cv-06615 (S.D.N.Y. filed July 23, 2018) ("SDNY Action"). But the district court there focused on Benomar's full diplomatic status immunity as an envoy for Morocco. SDNY Action, Dkt. 61-2, at 20. Discovery was not directed at U.S. citizens claiming derivative sovereign immunity, as it is here.

Nor did the district court, as defendants erroneously suggest, reach any definitive conclusion on Benomar's claim of derivative sovereign immunity. Stonington Mem. at 9. Instead, it merely held that it "tended to think" it would hold in Benomar's favor if it were required to do so. SDNY Action, Dkt. 61-2 at 41. The district court in New York likewise never

had occasion to decide the merits of plaintiffs' claims.  In any event, the district court's

diplomatic immunity decision in that case, which has no bearing on the issues here, was

erroneous, and is currently on appeal to the Second Circuit.  *See Broidy Capital Mgmt., et al. v.*

*Benomar*, No. 19-236 (2d Cir. Appellants' Br. filed Mar. 14, 2013).[3]

      Finally, Defendants mischaracterize plaintiffs' compliance with the terms of the

California protective order.  Stonington Opp. at 10.  Plaintiffs, in good faith, filed confidential

material under seal in this case because plaintiffs believed the protective order plainly allowed

such material to be used in "related actions."  *See* Doc. No. 13-1 at 5 (attaching copy of

protective order).  The magistrate in California found that the plaintiffs' position was

"understandable" because the protective order—which was drafted by the California defendants

over plaintiffs' objection—"does not expressly define 'related actions.'"  C.D. Cal. Dkt. 246 at 1.

Nevertheless, the magistrate ultimately ruled against plaintiffs' interpretation, and plaintiffs

promptly withdrew their original complaint and obtained leave to file the FAC without any

protected material.  Doc. No. 18.  Contrary to Stonington's position, the present motion is not

"inconsistent with the Central District of California's [magistrate's] decision."  Stonington Opp.

at 19.  To the contrary, Qatar itself suggested in that case that plaintiffs could always obtain the

same materials through discovery in separate litigation.  Mem. at 11; Doc. No. 19-7 at 27.

Plaintiffs merely seek to reobtain those same documents under this Court's powers so that the

evidence can be properly used in this action.

---

[3] Stonington Defendants quote snippets from a transcript of a hearing before Judge Seibel in the Southern District of New York, Stonington Opp. at 18, but that discussion concerned whether plaintiffs, consistent with the C.D. Cal. protective order, could use protected material in a First Amended Complaint they intended to file.  Here, as Stonington Defendants acknowledge, plaintiffs "did go back to the California court" to resolve the protective order issue.  *Id.*  Now, however, they seek to discover the protected material through this Court's discovery process, just as Qatar suggested they should do in the California proceedings.  The prior hearing in New York has no bearing on this motion.

## ARGUMENT

Defendants improperly seek to exclude from the Court's consideration evidence that would help defeat any affirmative defense of derivative immunity and bolster the plausibility of plaintiffs' claims.[4]  Plaintiffs have shown a strong justification for documents in Category One that is only reinforced by defendants' plans to file a motion to dismiss.  As to Category Two, plaintiffs have similarly shown that this evidence could be spoliated, and there is a serious possibility that the entities named in the original complaint—filed on January 24 of this year— could move to conceal their actions from future discovery.  Granting the motion to expedite discovery would mitigate these risks.

## I.     Plaintiffs Have Good Cause for Expedited Discovery

The question of whether to permit expedited discovery is case-specific.  Defendants concede the Court's authority under Rule 26(d)(1) to order expedited discovery under the reasonableness standard, with attention to the specific facts of the case.  Stonington Opp. at 13.[5] Indeed, "[g]ood cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).  The Court should grant expedited discovery under the unique circumstances of this case.

---

[4] Both Allaham and Howard incorporate, and largely reiterate, Stonington Defendants' opposition by reference.  *See* Howard Opp. at 2; Allaham Opp. at 2.

[5] Allaham incorrectly asserts that "according to the Local Rules . . . no discovery is to occur until an answer is filed."  Allaham Op. at 4.  This is not so; the Local Rules simply provide, "The requirements of this Rule and of Fed. R. Civ. P. 16(b) and 26(f), shall not apply in cases in which no answer has yet been filed."  LCvR 16.3(b).  The Local Rules do not, and cannot, contradict Federal Rule of Civil Procedure 26(d)(1).

