UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC, et al.<br><br>Plaintiffs,<br><br>v.<br><br>NICOLAS D. MUZIN, et al.<br><br>Defendants. | Civil Action No. 1:19-cv-00150-DLF |

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Both *DNC v. Russian Federation*, 18-cv-03501, (SDNY) ("*DNC*") and this suit allege state-sponsored hacking; the similarities end there. In *DNC,* "[a]t most, the DNC has alleged that after the Russian Federation stole the DNC's documents, [Russian agents] told campaign members about the stolen documents . . . WikiLeaks requested the stolen documents and published them, and some of the other defendants welcomed the publication of the documents at times helpful to the Campaign." *DNC* at 39-40.  The *DNC* complaint did not allege that other defendants agreed to participate in the theft or even had advance knowledge of the hack. *DNC* at 38.

Defendants here, by contrast, were Qatar's *agents* (as they concede), with complementary roles in the scheme from its inception. *See, e.g.*, Dkt. #40-1 at 19-25 (relying on agency to assert

"derivative sovereign immunity").  Defendants joined Qatar's scheme at the outset, identifying Broidy to Qatar as a target, then curating stolen emails into packets for maximum impact.[1]

These differences have legal consequences.  The First Amendment does not immunize people who plan a hack, then organize portions of the stolen material for publication.  As in *Quigley v. Rosenthal*, 327 F.3d 1044, 1067 (10th Cir. 2003), *Bartnicki* does not protect publication of private conversations by persons aware of the illegal behavior as it occurred.  *See DNC* at 43.[2]  Defendants would immunize all hack participants but the technician who clicked the mouse.

The contrasting factual contexts also render inapposite *DNC*'s "additional reasons" for dismissing RICO and other claims:

| *DNC* | *Broidy* |
|---|---|
| Insufficiently asserted association-in-fact under RICO, pleading only "scattered contacts between the alleged AIF." *DNC* at 53. | Long-standing association-in-fact, including well-paid agents, coordinating complementary activities.  Dkt. #43 at 13-15. |
| Failed to allege common goal. *Id.* at 54-55. | Common goal of silencing criticism of Qatar. *Id.* |
| Failed to allege defendants managed or operated enterprise; Russia stole the documents without telling other "conspirators." *Id.* at 57-58. | Defendants identify target, develop purpose of hack, curate materials to create adverse publicity. *Id.* at 12-25. |
| Did not allege stolen documents contained trade secrets and only two defendants even possessed or published them. *Id.* at 61. | Identifies trade secrets and each defendant's role in misappropriation and dissemination. *Id.* at 44. |
| No pattern of racketeering; scheme lasted only nine months with no threat of reoccurring. *Id.* at 66-67. | Ongoing criminal enterprise that began in 2014, targeted more than 1,400 individuals, and continues today. *Id.* at 72-77. |

---

[1] *See* Dkt. #43 at 13-17, 132-34 (detailing Defendants' involvement in Qatar's criminal enterprise before the hacking); Dkt. #18-2, ¶ 34 (discussing Defendants' role in curation and distribution of stolen documents).

[2] *Bartnicki* also does not apply where, as here, the disseminator passes on only curated portions of the stolen materials.  *Quigley* at 1067.  Regardless, SDNY erred ruling that parties who are not members of the press are entitled to *Bartnicki*'s First Amendment shield.

| *DNC* | *Broidy* |
|---|---|
| Failed to allege stolen documents were trade secrets that derived value from secrecy. *Id.* at 74. | Plaintiffs' business plans, proposals, costs, service projections, and important contacts qualify as trade secrets whose secrecy was carefully protected. *Id.* at 49-51. |
| Failed to allege stolen documents were used prior to becoming public. *Id.* | Defendants acquired, curated, and disseminated Plaintiffs' trade secrets before publication. *Id.* at 17-23, 86. |

Finally, the dismissal of DNC's Virginia state-law claims has no relevance to the California state-law claims at issue here. Accordingly, *DNC* is nonbinding and inapposite.

Dated: August 13, 2019                                        Respectfully submitted,

*/s/ Filiberto Agusti*
Filiberto Agusti (DC Bar No. 270058)
Shannen W. Coffin (DC Bar No. 449197)
Michael J. Baratz (DC Bar No. 480607)
**STEPTOE & JOHNSON LLP**
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone:  (202) 429-3000
Fax:  (202) 429-3902
Fagusti@steptoe.com
scoffin@steptoe.com
mbaratz@steptoe.com

*Counsel for Plaintiffs Broidy Capital Management and Elliott Broidy*

3

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2019, I electronically filed the foregoing by using the Court's CM/ECF system to all counsel and parties receiving electronic notice of pleadings filed in this case.

*/s/ Filiberto Agusti*
Filiberto Agusti