## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BROIDY CAPITAL MANAGEMENT, LLC,
and ELLIOTT BROIDY,

                                    Plaintiffs,

            —v.—                                    Civil Action No. 1:19-cv-00150-DLF

NICOLAS D. MUZIN,
JOSEPH ALLAHAM,
GREGORY HOWARD, and
STONINGTON STRATEGIES, LLC,

                                    Defendants.

### DECLARATION OF LINDA C. BAILEY

1.      I am an attorney with Steptoe & Johnson LLP, counsel for Plaintiffs.  I submit

this declaration in opposition to Defendants' motion for an interlocutory appeal and for a stay.

Except where indicated otherwise, the statements in this declaration are based on my personal

knowledge, and the exhibits are true copies of the originals.

**The Need for Plaintiffs to Begin Discovery Promptly**

2.      Plaintiffs believe it is important to begin discovery soon because (among other

reasons) of the risk that third-party sources of discovery will delete or lose material in the

ordinary course of business.  This risk is especially pronounced given the nature of this case.

3.      Plaintiffs have alleged a sophisticated hacking scheme, with Defendants and their

co-conspirators having tried to cover their tracks through multiple layers of concealment.

4.      By way of illustration, and without limitation, the First Amended Complaint

alleges that Defendants' hacks were concealed behind multiple virtual private networks

("VPNs") or virtual private servers ("VPSs") owned by third parties based in the United States,

such as Micfo LLC and InstaVPS, that are in the business of providing VPNs or leasing VPSs to customers wishing to conceal their internet activity.  Dkt. 18-2 ¶¶ 112-14.   Plaintiffs' subpoenas in the Central District of California case (which allowed only limited, jurisdictional discovery) have revealed that certain of the IP addresses ("IPs") were leased to companies affiliated with a person named Uzair Gadit.  (Ex. A (InstaVPS subpoena response); Ex. B (Micfo LLC subpoena response).)[1]

5.      According to Wikipedia, Mr. Gadit is the founder of a company called PureVPN that, in turn, offers IPs to be used by others, via VPN or VPS technology.  (Ex. C.)  The entry states that "PureVPN requires users to provide their real names to use the service" (*id*.), but does not indicate how long those records are kept.

6.      Plaintiffs expect to issue successive discovery requests to trace these transactions to the end users, including Defendants or their co-conspirators.  We expect this will be an iterative process, because we do not how many layers of obfuscation the attackers built into their scheme.

7.      Along similar lines, the First Amended Complaint also alleges that the information hacked and stolen from Plaintiffs was distributed to the media via (among other means) an anonymous email address, LA.Confidential@mail.com.  Dkt 18-2 ¶¶ 112-14.   A subpoena to the operator of mail.com in the Central District of California case has revealed the IPs that accessed the account, but further subpoenas will be necessary to trace those IPs to their end users, again in an iterative process.

---

[1] Information designated as confidential in the California litigation is not available for use in this case and must be re-discovered here.   The information cited here was not designated as confidential or otherwise protected in that case.

8.      As a final example, we expect subpoenas to telephone companies will reveal who the conspirators were calling at the relevant times, and will assist in uncovering who else (whether wittingly or not) was helping the scheme or may have knowledge of the Defendants' participation.

## Document Retention Policies of Communications and Internet Providers

9.      Plaintiffs believe it is important to begin discovery soon because (among other reasons) of the risk that third-party sources of discovery will delete or lose material in the ordinary course of business.  While Plaintiffs have issued several preservation letters to known third parties, there are almost certainly third parties who remain unknown to Plaintiffs and will be identified only through discovery.  Those third parties have no reason to know they should preserve documents.

10.     Because we do not yet know all the relevant third parties, we do not know what their policies are regarding document retention.  Publicly available information, however, indicates that communications companies have widely varying retention practices, which suggests that there are real risks from delay in this case.

11.     For example, the ACLU has posted a chart, prepared by the U.S. Department of Justice and obtained via a Freedom of Information Act request, summarizing the retention policies of major wireless carries as of August 2010.  (Ex. D (ACLU website); Ex. E (DOJ chart).)  The chart indicates that call records are retained for periods ranging from 18-24 months (Sprint, Nextel, Virgin Mobile) to 5-7 years (AT&T).  (*Id*.)

12.     An article in the online publication *Forensic Focus*, from 2017 similarly indicates that call history data is retained for periods ranging from 18 months (Sprint) to 7 years (AT&T and Verizon).  (Ex. F.)

13.     As a final example, Comcast has published online a Law Enforcement Handbook stating that its voice call records are kept for two years, and that its IP address log files are kept for 180 days.  (Ex. G, at 10-11.)

14.     To be clear, we do not know if the discovery trail will lead to these particular companies.  The time period above are meant only to illustrate that companies have a wide range of document retention policies, and that, as we approach two or three years from the underlying events, it is more likely that relevant data will be lost.

**The Contract Between Defendants Stonington Strategies, LLC and Qatar**

15.     Defendants are seeking interlocutory appeal on the question of whether distinct doctrine of foreign derivative sovereign immunity that would insulate Defendants from liability, based simply on their having engaged in the scheme on behalf of foreign country, Qatar.

16.     Plaintiffs do not believe there is such a doctrine, but, even if there is, it would be limited in the same manner as the immunity doctrine applied in the domestic context (for federal contractors or other agents), which does not apply to the agent's conduct outside the agreement or authority from the sovereign.

17.     To that point, I attach as Exhibit H a public filing under the Foreign Agents Registration Act by Defendant Stonington Strategies, LLC ("Stonington"), dated September 3, 2017.  The filing includes a copy of an "Agreement for Consulting Services" between Stonington and Qatar, which provides that Stonington is "solely responsible for compliance with any applicable laws or regulations that govern your performance of this Agreement."

Dated:  Washington, D.C.
　　　 April 17, 2020

　　　　　　　　　　　　　　　　　　　　　　　 */s/ Linda C. Bailey*
　　　　　　　　　　　　　　　　　　　　　　　　 Linda C. Bailey