## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT, LLC and ELLIOTT BROIDY<br><br>      Plaintiffs,<br><br> v.<br><br>NICOLAS D. MUZIN, JOSEPH ALLAHAM, GREGORY HOWARD, and STONINGTON STRATEGIES LLC<br><br>      Defendants. | Civil Action No.  1:19-cv-00150-DLF |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

Defendants Nicolas D. Muzin and Stonington Strategies LLC (together, "Stonington Defendants"), Joseph Allaham, and Gregory Howard (collectively, "Defendants"), by counsel and pursuant to Federal Rule of Civil Procedure 26(c)(1), submit this Memorandum in Support of their Emergency Motion for a Protective Order.  The proposed protective order is attached to the concurrently filed Motion as Exhibit A.

## INTRODUCTION

The need for a protective order in this case cannot be seriously disputed.  In a previous iteration of the litigation, the District Court for the Central District of California entered a protective order ("California Protective Order")—over the objection of Plaintiffs Elliott Broidy and Broidy Capital Management, LLC (together, "Broidy")—because third-party subpoenas had resulted in the production of documents and information subject to the rights of the State of Qatar ("Qatar") on grounds of foreign sovereign immunity, the Vienna Convention on Diplomatic Relations and the Vienna Convention on Consular Relations, as well as confidential and personal information from the Stonington Defendants and Defendant Allaham (then a third party).  *See* Ex. 1 at 1 (Protective Order, *Broidy Cap. Mgmt. LLC v. Qatar*, No. 2:18-cv-2421 (C.D. Cal. Nov. 2,

2018) ("California Litigation"), ECF No. 185-1.  When, following dismissal of his California case, Broidy ultimately challenged Qatar's designations under the California Protective Order for no other purpose than to make those materials public, the Central District of California found, after an *in camera* review, that the documents and testimony at issue "contain[ed] or comprise[d]" information "relat[ed] to the conduct by Qatar of its foreign policy" and should be subject to an attorneys' eyes only designation.  Order at 1, California Litigation, ECF No. 242.

The exact same issues—indeed, some of the exact same documents and information—are at issue here.  Many of the materials that the Central District of California held were subject to the California Protective Order—including materials subject to an attorneys' eyes only designation— had been produced to Broidy by Defendant Allaham when he was a third party, and they included communications with the Stonington Defendants.  There is no question that those and similar materials will be sought here, both from Defendants and third parties.  Indeed, those materials appear to be covered by Broidy's initial discovery requests.  *See* Exs. 2, 3 (discovery requests). And although they are barred by the California Protective Order from receiving these materials, Broidy's current counsel (his fourth in these litigations) has demanded production here of documents that remain under-seal from the California Litigation.

In light of this history and law of the case, as well as the D.C. Circuit's recognition that Qatar's sovereign immunity should be protected as discovery moves forward in this case, *see Broidy Capital Management LLC, et al. v. Muzin, et al.*, 12 F.4th 789, 804 (D.C. Cir. 2021) (finding that the District Court "has the appropriate tools to protect Qatar's absolute FSIA 'immunity from trial and the attendant burdens of litigation'" (citation omitted)), Defendants sent the proposed protective order to Broidy (then represented by his third set of lawyers) on November 4, 2021— just days after the parties' first meet-and-confer and in advance of the parties' Rule 26(f)

conference.  The proposed protective order incorporates all of the provisions from the California Protective Order and also adds additional protections that recognize the sensitive information involved in this case and facilitate an orderly process for both making and challenging designations.  Despite Defendants' request for a redline and offer to discuss the draft at the Rule 26(f) conference, Broidy has yet to provide any serious feedback to the proposal.  Instead, he has rejected Defendants' proposal for an interim attorneys' eyes only designation for use while the parties negotiate the terms of a protective order.

