UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT, LLC and ELLIOTT BROIDY<br>　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>NICOLAS D. MUZIN, JOSEPH ALLAHAM, GREGORY HOWARD, and STONINGTON STRATEGIES LLC<br>　　　　　　　　　Defendants. | Civil Action No. 1:19-cv-00150-DLF |

## REPLY IN FURTHER SUPPORT OF DEFENDANTS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

Defendants Nicolas D. Muzin and Stonington Strategies LLC (together, "Stonington Defendants"), Joseph Allaham, and Gregory Howard (collectively, "Defendants"), by counsel hereby submit this Reply in Further Support of their Emergency Motion for a Protective Order and respond to the Opposition Brief, ECF No. 92 ("Opp'n"), filed by Plaintiffs Broidy Capital Management, LLC and Elliott Broidy (together "Broidy").

## INTRODUCTION

Broidy's Opposition entirely misses the point. Despite the Court expressly ordering Broidy to "propose an alternative order that 'protect[s] Qatar's absolute FSIA immunity and the attendant burdens of litigation,'" Min. Order, Nov. 30, 2021 (citation omitted), Broidy disputes that Qatar's immunity interests are even implicated. According to Broidy, because Qatar is no longer a party to this case, the California Protective Order[1] is unnecessary. And he claims that Defendants lack "standing" to propose the same protections here. Thus, far from proposing protections for Qatar's immunity, Broidy asks this Court to disregard that immunity.

---

[1] All capitalized terms have the meaning ascribed to them in Defendants' Memorandum in Support of its Emergency Motion for a Protective Order, ECF No. 90-1 ("Emergency Mot.").

This, of course, ignores the realities of this case.  The California court already determined that Qatar's documents and information are implicated by Broidy's allegations, and Broidy gives no explanation for why discovery in this case will be different.  Nor could he.  Indeed, Broidy fails even to respond to the fact that Defendant Allaham—as well as multiple other third parties— provided documents and testimony in the California Litigation that "contains or comprises" information "relat[ed] to the conduct by Qatar of its foreign policy."  *See* Order at 1, California Litigation, ECF No. 242. And Broidy himself has already attempted to use documents covered by the California Protective Order in this case (improperly), and he has twice asked for them since the start of discovery.

At bottom, Defendants' proposed protective order is not, as Broidy claims, an effort to shut down discovery at Qatar's behest.  The California Litigation belies that claim—thousands of pages of documents were produced and Defendant Allaham's deposition was taken, yet only a minimal amount of information was deemed subject to Qatar's privileges and immunities.  *See, e.g.*, California Litigation, ECF No. 238 (attaching redacted materials); *see* Order, California Litigation, ECF No. 242 (upholding all challenged designations).  Instead, Defendants simply ask this Court to implement the California Protective Order with some additional protections to provide for the orderly review of what Broidy himself claims will be extensive third-party (and potentially international) discovery, *see* Fed. R. Civ. P 26(c)(1)(B), (C), (G), in a way that recognizes Qatar's immunity and safeguards against the precipitous circulation or publication of privileged information.

Finally, Defendants are not asking this Court to make any substantive determinations on the scope of Qatar's immunity or the Vienna Conventions.  Indeed, one of the goals of the protective order is to establish a process by which the parties and third parties can litigate those

issues if necessary, while at the same time ensuring that the immunities at issue do not become moot by virtue of disclosure without proper protections. Given the practical reality that Broidy's discovery requests implicate Qatar's immunities, and considering Broidy's history of leaking documents to the press, Defendants' proposed protective order—not Broidy's—sufficiently "protect[s] Qatar's absolute FSIA immunity and the attendant burdens of litigation." Min. Order, Nov. 30, 2021 (citation omitted).

## ARGUMENT

**I.     BROIDY FAILS TO DEMONSTRATE THAT THE CALIFORNIA PROTECTIVE ORDER IS INAPPROPRIATE HERE.**

Broidy offers no credible explanation why discovery in this case will proceed differently than in the California Litigation such that the protections in the California Protective Order are unnecessary. He simply contends that the California case history is irrelevant because Qatar is no longer a party. But that completely disregards what, in fact, happened in California, mostly as a result of Broidy's own actions.

Broidy's case focuses on Qatar, which he accuses of orchestrating and directing an elaborate operation to hack Broidy's computers and disseminate documents to the media. In the California Litigation, Broidy issued over eighty third-party subpoenas to alleged Qatari agents and telecommunications companies that resulted in thousands of pages of documents being produced and a deposition of Defendant Allaham. Although Qatar had no opportunity to protect its privileged information prior to disclosure, it later designated only a discrete subset of the documents and testimony as attorneys' eyes only under the California Protective Order as implicating its immunity. And the California court upheld every one of those designations. *See* Order, California Litigation, ECF No. 242.

