# EXHIBIT 12

1390

**CHAIRMAN**

BENJAMIN A. GILMAN, NEW YORK
CONSTANCE A. MORELLA, MARYLAND
CHRISTOPHER SHAYS, CONNECTICUT
ILEANA ROS-LEHTINEN, FLORIDA
JOHN M. McHUGH, NEW YORK
STEPHEN HORN, CALIFORNIA
JOHN L. MICA, FLORIDA
THOMAS M. DAVIS, VIRGINIA
MARK E. SOUDER, INDIANA
STEVEN C. LATOURETTE, OHIO
BOB BARR, GEORGIA
DAN MILLER, FLORIDA
DOUG OSE, CALIFORNIA
RON LEWIS, KENTUCKY
JO ANN DAVIS, VIRGINIA
TODD RUSSELL PLATTS, PENNSYLVANIA
DAVE WELDON, FLORIDA
CHRIS CANNON, UTAH
ADAM H. PUTNAM, FLORIDA
C.L. "BUTCH" OTTER, IDAHO
EDWARD L. SCHROCK, VIRGINIA
JOHN J. DUNCAN, JR., TENNESSEE
JOHN SULLIVAN, OKLAHOMA

ONE HUNDRED SEVENTH CONGRESS

# Congress of the United States

## House of Representatives

COMMITTEE ON GOVERNMENT REFORM
2157 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515–6143

MAJORITY  (202) 225-5074
FACSIMILE (202) 225-3974
MINORITY  (202) 225-5051
TTY       (202) 225-6852

www.house.gov/reform

HENRY A. WAXMAN, CALIFORNIA
RANKING MINORITY MEMBER

TOM LANTOS, CALIFORNIA
MAJOR R. OWENS, NEW YORK
EDOLPHUS TOWNS, NEW YORK
PAUL E. KANJORSKI, PENNSYLVANIA
PATSY T. MINK, HAWAII
CAROLYN B. MALONEY, NEW YORK
ELEANOR HOLMES NORTON,
  DISTRICT OF COLUMBIA
ELIJAH E. CUMMINGS, MARYLAND
DENNIS J. KUCINICH, OHIO
ROD R. BLAGOJEVICH, ILLINOIS
DANNY K. DAVIS, ILLINOIS
JOHN F. TIERNEY, MASSACHUSETTS
JIM TURNER, TEXAS
THOMAS H. ALLEN, MAINE
JANICE D. SCHAKOWSKY, ILLINOIS
WM. LACY CLAY, MISSOURI
DIANE E. WATSON, CALIFORNIA
STEPHEN F. LYNCH, MASSACHUSETTS

BERNARD SANDERS, VERMONT,
INDEPENDENT

November 21, 2002

His Royal Highness Prince Bandar bin Sultan bin Abdulaziz
Ambassador
Royal Embassy of Saudi Arabia
601 New Hampshire Avenue, N.W.
Washington, D.C. 20037

Dear Prince Bandar:

    I have received your letter of October 22, 2002, as well as the replies from the various law firms involved in this matter, refusing to produce the records subpoenaed by the Committee, and claiming that the records are protected by the Vienna Convention on Diplomatic Relations. I do not believe that your letter is a satisfactory reply to the three subpoenas the Committee has issued to Patton Boggs, LLP, Qorvis Communications, and The Gallagher Group. This is a claim without any support in the legal precedents of the United States or, to the best of our knowledge, any other signatory to the Vienna Convention. It is also a claim which has been explicitly rejected in the attached analysis by a leading expert on the Vienna Convention, Professor Eileen Denza. Simply put, the Vienna Convention extends broad protections to diplomatic agents of a foreign government, as well as some more limited protections to foreign nationals who are employed by a diplomatic mission in other capacities, but it has no application to American citizens who choose to sell their services as public relations/lobbying mouthpieces for foreign interests. To the contrary, the Foreign Agents Registration Act, which was enacted by Congress in 1937, makes clear that the activities of such "propagandists," including the documents they generate, send and receive in the course of those activities, are to be subject to the "spotlight of pitiless publicity" so that the American people may be fully informed of both the identity of the propagandists and the nature of the activities they undertake on behalf of their foreign masters. It is ludicrous to suggest, as you and your lawyers do, that when the United States ratified the Vienna Convention some 25 years after the enactment of FARA, it intended to shroud in absolute secrecy the very same activities of these propagandists.

