# EXHIBIT 13

# Diplomatic Law

*Commentary on the Vienna Convention
on Diplomatic Relations*

FOURTH EDITION

EILEEN DENZA


OXFORD
UNIVERSITY PRESS



Great Clarendon Street, Oxford, OX2 6DP,
United Kingdom

Oxford University Press is a department of the University of Oxford.
It furthers the University's objective of excellence in research, scholarship,
and education by publishing worldwide. Oxford is a registered trade mark of
Oxford University Press in the UK and in certain other countries

© Eileen Denza 2016

The moral rights of the author have been asserted

This Edition published in 2016

Impression: 1

All rights reserved. No part of this publication may be reproduced, stored in
a retrieval system, or transmitted, in any form or by any means, without the
prior permission in writing of Oxford University Press, or as expressly permitted
by law, by licence or under terms agreed with the appropriate reprographics
rights organization. Enquiries concerning reproduction outside the scope of the
above should be sent to the Rights Department, Oxford University Press, at the
address above

You must not circulate this work in any other form
and you must impose this same condition on any acquirer

Crown copyright material is reproduced under Class Licence
Number C01P0000148 with the permission of OPSI
and the Queen's Printer for Scotland

Published in the United States of America by Oxford University Press
198 Madison Avenue, New York, NY 10016, United States of America

British Library Cataloguing in Publication Data
Data available

Library of Congress Control Number: 2015945825

ISBN 978–0–19–870396–9

Printed and bound by
CPI Group (UK) Ltd, Croydon, CR0 4YY

# INVIOLABILITY OF OFFICIAL CORRESPONDENCE

## Article 27

...

2. **The official correspondence of the mission shall be inviolable. Official correspondence means all correspondence relating to the mission and its functions.**

...

There was no clearly established rule of customary international law according inviolability to correspondence to or from a diplomatic mission which was sent through the public postal facilities. Letters to a mission would become archives or documents of the mission on delivery, but not before. Letters from a mission were not in practice sent through the ordinary post if they were of any importance or delicacy. It can be assumed that the authorities on occasion tampered with such letters, but such interference would usually be hard to detect and there do not appear to be instances where protest was made by a diplomatic mission.

The text of the first sentence of Article 27.2 was proposed in the International Law Commission by Mr Alfaro, who explained that: 'The phrase "official correspondence of the mission" meant correspondence from the mission, that sent to the mission from its chancellery or other authorities of the sending State, and correspondence between the mission and consulates situated in the receiving State.' The Rapporteur, however, accepted Mr Alfaro's proposal 'on the understanding that "official correspondence" applied only to mail emanating from the mission'.[1] At the Vienna Conference the representative of Australia reintroduced as his own delegation's amendment the definition of official correspondence now contained in the second sentence of Article 27.2.[2] This addition does not help to clarify the question of whether only correspondence coming from the mission or also correspondence to it from the authorities of the sending State is to be given inviolability.

It is probable—although the point does not appear to have been settled—that 'correspondence' includes e-mails and their attachments which have become the most usual method of correspondence and can be regarded as essential for the performance of mission functions in the modern world. On this assumption there would be some degree of overlap between the protection accorded by paragraphs 1 and 2 of Article 27 as well as overlap between Articles 24 and 27.2.

The inviolability of official correspondence of a mission has two aspects—it makes it unlawful for the correspondence to be opened by the authorities of the receiving State and it precludes the correspondence being used as evidence in the courts of the receiving State. As regards use of correspondence as evidence, Article 27.2 may be regarded as duplicating the protection under Article 24 of the Convention which gives inviolability to the archives and documents of the mission 'wherever they may be'. Correspondence from the sending

---

[1] *ILC Yearbook* 1958 vol I p 143.
[2] UN Docs A/Conf. 20/C 1/L 154 (para 2) and A/Conf./20/14 p 179.

government to its mission would also at least arguably be entitled to protection as archives of a foreign sovereign State.

The primary importance of Article 27.2 lies in the protection which it gives from interference by the authorities of the receiving State. In this context the second sentence is unhelpful, since it is not possible for these authorities to know whether correspondence relates to the mission and its functions without opening it and reading it—and with this the real damage has occurred. There is no obligation, as there is with the diplomatic bag, for mission correspondence to bear 'visible external marks' of identification. Correspondence to a mission at least indicates its destination, but it may not be clear whether it originates from the sending government and would thus be entitled to inviolability as archives of a foreign sovereign State. If the mission wishes to ensure that its outward correspondence is recognized as entitled to inviolability it should ensure that it is clearly marked on the outside.

In the nature of things there are likely to be few disputes over Article 27.2. A receiving State which wishes to intercept and read correspondence to or from a diplomatic mission will do so by methods which cannot be detected, including methods which do not involve opening it. Any complaints of wrongdoing will be rejected or blamed on mistake by a lowly official. Missions will continue to send confidential communications by cipher telegram or by sealed diplomatic bag, and will place little reliance on the uncertain protection given by Article 27.2 to correspondence passing through the public post.