# EXHIBIT 17

Calendar No. 133

| 89TH CONGRESS 1st Session | SENATE | REPORT No. 143 |

# FOREIGN AGENTS REGISTRATION ACT AMENDMENTS

APRIL 1, 1965.—Ordered to be printed

Mr. FULBRIGHT, from the Committee on Foreign Relations, submitted the following

# REPORT

[To accompany S. 693]

The Committee on Foreign Relations having had under consideration the bill (S. 693) to amend the Foreign Agents Registration Act of 1938, as amended, and for other purposes, reports the same favorably to the Senate with amendments and recommends that the bill as amended be passed.

## I. MAIN PURPOSE OF THE BILL

The proposed amendments to the Foreign Agents Registration Act of 1938 are designed to strengthen the basic purposes of the original act.

The act is intended to protect the interests of the United States by requiring complete public disclosure by persons acting for or in the interests of foreign principals where their activities are political in nature or border on the political. Such public disclosures as required by the act will permit the Government and the people of the United States to be informed as to the identities and activities of such persons and so be better able to appraise them and the purposes for which they act.

## II. WHAT THE BILL PROVIDES

The following are the major provisions of the bill:

1. The new terms "political activities" and "political consultant" have been added and defined and definitions have been revised for the terms "foreign principal" and "agent of a foreign principal"—all of which are aimed at better focusing the act on those individuals attempting to influence Government policies through political activities.

35–010—65——1

2. Requirements for disclosure of political activities and expenditures as part of regular reports to the Department of Justice are made more strict.

3. The commercial exemption has been broadened to exempt all private and nonpolitical activities with a bona fide commercial purpose and other activities not serving predominantly a foreign interest, even though they may be political in nature.

4. When contacting Members or committees of the Congress or Government officials on policy matters in behalf of their foreign principal, registered foreign agents will be required to disclose their status as agents and identify their principal.

5. A foreign agent appearing for or in the interest of his foreign principal before a congressional committee will be required to file his latest registration statement as a part of his testimony.

6. The Secretary of State will be provided copies of the registration statements and political propaganda filed with the Department of Justice under the requirements of the act.

7. An injunctive remedy is authorized for the Attorney General, in addition to the criminal sanctions already in the act, where compliance with either the act or the regulations issued under the act is considered inadequate.

8. Contingent fee contracts between agents and foreign principals based upon success in political activities to be undertaken by the agent are banned.

9. Campaign contributions for or in behalf of a foreign principal are prohibited in connection with any election to public office or in connection with any primary election or convention to select candidates for office.

10. Officers and employees of the U.S. Government are prohibited from acting as agents of foreign principals. Contract or part-time employees of the Federal Government may act as agents of foreign principals if the head of the employing agency certifies that such employment is in the national interest and a copy of the certification is placed in the public file of the agent maintained by the Department of Justice.

### III. COMMITTEE ACTION

In recent years, the Committee on Foreign Relations has become aware of persistent efforts by numerous agents of foreign principals to influence the conduct of U.S. foreign and domestic policies using techniques outside the normal diplomatic channels. This trend has been accompanied by an upsurge in the hiring within this country of public relations men, economic advisers, lawyers, and consultants by foreign interests.

It is noteworthy that the increased tempo of nondiplomatic activity has picked up in almost direct proportion to our Government's growing political, military, and economic commitments around the world.

The Committee on Foreign Relations began its study leading to these proposed amendments in 1961 when a staff member made a survey of some nondiplomatic activities that had come to the attention of the committee. Results from this survey raised specific questions, and in April 1962 the staff was asked to make a preliminary study to determine if a full committee investigation was warranted. The preliminary staff study provided the basis for a committee decision

to proceed with a full investigation of the activities of nondiplomatic agents of foreign governments, and the Senate authorized the investigation on July 12, 1962.

In the following 6 months the committee staff, with the assistance of the General Accounting Office and the full cooperation of the Departments of Justice and State, carried out a broad investigation. Fifteen individuals were called to testify before the committee in executive session. They were not selected because they were typical of the majority of nondiplomatic agents, but rather because the types and sometimes obscure patterns of their activities were thought to merit more detailed examination. In several cases, such activities represented, in the judgment of the committee, violations of the spirit and purpose of the Foreign Agents Registration Act. It was from a study of such situations that the committee hoped to determine legislative needs as well as changes needed in executive agency procedures and safeguards.

On March 14, 1963, the Senate approved a resolution to authorize continuation of the study and expansion of its scope to include the activities of agents with nongovernmental foreign principals. Over the next 6 months, the committee held 14 executive and 6 public sessions taking testimony from foreign agents.

On September 10, 1963, a bill to amend the Foreign Agents Registration Act and other acts was introduced by Senator Fulbright for himself and Senator Hickenlooper. Three days of hearings were held on the bill and it was favorably reported with amendments on February 21, 1964. The bill was debated, amended in one respect, and passed by the Senate on a voice vote on July 6, 1964.

S. 693, as introduced, was identical to the previous bill as it passed the Senate. A hearing was held on the bill on February 16, at which time testimony was heard from outside witnesses and Assistant Attorney General J. Walter Yeagley. The bill was approved by the committee and ordered reported after adoption of several amendments, primarily of a clarifying nature.

## IV. COMMITTEE COMMENTS

Twenty-nine years ago a special committee of the House of Representatives, chaired by the present Speaker of the House of Representatives, John W. McCormack, filed a report on its investigation into Nazi and other subversive propaganda that circulated in the postdepression United States. The first, and primary, legislative recommendation of that committee was—

> That the Congress shall enact a statute requiring all publicity, propaganda, or public relations agents or other agents who represent in this country any foreign government or a foreign political party or a foreign industrial organization to register with the Secretary of State of the United States, and to state name and location of such employer, the character of the service to be rendered, and the amount of compensation paid or to be paid therefor.

Three years later, in 1938, the Foreign Agents Registration Act (FARA), embodying the major recommendations of that committee, became law. For 27 years, this act, born of a congressional effort to

prevent subversion as well as to control foreign political lobbying, has been the primary statute in its field.

The original target of foreign agent legislation—the subversive agent and propagandist of pre-World War II days—has been covered by subsequent legislation, notably the Smith Act. The place of the old foreign agent has been taken by the lawyer-lobbyist and public relations counsel whose object is not to subvert or overthrow the U.S. Government, but to influence its policies to the staisfaction of his particular client.

Since the Second World War, and particularly since the end of the Korean war, U.S. oversea commitments—both political and economic—have grown markedly. In this same period, foreign governments along with foreign political and commercial interests became more active in attempting to influence the direction of our policies. The traditional target for such overtures was the Department of State. However, in the last decade an additional target has been established with the increasing direct congressional participation in specific foreign policy matters. Congress, for its part, has traditionally been more responsive to public pressures with the result that the mass media have also thereby gained new importance in the policy formation process.

Few foreigners understand the subtleties of our major governmental institutions, particularly the interplay between the executive and legislative branches in the formulation of national policy. Also difficult for most to comprehend is the multiplicity and independent status of our news media which supply information to the public.

Lobbying has always played a necessary part in our democratic form of representative government. In effect, it is the institutionalization of the people's constitutional right to petition their government. The practice of public relations in its current form represents a fairly new activity which in the main has the goal of assisting a client in his dealings with the mass media and the public at large. Individuals undertaking lobbying, public relations, or other related services vis-a-vis the Government—economic consulting, purchasing, fund raising, political reporting, general legal counseling—all are important in assisting or acting for the American citizen, corporation, or organization in dealing with his Government.

However, the status of the individual or firm undertaking political activities, public relations, or similar services for a foreign principal is quite different. The Constitution, which protects the right of U.S. citizens to petition their Government, does not afford the same protection to the citizen who exercises that right at the direction of or in the interests of a foreign principal. Not only does he no longer have the same protection of the Constitution, but he has also placed himself in a most sensitive position between his own governmental institutions and a foreign principal—an area traditionally reserved for the diplomatic corps, with all its formalities and restraints. The committee hearings have illustrated the dangers that arise to U.S. policy interests through irresponsible activities on the part of Americans employed by foreign principals.

The prime hope for protecting U.S. interests in the field of non-diplomatic activities rests with strong executive enforcement of all provisions of the Foreign Agents Registration Act. However, disclosure by the agent to the Department of Justice is not enough. The "pitiless spotlight of publicity" which Congressman Emanuel

Celler so aptly referred to as the purpose of this legislation a quarter of a century ago remains its purpose today. The public is an important participant in this process and the responsibility of the mass media in disclosing foreign activities through agents therefore cannot be overlooked. Also, in order to help keep the public informed, it is important that the periodic reports and other materials issued by the Department of Justice concerning the activities of foreign agents be given wide distribution.

As the chairman noted when this study began, "little if any precise information is given on what (foreign agents) actually do, or how they actually do it." The hearings of the committee have offered some guidance, but the cases studied were selected not because they were typical but rather because they illustrated a range of activities which the committee believed were inimical to the interests of the United States and should be dealt with in new legislation.