### A.    Plaintiffs Are Entitled to Expedited Discovery of Already Produced Documents (Category One)

Defendants do not meaningfully dispute that the "Category One" documents are (1) already in plaintiffs' possession and (2) clearly probative to plaintiffs' case.  There can be no reasonable justification for requiring plaintiffs to pretend this relevant evidence does not exist, or to refrain from presenting it to this Court in response to defendants' planned Rule 12(b)(1) motions until after they are decided.

As plaintiffs have explained, Mem. at 8, defendants would not have to produce anything new in response to this category of requests.  Rather, they would simply re-produce the prior materials, which could be accomplished by simply affirming that the documents already in plaintiffs' possession complete their production.  Many of the document subpoenas in the California case generated information relevant to the jurisdictional issues that defendants intend to put before the Court.  Thus, for instance, document requests directed at Joseph Allaham sought to discover the nature of his retention by Qatar and the scope of his representation.  Ex. B. Plaintiffs also took Allaham's deposition, and asked similar questions about his role, his relationship to other co-conspirators, and other issues relevant to any asserted authority to act on behalf of Qatar in this case.  Some excerpts of that testimony were eventually designated as highly confidential under the protective order.  *See* Allaham Op. at 2.  If plaintiffs are truly required to follow the "normal litigation process," as defendants insist, Allaham Op. at 9, they would be forced to ignore Allaham's sworn testimony that is relevant to whether he qualifies for derivative sovereign immunity.  That is unreasonable and contrary to law.  *See* Mem. at 9 (citing *Carter-Wallace, Inc. v. Hartz Mountain Indus., Inc.*, 92 F.R.D. 67, 70 (S.D.N.Y. 1981); *Lillibridge v. Nautilus Ins. Co.*, No. 10-4105-KES, 2013 WL 1896825, at *8 (D.S.D. May 3, 2013).

At the same time, there would be no prejudice to any responding party, as all of the requested documents have already been produced and used in the California action.  Given the California magistrate's decision about the protective order, there is good cause to have those same documents "reproduced" in this action under this Court's supervision, so the parties may present all available evidence to the Court when it decides the Rule 12 motions.

As set forth in plaintiffs' memorandum, Mem. at 9-10, the Category One discovery— which seeks nothing more to allow discovery in this case of previously produced documents— clearly satisfies the reasonableness test.  First, the "breadth of the discovery" is extraordinarily narrow; no additional effort is required from defendants.  *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005).  Defendants concede, as they must, that "the universe of protected information is small," Stonington Opp. at 20, but it entails some of the most sensitive and relevant communications in this dispute (which this Court can appropriately protect through a protective order).  The next factor, the purpose for requesting expedited discovery, also favors plaintiffs, because these requests merely seek to obtain already-discovered evidence to aid the Court in understanding why the case should not be dismissed for derivative sovereign immunity or any other ground raised by defendants in their forthcoming Rule 12(b)(1) motions.

Yet another factor, the burden of discovery on defendants, also favors granting the motion.  Defendants complain that the reproduction of Category One materials would require a new protective order and the intervention of Qatar.  Stonington Opp. at 20.  But negotiation of a protective order is routine in civil cases and does not ordinarily require undue effort.  And plaintiffs will stipulate that any materials re-discovered in this case will be filed and handled

under seal until a new protective order is entered.  Third parties with confidentiality interests in documents can be and typically are readily protected by such an order.[6]

The final factor is "how far in advance of the typical discovery process the request was made."  *In re Fannie Mae Derivative Litig.*, 227 F.R.D. at 143.  Plaintiffs made this request more than two months after this action commenced, and they have an urgent need to commence discovery.  There are no preliminary injunction motions to be decided, and discovery would proceed apace if defendants file an answer that would be due May 7.[7]  The reasonableness test, which incorporates these factors and all other relevant circumstances, supports plaintiffs' request for expedited discovery.

### B.   Good Cause Exists for Expedited Third-Party Discovery (Category Two)

Similarly, plaintiffs have also established good cause for expedited third-party discovery because of the ever-increasing threat of spoliation and deletion of records, both in response to the filing of this lawsuit and the ordinary course of business.  Defendants fault plaintiffs for failing to "identify any retention policy" of any third party, Stonington Opp. at 22.  They do not say, however, how that information could possibly be within plaintiffs' knowledge or control without this Court allowing plaintiffs to issue a subpoena.  Moreover, plaintiffs did indicate in their opening memorandum that social media companies delete certain data within a set period.  Mem.