Prior to 4:30pm on the Wednesday before Thanksgiving, Broidy's immediately prior counsel had indicated to Defendants that they were still reviewing the terms of the protective order in good faith.  The parties had discussed an interim policy to protect sensitive information while they discussed the details of the order (and potentially sought court review under a standard schedule), and Broidy's immediately prior counsel *had agreed not to serve third-party subpoenas* during discussions of the interim policy.  But when current counsel joined the case—of which Defendants first became aware of on November 22 when Broidy filed his motion to extend the deadline to submit a Rule 16 report—their first move was to demand production of under-seal documents, to which they are not entitled under the California Protective Order, and serve a third-party subpoena on the eve of the Thanksgiving holiday with a return date of December 15, 2021.

Given these events, it is clear that Broidy no longer has any intention of negotiating the terms of the protective order in good faith.  And given his history of leaking sensitive documents and violating confidentiality protections, Defendants have no choice but to seek emergency relief to ensure that a protective order is in place before third parties start producing documents.  Indeed, the last time Broidy received third-party discovery in the absence of a protective order, he promptly leaked Defendant Muzin's and Defendant Allaham's personal phone records to the press solely to

embarrass them.  Broidy later filed documents covered by attorneys' eyes only protections on the public docket in that case.  And he publicly filed an initial version of his complaint here in violation of the California Protective Order.

Put simply, Broidy's past behavior demonstrates that he cannot be trusted to obtain sensitive documents or information without a protective order.  And undersigned counsel expressly stated as much to Broidy's immediately former counsel on November 8 in the Rule 26(f) conference.  Defendants further warned Broidy's then counsel that Defendants would seek emergency relief if Broidy started serving third-party subpoenas.  Prior counsel agreed not to do so but Broidy and present counsel evidently believe otherwise, necessitating this motion.

## BACKGROUND

As this Court is well aware, Broidy's First Amended Complaint ("FAC"), ECF No. 18-2, broadly accuses Qatar of orchestrating and directing an elaborate operation to hack Broidy's computers and disseminate documents to the media.  Because the Ninth Circuit has already held that Qatar is immune from suit for the actions alleged by Broidy, *see Broidy Capital Management, LLC v. Qatar*, 982 F.3d 582 (9th Cir. 2020), Broidy seeks discovery here from Defendants and myriad third parties into Qatar's diplomatic activities.  The California Litigation leaves no doubt that this is the case.  And yet, Broidy appears intent in pursuing discovery before a protective order is in place, rather than negotiate one in good faith.

## I.   THE CALIFORNIA PROTECTIVE ORDER

The history of the California Protective Order demonstrates why this Court should immediately enter Defendants' similar proposed protective order here.  Having reached an agreement with the parties in the California Litigation to seek only third-party discovery pending motions to dismiss, Broidy immediately served over eighty third-party subpoenas to various alleged agents of Qatar and telecommunications companies, received thousands of pages of

4

document productions, and deposed Defendant Allaham as a third party, all before dismissal of the California Litigation. Among the documents obtained directly from Allaham were communications with the Stonington Defendants. As the Central District of California ultimately held, many of the materials provided in response to Broidy's third-party discovery involved Qatar's foreign policy, including diplomatic communications protected by the Vienna Convention on Diplomatic Relations. *See* California Litigation, ECF No. 242 (rejecting Broidy's motion challenging Qatar's confidentiality designations).

Broidy's California discovery also included Defendant Muzin's personal phone records. In the midst of the discovery barrage, and before a protective order was in place, Broidy leaked those records—which were obtained from Broidy's third-party subpoena to AT&T and marked by AT&T as "Proprietary" and "not for general distribution"—to the news media for no reason other than to embarrass Muzin. *See* Ex. 4 (Letter from S. Obermeier to L. Wolosky, June 14, 2018). And Broidy's plan worked. Multiple news sources—likely paid by Broidy—published hit pieces against Muzin based on his phone records. *See id.* (attaching articles). Broidy further ignored provisional attorneys' eyes only designations ordered by the Southern District of New York, publishing on the docket various protected and sensitive documents also obtained via third-party subpoena. *See* California Litigation, ECF No. 141 at 2 (discussing Broidy's public filing of protected information).