There can be no dispute that the same types of documents and testimony—including some of the exact same documents—will be at issue again here. And Broidy does not contend otherwise. Indeed, he simply ignores that some of the documents produced by Defendant Allaham in the California case included communications with the Stonington Defendants. And he likewise ignores that he has sought to obtain copies of materials "relat[ed] to the conduct by Qatar of its foreign policy" in this litigation. *See, e.g.*, ECF No. 19 (motion to expedite seeking production of protected discovery material from California Litigation); Emergency Mot. Exs. 2, 3 (requesting documents from Defendants Muzin and Allaham regarding their work for and relationships with Qatar); Emergency Mot. Exs. 7, 11 (requesting copies of attorneys' eyes only documents filed in the California Litigation). Thus, whether or not Qatar is a party in this case, Broidy has put Qatar's conduct and Qatar's materials at issue, and there is no basis whatsoever to provide fewer protections than the Court ordered in California.

Broidy's "standing" argument is as irrelevant as it is legally baseless. Broidy's cases in no way support the claim that Defendants (as parties with an interest in discovery materials to be produced) cannot claim appropriate protections. The idea that Defendants, who are in possession of documents **already subject to the California Protective Order**, lack a cognizable interest in obtaining the same protections here borders on the frivolous. Indeed, the failure to enter a protective order with at least the same protections as the California Protective Order would place Defendants in the impossible position of complying with conflicting confidentiality obligations.

Moreover, Broidy's "standing" argument is premised on a straw man: the notion that Defendants are seeking to assert Qatar's sovereign privileges on its behalf. But Defendants' proposed protective order does not, as Broidy contends, claim absolute immunity for any of their materials or Qatar's. Instead, the proposed protective order sets reasonable procedures for making

immunity claims before immunity has been vitiated and allows for orderly resolution of disputes regarding those claims.

To the extent Broidy is concerned about over-designation or abuse of confidentiality protections, his concern is baseless. Indeed, Defendants' proposed protective order bars blanket designations, Emergency Mot. Ex. A at 6, and provides an efficient process for challenging any confidentiality designations, *id.* at 10–11. Again, the designations made in the California Litigation demonstrate that these limitations have been taken seriously. Thus, any purported concern about over-designation is speculative at this stage. Should this ever become an issue, Broidy can challenge any designations using the challenge provisions in Defendants' proposed protective order.

## II. BROIDY FAILS TO DEMONSTRATE THAT DEFENDANTS' ADDITIONAL PROPOSED PROTECTIONS ARE INAPPROPRIATE.

Broidy likewise fails to establish that Defendants' additional proposed protections beyond the California Protective Order are unwarranted. Other than stating his dislike of the Immunity Protocol, Broidy has very little to say specifically about why it should not be implemented. To the contrary, the Immunity Protocol simply provides a process for reviewing third-party subpoena responses that may implicate Qatar's diplomatic immunity in a way that avoids what happened in California. *See id.* at 15–16. Specifically, the Immunity Protocol seeks to prevent the circulation or leaking of produced documents before the relevant individuals or entities have a chance to protect their materials.[2]

---

[2] The post-production attorneys' eyes only period (like the one included in the California Protective Order) creates a backstop to allow the relevant parties to identify sensitive material and make appropriate designations in the event privileged documents are produced notwithstanding the Immunity Protocol.

Broidy also fails to provide any explanation for why he eliminates Defendants' proposed jurisdictional provision in his proposed order. As Broidy has already demonstrated in both the California case and here, and as he expressly stated in the Rule 16 report, *see* ECF No. 91, this case will include extensive third-party discovery. The common-sense purpose of Defendants' proposal was to memorialize the parties' consent to transfer any motions practice arising out of third-party subpoenas to this Court pursuant to Federal Rule of Civil Procedure 45(f). Absent transfer, such discovery will likely necessitate costly and inefficient discovery proceedings in courts across the United States, and more importantly, risks inconsistent rulings on important issues of immunity, privilege, and Vienna Conventions protections. All parties can only benefit from an orderly review of disputed issues in this Court.

### III. THE COURT NEED NOT DETERMINE THE SCOPE OF QATAR'S PRIVILEGES AND IMMUNITIES AT THIS TIME.

Without making his own motion, Broidy asks the Court to impose a blanket ruling, via his proposed order, that no non-State individual or entity could ever possess documents subject to protection under the Vienna Conventions. *See* ECF No. 92-2 at 3 (allowing Vienna Convention protections only "if the Producing Party is a sovereign state or any diplomatic or consular mission of a sovereign state"). Broidy's proposed confidentiality designations, further, would undermine the protections granted in the California Litigation, by removing protections for materials relating to the conduct by Qatar of its foreign policy. *Id.* (deleting this portion of the "attorneys' eyes only" definition stated in the California Protective Order). In other words, Broidy effectively asks—without a single case in support—that this Court overrule the California Protective Order on grounds that the California court rejected and in direct contravention to the plain language of the Conventions, which the California court found extend to documents in the possession of third parties, including Defendants. *Compare* California Litigation, ECF No. 185 at 11–15, *with* Opp'n

6

at 20–24; *see also* Vienna Convention on Diplomatic Relations, art. 24 (protecting diplomatic materials "wherever they may be"); Order, California Litigation, ECF No. 242.