    As a preliminary matter, it is important that you understand the Committee's need for the subpoenaed records. Since the beginning of this year, the Committee has been investigating abductions of U.S. citizens to Saudi Arabia. For at least 20 years, the Saudi government has refused to provide meaningful cooperation to the U.S. government in resolving kidnapping cases. The Committee hoped that if public attention was brought to this matter, the Saudi government



1391

November 21, 2002
Page 2 of 8

would finally work seriously to solve the problem. However, for the last several months, it appears that the Saudi government has worked to undermine the Committee and its efforts to bring American citizens home. The Saudi government has made numerous misleading statements about the kidnapping cases and about the Committee's efforts. It has engaged in publicity stunts, for example, flying the Gheshayan sisters to London to deliver a statement rather than having them meet with their mother in the United States. These actions have led me to question whether the Saudi government has any intention of working with the U.S. government in good faith to resolve these kidnapping cases. I believe that the documents sought by the Committee's subpoenas should answer this question. If indeed, the Saudi government has no intention of resolving these cases and intends only to undermine the U.S. government's efforts, it will certainly shape the Congress' legislative response to this situation.

I am extremely troubled that you have decided to raise these highly questionable legal privileges in response to the Committee's subpoena. It appears that you are raising a privilege that has never been raised before in this context to prevent the Congress and the American public from learning what your lobbyists and public relations agents were doing to respond to these kidnapping cases. This leads me to wonder: what is the Saudi government trying to hide? I am afraid that this claim of privilege is just the latest in a series of unfortunate actions taken by the Saudi government in these kidnapping cases. Apparently it is not enough for the Saudi government to hold American citizens against their will, lie about its actions, and in some cases to be complicit in the kidnapping. Now the Saudi government is attempting to prevent the Congress from learning what role the Saudi government's American lobbyists have played in this matter. This claim of privilege has no support in the law, and is intended only to keep the facts from Congress and the American parents of the kidnapped children who are trying to learn what the Saudi government is doing to return their children.

### I. The Subpoenaed Documents Are Not Protected by the Vienna Convention on Diplomatic Relations

The main argument you have put forth is that the documents of your lobbyists are protected from disclosure by the Vienna Convention on Diplomatic Relations. Specifically, you have claimed that the lobbyists' records are "archives and documents of the mission" which are "inviolable" under the Vienna Convention. This appears to be an unprecedented claim which conflicts with the lobbying firms' longstanding legal obligations under the Foreign Agents Registration Act ("FARA"). Moreover, there is no support for the Saudi position, either in the text of the Vienna Convention, or in the supporting caselaw. Indeed, the world's leading expert on the Vienna Convention, Professor Eileen Denza, has issued a written opinion supporting the Committee's position on this point. Finally, the practical ramifications of your argument have deeply troubling consequences for the nation's efforts to combat terrorism.

#### A. The Lobbyists' Legal Responsibilities Under FARA

The three entities subpoenaed by the Committee, Patton Boggs, Qorvis Communications, and The Gallagher Group ("the subpoenaed firms"), are all registered agents of the Saudi government under FARA. FARA was passed to:

November 21, 2002
Page 3 of 8

> [P]ublicize the nature of subversive or other similar activities of such foreign propagandists, so that the American people may know those who are engaged in this country by foreign agencies to spread doctrines alien to our democratic form of government, or propaganda for the purpose of influencing American public opinion on a political question.