The committee notes that in two particular areas, though effective legislative remedies are impossible, some restraints surely are needed. One such area is in the reporting by the agent to his foreign principal. Testimony showed that numerous agents have exaggerated or misrepresented facts to their principals—and in almost every case the effect was to distort U.S. policy or the attitudes of agencies or individual officials within the United States. It is, of course, impossible to legislate honesty in business relationships. But there is a responsibility to be met here, one of particular concern to the legislative branch for the hearings disclosed that in a number of cases it was a Member of Congress or the machinery of the Congress that was being misrepresented to foreign principals.

A second problem that needs other than legislative attention concerns the public's right to know the source of material presented to it by organs of the mass media when such material originates with or is promoted by foreign agents. The first amendment guarantees freedom of the press, but who except the press itself can guarantee that the right to seek the truth and publish it—as contemplated by this amendment—is to be shared with the public at large? The committee's hearings documented numerous cases of what one editor later characterized as "corruptions" of the mass media. The responsibility to police such corruption rests with media executives, but the Congress and the public should actively urge steps to be taken to meet that important responsibility.

The Foreign Agents Registration Act can only be as effective as the effort made to enforce it. Too broadly written for today's needs, the present act's disclosure provisions have through the years been too narrowly enforced with the emphasis placed on subversive or potentially subversive agents. One of the major purposes of this bill is to reaffirm the change in focus of the act to place primary emphasis on protecting the integrity of the decisionmaking process of our Government and the public's right to know the source of the foreign propaganda to which they are subjected. Now that the focus has changed, the committee suggests the Department of Justice reassess its administration of the act under its Internal Security Division and study the possibility of placing responsibility for it within the Criminal Division which already has charge of similar statutes such as the Federal Lobbying Act.

V. SECTION-BY-SECTION ANALYSIS OF THE PROPOSED AMENDMENTS TO THE FOREIGN AGENTS REGISTRATION ACT OF 1938, AS AMENDED

PROVISIONS OF THE PROPOSED BILL

*Definitions*

*Section 1(1)* would amend section 1(b) of the act which contains the definition of the term "foreign principal" by dropping from that definition as it now reads certain domestic persons whose connection with a foreign country arises solely from the fact that they agree to employ an agent in this country on behalf of a foreign interest. Under existing law, all the agents of such domestic intermediaries are confronted with the technical requirement of registration, however unrelated the activities of these agents may be to the purposes of any foreign interest. However, section 1(2) of the proposed bill would, at the same time, redefine the phrase "agent of a foreign principal" to insure that that phrase covers persons who are either directly or indirectly subject to the direction or control of a foreign principal.

The proposed change would also substitute the phrase "combinations of persons" for the phrase "combinations of individuals," in order to extend the types of foreign associated entities covered by the definition of the term "foreign principal." Under section 1(a) of the act "the term 'person' includes an individual, partnership, association, corporation, organization, or any other combination of individuals."

*Section 1(2)* would amend section 1(c) of the act which contains the definition of the term "agent of a foreign principal." The section as amended would specify four categories of activities any of which would be a vital factor in creating the agency relationship. The extreme breadth of the existing definition appears to have been dictated by the prewar circumstances surrounding enactment of the law.

The proposed amendment would take into account the changed circumstances of the present day by requiring a showing not only of foreign connections but also of certain activities performed by the agent for foreign interests which are either political in nature or which are carried on in peculiarly sensitive areas in which the line between political and nonpolitical action is difficult to define.

Some of these activities are already covered in the existing law while some are not. The proposed amendment repeats the list of various types of relationships included in the definition of "agent of a foreign principal" under existing law, except that it excludes the word "attorney" as saying more about a particular agent's field of endeavor than about his relationship to his principal. The committee has approved an amendment suggested by the Department of Justice which will have the effect of establishing an agency relationship when a person engages in one of the enumerated activities and comes within either of these two categories: (1) is an agent, employee, representative, or servant of the foreign principal, or (2) acts at the order of, or is under the control of, a foreign principal. The definition, as originally drafted, could have created difficult enforcement problems not present under existing law, according to the Department, and the committee agreed that the change was desirable.

The proposed amendment would also make a number of changes in the definition of the term "agent of a foreign principal" as it relates to the problem of indirect control exerted by foreign principals over their agents. It would cover the possibility of more than one inter-

115

mediate link in the chain, providing for cases where the relationship between the foreign principal and his intermediary is itself indirect. In situations where subsidies are used as a means of control over an agent, the proposed amendment would provide that a major portion of the funds of a given undertaking would have to be traceable to the foreign principal in order for the agent of the recipient to be required to register, unless he was exempt. The proposed amendment would make it clear that mere receipt of a bona fide subsidy not subjecting the recipient to the direction or control of the donor does not require the recipient of the subsidy to register as an agent of the donor. However, the amendment would insure, in order to curtail the use of subsidies as a means of avoiding the act's requirements, that where the foreign principal subsidizes a domestic person to the extent that the subsidy involves, as outlined above, direction and control of the activities subsidized, then the domestic person or group as well as any agents employed to carry out the functions subsidized will be treated as acting for the foreign principal.

Another change contemplated by the proposed amendment is the elimination from the definition of the term "agent of a foreign principal," of the separate category for military or governmental officials of foreign countries (sec. 1(c)(4) of existing law). Where such officials engage within the United States in the activities enumerated in the proposed bill, they would still be required to register under the general definition of the term "agent of a foreign principal" contained in the proposed amendments. Where such officials do not engage in such activities but are merely subject to the jurisdiction of the United States, no purpose appears to be served by requiring them to register with the Department of Justice.

Finally, the proposed amendment would continue the provision of existing law that an agency relationship be found to exist where a person has merely agreed to become an agent without entering upon his functions, or where the agent acts other than pursuant to contractual arrangements, or merely holds himself out as an agent of a foreign principal.

It should be noted at this point that neither the present act nor the proposed amendments require a person to register with the Attorney General merely because his efforts for his foreign principal bring him within the meaning of the definition "agent of a foreign principal." A person may be an agent, according to the definition, but exempt from registration under the provisions of section 3 of the act. For example, the activities of a "political consultant" on behalf of his foreign principal could be nonpolitical in nature and he would be exempt from registering. The nature of the activity performed by his principal is the determining factor as to whether an agent must register.

To summarize, the proposed amendment would not change existing law significantly, with respect to the definition of the terms "foreign principal" and "agent of a foreign principal." The proposed amendment would, however, make clear that the Justice Department must establish as a first step in requiring registration that an agency relationship exists. Under existing law it is possible because of the broad scope of the definitions contained in section 1(c) to find an agency relationship (and thus the possibility of registration) of persons who are not, in fact, agents of foreign principals but whose acts may incidentally be of benefit to foreign interests, even though such acts

are part of the normal exercise of those persons' own rights of free speech, petition, or assembly. This may have been desirable under conditions which existed when the Foreign Agents Registration Act was amended in 1942, but does not appear warranted in present circumstances.

*Section 1(4)* would amend section 1(g) of the act to confine the definition of the term "public relations counsel" to public relations activities pertaining to policy matters of concern to a foreign principal. It is the committee's view that under existing law the definition of the term "public relations counsel" is too broad. Other activities relating to such policy matters would be covered under the bill by the proposed definition of the term "political consultant" contained in section 1(5) of the proposed bill.

*Section 1(5)* would amend section 1 of the act by adding two new subsections; the first defining the term "political activities" and the second defining the term "political consultant" as those terms are used in the proposed amendments. Under the bill, persons engaging in political activities as agents of foreign principals would be required to register with the Department of Justice.

The definition of "political activities" in the bill as reported has been revised to make it more precise as an expression of the committee's intent concerning the types of activities which will require an agent of a foreign principal to register. The basic point of reference in determining whether an agent's efforts for his principal fall within the intent and meaning of the definition is the end objective of his activities. If the agent disseminates political propaganda or engages in any activity with the objective of influencing a Government agency or official, or any portion of the public with reference to—

(1) formulating, adopting or changing the foreign or domestic policies of our Government, or

(2) the political or public interests, policies or relations of a foreign government or a foreign political party,

the agent is engaged in political activities and must register with the Department of Justice.

Both "political propaganda" and "dissemination" as used in the definition of political activities are already defined in section 1(j) of the act. The committee intends and understands that the word "agency," as it relates to divisions of the Government, refers to every unit in the legislative and executive branches of the Government, including congressional committees, and that the word "official" includes Members and officers of both Houses of Congress as well as officials in the executive branch. The term "formulating, adopting, or changing" is intended to include maintenance of the status quo as well as initiation of changes in existing policy.