---

[6] Defendant Howard argues that, because he was not party to the California action, he lacked the ability to object to discovery obtained in that action.  Howard Opp. at 4.  However, none of the confidential discovery was targeted at Howard, and the defendants in the California action had sufficient opportunity to object to the discovery in question (and indeed did designate it as confidential).  Discovery of those documents in this case will only facilitate Howard's access.

[7] Defendants argue that the May 7 date is a "red herring" because defendants intend to file motions to dismiss.  Stonington Opp. at 17.  However, these motions will not stay discovery. *See infra* Part III.

17 n.5.[8]  What's more, phone companies have different policies as to how long they retain

subscriber information and call logs.[9]  Electronically stored information is inherently ephemeral

and subject to spoliation, and the need for this new electronic discovery became apparent only

after plaintiffs investigated the materials they obtained in the California action.  Time is thus

running out for plaintiffs to acquire this vitally important discovery.

Defendants inexplicably blame Mr. Broidy "for insist[ing]—as he had done months

earlier in California and again does here—that crucial third-party evidence would be lost if he

could not obtain it immediately."  Stonington Opp. at 8.  But this simply shows that plaintiffs

have taken a consistent position—that electronic information is perishable and there is a pressing

need to begin discovery.  Various phone and social media companies have different, and often

confidential, data retention policies.  The threat of spoliation has only increased since plaintiffs

filed their original action in California.  As plaintiffs have explained:

> Plaintiffs need not accept the Stonington Defendants' theory that
> 'third-party data destruction' has already occurred.  Each day that
> passes only enhance the risk of destruction.  Moreover, plaintiffs in
> their First Amended Complaint (and prior versions) included new
> allegations and implicated additional third parties that were not the
> subject of discovery in those prior actions.

Mem at 12 n.4.  Defendants have no answer for plaintiffs' demonstrated good cause for

expedited discovery.  Nor have they addressed plaintiffs' concern that they have been victimized

by a sophisticated global hacking conspiracy, the participants of which have extraordinary

incentive to seek out and destroy evidence and no compunction about illegally entering third-

---

[8] *See also* "Data Retention," https://www.linkedin.com/help/linkedin/answer/14855/data-retention?lang=en ("If you close your account, your information generally will be removed from LinkedIn's production system within 24 hours.").

[9] *See* Suzanne Choney, *How long do wireless carriers keep your data?*, NBC News, Sept. 29, 2011, https://www.nbcnews.com/technolog/how-long-do-wireless-carriers-keep-your-data-120367.

parties' computer systems to do so.  *See Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327

(S.D.N.Y. 2005) (finding reasonableness standard for expedited discovery satisfied because

"defendants are foreign individuals and corporations who have both incentive and capacity to

hide their assets").[10]

      In their opening memorandum, Mem. 11-16, plaintiffs explained why they sought

expedited discovery from seven entities named in the Complaint; there is no need to rehash those

points here.  Defendants' complaint that these entities "are entirely unrelated to any party in this

case," Stonington Opp. at 24, ignores the fact that plaintiffs have alleged a sophisticated, global

racketeering enterprise with many components and co-conspirators.  The FAC and plaintiffs'

memorandum explain the role each third party played in the events relayed in the FAC, and—

importantly—how they each are likely to possess additional information about other entities

relevant to the conspiracy.  The fact that some of them were not connected to the defendants in

an employment or other formal relationship is beside the point.[11]

      Plaintiffs' third-party requests therefore satisfy the reasonableness standard.  The requests

are narrowly tailored to parties referenced in the FAC, and to specific accounts held by social

media companies.[12]  Plaintiffs have a legitimate purpose in requesting expedited discovery—the

---

[10] Defendants argue that mere preservation notices are sufficient to prevent spoliation, Allaham Opp. at 12, but the case they cite, *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 103 (D.D.C. 2018), does not stand for that proposition.  There the district court relied on the fact that "[t]he Court's enforcement of [its] injunction in short order shall ensure that the documents to which Plaintiff is entitled are furnished by Defendants."  Court-ordered discovery is necessary to prevent spoliation in this case.