To prevent future leaks, and to protect Qatar's privileged diplomatic communications from a similar fate, the California defendants sought a protective order. California Litigation, ECF No. 184. The proposed order included a "Highly Confidential—Attorneys' Eyes Only" designation for Qatar's highly sensitive and inviolable diplomatic and consular documents that had already been produced by third parties. Ex. 1 at 5, 8. It also provided for an initial period following all

productions by third parties where materials would be treated as "Highly Confidential—Attorneys' Eyes Only" to allow Qatar to review and appropriately designate its sovereign materials. *Id*. Indeed, that initial designation was critical to providing some measure of after-the-fact protection for Qatar's privileges and immunities, given that it could not review documents or information from third parties in advance of production.[1]

Although Broidy opposed the proposed order, seeking to narrow it substantially to maximize his ability to immediately publish information obtained in discovery, *see* California Litigation, ECF No. 185-2 at 11, the Central District of California ultimately adopted the proposed protective order *in full*. California Litigation, ECF No. 210. And when Broidy later sought to make certain of the discovery materials public following dismissal notwithstanding attorneys' eyes only designations by Qatar, the Central District of California reviewed those materials *in camera* and found that the documents and testimony at issue "contain[ed] or comprise[d]" information "relat[ed] to the conduct by Qatar of its foreign policy." California Litigation, ECF No. 242. In other words, the Court rejected Broidy's arguments that there had been improper designations.

## II.   DEFENDANTS' PROPOSED PROTECTIVE ORDER

Not surprisingly, Broidy intends to use the same discovery playbook here. He started this case by violating the California Protective Order, improperly including in his initial Complaint materials covered by that Order and filing certain protected information on the public docket. *See* ECF Nos. 1; 11 (seeking to redact protected information revealed in the Complaint). He then

---

[1] Documents and information pertaining to Qatar's diplomatic and consular activities are absolutely protected from discovery under the Vienna Convention on Diplomatic Relations and the Vienna Convention on Consular Relations. *See infra* at 13. Given that some such material was not identified until after it was produced by third parties, these provisions in the California Protective Order provided an important fallback protection to limit the dissemination of immune materials to the greatest extent possible.

sought—and was denied—expedited third-party subpoenas to multiple alleged agents of Qatar and an unknown number of telecommunications providers, *see* ECF No. 19, demonstrating that he again intends to seek information from third parties that is likely subject to Qatar's privileges and immunities.  And in case there is any doubt, following issuance of the mandate on remand, Broidy has served discovery on each Defendant, requesting information about Qatar, its diplomatic mission, and Defendants' FARA-reported work for Qatar.[2]  *See, e.g.*, Exs. 2, 3 (discovery requests).[3]  It is thus simply not credible to contend, as Broidy apparently does, that this case will not involve documents and information that are subject to Qatar's privileges and immunities, as the D.C. Circuit recognized.  *See Broidy*, 12 F.4th at 804 (finding that the District Court "has the appropriate tools to protect Qatar's absolute FSIA 'immunity from trial and the attendant burdens of litigation'" (citation omitted)).[4]

    For these reasons, Defendants' proposed protective order adopts the California Protective Order in its entirety.  The proposed order includes the provision that all materials produced would be subject to a temporary "Attorneys' Eyes Only" ("AEO") restriction after production to allow

---

[2] This case likely also implicates foreign sovereign immunity concerns for Broidy regarding his work for the United Arab Emirates and the Kingdom of Saudi Arabia.  *See* California Litigation, ECF No. 1 ¶¶ 5–6.

[3] Documents requests to Defendants Muzin and Allaham are attached as examples.  Broidy has also served materially similar document requests on Defendant Howard, as well as Interrogatories and Requests for Admissions on Defendants Muzin, Allaham, and Howard regarding the same topics.

[4] Indeed, Broidy repeatedly assured this Court and the D.C. Circuit during briefing on the derivative sovereign immunity issue that this Court would have plenty of options to oversee discovery to assure that Qatar's privileges and immunities are not violated.  *See* Broidy Reply in Support of Mot. to Dismiss at 8, *Broidy Cap. Mgmt., LLC v. Muzin*, No. 20-7040 (D.C. Cir. June 8, 2020) ("If disputes arise during discovery, the district court will be well positioned to resolve them with normal tools of discovery management."); Appellee Br. at 18 (Nov. 20, 2021) ("Any incidental burden on [Qatar's] interests can be mitigated by the district court, using the ordinary tools of discovery and trial management."); *id.* at 54 ("The district court can prevent any undue burden on Qatar using the ordinary rules of discovery and trial.").