But as explained *supra*, there is no basis whatsoever for removing the protections ordered by the California court or relitigating the Ninth Circuit's substantive determinations on Qatar's immunity. Indeed, there is no need to address the scope of Qatar's privileges and immunities at all at this time. Again, Defendants' protective order allows the parties to challenge immunity designations before this Court. If and when such challenges occur, this Court will have the opportunity to rule on the scope of Qatar's privileges and immunities with respect to specific documents and testimony and after the parties have fully briefed this substantial issue.

## IV. BROIDY'S PROPOSED PROTECTIVE ORDER IS INADEQUATE AND WILL IMPOSE A SIGNIFICANT BURDEN ON THE COURT.

Broidy's proposed protective order is wholly inadequate. It includes no mechanism by which Qatar, or Defendants, can prevent the forbidden disclosure of protected materials, at least until any challenge to such nondisclosure is properly resolved, before Qatar's privileges and immunities are irreparably compromised. Specifically, it does not provide Qatar an opportunity to invoke its Vienna Conventions rights with respect to privileged documents requested from Defendants and third parties before such documents are produced (the only protections allowed are for documents requested from Qatar itself). *See* ECF No. 92-2 at 2–3, 16–18 (Broidy's proposed deletion of provisions that would provide such an opportunity). Nor does it allow the Defendants an opportunity to prevent disclosure of such documents. *See id.* at 3 (allowing Vienna Convention protections only "if the Producing Party is a sovereign state or any diplomatic or consular mission of a sovereign state").

In addition, Broidy's proposed protective order threatens to disrupt this litigation and overwhelm the Court with avoidable motion practice. As Broidy implicitly acknowledges, if his

7

proposed order were adopted, Qatar may be forced to blindly move to quash every discovery request that might implicate its privileged diplomatic and consular activities. See Opp'n at 9 (arguing that "Qatar is monitoring this case, and if and when it seeks protection from this Court, the Court can exercise its discretion . . . to grant relief"). This will unnecessarily burden the Court and significantly delay resolution of this action.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Defendants' Emergency Motion for a Protective Order, the Court should enter Defendants' proposed protective order and grant such other relief as appropriate.

Dated: December 6, 2021

| | |
|---|---|
| Charles S. Fax<br>RIFKIN WEINER LIVINGSTON LLC<br>7979 Old Georgetown Road, Suite 400<br>Bethesda, MD 20814<br>cfax@rwlls.com<br><br>Liesel J. Schopler<br>RIFKIN WEINER LIVINGSTON LLC<br>225 Duke Of Gloucester Street<br>Annapolis, MD 21401<br>lschopler@rwlls.com<br><br>Jeffrey A. Udell<br>Adam P. Cohen<br>Jacob Gardener<br>WALDEN MACHT & HARAN LLP<br>250 Vesey Street, 27th Floor<br>New York, NY 10281<br>judell@wmhlaw.com<br>acohen@wmhlaw.com<br>jgardener@wmhlaw.com<br><br>*Counsel for Defendant Gregory Howard* | /s/ *Stephen J. Obermeier*<br>Stephen J. Obermeier (D.C. Bar # 979667)<br>sobermeier@wiley.law<br>Rebecca Saitta (D.C. Bar # 488110)<br>rsaitta@wiley.law<br>Rebecca Fiebig (D.C. Bar # 976854)<br>rfiebig@wiley.law<br>Krystal B. Swendsboe (D.C. Bar # 1552259)<br>kswendsboe@wiley.law<br>WILEY REIN LLP<br>1776 K Street NW<br>Washington, DC 20006<br>Phone: (202) 719-7000<br>Facsimile: (202) 719-7049<br><br>*Counsel for Defendants Stonington Strategies LLC and Nicolas D. Muzin*<br><br>Randall A. Brater<br>ARENT FOX LLP<br>1717 K Street NW<br>Washington, DC 20006<br>randall.brater@arentfox.com |

Eric Roman
Mohammed T. Farooqui
ARENT FOX LLP
1301 Avenue of the Americas, Floor 42
New York, NY 10019
eric.roman@arentfox.com
mohammed.farooqui@arentfox.com

*Counsel for Defendant Joseph Allaham*