H. Rep. 1381, 75th Cong., 1st Sess. (1937). Under FARA, all registrants must disclose, among other things, a statement of the registrant's business and a statement of the nature of the work the registrant performs for the foreign principal. 22 U.S.C. § 612(a). In addition, the registrant must keep "such books of account and other records with respect to all his activities . . . as the Attorney General, having due regard for the national security and the public interest, may by regulation prescribe[.]" 22 U.S.C. § 615. Department of Justice regulations specify that FARA registrants must keep and preserve, among other things, "[a]ll correspondence, memoranda, cables, telegrams, teletype messages, and other written communications to and from all foreign principals and all other persons, relating to the registrant's activities on behalf of, or in the interest of any of his foreign principals." 28 C.F.R. § 5.500(a)(1). The registrant must also keep "[a]ll correspondence, memoranda, cables, telegrams, teletype messages, and other written communications to and from all persons, other than foreign principals, relating to the registrant's political activity, or relating to political activity on the part of any of the registrant's foreign principals." 28 C.F.R. § 5.500(a)(2). All of these records "shall be open at all reasonable times to the inspection of any official charged with the enforcement of" FARA. 22 U.S.C. § 615.

Therefore under federal law, the subpoenaed firms are required to keep all of their records of correspondence with the Saudi government or regarding their activities on behalf of the Saudi government. These records are open to Justice Department inspection at "all reasonable times." The Justice Department has frequently exercised its rights under 22 U.S.C. § 615 to obtain and inspect the records of individuals and entities registered under FARA.[1] *See Emerson v. Department of Justice*, 603 F. Supp. 459, 462 (D.D.C. 1985) ("Often copies of papers in the registrant's file are obtained for further examination. . . . Some of these papers may include diary entries, entertainment guest lists, explanation of certain expenditures and other details of the registrant's activities, including activities that are not required to be reported."") The documents sought by the Committee, are in large part, if not in their entirety, documents required to be maintained and open to Justice Department inspections under FARA. Given this fact, it is difficult for me to understand your argument that these precise documents are "inviolable" under the Vienna Convention on Diplomatic Relations. Indeed, FARA was intended to address fact patterns much like the one before the Committee, in which foreign governments retain American firms and individuals to present propaganda to mislead the American public regarding their highly questionable activities.

**B.    The Lack of Legal Support for the Saudi Government's Position**

While your letter and those of your lawyers were very well drafted and cited many cases, the simple fact is that there is no support for the proposition that the subpoenaed records are

---

[1] In fact, according to records provided to the Committee by the Department of Justice, it appears that the records of at least one Saudi lobbyist have in the past been inspected under FARA.

November 21, 2002
Page 4 of 8

"archives and documents of the mission." Most illustrative of this fact is that Professor Eileen Denza has drafted the attached legal opinion in support of the Committee's position on this question. Professor Denza is a member of the Faculty of Laws at University College London and is the author of *Diplomatic Law*, the leading treatise on the Vienna Convention. As you can see from the attached letter, Professor Denza believes that "the records which are the subject of subpoenas from the Committee on Government Reform of the House of Representatives are not archives or documents of the Saudi mission and so not protected on the basis of inviolability from disclosure." When one reviews the text of the Vienna Convention, it is clear why Professor Denza supports the Committee's position. Article 24 of the Vienna Convention states that "[t]he archives and documents of the mission shall be inviolable at any time and wherever they may be." However, there is nothing in the Vienna Convention suggesting that documents generated by or in the possession of lobbyists and public relations specialists are in fact "archives and documents of the mission." You have not cited any caselaw claiming that documents generated by such individuals are protected under Article 24. Rather, you have relied on a tenuous series of analogies which in reality, provide no support for your position.