The committee recognizes that the word "policies" as it is applied to operation of and contacts with the multilevel governmental decisionmaking process is susceptible to a number of interpretations. The committee's use of the word is intended to refer to matters within the purview of the legislative and executive branches of Government and not the judiciary, since the courts do not make "policy" as the term is used here but only interpret and apply existing policy as embodied in laws and regulations. "Policies" as used in this definition relates to existing and proposed legislation, or legislative action generally; treaties; executive agreements, proclamations, and orders; decisions relating to or affecting departmental policy, and the

like. Measures of this nature all require decisionmaking at a level of government above those levels charged with the day-to-day administration of existing policies, consequently the use of the word "policies" would not include routine contacts by an agent of a foreign principal with a Government employee or official for the purpose of inquiring about current policies, or to seek administrative action on a matter where the basic policy is not in question.

The definition of the term "political consultant" would apply to persons engaged in advising their foreign principals with respect to political matters. However, a "political consultant" would not be required to register as an agent unless he engaged in political activities, as defined, for his foreign principal. A lawyer who advised his foreign client concerning the construction or application of an existing statute or regulation would be a "political consultant" under the definition, but unless the purpose of the advice was to effect a change in U.S. policy he would not be engaged in "political activities" and would be exempt from registering with the Department of Justice.

The phrase "political or public interests, policies, or relations," relating to activities on behalf of a foreign government or foreign political party, has been carried over from existing law. It is the committee's understanding that the phrase refers to matters which on the domestic governmental level would be called a policy matter, in the international context may be called questions concerning a country's foreign relations, and in the context of party politics may be termed matters involving the national interest. All of these facets of national policy, whether called policy matters, foreign relations, or matters of national interest, are to be distinguished from questions calling for decision at the level of government or of a political organization charged with the administration of existing laws, regulations, and other policies.

*Registration*

*Section 2(1)* would amend section 2(a) of the act by removing to section 6 of the act material relating to the transmittal of registration statements by the Attorney General to the Secretary of State; and by clarifying certain ambiguities in the present act as to the time when the obligation to file registration statements commences and terminates.

*Section 2(2)* would amend section 2(a)(3) of the act by requiring that agents reveal in their registration statements not only the extent to which their principal is controlled by a foreign government or foreign political party, as under existing law, but also whether their principal is controlled by another foreign principal and the identity of the ultimately controlling principal. Where the agent is unable to obtain this information from his principal, it is the committee's intent that the agent not be permitted to operate for an undisclosed principal.

*Sections 2(3) and 2(4)* would amend sections 2(a)(4) and 2(a)(6), respectively, by requiring that a separate, detailed statement be made by the agent as to political activities carried on by him. The detail would include, among other things, a statement of the foreign relations, interests, or policies to be influenced by the agent and a statement of the means to be employed in advancing this influence. Exist-

ing law does not clearly require a separate statement by an agent of those of his activities which are political in nature.

*Section 2(5)* would amend section 2(a)(7) to require certain information with respect to those persons, not themselves foreign principals, who are so related to a foreign principal that their agents when engaged in political activities in the interests of the principal are required to register under the act.  For example, where a person is indirectly employed by a foreign principal this section would require him to disclose the nature of his relations with the intermediate employer.

The information required is basically the same as that required with respect to the identity, control, and financial arrangements entered into by a foreign principal who has employed an agent without the use of an intermediate employer.

*Section 2(6)* would amend section 2(a)(8) of the act, first, by requiring that the agent report the money or other things of value exchanged or disposed of in connection with his becoming the agent of his foreign principal as, for example, in the form of "kickbacks." Second, the amendment would require agents to report all political contributions made during a period from 60 days prior to their becoming an agent until the termination of their agency, other than contributions made on behalf of their principals; such contributions would be prohibited under section 8 of the bill.

During the course of the committee's investigation, the committee became aware of a practice among some agents of giving away valuable films, photographs, articles, exclusive interviews, etc., to the mass media and distributors for the purpose of inducing the recipient to distribute them further.  This problem has not been dealt with by amendment to the act because it is the committee's belief that under existing law the disposition of such "things of value * * * disposed of by the registrant" must be reported in detail.  The phrase "a detailed statement," as used in this subsection (as well as in a number of others in sec. 2) is intended by the committee to require that degree of specificity necessary to permit meaningful public evaluation of each of the significant steps taken to achieve the purposes of the agency. Where, for example, free trips are given to or arranged for newsmen or others by an agent interested in securing favorable news reports or impressions concerning his foreign principal, a detailed statement would require mention of the names of such travelers, along with the value, time, and object of the trip, so that readers, listeners, or film viewers would have available a source of information which could equip them to judge for themselves the objectivity of any resulting reports.  But the committee again emphasizes that the basic responsibility for policing and preventing corruption of the mass media rests with media executives.

*Section 2(7)* would amend section 2 by adding a new subsection codifying what in some respects is existing practice in the administration of the act.

The Attorney General would be given specific authority to exempt (1) agents of foreign principals from being required to provide unnecessary information, and (2) wholly or partially from the registration requirements the partners, officers, or employees of a registered agent. The Attorney General will not have the authority to exempt a foreign agent from registering.

This provision is included to insure that agents and subagents are not required to provide information which serves no useful purpose in their particular case, which will keep the burden of registration at a minimum, consistent with carrying out the basic purposes of the act. It will also relieve the Department of what could be a heavy and unnecessary administrative burden from processing statements of subagents and studying detailed information from statements of agents when the material does not serve a useful public purpose.

*Exemptions*

*Section 3* would amend section 3(d) of the act to exempt from registration foreign agents engaging in private and nonpolitical activities with a bona fide commercial purpose, or in political activities when the activities do not serve predominantly a foreign interest. This subsection has been redrafted from the bill as introduced to make it more readable. No changes of substance were made by the committee.

The existing provision, as modified by Congress in 1961, is too narrow to encompass all legitimate commercial activities of agents for their foreign principals.

The Department of Justice has interpreted the phrase "trade or commerce" as including services and the committee approves of that interpretation of the Congress intent. The committee intends that the exemption as modified by this bill cover the normal professional activities of attorneys, engineers, architects, and other professional people with foreign clients, including foreign governments, so long as those activities do not constitute "political activities" as the term is used in the bill. A specific exemption for attorneys for representation of foreign clients in the courts and before administrative agencies is contained in a subsequent provision, but the day-to-day, routine activities of attorneys in advising and counseling with foreign clients will continue to be exempt under this section. When advice is given or assistance is rendered with the intent to influence Government policy, the agent is engaged in a political activity and the exemption will not apply.

The committee has considered the desirability of eliminating the word "private" from the exemption. Language used by the Supreme Court last year in the decision of *Rabinowitz* v. *Kennedy* caused some uncertainty as to whether a foreign government could ever act in a private capacity within the meaning of the commercial exemption. The Department of Justice, as it was brought out in the hearings, recognizes that a foreign government can act in a private capacity for purposes of this act. The committee agrees with that view and has decided against eliminating the word because of possible difficulties that it might create in enforcing the act in situations where a commercial activity of a foreign agent promotes the political and public interests of the foreign governmental principal. Foreign governments engage in private activities of a commercial nature which may, or may not, involve political or policy matters, such as in the case of whole or partial ownership of shipping lines, airlines, and the like. In some cases where the interests of a foreign government are so closely related to a commercial enterprise or to one or two products, such as coffee or sugar, that there is obviously some direction or control from the foreign government, the agent's activities would of necessity promote the political and public interests of the foreign country. The com-

mercial agents in this country for governments with state trading companies will also present administrative problems. Obviously, all commercial arrangements with state-owned enterprises will not come within the purview of the act and there will no doubt be an increase in agency relationships which qualify for the the exemption in the event trade between the United States and Eastern Europe expands. Applicability of the exemption will have to be judged on the facts of each case, including the terms of the agency contract and the significance of the trade to the foreign country. It is expected that the Department of Justice will, by regulation, establish criteria to provide guidance to agents involved in commercial activities which are of direct or indirect interest to a foreign government.

The committee has retained the amendment adopted by the Senate to S. 2136, the predecessor of this bill. This amendment stemmed from the concern expressed by some U.S. corporations with foreign subsidiaries and foreign corporations with U.S. subsidiaries that their normal activities involving contacts with Government agencies and officials relating to matters affecting their foreign subsidiaries or parent, as the case might be, would require registration as foreign agents. The chairman of the committee, Senator Fulbright, in discussing the bill in the Senate on July 6 of last year, made clear the committee's intent that the act's coverage of normal commercial activities of the international corporations would not be extended by any of the proposed changes and that the commercial exemption was actually being broadened. Examples of specific activities in which the interests of the parent and the subsidiary would be mingled were covered in the floor debate and this discussion reaffirmed the committee's view of the bill's scope.

However, to further assure that the act would be administered in keeping with this intent, an amendment was accepted which specifically provided for exemption of political activities where the predominant interest to be served is not foreign.