[11] Defendants also complain that discovery from BlueFort Public Relations would "sidestep" Qatar's sovereign immunity from discovery.  Stonington Mem. at 25.  That argument would have force only if Qatar were willing to represent that BlueFort is its own instrumentality.

[12] Defendants complain that plaintiffs have already served subpoenas on Google, LinkedIn, and Twitter, Stonington Opp. at 9, but the present discovery requests relate to different social media accounts—of which those companies obviously have many.  These discrete

need to avoid spoliation.  The requests are directed at third parties, not the defendants or Qatar, and therefore will not unduly burden them.  And, as discussed in Part I.A, *supra*, plaintiffs' requests for discovery will not unreasonably rush discovery ahead of its ordinary course. Plaintiffs' request for this category of expedited discovery is reasonable.

### C.      Defendants' Cited Authorities Do Not Apply Here

None of the cases cited by defendants bear on the situation at issue here, where plaintiffs seek expedited discovery of discrete categories of documents, including already produced material, and electronic information that presents a serious risk of spoliation.  In *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014), relied upon by defendants, the district court denied the motion for expedited discovery because "plaintiffs want[ed] defendants to produce documents that would help to prove the extent of damages" in addition to sitting for depositions. Here, by contrast, defendants would not have to produce any new documents, nor sit for depositions.  Moreover, the decision to deny expedited discovery in *Guttenberg* was supported by "[p]laintiffs' demonstrated lack of urgency in seeking expedited discovery."  *Id.*  By contrast, plaintiffs here have sought expedited discovery promptly in this case, as soon as all parties were served with the FAC.  And in *Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 4 (D.D.C. 2010), also cited repeatedly by defendants, the district court denied expedited discovery "given the extraordinary vagueness of the plaintiffs' allegations" and because "there is no indication that this expedited discovery would be narrowly tailored."  Here, by contrast, plaintiffs' allegations are extremely detailed, and they have carefully circumscribed their requests.  Indeed, the first category of requested discovery consists of materials plaintiffs already possess, and the second category consists of third-party documents that, without prompt action, may disappear.  These cases

accounts were identified during plaintiffs' investigation of the hackings and utilizing discovery from the California litigation.

underscore the need for the Court to take the unique circumstances of the case into account in deciding the reasonableness inquiry.

Moreover, defendants are simply incorrect, as a matter of law, in asserting that discovery "is especially inappropriate when the Defendants will be seeking to dismiss the case on immunity grounds." Stonington. Op. at 11. The very decision Stonington Defendants cite for that proposition, *Sai v. Dep't of Homeland Sec.*, 99 F. Supp. 3d 50 (D.D.C. 2015), observed that "courts often permit discovery while motions to dismiss and other threshold motions are pending. . . . No categorical rule is appropriate; rather each case should be considered based on its unique facts and context." *Id.* at 58. In that case, the district court denied discovery because plaintiffs had moved for early *summary judgment*: "Plaintiff made a decision to file an early motion for summary judgment and thus cannot ask that the Court authorize discovery in support of that motion." *Id.* Here, by contrast, plaintiffs will face *defendants*' jurisdictional motions to dismiss, thus requiring relevant information be made available before the Court decides those motions. *See* Part II.B, *infra*.

Defendants also wrongly argue that "[e]xpedited discovery is only appropriate under limited circumstances" involving preliminary injunctions[13] and copyright actions against unknown defendants. Stonington Opp. at 12. But no case or rule supports such a limitation. *See Simon v. Republic of Hungary*, No. 10-01770 (BAH), 2012 WL 13069772, at *4 (D.D.C. Oct. 19, 2012) (granting expedited discovery due to age of witness); *Ellsworth Assocs., Inc. v. United*

---

[13] This Court has already rejected the argument that expedited discovery is appropriate only in the context of preliminary injunctions. *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 7–8 (D.D.C. 2008) ("Defendants' next argument is that a court may not grant leave to take expedited discovery without a prayer for injunctive relief. This argument is meritless, as the Federal Rules of Civil Procedure contain no such requirement, and the cases cited by the Court above involve instances where courts allowed expedited discovery in the absence of a request for a preliminary injunction.") (quotation marks omitted).

*States*, 917 F. Supp. 841, 844 (D.D.C. 1996) ("Courts have wide discretion with respect to discovery and [the Federal Rules] expressly provide[] that courts may expedite discovery.").