time for appropriate designation.[5]  Ex. 1 at 8.  Further, the proposed protective order would also establish an "Immunity Protocol," so that the invoking party would have an opportunity to review subpoenaed materials before the requesting party's receipt if the subpoena seeks or implicates materials protected by the Vienna Conventions.[6]  *See* Ex. A at 15–17.  And, due to the potential for far-flung discovery proceedings and the risk of inconsistent rulings on issues of Vienna Convention protections, the proposed protective order includes a jurisdictional provision noting the parties' intention that all discovery disputes be heard by this Court.  *See id.* at 5–6.

Recognizing these issues, and in response to communications by Broidy that he intended to launch discovery at the earliest opportunity, *see* Ex. 5 at 11 (email from M. Francisco to S. Obermeier, Oct. 25, 2021 (asserting that he was "motivated" to have the Rule 26(f) conference at the earliest available date and that there was "no reason" to delay)), Defendants have diligently sought to obtain Broidy's agreement on a protective order without court intervention.  Indeed, given the history of the California Protective Order, Defendants believed that the parties would be able to agree on such an order with relative ease.[7]  To that end, during the court-ordered meet-and-confer regarding scheduling, Defendants flagged the protective order issue and stated their intent to provide a draft shortly thereafter.  A few days later, on November 4, Defendants circulated the

---

[5] This provision is relevant for materials produced by third parties.  The parties will of course assert privilege or designate materials **before** production, but as Defendants learned from the California Litigation, third parties may possess sensitive or confidential materials over which the parties (or interested non-parties) will be required to assert the relevant privilege or protections.

[6] This provision was crafted because of proceedings in the California Litigation, in which Broidy obtained materials subject to Vienna Convention protection by third-party subpoenas.  *See* Order, *Broidy Capital Mgmt. LLC v. Allaham*, No. 1:18-mc-240 (June 6, 2018), ECF No. 1.  This provision is even more necessary in this action where Qatar (who was a party in the California Litigation) is not a party and will have no other mechanism through which to protect its sovereign and diplomatic materials in third-party productions before Broidy's receipt.

[7] Given Broidy's close relationship to Qatar's rival, the United Arab Emirates, Defendants assumed that Broidy would welcome similar privileges and immunity protections.

proposed protective order, noting that it largely resembled the California Protective Order and seeking redlines before the November 8 Rule 26(f) conference.  *See* Ex. 6 (email from W. Lane to B. Spears, Nov. 4, 2021).

Broidy, however, failed to provide redlines and was not prepared to discuss any specific provisions of the proposed protective order during the Rule 26(f) conference.[8]  In response, Defendants made clear the importance of the protective order—particularly in light of Broidy's previous leaks—and stated that if Broidy began serving third-party subpoenas, Defendants would have no choice but to file an emergency motion.  Defendants also offered to agree to an interim period during which all third-party productions would be subject to attorneys' eyes only protection while the parties negotiated the protective order and sought court intervention as necessary.  Of course, this is precisely what the California Protective Order had established.  Broidy agreed to promptly respond to Defendants on the draft order and interim offer.

Rather than providing any feedback on the order itself, on November 11, 2021, Broidy rejected Defendants' interim offer.  Ex. 8 (letter from G. Terwilliger to S. Obermeier et al., Nov. 11, 2021).  Specifically, counsel for Broidy claimed that he saw "no basis for an AEO designation in this case"—effectively rejecting the proposed protective order—and proposed that materials might be designated as only "Confidential" pending entry of a protective order.  *Id.* at 2. Defendants promptly responded that such limited interim agreement was not acceptable given the history of the case.  Ex. 9 (email correspondence between G. Terwilliger and S. Obermeier, Nov. 11–15, 2021).  The proposal was also contrary to the terms of the California Protective Order.

---

[8] On November 7, Broidy asked the Stonington Defendants to provide various under seal filings from the California Litigation.  The Stonington Defendants responded almost immediately on that Sunday, noting that they were never served with those documents and do not have access to them. *See* Ex. 7 (email correspondence between T. Steggerda and S. Obermeier, Nov. 7–8, 2021).