First, you claim that under "settled law," the documents in the possession of the Saudi lobbyists are the property of the Saudi Embassy, and that they are therefore subject to the provisions of the Vienna Convention. The main case you cite in support of this proposition is *In re Grand Jury Proceedings*, 727 F.2d 941 (10th Cir. 1984). However, an examination of that case shows that it arose in a setting where a lawyer's records had been subpoenaed, the client directed the lawyer to comply with the subpoena, and the lawyer refused, claiming that he was protected from production by the Fifth Amendment to the U.S. Constitution and the attorney work product doctrine. The court held that for Fifth Amendment purposes, the lawyer did not possess the documents in a "purely personal capacity" and therefore was not entitled to invoke his Fifth Amendment rights over them. The case might be relevant precedent if the Saudi government directed the lobbying firms to comply with the Committee's subpoenas and the firms refused. However, it certainly does not establish that the documents of a lobbyist should be considered "archives and documents of the mission" within the meaning of the Vienna Convention.

The other cases which you cited, *In re Stone*, 672 A.2d 1032 (D.C. 1995), *In re Karr*, 722 A.2d 16 (D.C. 1998), and *In re Bernstein*, 707 A.2d 371 (D.C. 1998), stand for the proposition that a client should receive a copy of the case file upon request at the end of the representation. These cases do not suggest that all documents generated by or obtained by a lawyer or lobbyist in the course of his work are the property of the client. They also do not suggest that in situations where a lobbyist does have to return certain records upon the request of the client that the lobbyist cannot maintain copies of those records. The cited cases also do not address the case before the Committee, where in fact there is an ongoing representation. Most significantly, the Saudi lobbyists are under a statutory obligation to maintain copies of the records, and this obligation would supersede any request from their client or the caselaw you have cited. FARA requires registered agents to keep copies of records relating to their representation for three years following the termination of their representation of the foreign principal. While the cases you have cited do not clearly establish an ownership interest by the Saudi Embassy in the subpoenaed records, it is clear that if such an interest exists, it is severely limited by FARA's requirement

1394

November 21, 2002
Page 5 of 8

that the registered agent maintain the records and that the Justice Department have access to the records.

Most importantly, you have not cited any authority which suggests that the documents in the possession of consultants for an embassy are "archives and documents of the mission." In fact, as she discusses in her attached letter, Professor Denza believes that the most relevant precedent supports the Committee's position. The main case you have cited for the proposition that the subpoenaed records are protected under the Vienna Convention is *In re Liberian Eastern Timber Corp. v. The Government of the Republic of Liberia*, 659 F. Supp. 606 (D.D.C. 1987). However, *Liberian Eastern Timber Corp.* deals with the attachment of Embassy bank accounts, that is, funds belonging to the Embassy and necessary to perform Embassy functions. As Professor Denza has written to the Committee, there is a major difference between a litigant's attempt to attach the funds which belong to an Embassy, and the Committee's attempt to subpoena records belonging to lobbying firms:

> There have been a series of cases in several jurisdictions, this case being one of them, which now establish that embassy bank accounts are entitled to protection under customary international law. The case cannot be used in order to enlarge the protection given under a different Article of the Vienna Convention where the wider construction cannot be supported by either the words of the Convention, by practice, or by authorities in other jurisdictions.

The remainder of the cases cited by your lawyers have little to do with the issue before the Committee. For example, your attorneys have cited an Office of Legal Counsel opinion drafted regarding a claim of executive privilege by President Clinton. In that case, President Clinton claimed executive privilege in response to a Congressional subpoena for records containing presidential communications relating to U.S. foreign policy in Haiti. Of course, executive privilege is a constitutionally based privilege which protects certain presidential communications. It goes without saying that executive privilege – a privilege for the U.S. President under the U.S. Constitution – is not available to the Saudi government and its consultants, lobbyists and public relations agents. Your attorneys have also cited a series of cases arising under the Freedom of Information Act regarding the deliberative process privilege. Of course, these cases have nothing to say about the Vienna Convention or Congress' right to obtain records in the possession of lobbyists and public relations specialists for foreign governments.[2] The fact that your attorneys have spent so many pages discussing cases which are so inapplicable to the facts before the Committee demonstrates the lack of support for your position.