Neither the existing act or this bill is intended to hamper the normal, above-board representation of legitimate U.S. commercial interests before our Government agencies and officials. On the other hand, political activities intended to influence U.S. policies, primarily on behalf of a foreign interest, should be subject to public scrutiny and the exemption does not apply.

It is, of course, recognized that questions of interpretation unavoidably will arise under this and other provisions of the bill. In situations involving complex corporate structures, varying degrees of foreign government involvement in commercial matters, and the sometimes narrow line between private and public interests, it may prove difficult to decide whether the act, or the registration provisions, apply in a given situation. Clearly this is not an area where the law can establish strict criteria. The Department of Justice has stated that it is prepared to advise on hypothetical situations in order to help to resolve uncertainties under this and other provisions of the act.

*Section 3(g)* would exempt from registration attorneys of record representing foreign clients, including foreign governments, in appearances before Federal and State courts and administrative agencies. The amendment is meant to include all normal and necessary activities by attorneys involved in processing a case in the courts or obtaining a decision by an administrative agency where there is a formal procedure requiring full disclosure of the agent's status and the

identity of his client. It is the committee's view that the degree of disclosure required by the act serves no useful purpose in these legal proceedings. Sufficient disclosure is required automatically by virtue of the nature of the agent's representation activities in such situations.

This exemption is not intended to be applicable to appearances before Government agencies generally but only to appearances before agencies where decisions are made on the basis of established formal legal proceedings, such as the Federal Trade Commission, or where disclosure is required as a matter of course in the representation, such as the processing of a registration statement with the Securities and Exchange Commission. It is not intended to cover matters coming before the regular departments involving a policy decision as, for example, in the case of sugar import quotas in the Department of Agriculture.

Last year the Supreme Court in the *Rabinowitz* decision seemed to take the position that attorneys representing foreign governments in legal matters, including litigation, could not be exempt under the commercial exemption section of the act. The addition of this section and the specification of the committee's intent as to the scope of section 3(d) should resolve the doubts caused by that decision.

The phrase "are confined to" is meant to preclude an attorney with a foreign client from using the case or proceeding as a vehicle for generating propaganda for his principal. If the attorney's activities outside the courtroom or hearing room go beyond the bounds of normal representation of his client's case and amount to efforts to influence public opinion, his activities become political activities and the exemption does not apply.

Normal legal services, including contacts with other Government agencies, but not involving "political activities," by an attorney for a foreign client will continue to be exempt under section 3(d).

*Labeling of propaganda*

*Section 4(1)* would amend section 4(a) of the act, first, to require the filing of political propaganda disseminated by the agent only when the propaganda is for or in the interests of the agent's foreign principal. As presently written, the act requires both the filing and labeling of all propaganda disseminated by a person who is an agent of a foreign principal whether or not the propaganda is for or in the interests of the foreign principal. Second, the amendment would eliminate the need for filing the propaganda with both the Department of Justice and the Librarian of Congress. The requirement to file propaganda with the Department of Justice would be continued.

*Section 4(2)* would amend section 4(b) of the act, first, to require the labeling of political propaganda only when the propaganda is for or in the interests of the foreign principal. Second, the proposed amendment would require the agent to indicate on the label used with the propaganda the connection or relationship between himself and the propaganda.

*Section 4(3)* would amend section 4(c) of the act by providing that arrangements for public inspection of propaganda filed by agents be placed in the hands of the Department of Justice thereby making it possible for the Department to arrange for public inspection of both the registration statements and propaganda of agents at the same time and place. Under existing law, the Librarian of Congress has

14    FOREIGN AGENTS REGISTRATION ACT AMENDMENTS

the responsibility for making available for public inspection propaganda filed by foreign agents.

*Section 4(4)* would amend section 4 by adding two new subsections requiring registered agents to disclose their identity in dealings with officials and agencies of the Government.

The first new subsection would require disclosure of the capacity of an agent and the identity of his principal in any case in which the agent either transmits political propaganda to, or requests information on a policy matter from, any agency or official of the Government. The new subsection would not make it a prerequisite of such disclosure that the request or propaganda be carried by the mails or in interstate commerce as required for the labeling of propaganda under section 4(b) of the act.

The second new subsection would require an agent to furnish a copy of his most recently filed registration statement or supplement thereto together with amendments to any congressional committee before which the agent appears, whether or not pursuant to the request of the committee, for the purpose of giving testimony for or in the interests of his foreign principal. The statement would then be required to be made a part of the agent's testimony as a witness before the committee.

*Accounting methods*

*Section 5* would amend section 5 of the act by conferring on the Attorney General authority to prescribe by regulations accounting and other business practices for agents of foreign principals which will facilitate these agents' compliance with the requirements of detailed and comprehensive disclosure required by section 2 of the act. The adoption of cost accounting principles or other accounting principles, for example, might well facilitate compliance with the requirements of a detailed statement of disbursements.

*Use of statements and propaganda filed*

*Section 6* would amend section 6 of the act by adding two new subsections relating to the dissemination by the Attorney General of statements and propaganda filed with him by agents of foreign principals.

The first new subsection would require the Attorney General to transmit to the Secretary of State not only the initial registration statement, as under existing law, but, in addition, supplemental and amendatory statements and propaganda filed with him by agents. The Secretary of State would be authorized to comment on these statements and to make such use of them and the related material as seems appropriate from the standpoint of the Nation's foreign relations. This, for example, would enable the Secretary of State to make American embassies and other missions more fully informed of the activities of agents of foreign principals.

The second new subsection would authorize the Attorney General to forward copies of statements and propaganda received by him to other branches, agencies, and officials of the Government, as appropriate. It would, for example, be appropriate in light of the purposes of the act for such statements and propaganda to be forwarded to specific agencies named in the statements as the object of the agent's political activities or to congressional committees concerned with

legislation which, according to the material filed by the agent, is the
subject of his interest.

*Penalties*

Section 7(1) would amend section 8(1) of the act by making failures
by an agent to disclose his identity in the course of his political
activities as required by the act a misdemeanor instead of a felony as
under existing law.   It would also be only a misdemeanor for a person
to continue to act as an agent 10 days after notification by the
Attorney General that his registration statement was deficient.   The
lesser punishment would also apply when an agent was a party to a
contract with his foreign principal when the fee was contingent on
success of the agent's political activities.   Willful violation of the
remaining provisions of the act and the implementing regulations
would continue to constitute a felony as under existing law.

*Injunctive remedy*

Section 7(2) would amend section 8 of the act by adding three new
subsections.

The first new subsection would provide the Department of Justice
with an injunctive remedy as a means of securing enforcement of the
act in addition to the present criminal sanctions.

The second new subsection would make it a misdemeanor to act as
an agent 10 days after having been notified by the Attorney General
that a registration statement (as that term is defined in the act) is
deficient unless an amendatory statement is filed correcting the
deficiency.

The third new subsection would make it unlawful for an agent to
be a party to any contingent free arrangement with respect to political
activities of the agent for or in the interests of his principal.

*Political contributions*

Section 8(a) would amend chapter 29 of United States Code, title 18,
by adding a new section relating to political contributions by agents
of foreign principals.

The new section would prohibit such agents from making or promis-
ing to make in their capacity as agents contributions in connection
with any election to any political office or in connection with any
primary election, convention, or caucus to select candidates.

It would likewise prohibit the solicitation, acceptance, or receipt
of such contributions and would make both offenses felonies.

The new section would specifically define the term "foreign prin-
cipal" to have the same meaning as that given in the Foreign Agents
Registration Act of 1938, as amended, except that it would not include
U.S. citizens domiciled abroad.

The term "agent of a foreign principal" as used in this section would
include any person acting under the direction or control of a foreign
principal, or as an agent, representative, employee, servant, or at the
order or request of a foreign principal whether or not engaged in the
activities specified in the Foreign Agents Registration Act of 1938,
as amended, as prerequisite to registration under that act.

*Conflict of interest*

Section 8(b) would amend chapter 11 of the United States Code,
title 18, by adding a new section relating to conflicts of interest in-
volving foreign agents.

The new section would make it a felony for any agent of a foreign principal required to register under the Foreign Agents Registration Act of 1938 to act as an officer or employee of the U.S. Government or any agency thereof.

The section would except from its prohibition any agent whose employment was certified as required in the national interest by the head of the employing agency. Any such certificate would be made a part of the public records relating to the agent on file with the Department of Justice.

*Effective date*

*Section 9* would provide that the effective date of the proposed amendments would follow by 90 days the enactment of the proposed bill.

## VI. CHANGES IN EXISTING LAW

In compliance with subsection 4 of rule XXIX of the Standing Rules of the Senate, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italic, existing law in which no change is proposed is shown in roman):

### The Foreign Agents Registration Act of 1938, as amended

AN ACT To require the registration of certain persons employed by agencies to disseminate propaganda in the United States and for other purposes

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That it is hereby declared to be the policy and purpose of this Act to protect the national defense, internal security, and foreign relations of the United States by requiring public disclosure by persons engaging in propaganda activities and other activities for or on behalf of foreign governments, foreign political parties, and other foreign principals so that the government and the people of the United States may be informed of the identity of such persons and may appraise their statements and actions in the light of their associations and activities.