Allaham mistakenly states that the plaintiffs in *Simon* "sought injunctive relief," Allaham Opp. at 6-7, but the court's opinion and the record indicate otherwise.  The plaintiffs there filed a class action complaint seeking damages and other remedies for tortious conduct allegedly committed during the Holocaust.  2012 WL 13069772, at *1.  The court granted expedited discovery due to the sought-after deponent's age, *id.* at 3–4, which further demonstrates that expedited discovery is not limited to the narrow circumstances cited by defendants.  And, much as in the copyright context, plaintiffs here seek discovery from social media providers precisely to uncover the identity of additional conspirators before perishable evidence is destroyed.  *See Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) (holding that "expedited discovery is necessary to prevent the requested data from being lost forever as part of routine deletions by the ISPs").

## II.     Defendants' Immunity Arguments Reinforce the Need for Expedited Discovery

Defendants ultimately argue that they are not required to participate in discovery until the Court decides the motions to dismiss they plan to file on derivative sovereign immunity grounds. Stonington Opp. at 2, 10-11; Allaham Opp. at 15-16; Howard Opp. at 2.  But this position is profoundly mistaken in the context of the anticipated Rule 12(b)(1) motions.  Plaintiffs are unquestionably entitled to discovery to address substantial factual issues relevant to defendants' jurisdictional motions and, indeed, reserve the right to seek further discovery relevant to those issues once the motions are filed.  But for present purposes, defendants' forthcoming motions to dismiss actually reinforce the need to grant this motion.

### A.      Defendants are Not Entitled to Derivative Sovereign Immunity

As an initial matter, defendants' immunity defense is not well-founded under these circumstances and poses no bar to expedited discovery.  Their argument would unreasonably extend the doctrine of "official acts" immunity to cover the illegal conduct of any paid lobbyist of a foreign state.  No court has reached that far, and such a defense is bound to fail, for several reasons.[14]

First, defendants are U.S. citizens, and longstanding State Department policy precludes U.S. citizens—or even permanent residents—from invoking the immunity of a foreign state to avoid the jurisdiction of U.S. courts.  *See Yousuf v. Samantar*, 699 F.3d 763, 777 (4th Cir. 2012).  The relevant inquiry, as this Court has observed, is "whether the ground of immunity is one which it is the established policy of the State Department to recognize."  *Doe 1 v. Buratai*, 318 F. Supp. 3d 217, 230 (D.D.C. 2018) (internal quotation and citation omitted).  Defendants' invocation of immunity is contrary to that established policy.

Second, an official may enjoy a derivative immunity only "when a judgment against the official would bind (or be enforceable against) the foreign state."  *Lewis*, 918 F.3d at 146.  Here, plaintiffs seek relief from defendants in their individual capacity and do not "seek[] to draw on the [a foreign state's] treasury or force the state to take specific action, as would be the case if the judgment were enforceable against the state."  *Id.* at 147.  *Lewis* plainly forecloses the extension of immunity here.

---

[14] In fact, "[i]t may well be that there is not now and never was any common law of immunity for foreign officials sued in the United States."  *Lewis*, 918 F.3d at 149 (Randolph, J., concurring).  Judge Randolph's observation is even more compelling in the context of *foreign agents*.  While the Second Restatement refers to agents, there is very little actual common law authority in the United States applying a foreign state's sovereign immunity to the acts of its paid agents, especially where, as here, those agents are U.S. citizens.

Third, the FAC plainly alleges that defendants were not merely carrying out "official acts" on instructions from Qatar, but rather acted as independent co-conspirators who took on decision-making responsibility in an illegal enterprise. *Cf. Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466–67 (4th Cir. 2000) (recognizing derivative immunity of a corporation that was simply "following [a foreign state's] orders."). As a matter of law, defendants' immunity claims fail to leave the ground.

## B.      Defendants' Plans to Assert Immunity Justify Expedited Discovery

More importantly to the present motion, defendants' invocation of an immunity defense is an independent reason to expedite discovery—to aid the Court in determining whether defendants should receive derivative, or "official acts," immunity. To the extent this affirmative defense has any chance of succeeding, defendants would have to demonstrate, based on an evidentiary showing, that they are immune from jurisdiction. *See Lewis*, 918 F.3d at 145.