Nonetheless, Broidy acknowledged that he did not intend to send any third-party subpoenas in the interim while the parties continued to negotiate. *Id.* at 1.

To date, Broidy has still failed to provide any redlines or substantive response to Defendants' proposed protective order. Instead, on the eve of its due date, Broidy asked for agreement to extend the Court-ordered deadline for the Rule 16 report. Ex. 10 (email correspondence between W. Lane and M. Francisco, Nov. 18–19, 2021). Defendants agreed not to oppose the request. *See id.* Despite exchanging multiple emails regarding the extension motion, Defendants did not become aware that Broidy was switching counsel until the motion was filed late in the day on November 22, 2021. *See* ECF No. 80.

Before even noting an appearance, Broidy's new counsel demanded that Defendants turn over under-seal materials from the California Litigation before they would consider the proposed protective order—even though Broidy's new counsel had not entered an appearance in the California Litigation and are not entitled to such documents. *See* Ex. 11 at 1 (email correspondence between D. Schultz and S. Obermeier, Nov. 23–24, 2021). In any event, it appears that no Defendant possesses those filings, and redacted versions of the materials are publicly available. *Id.* Broidy's new counsel also rejected the use of any interim attorneys' eyes only protections, stating that he would only "discuss AEO protection on a document-by-document basis." *Id.* at 2. Less than twenty-four hours later—without waiting for any response from Defendants and contrary to previous counsel's representation that Broidy would not serve third-party subpoenas during negotiations—Broidy issued a third-party subpoena to Verizon with a response deadline of December 15, 2021. Ex. 12 (subpoena).

## **ARGUMENT**

Federal Rule of Civil Procedure 26(c)(1) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden

or expense, including" "(B) specifying terms . . . for the disclosure or discovery" or (G) "requiring that trade secret or other confidential research, development, or commercial information . . .be revealed only in a specified way." "[G]ood cause" exists here because, absent a protective order, the parties would have to litigate repeatedly appropriate protections for sensitive and confidential information.

Absent a protective order, there is nothing to prevent the release of sensitive and confidential information produced to the public. Discovery is intended to assist the parties and the Court to resolve litigation; it is not designed to provide the public with information that would otherwise be private. *See Huthnance v. District of Columbia*, 255 F.R.D. 285, 288 n.3 (D.D.C. 2008) (citing Richard L. Marcus, *A Modest Proposal: Recognizing (at Last) That the Federal Rules Do Not Declare That Discovery Is Presumptively Public*, 81 CHI.-KENT L. REV. 331 (2006)).

The Court should enter Defendants' proposed protective order. Defendants' proposed protective order appropriately addresses each concern noted above. The safeguards in the proposed protective order are reasonable and no less necessary here than they were in the California Litigation. Further, the new provisions in Defendants' proposed protective order address key concerns discovered in the California Litigation that are likely to manifest again here.

The Court should enter the proposed protective order immediately. After sitting on the proposed protective order for weeks and initially agreeing to withhold third-party subpoenas while the parties negotiated the protective order's terms, Broidy began launching third-party subpoenas the night before Thanksgiving. The first subpoena has a return date of December 15, 2021. Given what happened previously in California, the Court should ensure that an order is in place before third-party productions begin and Broidy has access to Qatar's privileged material or otherwise seeks to leak confidential information to the press. Emergency relief is appropriate when, like

here, the harm presented is imminent and the parties do not have time to brief the matter in the normal course before the event sought to be prevented by the protective order takes place. *See, e.g.*, *Doe ex rel. Doe v. District of Columbia*, 232 F.R.D. 4, 5 (D.D.C. 2005).

**I.      DEFENDANTS' PROPOSED PROTECTIVE ORDER INCLUDES ALL PROVISIONS THAT WERE APPROVED IN THE CALIFORNIA LITIGATION.**

Defendants' proposed protective order incorporates all substantive provisions from the California Protective Order. Of particular note, Defendants' proposed protective order establishes both "Confidential" and "Highly Confidential – AEO" designations: the very same categories used in the prior litigation. *See* Ex. 1 at 4–5. At the same time, the protective order provides that designations are to be applied in a targeted fashion, so as not to unduly hamper the use of produced material. Mass, blanket, indiscriminate, or routinized designations are prohibited by Defendants' proposed protective order and subject to appropriate sanctions. *See* Ex. A at 6.