---

[2] It should be noted that the deliberative process privilege discussed in the cases cited by your lawyers would not be available to U.S. government agencies in response to a Congressional subpoena. It would be an anomalous result indeed to provide private parties lobbying on behalf of foreign governments with the benefit of the deliberative process privilege when it is not available to the U.S. government in response to Congressional subpoenas.

November 21, 2002
Page 6 of 8

### C. The Disturbing Ramifications of the Saudi Position

It is also important to consider the ramifications of your argument. First, if your position were correct, a foreign mission could employ a U.S. citizen to break the law, and then cloak any documents about that activity in diplomatic immunity. Even a spy could be hired by a foreign mission, and then claim that his documents are protected by the Vienna Convention if they were sought by the FBI. I see no reason why spies like Robert Hanssen, Aldrich Ames, or Jonathan Pollard could not claim that they were agents of foreign embassies, and that their documents were protected from disclosure by the Vienna Convention. If this argument were allowed to stand it could potentially cripple future espionage investigations,[3] and would distort the fundamental purpose of the Vienna Convention. Second, and perhaps most significantly, your interpretation of the Vienna Convention would eviscerate FARA. FARA was passed to "protect the national defense, internal security, and foreign relations of the United States by requiring public disclosure by persons engaging in propaganda activities for or on behalf of foreign governments, foreign political parties, and other foreign principals so that the Government and the people of the United States may be informed of the identity of such persons and may appraise their statements and actions in the light of their associations and activities." *Meese v. Keene*, 481 U.S. 465, 469 (1987) (quoting 56 Stat. 248-49 (1942)). To ensure that filings made under FARA are accurate, the Justice Department has the right to obtain a wide array of documents relating to a registrant's representation of a foreign entity. Yet, your argument would keep the Department from obtaining any of these records. This interpretation would virtually bar the Justice Department from enforcing FARA. It is noteworthy that in the 30 years that the United States has been a signatory to the Vienna Convention, the Justice Department has repeatedly obtained records from representatives of foreign governments, and yet apparently, not once has a foreign government made the claim that you are advancing.

It is unthinkable that Congress, through silence or inadvertence, relinquished its vital oversight responsibilities over registered foreign agents. A number of courts have held that statutory nondisclosure provisions, when they are not explicitly applicable to Congress, cannot be used to deny Congress access to information. *See, e.g., FTC v. Owens-Corning Fiberglass Corp.*, 626 F.2d 966, 970 (D.C. Cir. 1980); *Exxon Corp. v. FTC*, 589 F.2d 582, 585-86 (D.C. Cir. 1978); *Moon v. CIA*, 514 F. Supp. 836, 840-41 (SDNY 1981). Likewise, there is nothing in the Vienna Convention which makes the nondisclosure provisions of the Convention applicable to the documents at issue, much less a Congressional request for such documents.

### II. Testimony by Representatives of the Subpoenaed Firms is Not Privileged

Just as disturbing as your claim that the subpoenaed documents are privileged is your apparent belief that testimony by lobbyists and consultants for the Saudi government is privileged as well. Your letter did not make this argument clear, but your lawyers made it clear in their recent meeting with Committee staff that you believe that the Committee cannot compel your lobbyists and consultants to testify regarding their activities. You are apparently making this claim despite the fact that the Committee has already subpoenaed your top public relations

---

[3] The argument you have made could potentially allow attorneys for previously convicted spies like Hanssen, Ames or Pollard to go back and argue against their convictions.

His Royal Highness Prince Bandar bin Sultan bin Abdulaziz
November 21, 2002
Page 7 of 8

consultant, Michael Petruzzello, and he testified extensively about his work for the Saudi government.