### DEFINITIONS

SEC. 1. As used in and for the purposes of this Act—

(a) The term "person" includes an individual, partnership, association, corporation, organization, or any other combination of individuals;

[(b) The term "foreign principal" includes—

[(1) a government of a foreign country and a foreign political party;

[(2) an individual affiliated or associated with, or supervised, directed, controlled, financed, or subsidized, in whole or in part, by any foreign principal defined in clause (1) of this subsection;

[(3) a person outside of the United States, unless it is established that such person is an individual and a citizen of and domiciled within the United States or that such person is not an individual is organized under or created by the laws of the United States or of any State or other place subject to the jurisdiction of the United States, and has its principal place of busi-

ness within the United States.   Nothing in this clause shall limit
the operation of clause (5) of this subsection;

〔(4) a partnership, association, corporation, organization, or
other combination of individuals organized under the laws of,
or having its principal place of business in, a foreign country;

〔(5) a domestic partnership, association, corporation, organiza-
tion, or other combination of individuals, subsidized directly or
indirectly, in whole or in part, by any foreign principal defined
in clause (1), (3), or (4) of this subsection;

〔(6) a domestic partnership, association, corporation, organiza-
tion, or other combination of individuals, supervised, directed,
controlled, or financed, in whole or in substantial part, by any
foreign government or foreign political party;.〕

(b) *The term "foreign principal" includes—*

(1) *a government of a foreign country and a foreign political party;*

(2) *a person outside of the United States, unless it is established
that such person is an individual and a citizen of and domiciled
within the United States, or that such person is not an individual and
is organized under or created by the laws of the United States or of
any State or other place subject to the jurisdiction of the United
States and has its principal place of business within the United
States; and*

(3) *a partnership, association, corporation, organization, or other
combination of persons organized under the laws of or having its
principal place of business in a foreign country.*

〔(c) Except as provided in section (d) hereof, the term "agent of
a foreign principal" includes—

〔(1) any person who acts or agrees to act, within the United
States, as, or who is or holds himself out to be whether or not
pursuant to contractual relationship, a public-relations counsel,
publicity agent, information-service employee, servant, agent,
representative, or attorney for a foreign principal;

〔(2) any person who within the United States collects infor-
mation for or reports information to a foreign principal; who
with the United States solicits or accepts compensation, con-
tributions, or loans, directly or indirectly, from a foreign principal;
who within the United States solicits, disburses, dispenses, or
collects compensation, contributions, loans, money, or anything of
value, directly or indirectly, for a foreign principal; who within
the United States acts at the order, request, or under the direction
of a foreign principal;

〔(3) any person who assumes or purports to act within the
United States as an agent of a foreign principal in any of the
respects set forth in clauses (1) and (2) of this subsection;

〔(4) any person who is an officer or member of the active or
reserve military, naval, or other armed forces of any foreign
principal defined in clause (1) of subsection (b) of this section,
or who is an officer of or employed by any such foreign principal;
and proof of any affiliation or employment, specified in this
clause, of any person within a period of five years previous to
the effective date of this Act shall create a rebuttal presumption
that such person is an agent of a foreign principal.〕

18    FOREIGN AGENTS REGISTRATION ACT AMENDMENTS

*(c) Except as provided in subsection (d) hereof, the term "agent of a foreign principal" means—*

*(1) any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal, and who directly or through any other person—*

*(i) engages within the United States in political activities for or in the interests of such foreign principal;*

*(ii) acts within the United States as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal;*

*(iii) within the United States solicits, collects, disburses, or dispenses contributions, loans, money, or other things of value for or in the interest of such foreign principal; or*

*(iv) within the United States represents the interests of such foreign principal before any agency or official of the Government of the United States; and*

*(2) any person who agrees, consents, assumes or purports to act as, or who is or holds himself out to be, whether or not pursuant to contractual relationship, an agent of a foreign principal as defined in clause (1) of this subsection.*

(d) The term "agent of a foreign principal" does not include any news or press service or association organized under the laws of the United States or of any State or other place subject to the jurisdiction of the United States, or any newspaper, magazine, periodical, or other publication for which there is on file with the Postmaster General a sworn statement in compliance with section 2 of the Act of August 24, 1912 (37 Stat. 553) as amended published in the United States, solely by virtue of any bona fide news or journalistic activity, including the solicitation or acceptance of advertisements, subscriptions, or other compensation therefor, so long as it is at least 80 per centum beneficially owned by, and its officers and directors, if any, are citizens of the United States, and such news or press service or association, newspaper, magazine, periodical, or other publication, is not owned, directed, supervised, controlled, subsidized, or financed, and none of its policies are determined by any foreign principal defined in [clause (1), (2), or (4) of] section 1(b) hereof, or by any agent of a foreign principal required to register under this Act;

(e) The term "government of a foreign country" includes any person or groups of persons exercising sovereign de facto or de jure political jurisdiction over any country, other than, the United States, or over any part of such country, and includes any subdivision of any such group and any group or agency to which such sovereign de facto or de jure authority or functions are directly or indirectly delegated. Such term shall include any faction or body of insurgents within a country assuming to exercise governmental authority whether such faction or body of insurgents has or has not been recognized by the United States;

(f) The term "foreign political party" includes any organization or any other combination of individuals in a country other than the United States, or any unit or branch thereof, having for an aim or purpose, or which is engaged in any activity devoted in whole or in part to, the establishment, administration, control, or acquisition of

administration or control, of a government of a foreign country or a subdivision thereof, or the furtherance or influencing of the political or public interests, policies, or relations of a government of a foreign country or a subdivision thereof;

(g) The term "public-relations counsel" includes any person who engages directly or indirectly in informing, advising, or in any way representing a principal in any *public relations* matter pertaining to political or public interests, policies, or relations *of such principal*;

(h) The term "publicity agent" includes any person who engages directly or indirectly in the publication or dissemination of oral, visual, graphic, written, or pictorial information or matter of any kind, including publications by means of advertising, books, periodicals, newspapers, lectures, broadcasts, motion pictures, or otherwise;

(i) The term "information-service employee" includes any person who is engaged in furnishing, disseminating, or publishing accounts, descriptions, information, or data with respect to the political, industrial, employment, economic, social, cultural, or other benefits, advantages, facts, or conditions of any country other than the United States or of any government of a foreign country or of a foreign political party or of a partnership, association, corporation, organization, or other combination of individuals organized under the laws of, or having its principal place of business in, a foreign country;

(j) The term "political propaganda" includes any oral, visual, graphic, written, pictorial, or other communication or expression by any person (1) which is reasonably adapted to, or which the person disseminating the same believes will, or which he intends to, prevail upon, indoctrinate, convert, induce, or in any other way influence a recipient or any section of the public within the United States with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party or with reference to the foreign policies of the United States or promote in the United States racial, religious, or social dissensions, or (2) which advocates, advises, instigates, or promotes any racial, social, political, or religious disorder, civil riot, or other conflict involving the use of force or violence in any other American republic or the overthrow of any government or political subdivision of any other American republic by any means involving the use of force or violence. As used in this subsection the term "disseminating" includes transmitting or causing to be transmitted in the United States mails or by any means or instrumentality of interstate or foreign commerce or offering or causing to be offered in the United States mails;

(k) The term "registration statement" means the registration statement required to be filed with the Attorney General under section 2(a) hereof, and any supplements thereto required to be filed under section 2(b) hereof, and includes all documents and papers required to be filed therewith or amendatory thereof or supplemental thereto, whether attached thereto or incorporated therein by reference;

(l) The term "American republic" includes any of the states which were signatory to the Final Act of the Second Meeting of the Ministers of Foreign Affairs of the American Republics at Habana, Cuba, July 30, 1940;

(m) The term "United States", when used in a geographical sense, includes the several States, the District of Columbia, the Territories, the Canal Zone, the insular possessions, and all other places now or

hereafter subject to the civil or military jurisdiction of the United States;

(n) The term "prints" means newspapers and periodicals, books, pamphlets, sheet music, visiting cards, address cards, printing proofs, engravings, photographs, pictures, drawings, plans, maps, patterns to be cut out, catalogs, prospectuses, advertisements, and printed, engraved, lithographed, or autographed notices of various kinds, and, in general, all impressions or reproductions obtained on paper or other material assimilable to paper, on parchment or on cardboard, by means of printing, engraving, lithography, autography, or any other easily recognizable mechanical process, with the exception of the copying press, stamps with movable or immovable type, and the typewriter;

*(o) The term "political activities" means the dissemination of political propaganda and any other activity which the person engaging therein believes will, or which he intends to, prevail upon, indoctrinate, convert, induce, persuade, or in any other way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party;*