"This Circuit's standard for permitting jurisdictional discovery is quite liberal." *Diamond Chem. Co., Inc. v. Atofina Chems., Inc.*, 268 F.Supp.2d 1, 15 (D.D.C. 2003). The law is clear that discovery regarding the basis for the Court's jurisdiction will be warranted here to determine whether defendants were actually agents of Qatar and whether they acted within the scope of their authority.[15] This is especially the case here because the facts regarding defendants'

---

[15] *See Phx. Consulting Inc. v. Rep. of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (courts "must give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction") (quotation marks omitted); *GTE New Media Servs.*, 199 F.3d at 1351 ("[I]f a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."); *Intelsat Glob. Sales & Mktg., Ltd. v. Cmty. of Yugoslav Posts Tels. & Tels.*, 534 F. Supp. 2d 32, 34 (D.D.C. 2008) ("a court should allow for limited jurisdictional discovery if a plaintiff shows a nonconclusory basis for asserting jurisdiction and a likelihood that additional supplemental facts will make jurisdiction proper"); *Funk v. Belneftekhim*, 861 F.3d 354, 367 (2d Cir. 2017) (discovery against a company claiming immunity under the FSIA was appropriate "[b]ecause the parties' submissions present disputes of material fact as to [defendants'] foreign sovereign immunity claim").

relationship with Qatar and the scope of any authority they had to act on behalf of Qatar are peculiarly within the defendants' knowledge and control. *See Kamen v. AT&T Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("the party asserting jurisdiction be permitted discovery of facts demonstrating jurisdiction, at least where the facts are peculiarly within the knowledge of the opposing party.").[16]  Defendants will not be entitled to dismissal on the basis of the allegations within the FAC alone.  Plaintiffs' allegations that defendants were at times registered and unregistered foreign agents of Qatar do not by themselves settle the question:  "[C]ommon law agent status is not sufficient to establish derivative sovereign immunity. . . .  [S]imply being the government's common law agent does not entitle a contractor to derivative sovereign immunity." *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 345 (4th Cir. 2014).

The "Category One" discovery that was already produced in the California litigation will be particularly probative of any immunity defense.  Defendants argue that the already produced materials include "sensitive diplomatic and foreign policy documents" of Qatar, Stonington Opp. at 18—but these are the exact type of information that would help establish whether defendants were engaged in "official acts" on behalf of Qatar when they participated in the tortious hacking conspiracy against plaintiffs.  The materials plaintiffs seek to re-discover—consistent with Qatar's own suggestion to the California magistrate—will illuminate defendants' lobbying relationships with Qatar, the scope of their "official" duties, and their communications with other Qatari agents.  The need to obtain jurisdictional facts, far from barring expedited discovery, provides a sufficient independent basis for it.

The third-party discovery plaintiffs seek is also likely to uncover probative, usable evidence that undermines defendants' derivative sovereign immunity claims.  Communications

---

[16] *See also Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981); *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 120 (D.D.C. 2011).

between defendants and Sphere Consulting, Diogenes Group Research, Conover & Gould, and Mercury Public Affairs (or between any two of these entities) would shed light on defendants' efforts to spearhead and organize the media campaign against plaintiffs using their hacked emails.

Likewise, communications with the Zionist Organization of America and BlueFort, the sham company controlled by Qatar, may illuminate whether defendants were following Qatar's directions in executing the plot against Mr. Broidy.  All of this discovery is likely to be relevant to defendants' "official acts" immunity defense, and therefore the Court should afford plaintiffs an opportunity to obtain it before the Court decides defendants' motions to dismiss.[17]

## III.   A Stay of Discovery is Not Warranted For Any 12(b) Motion Defendants Might Bring

A stay would also be inappropriate should defendants move to dismiss on any other ground as well.  "Generally, a pending motion to dismiss is not a good reason to stay discovery." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, No. 04-0280 (RWR/AK), 2007 WL 9706653, at *2 (D.D.C. Aug. 31, 2007); *see People With Aids Health Grp. v. Burroughs Wellcome Co.*, No. 91-0574, 1991 WL 221179, at *1 (D.D.C. Oct. 11, 1991) (denying motion to stay discovery pending a motion to dismiss).  Indeed, stays of discovery "are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems."  *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997).

As courts have noted, if a motion to dismiss under Rule 12(b) automatically stayed discovery the Federal Rules would say so.  *See, e.g., Coca-Cola Bottling Co. of Lehigh Valley v.*

---

[17] Discovery into various social media accounts associated with the hackers' spear phishing efforts against plaintiffs' associates is likely to reveal the identity of other co-conspirators, thus demonstrating that they were not engaged in "official acts."  Mem. at 17.