Further, like the California Protective Order, Defendants' proposed protective order provides that all produced materials must be treated as attorneys' eyes only for an initial period following production to allow the appropriate designations to be applied. *See id.* at 7 ("all Parties and Non-Parties shall have thirty (30) business days from date of entry of this Order to designate as 'CONFIDENTIAL' or 'HIGHLY CONFIDENTIAL – AEO' any Disclosure or Discovery Material produced to date"). Without this provision, materials could be improperly shared before the appropriate party has a chance to designate them.

Additionally, because disputes will inevitably arise, Defendants' proposed protective order contains a procedure by which the parties may resolve disagreements over confidentiality and privilege designations. *See id.* at 10–11. Such a provision will ensure that the parties resolve disputes efficiently and will reduce the need for this Court's involvement in discovery.

Broidy cannot seriously dispute these protections.  The California court adopted these protections after observing Broidy's discovery conduct and reviewing discovery material *in camera*.  Indeed, materials regarding Qatar's sovereign functions are subject to the highest protections.  Discovery materials are absolutely protected from disclosure under the Vienna Conventions, which provide that the documents of a diplomatic mission are inviolable "at any time and wherever they may be."[9]  Vienna Convention on Diplomatic Relations, art. 24, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95, 108; *see also* Vienna Convention on Consular Relations and Optional Protocol on Disputes, art. 33, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261, 289 (providing the same inviolability for consular archives); *see also* California Litigation, ECF No. 80 (detailing protections for documents of a diplomatic mission).  The Ninth Circuit has also determined that Qatar is immune from suit.  *See Broidy Cap. Mgmt.*, 982 F.3d 582.  That means not only that Qatar has "immunity from trial" but also from "the attendant burdens of litigation." *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1126 (D.C. Cir. 2004) (quoting *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1026 (D.C. Cir. 1997)).  Thus, while documents and information subject to the Vienna Conventions should not be produced in the first place, the California Protective Order recognizes that where such material is identified only ***after*** it has been produced, the material is appropriately subject to the highest level of confidentiality protection.

---

[9] As one commentator has put it, it is "clear beyond argument" that this includes documents "not on the premises of the mission and not in the custody of a member of the mission"—*i.e.*, documents in the hands of third parties involved in Qatar's diplomatic work.  Eileen Denza, *Diplomatic Law: Commentary on the Vienna Convention on Diplomatic Relations* 158 (4th ed. 2016).  As a result, many documents sought by Broidy, if they touch on Qatar, will be protected from production entirely.

That the same provisions are necessary here is not even a close call.  Broidy has already sought to introduce (and obtain) in this case materials that were designated as "Confidential" and attorneys' eyes only under the California Protective Order.  *See* ECF Nos. 11; 19-1 (seeking production of materials produced in California Litigation).  Using the ***same*** protections as those in the California Protective Order avoids the risk of inconsistent confidentiality designations across courts, and reasonably protects the California parties' (and non-parties') interests in preserving sensitive, confidential material.  Further, mechanisms such as these, besides others in the proposed protective order, will expedite the flow of information, facilitate the prompt resolution of disputes over confidentiality of discovery materials, adequately protect information the Parties have a right to keep confidential, ensure that the Parties are permitted reasonably necessary uses of such material in preparation for and in the conduct of trial, address their handling at the end of the litigation, and serve the ends of justice.

II.     **NEW PROTECTIVE ORDER PROVISIONS ARE NECESSARY TO PREVENT DISCLOSURE IN THE FIRST PLACE OF MATERIALS SUBJECT TO QATAR'S PRIVILEGES AND IMMUNITIES.**

Defendants' proposed protective order also incorporates new necessary provisions.  The California Litigation made clear that additional protections related to third-party discovery were needed, as materials sought from non-parties (1) included diplomatic materials subject to protection under the Vienna Conventions, and (2) would have required the California defendants to file many repeated and burdensome discovery motions to protect their interests.