Your claim is also inconsistent with the Vienna Convention itself, which explicitly identifies the persons who are entitled to assert privileges against providing evidence. Article 31(2) of the Vienna Convention provides that a "diplomatic agent is not obliged to give evidence as a witness." This privilege is also expressly extended to members of the administrative and technical staff of the mission, so long as these members are not nationals or permanent residents of the receiving state. Art. 37(2). Such nationals or permanent residents are entitled to only such privileges and immunities as the receiving State chooses to provide them. Art. 38. By contrast, your claim would extend a privilege against providing evidence to U.S. nationals who are not even employees of the mission, and who do not fall within any of the categories of protected persons identified by the Convention. *See* Art. 1. Indeed, Professor Denza has written to the Committee that "[l]obbyists and public relations specialists providing professional services to the Embassy of Saudi Arabia would not on that basis be exempt from an obligation to testify as witnesses."

Moreover, even individuals who, unlike the lobbyists and consultants here, occupy positions which the Vienna Convention was designed to protect are not exempt from compulsion to provide evidence unless and until the State Department has been notified of their appointment in the manner required by the Convention. *Vulcan Iron Works, Inc. v. Polish American Machinery Corp.*, 479 F. Supp. 1060, 1064-65 (S.D.N.Y. 1979). This requirement preserves the State Department's ability to reject appointments it finds objectionable, and ensures that the class of persons protected by the Convention is clearly defined. If the government of Saudi Arabia truly intended and expected that its consultants and lobbyists would be protected by the Vienna Convention, it would have so notified the State Department when they were retained.

### III. Attorney-Client Privilege and Attorney Work Product

You also objected to the production of any documents protected by the attorney-client privilege and attorney work product doctrine. Of course, Congress is not obligated to recognize common law privileges like the attorney-client privilege. *See, e.g., Proceedings Against Ralph Bernstein and Joseph Bernstein*, H. Rep. No. 99-462, 99th Cong., 2d Sess. 13 notes 12-14 (1986). Even if the Committee were disposed to accept such a claim in this case, it is doubtful that many of the documents are covered by the attorney-client privilege. Only one of the three subpoena recipients is a law firm. It also appears that most of the work being carried out, even by the law firm, is related to lobbying, not legal work, and would therefore not be protected by the attorney-client privilege. *See In re grand Jury Subpoenas dated March 9, 2001* at 43-44 (S.D.N.Y. 2001). *See also Federal Deposit Insurance Corporation v. Hurwitz*, No. Misc. 01-0287 (D.D.C. July 25, 2002).[4] Similarly, Congress is not obligated to recognize the attorney

---

[4] It is interesting to note that in the Hurwitz case, Judge Thomas Penfield Jackson allowed the FDIC to proceed with a subpoena of records relating to the lobbying activities of Patton Boggs. According to a press account, Judge Jackson informed counsel for Patton Boggs that "he would be inclined to agree with him 'if you were, in fact, defense counsel' but added: 'You are not. You provided services of a different nature.'" James V. Grimaldi, FDIC Case Against Texas Businessman Hurwitz Moves Forward with Approval of Subpoena, The Washington Post (August 12, 2002).

His Royal Highness Prince Bandar bin Sultan bin Abdulaziz
November 21, 2002
Page 8 of 8

work product doctrine. Even if the Committee did allow such a claim in this case, it is unlikely that any of the documents at issue would be properly classified as attorney work product, given the absence of any anticipated litigation in this matter. Nevertheless, if you believe that any of the subpoenaed documents are the proper subject of an attorney-client privilege or attorney work product claim, we invite you to make such a claim and provide a detailed privilege log.

**Conclusion**

In summary, there is no support for your position that the subpoenaed records are subject to protection under the Vienna Convention. Therefore, I reject your claim of privilege, and request that the subpoenaed records be produced to the Committee. If the subpoenaed parties do not comply with my request, I will consider appropriate action to enforce the subpoenas and obtain the requested information.

Sincerely,

Dan Burton
Chairman

cc: The Honorable Colin Powell, Secretary of State
    The Honorable John Ashcroft, Attorney General
    The Honorable Henry A. Waxman, Ranking Minority Member
    Maureen E. Mahoney, Latham & Watkins
    Robert Luskin, Patton Boggs LLP
    Leslie Kiernan, Counsel for Qorvis Communications
    Peter Romatowski, Counsel for The Gallagher Group

Attachment