*(p) The term "political consultant" means any person who engages in informing or advising any other person with reference to the domestic or foreign policies of the United States or the political or public interests, policies, or relations of a foreign country or of a foreign political party.*

## REGISTRATION STATEMENT; FILING; CONTENTS

SEC. 2. (a) No person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement and supplements thereto as required by sections 2(a) and 2(b) hereof or unless he is exempt from registration under the provisions of this Act. 〖Except as hereinafter provided, every person who is an agent of a foreign principal on the effective date of this Act shall, within ten days thereafter and every person who becomes an agent of a foreign principal after the effective date of this subchapter shall, within ten days thereafter, file with the Attorney General, in duplicate, a registration statement, under oath, on a form prescribed by the Attorney General, of which one copy shall be transmitted promptly by the Attorney General to the Secretary of State for such comment, if any, as the Secretary of State may desire to make from the point of view of the foreign relations of the United States. Failure of the Attorney General so to transmit such copy shall not be a bar to prosecution under this subchapter. The obligation of an agent of a foreign principal to file a registration statement shall, after the tenth day of his becoming or acting as such agent, continue from day to day, and discontinuance of such activity shall not relieve such agent from his obligation to file a registration statement for the period during which he acted within the United States as an agent of a foreign principal.〗 *Except as hereinafter provided, every person who becomes an agent of a foreign principal shall, within ten days thereafter, file with the Attorney General, in duplicate, a registration statement, under oath on a form prescribed by the Attorney General. The obligation of an agent of a foreign principal to file a registration statement shall,*

*after the tenth day of his becoming such agent, continue from day to day, and termination of such status shall not relieve such agent from his obligation to file a registration statement for the period during which he was an agent of a foreign principal.* The registration statement shall include the following, which shall be regarded as material for the purposes of this Act:

(1) Registrant's name, principal business address, and all other business addresses in the United States or elsewhere, and all residence addresses, if any;

(2) Status of the registrant; if an individual, nationality; if a partnership, name, residence addresses, and nationality of each partner and a true and complete copy of its articles of copartnership; if an association, corporation, organization, or any other combination of individuals, the name, residence addresses, and nationality of each director and officer and each person performing the functions of a director or officer and a true and complete copy of its charter, articles of incorporation, association, constitution, and bylaws, and amendments thereto; a copy of every other instrument or document and a statement of the terms and conditions of every oral agreement relating to its organization, powers, and purposes; and a statement of its ownership and control;

(3) A comprehensive statement of the nature of registrant's business; a complete list of registrant's employees and a statement of the nature of the work of each [, unless, and to the extent, this requirement is waived in writing by the Attorney General]; the name and address of every foreign principal for whom the registrant is acting, assuming or purporting to act or has agreed to act; the character of the business or other activities of every such foreign principal, and, if any such foreign principal be other than a natural person, a statement of the ownership and control of each; and the extent, if any, to which each such foreign principal is supervised, directed, owned, controlled, financed, or subsidized, in whole or in part, by any government of a foreign country or foreign political party[;], *or by any other foreign principal;*

(4) Copies of each written agreement and the terms and conditions of each oral agreement, including all modifications of such agreements, or, where no contract exists, a full statement of all the circumstances, by reason of which the registrant is an agent of a foreign principal; a comprehensive statement of the nature and method of performance of each such contract, and of the existing and proposed activity or activities engaged in or to be engaged in by the registrant as agent of a foreign principal for each such foreign principal[;], *including a detailed statement of any such activity which is a political activity;*

(5) The nature and amount of contributions, income, money, or thing of value, if any, that the registrant has received within the preceding sixty days from each such foreign principal, either as compensation or for disbursement or otherwise, and the form and time of each such payment and from whom received;

(6) A detailed statement of every activity which the registrant is performing or is assuming or purporting or has agreed to perform for himself or any other person other than a foreign principal and which requires his registration hereunder[;], *including a detailed statement of any such activity which is a political activity;*

〔(7) The name, business, and residence addresses, and, if an individual, the nationality, of any person who has within the preceding sixty days contributed or paid money or anything of value to the registrant in connection with any of the activities referred to in clause (6) of this subsection and the amount or value of the same;〕

(7) *The name, business, and residence addresses, and if an individual, the nationality, of any person other than a foreign principal for whom the registrant is acting, assuming or purporting to act or has agreed to act under such circumstances as require his registration hereunder; the extent to which each such person is supervised, directed, owned, controlled, financed, or subsidized, in whole or in part, by any government of a foreign country or foreign political party or by any other foreign principal; and the nature and amount of contributions, income, money, or thing of value, if any, that the registrant has received during the preceding sixty days from each such person in connection with any of the activities referred to in clause (6) of this subsection, either as compensation or for disbursement or otherwise, and the form and time of each such payment and from whom received;*

〔(8) A detailed statement of the money and other things of value spent or disposed of by the registrant during the preceding sixty days in furtherance of or in any way in connection with activities which require his registration hereunder and which have been undertaken by him either as an agent of a foreign principal or for himself or any other person;〕

(8) *A detailed statement of the money and other things of value spent or disposed of by the registrant during the preceding sixty days in furtherance of or in connection with activities which require his registration hereunder and which have been undertaken by him either as an agent of a foreign principal or for himself or any other person or in connection with any activities relating to his becoming an agent of such principal, and a detailed statement of any contributions of money or other things of value made by him during the preceding sixty days (other than contributions the making of which is prohibited under the terms of section 613 of title 18, United States Code) in connection with an election to any political office or in connection with any primary election, convention, or caucus held to select candidates for any political office;*

(9) Copies of each written agreement and the terms and conditions of each oral agreement, including all modifications of such agreements, or where no contract exists, a full statement of all the circumstances, by reason of which the registrant is performing or assuming or purporting or has agreed to perform for himself or for a foreign principal or for any person other than a foreign principal any activities which require his registration hereunder;

(10) Such other statements, information, or documents pertinent to the purposes of this subchapter as the Attorney General, having due regard for the national security and the public interest, may from time to time require;

(11) Such further statements and such further copies of documents as are necessary to make the statements made in the registration statement and supplements thereto, and the copies of documents furnished therewith, not misleading.

(b) Every agent of a foreign principal who has filed a registration statement required by subsection (a) of this section shall, within thirty days after the expiration of each period of six months succeeding

such filing, file with the Attorney General a supplement thereto under oath, on a form prescribed by the Attorney General, which shall set forth with respect to such preceding six months' period such facts as the Attorney General, having due regard for the national security and the public interest, may deem necessary to make the information required under this section accurate, complete, and current with respect to such period. In connection with the information furnished under clauses (3), (4), (6), and (9) of subsection (a) of this section, the registrant shall give notice to the Attorney General of any changes therein within ten days after such changes occur. If the Attorney General, having due regard for the national security and the public interest, determines that it is necessary to carry out the purposes of this subchapter, he may, in any particular case, require supplements to the registration statement to be filed at more frequent intervals in respect to all or particular items of information to be furnished.

(c) The registration statement and supplements thereto shall be executed under oath as follows: If the registrant is an individual, by him; if the registrant is a partnership, by the majority of the members thereof; if the registrant is a person other than an individual or a partnership, by a majority of the officers thereof or persons performing the functions of officers or by a majority of the board of directors thereof or persons performing the functions of directors, if any.

(d) The fact that a registration statement or supplement thereto has been filed shall not necessarily be deemed a full compliance with this subchapter and the regulations thereunder on the part of the registrant; nor shall it indicate that the Attorney General has in any way passed upon the merits of such registration statement or supplement thereto; nor shall it preclude prosecution, as provided for in this subchapter, for willful failure to file a registration statement or supplement thereto when due or for a willful false statement of a material fact therein or the willful omission of a material fact required to be stated therein or the willful omission of a material fact or copy of a material document necessary to make the statements made in a registration statement and supplements thereto, and the copies of documents furnished therewith, not misleading.

(e) If any agent of a foreign principal, required to register under the provisions of this Act, had previously thereto registered with the Attorney General under the provisions of the Act of October 17, 1940 (54 Stat. 1201), the Attorney General in order to eliminate inappropriate duplication, may permit the incorporation by reference in the registration statement or supplements thereto filed hereunder of any information or documents previously filed by such agent of a foreign principal under the provisions of the Act of October 17, 1940 (54 Stat. 1201).