*Grol*, No. No. 92-7061, 1993 WL 13139559, at *2 (E.D. Pa. Mar. 8, 1993) ("Had the drafters of the Federal Rules of Civil Procedure wanted an automatic stay of discovery pending a motion to dismiss they could have so provided."); *Twin City Fire Ins. Co. v. Emp'rs. Ins. of Wausau*, 124 F.R.D. 652, 653 (D. Nev. 1989) ("[A] pending motion to dismiss is not ordinarily a situation that in and of itself would warrant a stay of discovery"); *Bowens v. Columbus Metro. Library Bd. of Trs.*, No. 2:10-CV-00219, 2010 WL 3719245, at *2 (S.D. Ohio Sept. 16, 2010) ("[T]he fact that a party has filed a case-dispositive motion is usually deemed insufficient to support a stay of discovery."). Defendants' repeated assertions that they are absolved from all discovery obligations until their motions are decided are without basis in law.

Defendants cannot, and do not attempt to, satisfy the legal standard for a stay. Under Rule 26(c)(1), courts will stay discovery only "for good cause." To establish good cause under Rule 26(c)(1), defendants must make an affirmative showing that commencing discovery would cause them "annoyance, embarrassment, oppression, or undue burden or expense." *See Burroughs*, 1991 WL 221179, at *1 ("[B]are assertions that discovery will be unduly burdensome . . . are insufficient to justify the entry of an order staying discovery.") (quotation marks omitted). Here, no unusual circumstances support a stay.

As one court observed, "[i]n any case where a dispositive motion is filed in the early stages of litigation, the parties might incur discovery costs that ultimately may be rendered unnecessary if the pending dispositive motion is granted," but in the absence of some reason to think "the instant matter is different than any other case," those costs alone cannot warrant a stay of discovery. *Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, No. 12-6090 KM, 2013 WL 2253532, at *1 (D.N.J. May 22, 2013); *see also Standard Bank PLC v. Vero Ins. Ltd.*, No. 08-cv-02127-PAB-BNB, 2009 WL 82494, at *2 (D. Colo. Jan. 13, 2009) (holding that commencing

discovery would impose "no special burden" because "[p]arties always are burdened when they engage in litigation," simply by virtue of "our judicial system and the rules of civil procedure").

In addition to defendants' inability to show good cause for a discovery moratorium, a stay would unfairly prejudice plaintiffs.  Without expedited discovery of the Category One documents plaintiffs currently possess but may not use, plaintiffs will be unable to make their best and most plausible case.  And if potential evidence in Category Two is destroyed as part of an effort to conceal the scheme to target Mr. Broidy, plaintiffs will be especially prejudiced. *Mirra v. Jordan*, 2016 WL 889559, at *2–3 (S.D.N.Y. Mar. 1, 2016) (denying stay of discovery for the reason that "the plaintiff will suffer unfair prejudice from a stay of discovery because . . . witnesses' memories are fading with time."); *see also Digital Sin, Inc.*, 279 F.R.D. at 242; *Arista Records LLC*, No. 07-cv-2357-LAB, 2007 WL 4538697, at *1.  To prevent deterioration in the quality of evidence available, the Court should direct defendants to proceed with the normal course of discovery in this case.

## **CONCLUSION**

For the foregoing reasons, and those contained in plaintiffs' initial memorandum, plaintiffs respectfully request that the Court grant their motion for expedited discovery.


Dated: May 2, 2019                                   Respectfully submitted,

                                                     */s/ Filiberto Agusti*
                                                     Filiberto Agusti (DC Bar No. 270058)
                                                     Shannen W. Coffin (DC Bar No. 449197)
                                                     Michael J. Baratz (DC Bar No. 480607)
                                                     STEPTOE & JOHNSON LLP
                                                     1330 Connecticut Avenue, N.W.
                                                     Washington, D.C. 20036
                                                     Phone:  (202) 429-3000
                                                     Fax:  (202) 429-3902
                                                     fagusti@steptoe.com
                                                     scoffin@steptoe.com

mbaratz@steptoe.com
*Counsel for Plaintiffs Broidy Capital*
*Management and Elliott Broidy*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the Court's CM/ECF system, which sent notification of such filing to counsel of record in this action.

Respectfully submitted,

/s *Filiberto Agusti*
Filiberto Agusti