*First*, the protective order includes an "Immunity Protocol" to protect materials implicating Qatar's immunity interests.  This protocol allows the invoking party to review and designate materials produced by third parties that may implicate Qatar's sovereign interests before such materials are produced to Broidy.  Such a procedure has already been adopted by this Court in a different case where productions by third parties may include highly sensitive materials subject to

a claim of privilege.  *See* Stip. Protective Order at 4–5, *Citizens for Resp. & Ethics in Washington v. Am. Action Network*, Case No. 1:18-cv-945 (D.D.C. May 20, 2020), ECF No. 45 (addressing materials protected by the First Amendment).  Such a procedure is particularly necessary here, as Broidy has already used third-party discovery to obtain access to Qatar's diplomatic materials that Qatar would not otherwise have been required to produce.  *See* Letter, *Broidy Capital Mgmt. LLC v. Allaham*, No. 18-mc-240 (June 8, 2018), ECF No. 2.[10]  And because Qatar is not a party to the present suit (as it was in the California Litigation), the proposed Immunity Protocol allows Qatar to review and designate third-party materials that are produced here, thereby mitigating the risk that documents and information protected by the Vienna Conventions will be produced without any confidentiality protection and publicly leaked by Broidy.

    *Second*, Defendants' proposed protective order contains a jurisdictional provision stating the intention that all discovery-related motions practice be heard by this Court.  As third-party discovery motions practice must typically be brought in the jurisdiction where discovery materials are located, *see* Federal Rule of Civil Procedure 45(c), (d)(3), this provision enables the Parties to move any far-flung discovery motions practice back to this Court.  A single location for discovery motions practice is preferable to prevent inconsistent rulings, particularly on important issues of diplomatic and sovereign immunity, and to ensure efficient review of any disputes.  Further, this Court is the appropriate jurisdiction to hear such matters, as the Court has already engaged in a detailed review of the factual allegations and is familiar with the various interests in this case.

---

[10] An "Immunity Protocol" was not an option in the California Litigation, because third-party discovery was already in full force, and all defendants had been dismissed, by the time the Court entered the California Protective Order.  At that point, the parties were most concerned about designating materials that had already been produced as more productions were unlikely.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendants' Emergency Motion for a Protective Order, enter Defendants' proposed protective order, and grant such other relief as appropriate.


Dated: November 29, 2021

Charles S. Fax
RIFKIN WEINER LIVINGSTON LLC
7979 Old Georgetown Road, Suite 400
Bethesda, MD 20814
cfax@rwlls.com

Liesel J. Schopler
RIFKIN WEINER LIVINGSTON LLC
225 Duke Of Gloucester Street
Annapolis, MD 21401
lschopler@rwlls.com

Jeffrey A. Udell
Adam P. Cohen
Jacob Gardener
WALDEN MACHT & HARAN LLP
250 Vesey Street, 27th Floor
New York, NY 10281
judell@wmhlaw.com
acohen@wmhlaw.com
jgardener@wmhlaw.com

*Counsel for Defendant Gregory Howard*

/**s**/ Stephen J. Obermeier
Stephen J. Obermeier (D.C. Bar # 979667)
sobermeier@wiley.law
Rebecca Saitta (D.C. Bar # 488110)
rsaitta@wiley.law
Rebecca Fiebig (D.C. Bar # 976854)
rfiebig@wiley.law
Krystal B. Swendsboe (D.C. Bar # 1552259)
kswendsboe@wiley.law
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
Phone: (202) 719-7000
Facsimile: (202) 719-7049

*Counsel for Defendants Stonington Strategies
LLC and Nicolas D. Muzin*

Randall A. Brater
ARENT FOX LLP
1717 K Street NW
Washington, DC 20006
randall.brater@arentfox.com

Eric Roman
Mohammed T. Farooqui
ARENT FOX LLP
1301 Avenue of the Americas, Floor 42
New York, NY 10019
eric.roman@arentfox.com
mohammed.farooqui@arentfox.com

*Counsel for Defendant Joseph Allaham*