(f) *The Attorney General may, by regulation, provide for the exemption—*

*(1) from registration, or from the requirement of furnishing any of the information required by this section, of any person who is listed as a partner, officer, director, or employee in the registration statement filed by an agent of a foreign principal under this Act, and*

*(2) from the requirement of furnishing any of the information required by this section of any agent of a foreign principal,*

*where by reason of the nature of the functions or activities of such person the Attorney General, having due regard for the national security and the public interest, determines that such registration, or the furnishing of such*

*information, as the case may be, is not necessary to carry out the purposes of this Act.*

### EXEMPTIONS

SEC. 3. The requirements of section 2(a) hereof shall not apply to the following agents of foreign principals:

(a) A duly accredited diplomatic or consular officer of a foreign government who is so recognized by the Department of State, while said officer is engaged exclusively in activities which are recognized by the Department of State as being within the scope of the functions of such officer;

(b) Any official of a foreign government, if such government is recognized by the United States, who is not a public-relations counsel, publicity agent, information-service employee, or a citizen of the United States, whose name and status and the character of whose duties as such official are of public record in the Department of State, while said official is engaged exclusively in activities which are recognized by the Department of State as being within the scope of the functions of such official;

(c) Any member of the staff of, or any person employed by, a duly accredited diplomatic or consular officer of a foreign government who is so recognized by the Department of State, other than a public-relations counsel, publicity agent, or information-service employee, whose name and status and the character of whose duties as such member or employee are of public record in the Department of State, while said member or employee is engaged exclusively in the performance of activities which are recognized by the Department of State as being within the scope of the functions of such member or employee;

〔(d) Any person engaging or agreeing to engage only in private and nonpolitical financial or mercantile activities in furtherance of the bona fide trade or commerce of such foreign principal or in the soliciting or collecting of funds and contributions within the United States to be used only for medical aid and assistance, or for food and clothing to relieve human suffering, if such solicitation or collection of funds and contributions is in accordance with the subject to the provisions of the Act of November 4, 1939, as amended (54 Stat. 48), and such rules and regulations as may be prescribed thereunder;〕

*(d) Any person engaging or agreeing to engage only (1) in private and nonpolitical activities in furtherance of the bona fide trade or commerce of such foreign principal; or (2) in other activities not serving predominantly a foreign interest; or (3) in the soliciting or collecting of funds and contributions within the United States to be used only for medical aid and assistance, or for food and clothing to relieve human suffering, if such solicitation or collection of funds and contributions is in accordance with and subject to the provisions of the Act of November 4, 1939, as amended (54 Stat. 4), and such rules and regulations as may be prescribed thereunder;*

(e) Any person engaging or agreeing to engage only in activities in furtherance of bona fide, religious, scholastic, academic, or scientific pursuits or of the fine arts;

(f) Any person, or employee of such person, whose foreign principal is a government of a foreign country the defense of which the President deems vital to the defense of the United States while, (1) such person or employee engages only in activities which are in furtherance of the policies, public interest, or national defense both of such govern-

ment and of the Government of the United States, and are not intended
to conflict with any of the domestic or foreign policies of the Govern-
ment of the United States, (2) each communication or expression by
such person or employee which he intends to, or has reason to believe
will, be published, disseminated, or circulated among any section of
the public or portion thereof, within the United States, is a part of
such activities and is believed by such person to be truthful and
accurate and the identity of such person as an agent of such foreign
principal is disclosed therein, and (3) such government of a foreign
country furnishes to the Secretary of State for transmittal to, and
retention for the duration of this Act by, the Attorney General such
information as to the identity and activities of such person or employee
at such times as the Attorney General may require. Upon notice to
the Government of which such person is an agent or to such person or
employee, the Attorney General, having due regard for the public
interest and national defense, may, with the approval of the Secretary
of State, and shall, at the request of the Secretary of State, terminate
in whole or in part the exemption herein of any such person or
employee;

(g) *Any attorney whose activities are confined to openly representing,
as an attorney of record, the interests of a disclosed foreign principal
before any court or administrative agency of the United States, or of any
State or political subdivision thereof.*

### FILING AND LABELING OF POLITICAL PROPAGANDA

SEC. 4. (a) Every person within the United States who is an agent
of a foreign principal and required to register under the provisions of
this Act and who transmits or causes to be transmitted in the United
States mails or by any means or instrumentality of interstate or
foreign commerce any political propaganda *for or in the interests of
such foreign principal* (i) in the form of prints, or (ii) in any other form
which is reasonably adapted to being, or which he believes will be, or
which he intends to be, disseminated or circulated among two or more
persons shall, not later than forty-eight hours after the beginning of
the transmittal thereof [send to the Librarian of Congress two copies
thereof and file with the Attorney General one copy thereof] *file with
the Attorney General two copies thereof* and a statement, duly signed by
or on behalf of such agent, setting forth full information as to the
places, times, and extent of such transmittal.

(b) It shall be unlawful for any person within the United States
who is an agent of a foreign principal and required to register under
the provisions of this Act to transmit or cause to be transmitted in
the United States mails or by any means or instrumentality of inter-
state or foreign commerce any political propaganda *for or in the in-
terests of such foreign principal* (i) in the form of prints, or (ii) in any
other form which is reasonably adapted to being, or which he believes
will be or which he intends to be, disseminated or circulated among
two or more persons, unless such political propaganda is conspicu-
ously marked at its beginning with, or prefaced or accompanied by,
a true and accurate statement, in the language or languages used in
such political propaganda, setting forth *the relationship or connection
between the person transmitting the political propaganda or causing it to
be transmitted and such propaganda;* that the person transmitting such
political propaganda or causing it to be transmitted is registered under

this subchapter with the Department of Justice, Washington, District of Columbia, as an agent of a foreign principal, together with the name and address of such agent of a foreign principal and of [each of his foreign principals] *such foreign principal;* that, as required by this Act, his registration statement is available for inspection at and copies of such political propaganda are being filed with the Department of Justice; and that registration of agents of foreign principals required by the Act does not indicate approval by the United States Government of the contents of their political propaganda. The Attorney General, having due regard for the national security and the public interest, may by regulation prescribe the language or languages and the manner and form in which such statement shall be made and require the inclusion of such other information contained in the registration statement identifying propaganda and its sources as may be appropriate.

(c) The copies of political propaganda required by this Act to be [sent to the Librarian of Congress] *filed with the Attorney General* shall be available for public inspection under such regulations as he may prescribe.

(d) For purposes of the Library of Congress other than for public distribution, the Secretary of the Treasury and the Postmaster General are authorized, upon the request of the Librarian of Congress, to forward to the Library of Congress fifty copies, or as many fewer thereof as are available, of all foreign prints determined to be prohibited entry under the provisions of section 305 of Title 3 of the Act of June 17, 1930 (46 Stat. 688), and of all foreign prints excluded from the mails under authority of section 1 of Title 12 of the Act of June 15, 1917 (40 Stat. 230).

Notwithstanding the provisions of section 305 of Title 3 of the Act of June 17, 1930 (46 Stat. 688), and of section 1 of Title 12 of the Act of June 15, 1917 (40 Stat. 230), the Secretary of the Treasury is authorized to permit the entry and the Postmaster General is authorized to permit the transmittal in the mails of foreign prints imported for governmental purposes by authority or for the use of the United States or for the use of the Library of Congress.

(e) *It shall be unlawful for any person within the United States who is an agent of a foreign principal required to register under the provisions of this Act to transmit, convey, or otherwise furnish to any agency or official of the Government (including a Member or committee of either House of Congress) for or in the interests of such foreign principal any political propaganda or to request from any such agency or official for or in the interests of such foreign principal any information or advice with respect to any matter pertaining to the political or public interests, policies or relations of a foreign country or of a political party or pertaining to the foreign or domestic policies of the United States unless the propaganda or the request is prefaced or accompanied by a true and accurate statement to the effect that such person is registered as an agent of such foreign principal under this Act.*

(f) *Whenever any agent of a foreign principal required to register under this Act appears before any committee of Congress to testify for or in the interests of such foreign principal, he shall, at the time of such appearance, furnish the committee with a copy of his most recent registration statement filed with the Department of Justice as an agent of such foreign principal for inclusion in the records of the committee as part of his testimony.*

## BOOKS AND RECORDS

Sec. 5. Every agent of a foreign principal registered under this Act shall keep and preserve while e is an agent of a foreign principal such books of account and other records with respect to all his activities, the disclosure of which is required under the provisions of this Act, *in accordance with such business and accounting practices,* as the Attorney General, having due regard for the national security and the public interest, may by regulation prescribe as necessary or appropriate for the enforcement of the provisions of this Act and shall preserve the same for a period of three years following the termination of such status.   Until regulations are in effect under this section every agent of a foreign principal shall keep books of account and shall preserve all written records with respect to his activities.   Such books and records shall be open at all reasonable times to the inspection of any official charged with the enforcement of this Act.   It shall be unlawful for any person willfully to conceal, destroy, obliterate, mutilate, or falsify, or to attempt to conceal, destroy, obliterate, mutilate or falsify or to cause to be concealed, destroyed, obliterated, mutilated, or falsified, any books or records required to be kept under the provisions of this section.

## PUBLIC EXAMINATION OF OFFICIAL RECORDS

Sec. 6.   (a) The Attorney General shall retain in permanent form one copy of all registration statements and all statements concerning the distribution of political propaganda furnished under this Act, and the same shall be public records and open to public examination and inspection at such reasonable hours, under such regulations, as the Attorney General may prescribe, and copies of the same shall be furnished to every applicant at such reasonable fee as the Attorney General may prescribe.   The Attorney General may withdraw from public examination the registration statement and other statements of any agent of a foreign principal whose activities have ceased to be of a character which requires registration under the provisions of this Act.

(b) *The Attorney General shall, promptly upon receipt transmit one copy of every registration statement filed hereunder and one copy of every amendment or supplement thereto, and one copy of every item of political propaganda filed hereunder, to the Secretary of State for such comment and use as the Secretary of State may determine to be appropriate from the point of view of the foreign relations of the United States.   Failure of the Attorney General so to transmit such copy shall not be a bar to prosecution under this Act.*

(c) *The Attorney General is authorized to furnish to departments and agencies in the executive branch and committees of the Congress such information obtained by him in the administration of this Act, including the names of registrants under this Act, copies of registration statements, or parts thereof, copies of political propaganda, or other documents or information filed under this Act, as may be appropriate in the light of the purposes of this Act.*

## LIABILITY OF OFFICERS

SEC. 7. Each officer, or person performing the functions of an officer, and each director, or person performing the functions of a director, of an agent of a foreign principal which is not an individual shall be under obligation to cause such agent to execute and file a registration statement and supplements thereto as and when such filing is required under sections 2(a) and 2(b) hereof be under obligation to cause such agent to comply with all the requirements of sections 4(a), 4(b), and 5 and all other requirements of this subchapter. Dissolution of any organization acting as an agent of a foreign principal shall not relieve any officer, or person performing the functions of an officer, or any director, or person performing the functions of a director, from complying with the provisions of this section. In case of failure of any such agent of a foreign principal to comply with any of the requirements of this Act, each of its officers, or persons performing the functions of officers, and each of its directors, or persons performing the functions of directors, shall be subject to prosecution therefor.

## ENFORCEMENT AND PENALTIES

SEC. 8. (a) Any person who—

(1) willfully violates any provision of this Act or any regulation thereunder, or

(2) in any registration statement or supplement thereto or in any statement under section 4(a) hereof concerning the distribution of political propaganda or in any other document filed with or furnished to the Attorney General under the provisions of this Act willfully makes a false statement of a material fact or willfully omits any material fact required to be stated therein or willfully omits a material fact or a copy of a material document necessary to make the statements therein and the copies of documents furnished therewith not misleading, shall, upon conviction thereof be punished by a fine of not more than $10,000 or by imprisonment for not more than five years, or both, *except that in the case of a violation of subsection (b), (e), or (f) of section 4 or of subsection (g) or (h) of this section the punishment shall be a fine of not more than $5,000 or imprisonment for not more than six months, or both.*

(b) In any proceeding under this Act in which it is charged that a person is an agent of a foreign principal with respect to a foreign principal outside of the United States, proof of the specific identity of the foreign principal shall be permissible but not necessary.

(c) Any alien who shall be convicted of a violation of, or a conspiracy to violate, any provision of this subchapter or any regulation thereunder shall be subject to deportation in the manner provided by sections 241, 242, and 243 of the Immigration and Nationality Act.

(d) The Postmaster General may declare to be nonmailable any communication or expression falling within clause (2) of section 1(j) hereof, in the form of prints or in any other form reasonably adapted to, or reasonably appearing to be intended for, dissemination or circulation among two or more persons, which is offered or caused to be offered for transmittal in the United States mails to any person or persons in any other American republic by any agent of a foreign principal, if the Postmaster General is informed in writing by the

Secretary of State that the duly accredited diplomatic representative of such American republic has made written representation to the Department of State that the admission or circulation of such communication or expression in such American republic is prohibited by the laws thereof and has requested in writing that its transmittal thereto be stopped.

(e) Failure to file any such registration statement or supplements thereto as is required by either sections 2(a) or 2(b) shall be considered a continuing offense for as long as such failure exists, notwithstanding any statute of limitation or other statute to the contrary.

*(f) Whenever in the judgment of the Attorney General any person is engaged in or about to engage in any acts which constitute or will constitute a violation of any provision of this Act, or regulations issued thereunder, or whenever any agent of a foreign principal fails to comply with any of the provisions of this Act or the regulations issued thereunder, or otherwise is in violation of the Act, the Attorney General may make application to the appropriate United States district court for an order enjoining such acts or enjoining such person from continuing to act as an agent of such foreign principal, or for an order requiring compliance with any appropriate provision of the Act or regulation thereunder. The district court shall have jurisdiction and authority to issue a temporary or permanent injunction, restraining order or such other order which it may deem proper. The proceedings shall be made a preferred cause and shall be expedited in every way.*

*(g) If the Attorney General determines that a registration statement does not comply with the requirements of this Act or the regulations issued thereunder, he shall so notify the registrant in writing, specifying in what respects the statement is deficient. It shall be unlawful for any person to act as an agent of a foreign principal at any time ten days or more after receipt of such notification without filing an amended registration statement in full compliance with the requirements of this Act and the regulations issued thereunder.*

*(h) It shall be unlawful for any agent of a foreign principal required to register under this Act to be a party to any contract, agreement, or understanding, either express or implied, with such foreign principal pursuant to which the amount or payment of the compensation, fee, or other remuneration of such agent is contingent in whole or in part upon the success of any political activities carried on by such agent.*

### APPLICABILITY OF ACT

Sec. 9. This Act shall be applicable in the several States, the District of Columbia, the Territories, the Canal Zone, the insular possessions, and all other places now or hereafter subject to the civil or military jurisdiction of the United States.

### RULES AND REGULATIONS

Sec. 10. The Attorney General may at any time make, prescribe, amend, and rescind such rules, regulations, and forms as he may deem necessary to carry out the provisions of this Act.

30        FOREIGN AGENTS REGISTRATION ACT AMENDMENTS

### REPORTS TO THE CONGRESS

SEC. 11. The Attorney General shall, from time to time, make a report to the Congress concerning the administration of this Act, including the nature, sources, and content of political propaganda disseminated or distributed.

### SEPARABILITY OF PROVISIONS

SEC. 12. If any provision of this Act, or the application thereof to any person or circumstances, is held invalid, the remainder of the Act, and the application of such provisions to other persons or circumstances, shall not be affected thereby.

### RELATION TO OTHER STATUTES

SEC. 13. This Act is in addition to and not in substitution for any other existing statute.

### SHORT TITLE

SEC. 14. This Act may be cited as the "Foreign Agents Registration Act of 1938, as amended".

## Title 18, United States Code

\*        \*        \*        \*        \*        \*        \*

## CHAPTER 11—BRIBERY, GRAFT, AND CONFLICTS OF INTEREST

\*        \*        \*        \*        \*        \*        \*

*219. Officers and employees acting as agents of foreign principals*

\*        \*        \*        \*        \*        \*        \*

*§ 219. Officers and employees acting as agents of foreign principals*

*Whoever, being an officer or employee of the United States in the executive, legislative, or judicial branch of the Government or in any agency of the United States, including the District of Columbia, is or acts as an agent of a foreign principal required to register under the Foreign Agents Registration Act of 1938, as amended, shall be fined not more than $10,000 or imprisoned for not more than two years, or both.*

*Nothing in this section shall apply to the employment of any agent of a foreign principal as a special Government employee in any case in which the head of the employing agency certifies that such employment is required in the national interest. A copy of any certification under this paragraph shall be forwarded by the head of such agency to the Attorney General who shall cause the same to be filed with the registration statement and other documents filed by such agent, and made available for public inspection in accordance with section 6 of the Foreign Agents Registration Act of 1938, as amended.*

\*        \*        \*        \*        \*        \*        \*

139

## CHAPTER 29—ELECTIONS AND POLITICAL ACTIVITIES

\*    \*    \*    \*    \*    \*    \*

*613. Contributions by agents of foreign principals*

\*    \*    \*    \*    \*    \*    \*

§ 613.   *Contributions by agents of foreign principals*

*Whoever, being an agent of a foreign principal, directly or through any other person, either for or on behalf of such foreign principal or otherwise in his capacity as agent of such foreign principal, knowingly makes any contribution of money or other thing of value, or promises expressly or impliedly to make any such contribution, in connection with an election to any political office or in connection with any primary election, convention, or caucus held to select candidates for any political office, or*

*Whoever knowingly solicits, accepts, or receives any such contribution from any such agent of a foreign principal or from such foreign principal—*

*Shall be fined not more than $5,000 or imprisoned not more than five years or both.*

*As used in this section—*

*(1) The term "foreign principal" has the same meaning as when used in the Foreign Agents Registration Act of 1938, as amended, except that such term does not include any person who is a citizen of the United States.*

*(2) The term "agent of a foreign principal" means any person who acts as an agent, representative, employee, servant, or in any other capacity at the order, request, or under the direction or control of a foreign principal or of a person any substantial portion of whose activities are directly or indirectly supervised, directed, or controlled by a foreign principal.*

\*    \*    \*    \*    \*    \*    \*

O