# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT, LLC and ELLIOTT BROIDY,<br><br>                       Plaintiffs,<br><br>        v.<br><br>NICHOLAS D. MUZIN, JOSEPH ALLAHAM, GREGORY HOWARD, STONINGTON STRATEGIES, LLC,<br><br>                     Defendants. | Case No. 19-cv-00150-DLF |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENAS, AND TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

KASOWITZ BENSON TORRES LLP
Henry B. Brownstein
Daniel R. Benson
Andrew R. Kurland
Jacob Benson

*Counsel for Plaintiffs Broidy Capital Management, LLC and Elliott Broidy*

Dated: February 14, 2022

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................. 4

LEGAL STANDARDS ........................................................................................................ 7

I.      Parties May Only Seek Discovery Relevant To The Claims And Valid Defenses ............ 7

II.     Legally Deficient Defenses May Be Stricken .................................................................... 9

ARGUMENT .................................................................................................................... 10

I.      The Court Should Issue A Protective Order ..................................................................... 10

      A.      Defendants Seek Information Unrelated To The Claims In This Action ............ 10

            i.      Defendants Are Not Entitled To Unlimited Discovery Into
                Plaintiffs' Business Relationships ............................................................. 12

            ii.     Defendants Are Not Entitled To All Discovery Concerning
                Plaintiffs' Advocacy Related To Qatar ..................................................... 15

            iii.    Defendants Are Not Entitled To Discovery Concerning The DOJ
                Investigation ............................................................................................. 17

      B.      The Irrelevant Topics Are Unrelated To Any Valid Defense .............................. 18

      C.      Defendants Improperly Seek Privileged Information .......................................... 21

II.     Defendants' Subpoenas Should Be Quashed Or Modified ............................................... 23

      A.      The DC Subpoenas Seek Irrelevant Information And Therefore Are
            Unduly Burdensome ........................................................................................... 24

      B.      Certain of Defendants' DC Subpoenas Seek Privileged Information .................. 25

      C.      Defendants' Subpoenas Call For Disclosure Of Protected Confidential
            Information ......................................................................................................... 26

III.    The Court Should Strike Defendants' Affirmative Defenses ............................................ 27

    A.    The Court Has Already Rejected Howard's First Amendment Defense As
          A Matter Of Law.............................................................................................. 27

    B.    The Court Should Strike Defendants' Unclean Hands Defenses......................... 28

CONCLUSION.................................................................................................................... 31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*325–343 56th Street Corp. v. Mobil Oil Corp.*,
  906 F.Supp. 669 (D.D.C. 1995)...................................................................27

*Albany Molecular Rsch., Inc. v. Schloemer*,
  274 F.R.D. 22 (D.D.C. 2011)......................................................................26

*Alexander v. F.B.I.*
  188 F.R.D. 111 (D.D.C. 1998)......................................................................7

*Alexander v. FBI*,
  186 F.R.D. 21 (D.D.C. 1998)........................................................................8

*AMEC Civ., LLC v. DMJM Harris, Inc.*,
  No. CIV.A. 06-64(FLW), 2007 WL 433328 (D.N.J. Feb. 6, 2007) .......................................28

*In re Ashley Madison Customer Data Sec. Breach Litig.*,
  MDL No. 2669, 2016 U.S. Dist. LEXIS 57619 (E.D. Mo. April 29, 2016)...........................14

*Asphaltos Trade, S.A. v. Bituven Puerto Rico, LLC*,
  No. 18-1876 (BJM), 2021 WL 965645 (D.P.R. Mar. 15, 2021)...............................27

*Banneker Ventures, LLC v. Graham*,
  253 F. Supp. 3d 64 (D.D.C. 2017) .................................................................22

*Blumenthal v. Drudge*,
  186 F.R.D. 236 (D.D.C. 1999).....................................................................18

*Bos. Sci. Corp. v. Nevro Corp.*,
  No. 16-CV-1163, 2020 WL 6261624 (D. Del. Oct. 19, 2020) ...............................12

*Broidy Capital Management LLC v. Joseph Allaham*,
  S.D.N.Y. Case No. 18-mc-00240-KBF ........................................................2

*Brown v. Wells Fargo Bank, N.A.*,
  No. 11-CV-1156 (BJR), 2012 WL 13214663 (D.D.C. Oct. 1, 2012)..................................9, 29

*Bureau of Consumer Financial Protection v. Fair Collections & Outsourcing, Inc.*,
  No. GJH-19-2817, 2021 WL 2685251 (D. Md. June 30, 2021)................................27

*Cent. United Life, Inc. v. Burwell*,
  128 F. Supp. 3d 321 (D.D.C. 2015), *aff'd sub nom. Cent. United Life Ins. Co. v. Burwell*, 827 F.3d 70 (D.C. Cir. 2016)..........................................................20

*Chavous v. District of Columbia Financial Responsibility & Mgmt. Assistance Auth.*,
201 F.R.D. 1 (D.D.C. 2001) ............................................................................16, 19

*Clyburn v. News World Communications, Inc.*,
117 F.R.D. 1 (D.D.C. 1987) ........................................................................................11

*Coleman v. D.C.*,
275 F.R.D. 33 (D.D.C. 2011) ................................................................................8, 23

*D'Onofrio v. SFX Sports Grp., Inc.*,
256 F.R.D. 277 (D.D.C. 2009) ..................................................................................12

*Devermont v. City of San Diego*,
No. 12-CV-1823-BEN(KSC), 2013 WL 2898342 (S.D. Cal. June 12, 2013) ........................29

*Doe v. Verizon Online*,
No. 10-00171, 2010 WL 2035332 (D.D.C. May 21, 2010) ....................................................8

*Drewes v. Cetera Fin. Grp., Inc.*,
No. 19-CV-80531, 2021 WL 5810634 (S.D. Fla. Dec. 7, 2021) ............................................9

*E.E.O.C. v. Spoa, LLC*,
No. CIV. CCB-13-1615, 2014 WL 47337 (D. Md. Jan. 3, 2014) ...........................................28

*Falicia v. Advanced Tenant Serv., Inc.*,
235 F.R.D. 5 (D.D.C. 2006) ........................................................................................26

*Food Lion, Inc. v. United Food and Commercial Workers Int'l Union*,
103 F.3d 1007 (D.C. Cir. 1997) ..........................................................................21, 25

*GFL Advantage Fund, Ltd. v. Colkitt*,
216 F.R.D. 189 (D.D.C. 2003) ......................................................................................7

*Gouse v. D.C.*,
359 F. Supp. 3d 51 (D.D.C. 2019) ..........................................................................8, 24

*Heiner v. Kmart Corp.*,
84 Cal. App. 4th 335 (Cal. App. Ct. 2000) ...........................................................20, 30

*Herbert v. Lando*,
441 U.S. 153 (1979) ......................................................................................................7

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
591 F. Supp. 2d 1038 (N.D. Cal. 2006), *vacated on other grounds,* 645 F.3d
1336 (Fed. Cir. 2011) ..................................................................................................30

iv

*Krieger v. Fadely*,
  199 F.R.D. 10 (D.D.C 2001) ................................................................................7, 16

*Malibu Media, LLC v. Parsons*,
  No. CV 12-1331 (BAH), 2013 WL 12324463 (D.D.C. May 31, 2013) ....................................9

*Malibu Media, LLC v. Peterson*,
  No. 16-CV-786 JLS (NLS), 2017 WL 1550091 (S.D. Cal. May 1, 2017) ...........................30

*Management Information Technologies, Inc. v. Alyeska Pipeline Services Co.*,
  151 F.R.D. 478 (D.D.C. 1993) ............................................................................3, 14

*Meijer, Inc. v. Warner Chilcott Holdings Co., III, Ltd.*,
  245 F.R.D. 26 (D.D.C. 2007) ...................................................................................7

*Menoken v. Springer*,
  No. 03-CV-1775, 2008 WL 11388468 (D.D.C. Aug. 1, 2008) ...........................................12

*Nat'l Ben. Programs, Inc. v. Express Scripts, Inc.*,
  No. 10-CV-00907, 2011 WL 6009655 (E.D. Mo. Dec. 1, 2011) ...........................................8

*NIANTIC, INC., Plaintiff, v. GLOBAL++, et al.*,
  No. 19-CV-03425-JST, 2020 WL 1548465 (N.D. Cal. Jan. 30, 2020) .................................30

*Peoples Nat'l Bank, N.A. v. Mehlman*,
  No. 15-CV-00996, 2016 WL 3268761 (E.D. Mo. June 7, 2016) ...........................................8

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  402 F. Supp. 3d 615 (N.D. Cal. 2019) .................................................................29, 30

*Resol. Tr. Corp. v. Gallagher*,
  No. 92 C 1091, 1992 WL 370248 (N.D. Ill. Dec. 2, 1992) ...................................................9

*Roberts-Douglas v. Meares*,
  624 A.2d 405 (D.C. 1992) ........................................................................................16

*S. California Darts Ass'n v. Zaffina*,
  762 F.3d 921 (9th Cir. 2014) ..................................................................................29

*In re Sealed Case (Med. Recs.)*,
  381 F.3d 1205 (D.C. Cir. 2004) .................................................................................7

*Sharp v. Baltimore City Police Dep't*,
  No. 11-CV-2888, 2013 WL 937903 (D. Md. Mar. 1, 2013) ...............................15, 16, 18, 19

*In re Subpoena Duces Tecum to AOL, LLC*,
  550 F. Supp. 2d 606 (E.D. Va. 2008) .....................................................................8, 24

*United States for Use & Benefit of A&C Constr. & Installation Co. WLL v. Zurich
Am. Ins. Co.*,
No. 17 C 4307, 2019 WL 195025 (N.D. Ill. Jan. 15, 2019) ....................................29

*United States v. CVS Caremark Corp.*,
No. CIV.A. 09-4672, 2013 WL 1755214 (E.D. Pa. Apr. 24, 2013) .......................28

*United States v. International Business Machines Corp.*,
83 F.R.D. 97 (S.D.N.Y. 1979) ...............................................................................24

*United States v. Kellogg Brown & Root Servs., Inc.*,
284 F.R.D. 22 (D.D.C. 2012)..................................................................................25

*United States v. Philip Morris USA, Inc.*,
327 F. Supp. 2d 13 (D.D.C. 2004) ..........................................................................27

*Washington v. Thurgood Marshall Acad.*,
230 F.R.D. 18 (D.D.C 2005)....................................................................................8

*Watts* v. *SEC*,
482 F.3d 501 (D.C. Cir. 2007), The pre-2013 .......................................................25

*Weber v. Pierce Cty.*,
No. 21-CV-300, 2022 WL 157812 (W.D. Wis. Jan. 18, 2022) ................................9

*Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*,
No. 18-CV-1927, 2021 WL 4895977 (S.D. Cal. Oct. 20, 2021) ............................20

*Worldwide Film Ent., LLC v. Does*
1-749, No. CIVA100038HHKDAR, 2010 WL 2011306 (D.D.C. May 20,
2010) .......................................................................................................................25

**Statutes and Rules**

California Uniform Trade Secrets Act ..........................................................2, 4, 10, 20

Computer Fraud and Abuse Act .........................................................................2, 4, 10

Defend Trade Secrets Act .........................................................................2, 4, 10, 20

Fed. R. Civ. P. 11 ...................................................................................................18

Fed. R. Civ. P. 12 ................................................................................................1, 9

Fed. R. Civ. P. 26 ....................................................................................... *passim*

Fed. R. Civ. P. 45 ....................................................................................... *passim*

Fed R. Civ. P. 56...................................................................................................1, 9

**Other Authorities**

Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1380 (3d ed)..........................................................9

Plaintiffs Broidy Capital Management, LLC and Elliot Broidy (together, "Plaintiffs") respectfully submit this memorandum of law in support of their motion: (1) for a protective order and to quash certain discovery served by Defendants Nicolas Muzin and Stonington Strategies LLC (together, "Muzin"), Gregory Howard ("Howard"), and Joseph Allaham ("Allaham," and with Muzin and Howard, "Defendants"), pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure (the "Rules"), and (2) to strike Defendants' affirmative defenses based on the First Amendment and unclean hands, pursuant to Rule 12(f), or in the alternative, for partial summary judgment, pursuant to Rule 56.

## PRELIMINARY STATEMENT

This action arises from Defendants' illegal scheme, funded by the State of Qatar, to hack, steal and disseminate Mr. Broidy's confidential personal and business information, in retaliation for Broidy exercising his First Amendment right to criticize Qatar for its support for and financing of terrorism.  This kind of attack on an American citizen, increasingly engaged in not only by Qatar but also by countries such as Russia, Iran, North Korea and China, is designed to punish, intimidate and deter critics, and poses as serious a threat to free speech in the United States as any other.  Plaintiffs, the victims of Defendants' attack, have brought this action to hold Defendants accountable for, and to recover the damages they have suffered, as a result of Defendants' egregious scheme.

As shown below, Defendants seek through their discovery demands in this action – approaching 1,000 separate requests thus far – to continue their intimidation campaign.  Rather than seek discovery relevant to the claims or legitimate defenses in this action, Defendants have issued egregiously overbroad, burdensome and irrelevant subpoenas – 34 separate subpoenas so far – to third parties including nonprofit policy organizations and Mr. Broidy's friends and

associates who have been notable critics of Qatar, in addition to their demands served on Plaintiffs.[1]

Defendants' improper requests thus seek information, including all communications with U.S. government officials and political action committees, relating to "advocacy, lobbying, or consulting," and "financial transactions or exchanges of anything of value" with Angola, Morocco, Romania, Malaysia, Nigeria, the Republic of the Congo, the Republic of Tunisia, and the Kurdistan Regional Government.  Defendants also seek information related to Qatar, including Mr. Broidy's activities criticizing Qatar's support of terrorism and information concerning an unrelated investigation by the U.S. Department of Justice concerning Mr. Broidy.[2]

None of this information has anything at all to do with Plaintiffs' claims – claims upheld by this Court and the Court of Appeals – that Defendants, in coordination with Qatar, illegally accessed and disseminated Plaintiffs' confidential information.[3]  It is evident that Defendants' goal in making their discovery demands is to make this litigation as burdensome and expensive

---

[1] Defendants have a history of playing games with discovery.  In one instance, during a hearing in the Southern District of New York, Judge Forrest described the conduct of Allaham's counsel as "gamesmanship" to get "a second bite at the apple" to prevent Allaham from responding to Broidy's valid subpoena requests.  *Broidy Capital Management LLC v. Joseph Allaham*, S.D.N.Y. Case No. 18-mc-00240-KBF, June 6, 2018 Hearing Tr. at 26:5 (Brownstein Decl. Ex. 52).

[2] The objectionable discovery demands are included in Exs. 1-27 and 39-50 to the Declaration of Henry B. Brownstein, dated February 14, 2022 ("Brownstein Decl"), filed herewith.

[3] Plaintiffs' claims include (1) violation of the Computer Fraud and Abuse Act ("CFAA"); (2) violation of the Defend Trade Secrets Act ("DTSA"); (3) violation of the California Uniform Trade Secrets Act ("CUTSA"); (4) receipt and possession of stolen property; (5) intrusion upon seclusion; and (6) civil conspiracy.  These claims focus exclusively on *Defendants*' conduct— their involvement in the illegal hacking of Plaintiffs' and associates, their knowing possession and misuse of Plaintiffs' stolen property, including confidential and/or trade secret information, and the resulting injury to Plaintiffs.

as possible and to further their campaign, on Qatar's behalf, to intimidate American critics of Qatar.

Defendants serve this discovery under the pretense that it is necessary in connection with their purported First Amendment defense and their "blame the victim" unclean hands defense. Defendants also assert that this discovery is somehow relevant to "evaluate" alleged "illegal activities" purportedly evidenced in Mr. Broidy's hacked documents. These defenses have no legal merit. This Court *rejected* defendant Howard's First Amendment defense as a matter of law almost two year ago when it denied his motion to dismiss. Additionally, Defendants cannot escape liability under the claims even if their unfounded characterizations of the content of Mr. Broidy's stolen documents were true; Defendants' contentions regarding purported "illegal activities" do not provide a justification for the hacking and dissemination of Mr. Broidy's files. The purported unlawful conduct that Defendants assert Plaintiffs have engaged in also has no connection to the claims asserted in this action, let alone the "direct nexus" that is required to support a valid unclean hands defense. Defendants therefore are not entitled to the discovery they ask for to support these invalid defenses. Moreover, defendants are not entitled use the fruits of the hacking conspiracy as a basis to obtain more discovery from Plaintiffs and third parties. *See Management Information Technologies, Inc. v. Alyeska Pipeline Services Co.*, 151 F.R.D. 478 (D.D.C. 1993).

For the reasons set forth herein, Plaintiffs respectfully request that the Court enter an order pursuant to Rule 26(c) that limits discovery in this case to matters relevant to the claims in the complaint and any legitimate defenses to those claims, prevents Defendants from demanding discovery from Plaintiffs and from third parties on the irrelevant topics described herein or that is protected or privileged information, and prevents Defendants, who are clearly coordinating, from

burdening third parties with multiple rounds of subpoenas.  In addition, and pursuant to Rule 26(g), the Court should also not allow Defendants to pursue discovery for the improper purposes of harassing, causing unnecessary delay, and/or needlessly increasing the cost of litigation. Plaintiffs also request an order pursuant to Rule 45(d), which explicitly enables the Court to quash or modify Defendants' subpoenas returnable in this jurisdiction to the extent they seek irrelevant, privileged, and protected information.  Finally, Plaintiffs request that the Court strike with prejudice Defendants' First Amendment and unclean hands defenses, on which they purport to justify their abusive discovery campaign.

## **BACKGROUND**

Plaintiffs filed the operative First Amended Complaint ("Complaint") on April 2, 2019. ECF No. 18.  Defendants each moved to dismiss the Complaint, and the Court ruled on those motions on March 31, 2020, allowing Plaintiffs' CFAA, DTSA, and CUTSA claims to proceed, in addition to their common law claims alleging receipt and possession of stolen property, intrusion upon seclusion, and civil conspiracy.  ECF Nos. 50, 51.  The Court also rejected Howard's First Amendment defense:

> Though Howard is correct that Broidy does not allege Howard hacked the servers personally and that the articles do embody a matter of public concern, his [First Amendment defense] is unavailing because he plausibly conspired with the hacker. . . .  Thus, if Broidy can establish Howard's involvement in the conspiracy, Howard would be liable for the illegal interception as if he committed the hacking himself.  The Court *rejects* Howard's First Amendment defense.

ECF No. 51, at 43-44 (emphasis added).  Accordingly, the Court disallowed Howard's attempt to paint himself as an innocent reporter who was a stranger to the illegal hacking.  *Id*. at 43 ("This case is different.").

On September 3, 2021, the Circuit Court affirmed this Court's ruling on Defendants' interlocutory appeal.  ECF No. 65.

Defendants each answered the Complaint on November 5, 2021, and asserted a multitude of purported "affirmative defenses," including unclean hands. *See* ECF Nos. 75 at 103; 76 at 107; 77 at 43. Howard, ignoring the Court's decision, also asserted a defense based on the First Amendment. *See* ECF No. 75 at 102.

Defendants served their discovery demands on Plaintiffs in November and December 2021, containing in the aggregate more than 250 requests. To date, Defendants also have served 34 subpoenas to third parties, many of whom previously worked with Plaintiffs or, according to Defendants, are apparently otherwise aligned with Plaintiffs' anti-terrorism concerns.[4] Included in these subpoenas are: (1) a subpoena Robin Rosenzweig, Mr. Broidy's wife ("Ms. Rosenzweig"); (2) a subpoena to Joel Mowbray, one of Plaintiffs' attorneys ("Mr. Mowbray"); and (3) two subpoenas to Circinus, LLC, a consultancy and defense contractor associated with Mr. Broidy ("Circinus").[5]

---

[4] Plaintiffs are aware of subpoenas issued by Defendants to the following individuals or entities: Robin Rosenzweig; Joel Mowbray; Ronald Bonjean; Delon Cheng; Andrew Harrod; Aaron Keyak; EJ Kimball; Richard Miniter; Adelle Nazarian; Daniel Pipes; Steven Rabinowitz; David Reaboi; Gregg Roman; Ileana Ros-Lehtinen; Edward Royce; Charles Wald; Circinus, LLC; Bluelight Strategies LLC; Hudson Institute, Inc.; Jewish Institute for National Security of America; American Media Institute; Secure America Now Foundation; AT&T; Bandwidth; T-Mobile USA, Inc.; and Verizon Wireless. Brownstein Decl. Exs. 6-27, 39-50.

[5] At Defendants' request, counsel for Plaintiffs voluntarily agreed to accept service of these subpoenas, and requested brief extensions of time to respond to them. Though counsel granted the request, six days after receiving the responses and objections of Ms. Rosenzweig, Mr. Mowbray, and Circinus, Muzin's counsel claimed, disingenuously, that the extension they had granted only applied to the deadline for the production of documents and not to the service of any objections to the requested documents. On Friday night, in the latest example of inappropriate gamesmanship, Muzin and Howard hastily filed a motion to compel in the Eastern District of Virginia with respect to their subpoenas to Circinus, despite knowing that Defendants would today be filing the instant motion concerning the propriety of Defendants' discovery. The motion to compel is improper for numerous reasons, including because Defendants failed to meet and confer telephonically, and because the Virginia court does not even have jurisdiction to hear the motion as neither subpoena to Circinus is returnable in that District. Plaintiffs have demanded that Defendants withdraw the improper motion.

Defendants' *hundreds* of improper requests that seek irrelevant information can generally be grouped into the following categories: (1) Plaintiffs' purported business relationships and dealings with a litany of individuals, governments, and other entities; (2) information related to Qatar, including related to Plaintiffs' efforts concerning Qatar's support of terrorism; and (3) an unrelated investigation conducted by the U.S. Department of Justice concerning Mr. Broidy (collectively, the "Irrelevant Topics").  Appendix A, attached hereto, contains a listing of the objectionable discovery requests.[6]

Additionally, one of the Defendants (Howard) also issued document subpoenas to the telephone and internet service providers AT&T, T-Mobile, Verizon, and Bandwidth, demanding disclosure of private call logs, account information, and other data belonging to Plaintiffs and to third parties, including Ms. Rosenzweig, Mr. Mowbray, and many others.

Plaintiffs have attempted to avoid burdening the Court with this discovery dispute by conferring with Defendants regarding these issues over emails, in a teleconference, and by exchanging detailed correspondence, in which Plaintiffs demonstrated that the discovery Defendants seek is impermissible, and defenses raised by Defendants are not valid. Unfortunately, and as evidenced by the "cross-motion" to compel that Defendants filed last week, they have been unable to reach any resolution.  Defendants have refused to forbear from continuing to seek extensive irrelevant, burdensome, and harmful discovery from Plaintiffs and third parties pending resolution of this fundamental dispute over the scope of relevant discovery, necessitating the instant motion.  Defendants have also refused Plaintiffs' request to refrain from

---

[6] For ease of reference, Plaintiffs have endeavored to break down the requests by category of objection raised on this motion (and Appendix A does not list all of Plaintiffs' objections, which are separately set forth in their Responses and Objections).  Given the quantity and extremely broad nature of the Defendants' requests, a number of requests appear in multiple categories.

serving yet more subpoenas even though the issue of the proper scope of discovery is before the

Court, on both Defendants' motion to compel and now this instant motion.  In fact, earlier today

Howard issued 12 more subpoenas to third parties.

## LEGAL STANDARDS

## I.      Parties May Only Seek Discovery Relevant To The Claims And Valid Defenses

Federal Rule of Civil Procedure 26(b)(1) makes clear that a party may only obtain

discovery as to a matter that is "relevant to the claim or defense of any party and proportional to

the needs of the case."  *See also GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 194

(D.D.C. 2003) (citing *Pleasants v. Allbaugh*, 208 F.R.D. 7, 9 (D.D.C. 2002)); *Krieger v. Fadely*,

199 F.R.D. 10, 13 (D.D.C 2001) (each holding that the substantive nature of the claims asserted

is what defines relevancy under Rule 26(b)(1)).  "A showing of relevance can be viewed as a

showing of *need*; for the purpose of prosecuting or defending a specific pending civil action, one

is presumed to have no need of a matter not 'relevant to the subject matter involved in the

pending action.'"  *Meijer, Inc. v. Warner Chilcott Holdings Co., III, Ltd.*, 245 F.R.D. 26, 29–30

(D.D.C. 2007) (citation omitted).  The Supreme Court has admonished that "the requirement of

Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied."

*Herbert v. Lando*, 441 U.S. 153, 177 (1979); *see also Alexander v. F.B.I.* 188 F.R.D. 111, 118

(D.D.C. 1998) (granting motion for protective order with respect to overbroad discovery

requests).

Under Rule 26(c), trial courts have broad discretion to enter a protective order "for good

cause … to protect a party or person from annoyance, embarrassment, oppression, or undue

burden or expense."  Fed. R. Civ. P. 26(c).  A protective order also can be utilized to prevent

discovery into irrelevant matters.  *See In re Sealed Case (Med. Recs.)*, 381 F.3d 1205, 1216

(D.C. Cir. 2004) (Rule 26(c) allows courts to limit discovery to protect privacy and other

confidentiality interests); *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C

2005) (evaluating motions for a Rule 26(c) protective order "according to the standard

enunciated in Rule 26.").

Additionally, courts have "especially wide latitude in deciding whether to quash the

subpoena issued to a nonparty." *Peoples Nat'l Bank, N.A. v. Mehlman*, No. 15-CV-00996, 2016

WL 3268761, at *2 (E.D. Mo. June 7, 2016). Subpoenas are subject to the limitations on the

scope of discovery set forth in Rule 26. *Coleman v. D.C.*, 275 F.R.D. 33, 36-37 (D.D.C. 2011)

("it is settled that a subpoena is limited in scope by Rule 26(b)(1) of the Federal Rules of Civil

Procedure.").[4] Rule 45 also confirms that subpoenas may not impose "undue burden or expense

on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Undue burden is determined by

reference to factors such as "relevance, the need of the party for the documents, the breadth of

the document request, the time period covered by it, the particularity with which the documents

are described and the burden imposed." *Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C. 1998). A

"subpoena imposes an undue burden on a party when [it] is overbroad," and all the more so when

it demands information that is completely irrelevant. *In re Subpoena Duces Tecum to AOL, LLC*,

550 F. Supp. 2d 606, 612 (E.D. Va. 2008); *see also Gouse v. D.C.*, 359 F. Supp. 3d 51, 56

(D.D.C. 2019) ("If a subpoena compels disclosure of information that is not properly

discoverable, then the burden it imposes, however slight, is *necessarily* undue.") (quoting *AF*

---

[4] While "[o]rdinarily a party does not have standing to object to a subpoena served on a non-party, ... a party does have standing to object to a subpoena served upon a non-party which, as here, requires the production of privileged information." *Doe v. Verizon Online*, No. 10-00171, 2010 WL 2035332, at *2 (D.D.C. May 21, 2010). A party can also seek to quash a subpoena if the party, such as Plaintiffs here, has "a privilege, personal interest, or proprietary interest" in the subpoenaed information. *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005); s*ee also Nat'l Ben. Programs, Inc. v. Express Scripts, Inc.*, No. 10-CV-00907, 2011 WL 6009655, at *4 (E.D. Mo. Dec. 1, 2011) (finding party "clearly has a 'personal right' to control the disclosure of its financial and business records").

*Holdings, LLC v. Does* 1-1058, 752 F.3d 990, 995 (D.C. Cir. 2014)) (emphasis added); *see also*

Fed. R. Civ. P. 26(g) (discovery devices may not be used "to harass, cause unnecessary delay, or

needlessly increase the cost of litigation"). Finally, Rule 45 *requires* courts to quash subpoenas

that, as here, require disclosure of privileged or other protected matter, and allows courts to

quash or modify subpoenas that require disclosure of trade secret or other confidential

commercial information. *See* Fed. R. Civ. P. 45(d)(3).

## II.     Legally Deficient Defenses May Be Stricken

Affirmative defenses which are "insufficient as a matter of law" are the proper subject of

a motion to strike. *Brown v. Wells Fargo Bank, N.A.*, No. 11-CV-1156 (BJR), 2012 WL

13214663, at *1 (D.D.C. Oct. 1, 2012); *accord Resol. Tr. Corp. v. Gallagher*, No. 92 C 1091,

1992 WL 370248, at *3 (N.D. Ill. Dec. 2, 1992) ("Where the defense is insufficient as a matter of

law, the defense should be stricken to eliminate the delay and unnecessary expense from

litigating the invalid claim.") (citing *FDIC v. Eckert Seamans Cherin & Mellott*, 754 F. Supp. 22,

23 (E.D.N.Y.1990)). Courts also may grant motions to strike "where it is clear that the

affirmative defense is irrelevant and frivolous and its removal from the case would avoid wasting

unnecessary time and money litigating the invalid defense.'" *Malibu Media, LLC v. Parsons*,

No. CV 12-1331 (BAH), 2013 WL 12324463, at *2 (D.D.C. May 31, 2013) (collecting cases).[7]

---

[7] Although this motion to strike is filed after the 21-day period provided for in Rule 12(f), that
rule "permits the court to consider the sufficiency of a defense at any time." *Weber v. Pierce
Cty.*, No. 21-CV-300, 2022 WL 157812, at *1 (W.D. Wis. Jan. 18, 2022) (citing *Williams v.
Jader Fuel Co.*, 944 F.2d 1388, 1399 (7th Cir. 1991) (court may reach merits of untimely motion
to strike)); *see also* Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1380 (3d ed) (explaining that
judicial discretion allows a court to consider a motion to strike at any time, and "the time
limitations set out in Rule 12(f) should not be applied strictly when the motion to strike seems to
have merit"). The Court may also choose to dismiss the affirmative defenses under Rule 56. *See
Drewes v. Cetera Fin. Grp., Inc.*, No. 19-CV-80531, 2021 WL 5810634, at *11 (S.D. Fla. Dec.
7, 2021) (considering motion to strike argument under the summary judgment standard).
Plaintiffs are filing herewith a statement pursuant to Local Rule 7(h) should the Court consider

## ARGUMENT

### I.     The Court Should Issue A Protective Order

In seeking information concerning the Irrelevant Topics, Defendants ignore the bounds of the claims in the Complaint, and the legitimate defenses that may be asserted in response. Defendants' efforts to advance their "blame the victim" strategy and distract from the core issues in this case while they use discovery to further harass and malign Plaintiffs and unnecessarily burden third parties should be rejected. Plaintiffs are entitled to a protective order prohibiting Defendants from seeking this improper discovery.

### A.     Defendants Seek Information Unrelated To The Claims In This Action

The Court has allowed Plaintiffs to proceed with their claims pursuant to the CFAA, the DTSA, and the CUTSA, as well as the common law claims of receipt of stolen property, intrusion upon seclusion, and civil conspiracy. The elements of these claims are as follows:

- CFAA: a showing that defendants "intentionally access[ing] a computer without authorization or exceeds authorized access, and [] obtain[ing] information from any protected computer." ECF No. 51 at 23-24.

- DTSA: plaintiffs' possession of a trade secret used in or intended of use in, interstate or foreign commerce and defendant's misappropriation of that trade secret. *See id*. at 24.

- CUTSA: "possession by the plaintiff of a trade secret; (2) the defendant's misappropriation of the trade secret . . .; and (3) resulting or threatened injury to the plaintiff." *Id*. at 27.

- Receipt of stolen property: establishing that "(a) the property was stolen, (b) the defendant was in possession of it, (c) knowing it was stolen." *Id*. at 31.

- Intrusion upon seclusion: demonstrating (1) defendants' intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person. *Id*. at 38.

---

this issue under the summary judgment standard.

- Civil conspiracy:  demonstrating "(1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the common design."  *Id*. at 41.

For Plaintiffs to prove their claims, they must establish that Defendants were involved with accessing, possessing, and/or the misappropriation of Plaintiffs' confidential and/or trade secret information, causing damage to Plaintiffs.  Accordingly, Plaintiffs have already provided or agreed to provide all nonprivileged discovery related to these claims and their damages in their possession, custody, or control.  This discovery includes, *inter alia*, the agreement to produce documents and respond to written discovery requests related to (1) the hacking described in the Complaint (*see, e.g.*, Plaintiffs' Responses and Objections to Muzin Requests for Production (Brownstein Decl. Ex. 28) at Nos. 1-10, 35-41, 45-48), (2) the dissemination of Plaintiffs' confidential information, including trade secrets, as well as certain false information about Plaintiffs (*see, e.g.*, *id.* at Nos. 11-13, 22-25), and (3) the resulting damages suffered by Plaintiffs, including the evidence which will be provided through expert witnesses (*see, e.g.*, *id.* at Nos. 16-19. 26-32, 42-43).[8]

However, the remainder of Defendants' discovery requests are entirely irrelevant to these claims and not the proper subject of discovery, and therefore in all events not proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1); *see also*, *e.g.*, *Clyburn v. News World Communications, Inc*., 117 F.R.D. 1, 2 (D.D.C. 1987) (discovery must bear on "core" issues).

---

[8] Additionally, third parties Ms. Rosenzweig, Mr. Mowbray, and Circinus likewise have agreed to provide all such information, as stated in their respective responses and objections to subpoenas service.  *See, e.g.*, Mowbray Responses and Objections to Muzin Subpoena (Brownstein Decl. Ex. 35) at Nos. 5, 8 43, 49, 57, 67-68, 77, 81, 82); Rosenzweig Responses and Objections to Muzin Subpoena (Brownstein Decl. Ec. 36) at Nos. 1, 3-7, 18, 22),  Circinus Responses and Objections to Muzin Subpoena (Brownstein Decl. Ex. 37) at Nos. 1, 9, 12, 34-35.

Moreover, with respect to *all* of their requests, Defendants inappropriately demand production of documents from Plaintiffs and from third parties beginning January 1, 2016.  *See* Brownstein Decl. Exs.  1-27, 39-50.  This is despite the fact that the first hack into Plaintiffs' systems as described in the Complaint did not occur until December 27, 2017.  *See, e.g.*, Compl. ¶ 87.  Defendants' demand for documents from two years before this time accordingly could have no bearing on the claims, and Plaintiffs are entitled to a protective order for this reason as well.  *See D'Onofrio v. SFX Sports Grp., Inc.*, 256 F.R.D. 277, 281 (D.D.C. 2009) (granting motion for protective order and imposing a time limitation for discovery based on when the event at issue occurred); *Menoken v. Springer*, No. 03-CV-1775, 2008 WL 11388468, at *2-3 (D.D.C. Aug. 1, 2008) (denying motion to compel discovery because discovery requested fell "outside the reasonable time period for this litigation"); *accord Bos. Sci. Corp. v. Nevro Corp.*, No. 16-CV-1163, 2020 WL 6261624, at *1 (D. Del. Oct. 19, 2020) ("[R]equests for discovery that sought information from outside of [the relevant] time period would be deemed presumptively not relevant.").

### i.    Defendants Are Not Entitled To Unlimited Discovery Into Plaintiffs' Business Relationships

Defendants propound numerous requests seeking discovery concerning Plaintiffs' and third parties' purported business relationships and dealings with a host of individuals, governments, and other entities.[9]  For example, defendant Howard demands that non-party Circinus produce "All documents and communications regarding [its] business dealings with: (a) Morocco, Romania, Malaysia, Nigeria, the Republic of the Congo, the Republic of Tunisia, or the Kurdistan Regional Government" as well as "All documents and communications regarding

---

[9] *See* Appendix A, at Column 1.

Broidy's business dealings with: (a) Angola, or (b) any officials, agents, or representatives of

Angola."  Howard subpoena to Circinus (Brownstein Decl. Ex. 16) at No. 22; *id.* at No. 3.

Defendants also seek information related to work purportedly done by Plaintiffs for Saudi Arabia

or the UAE.  *See, e.g.*, Muzin First Set of Requests for Production of Documents ("Muzin

RFPs") (Brownstein Decl. Ex. 2), at No. 86 ("All documents and communications regarding

proposals, pitches, bids, or solicitations for business arrangements by Broidy or Broidy's

affiliated companies, including without limitation Circinus Worldwide and Threat Deterrence

Capital, to Saudi Arabia or the UAE."); *id.* at No. 82 ("All documents and communications

related to any consultants, vendors, or other entities working on behalf of the King of Saudi

Arabia or the United Arab Emirates, including without limitation DarkMatter.").

Defendants also demand Plaintiffs' bank statements, telephone records, calendars,

address books, travel itineraries to the Middle East, and expense reimbursements for any such

trips to the Middle East.  *See, e.g.*, Muzin RFPs (Brownstein Decl. Ex. 2) at Nos. 89-95.  They

have also issued overbroad and invasive subpoenas to telephone carriers AT&T, T-Mobile,

Verizon, and Bandwidth, demanding disclosure of seven years of private call logs, account

information, and other data for Plaintiffs and third parties (including Ms. Rosenzweig and Mr.

Mowbray), which necessarily would include confidential information concerning Plaintiffs'

business interests.  Brownstein Decl. Exs. 20-23.

In addition to being a gross invasion of privacy of Plaintiffs and third parties, the

information Defendants have demanded through these requests and subpoenas has absolutely no

bearing on any of Plaintiffs' claims, as Plaintiffs' business interests, relationships, and related

communications are irrelevant to whether the information obtained from the hacking of

Plaintiffs' computers was improperly used and disseminated by Defendants in violation of

statutory and common law.  Nor, as Defendants claim, is the "nature and veracity" of the stolen information relevant to any claim.  *See* Defendants' Jan. 12, 2022 letter ("Jan. 12 Letter") (Brownstein Decl. Ex. 51) at 4.  As detailed above, none of the elements of the claims require Plaintiffs to prove the veracity of the information that was stolen.  Defendants should not be allowed to use information they gleaned from the already stolen documents to try and get even *more* information to further victimize Plaintiffs and their associates.  *See In re Ashley Madison Customer Data Sec. Breach Litig.*, MDL No. 2669, 2016 U.S. Dist. LEXIS 57619, at *21 (E.D. Mo. April 29, 2016) ("Allowing Plaintiffs to use the documents stolen from [Defendant] would serve to encourage the conduct of hackers and cause businesses and individuals victimized by hackers to be more likely to give in to extortionists…While the deterrent effect in this case is indirect, it is still essential to maintain the integrity of the judicial process.").

A court in this District was confronted with a similar issue in *Management Information Technologies, Inc. v. Alyeska Pipeline Services Co.*, 151 F.R.D. 478 (D.D.C. 1993).  The court denied a defendant's motion to compel discovery after the defendant had allegedly engaged in unlawful conduct to obtain the same information it now sought.  In denying the defendant's motion, the court noted that it was "troubled by Plaintiff's assertion that [the defendant] engaged in the pattern of activity alleged in the Complaint," acknowledging that "[i]t would be tragic irony, if by order of this Court, [the defendant] were able to compel through lawful means what it was unable to obtain via allegedly unlawful and indirect means."  *Id.* at 483.  It would be equally tragic here if Defendants were permitted to obtain the irrelevant discovery they seek with abandon given the very real interests that weigh against disclosure and the potential for further serious harm to Plaintiffs and third parties.

14

Defendants' sole aim appears to be to use the discovery process to further the goals of their unlawful campaign to obtain information that could be used to disparage and embarrass Mr. Broidy and his associates.  This is not a proper use of the discovery process, and should be rejected.  *See Sharp v. Baltimore City Police Dep't*, No. 11-CV-2888, 2013 WL 937903, at *2 (D. Md. Mar. 1, 2013) ("The rules of discovery do not sanction a broad sweep into the lives of parties – a veritable witch hunt – in the hopes of uncovering some 'dirt.'  Relevancy under the federal rules is very broadly defined.  Nonetheless, it is not unlimited, and may not unnecessarily intrude into the private matters of the parties.") (internal quotations and alteration omitted) (citing *Avianca v. Corriea*, 705 F. Supp. 666, 677 (D.D.C. 1989)).

### ii. Defendants Are Not Entitled To All Discovery Concerning Plaintiffs' Advocacy Related To Qatar

Through a variety of inappropriate requests, Defendants also seek information related to Qatar, including related to Plaintiffs' efforts to expose and criticize Qatar's support of terrorism.[10]  These requests include, for example, "All communications with any U.S. Senator or U.S. Congressman (current or former) and/or members of any Senator's or Congressman's staff regarding the State of Qatar, the UAE, or Saudi Arabia, as well as any documents relating to such communications."  Muzin RFPs (Brownstein Decl. Ex. 2) at No. 59.  Defendants similarly seek "all communications" with Cabinet members, specific members of Congress, civic leaders, and representatives of a host of foreign governments.  *See, e.g.*, *id.* at Nos. 60-65.

Defendants' claim that they may seek discovery regarding these matters because they were purportedly mentioned in the Complaint must be rejected.  *See* Jan. 12 Letter (Brownstein Decl. Ex. 51) at 4-5.  Defendants argue that they are entitled to obtain discovery into Mr.

---

[10] *See* Appendix A, at Column 2.

Broidy's role in international diplomacy efforts or domestic advocacy, and his efforts to oppose the State of Qatar, because "Broidy has made his relationship with the UAE and Qatar central to this case,"[11] and they are entitled to discovery to evaluate "the scope and nature of Broidy's advocacy for or relationships with foreign governments and other foreign principals." *Id.* at 4-5. Defendants are wrong on all counts as a matter of law.[12]

"The substantive nature of the claim asserted defines relevancy," not any and all statements in a complaint. *Krieger v. Fadley*, 199 F.R.D. 10, 13 (D.D.C. 2001) ("Under Fed.R.Civ.P. 26(b), as recently amended, a party may only obtain discovery as to a matter that is relevant to the claim or defense of any party") (internal quotation omitted); s*ee also Roberts-Douglas v. Meares*, 624 A.2d 405, 410 n.3 (D.C. 1992) ("[The] allegation that appellees did not practice what they preached is not a *core issue* to the fraud count which entitles appellants to disclosure of all personal financial information of appellees.") (emphasis added).  This is the case even if the information sought through discovery is a matter of public concern, so long as the discovery sought is irrelevant to claims or defenses at issue in the action, as here. *Chavous v. District of Columbia Financial Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 4 (D.D.C. 2001) (holding that although the issue the plaintiff sought to investigate through

---

[11] This is flatly untrue.  The Complaint contains no discussion about Plaintiffs' relationship with UAE, let alone making it "central to this case."  As for Qatar, the Complaint discusses how the Qatari Enterprise was motivated to silence Mr. Broidy's criticism of Qatar's terror sponsorship. As discussed below, the only parties Defendants would have a basis to subpoena regarding the motives of the Qatari Enterprise are *other* members of the Enterprise.

[12] It also does not matter whether Mr. Broidy's motivations were purely "selfless" or not.  Jan. 12 Letter (Brownstein Decl. Ex. 51) at 4.  His motivations are irrelevant to the claims and defenses, and no matter what Plaintiffs' conduct and sentiments were or are, Defendants are not excused from engaging in the extensive misconduct described in the Complaint, including the dissemination of Plaintiffs' hacked materials to the media in order to harm Plaintiffs.

discovery . . . is "undeniably a matter of grave public concern," it is not the issue presented by the complaint and is therefore "not relevant to the claims or defenses of any party").

Mr. Broidy's relationships with other foreign governments, individuals, or organizations as part of his work to expose and condemn Qatar's support for terrorism may be relevant to *why* Qatar would want to discredit and silence Mr. Broidy in the first place. But these matters are irrelevant to whether Defendants improperly used and/or disseminated the trade secret and other confidential information obtained from the hacking of Plaintiffs' computers – the only claims that are actually at issue in this case. Accordingly, Defendants may not seek this sort of discovery from Plaintiffs or third parties concerning Qatar.

### iii. Defendants Are Not Entitled To Discovery Concerning The DOJ Investigation

Defendants also demand production of information concerning an unrelated investigation conducted by the U.S. Department of Justice concerning Mr. Broidy.[13] Defendants request, for example, "All documents and communications regarding the State of Qatar, the UAE, or Saudi Arabia that Broidy or his attorneys shared with, or received from the United States government in the context of negotiating Broidy's plea deal for one count of conspiracy to violate the Foreign Agents Registration Act ("FARA")." Muzin RFPs (Brownstein Decl. Ex. 2) at No. 100. Defendants also request documents and communications concerning foreign countries and a variety of members of the U.S. government, including the President and political action committees, "in the context of negotiating Broidy's pardon related to one count of conspiracy to violate FARA." *Id.* at Nos. 101-02.

---

[13] *See* Appendix A, at Column 3.

The investigation of Mr. Broidy in an unrelated proceeding, including his subsequent plea and pardon, have *no possible relevance* to the claims here.  Moreover, to the extent these proceedings had any conceivable relevance (and they do not), Defendants already have all the information they could possibly need:  the case against Mr. Broidy is public, as was his plea agreement and pardon.  It is not appropriate for Defendants to seek additional information or "dirt" regarding these matters through discovery in this litigation.  *See Sharp*, 2013 WL 937903, at *2.  Defendants' goal in pursuing this discovery can only be to further denigrate Mr. Broidy.  This is an abuse of the discovery process, and Plaintiffs are entitled to a protective order preventing them or third parties from having to respond to the improper requests which call for information related to the DOJ investigation.

### B.     The Irrelevant Topics Are Unrelated To Any Valid Defense

While Rule 26(b) also permits discovery into defenses to claims, those defenses must be warranted by existing law and non-frivolous.  *See Blumenthal v. Drudge*, 186 F.R.D. 236, 239 (D.D.C. 1999) (reminding defendant that "not all subjects are relevant to the claims brought against him or the *legitimate defenses* he might raise in this lawsuit."); *see also* Fed. R. Civ. P. 11(b)(2) ("By presenting to the court a pleading . . . an attorney . . . certifies that . . . [the] defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.").  In their answers, Defendants have asserted a multitude of so-called affirmative defenses.  *See* ECF No. Nos. 75, 76, 77.  Defendants claim that three of those affirmative defenses provide the purported basis for the discovery they seek concerning the Irrelevant Topics.  Jan 12. Letter (Brownstein Decl. Ex. 51) at 2, 4-5.  Defendants are wrong.

First, defendant Howard claims that his so-called "First Amendment Defense" allows Defendants to seek discovery from Plaintiffs and third parties to "evaluate" the allegedly illegal

activities evidenced in Mr. Broidy's hacked emails.  *Id.* at 4 (claiming discovery into the Irrelevant Topics is necessary so Howard can "evaluat[e] the illegal activities evidenced in Broidy's allegedly hacked emails, which is particularly important to Defendant Howard's First Amendment defense"); *see also, e.g.*, Howard's First Set of Requests for Production of Documents ("Howard RFPs") (Brownstein Decl. Ex. 3) at No. 45 ("all communications with any person at the United States Department of Justice concerning" Malaysia Development Berhad and a multitude of foreign individuals).

This Court, however, expressly *rejected* Howard's First Amendment defense as a matter of law when it ruled on the Defendants' motions to dismiss.  ECF No. 51 at 43-44.  The Court stated that "if Broidy can establish Howard's involvement in the conspiracy, Howard would be liable for the illegal interception as if he committed the hacking himself.  The Court rejects Howard's First Amendment defense."  *Id.*  This rejected defense cannot serve as a basis for *any* discovery.  And even if it were a viable defense (it is not), the actual discovery Defendants seek is not even relevant to asserting that defense.  The information which Defendants claim to be a matter of public concern is already public, and this litigation may not be used by Defendants as a vehicle to uncover more so-called "dirt" on Plaintiffs.  *See Sharp*, 2013 WL 937903, at *2; *see also Chavous*, 201 F.R.D. at 4 (although the matter is "undeniably a matter of grave public concern," it is not the issue presented by the complaint and is "not relevant to the claims or defenses of any party").  Moreover, Howard's First Amendment defense could only relate to *his* supposed motivation in disclosing the information at issue, *not* the veracity of the underlying information or anyone else's motivations.

Second, Defendants claim that they are entitled to discovery into what they describe as "illegal activities" in order to determine whether Mr. Broidy's trade secrets may not be protected

as such.  Jan. 12 Letter (Brownstein Decl. Ex. 51) at 4.  While it is not clear what sort of

purported "illegal activities" Defendants are referring to, regardless this is also not a valid basis

for any discovery.  It is Plaintiffs' obligation to prove each of the elements of their claims,

including, for Plaintiffs' CUTSA and DTSA claims, that their trade secrets were

misappropriated.  *See Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*, No. 18-CV-

1927, 2021 WL 4895977, at *20 (S.D. Cal. Oct. 20, 2021) ("To prevail on a DTSA or CUTSA

claim, a plaintiff must prove [] the plaintiff owned a trade secret . . . .").  As explained in their

discovery responses, Plaintiffs have already agreed to and will provide discovery regarding the

stolen trade secrets that are the subject of the claims in this case.  *See, e.g.*, Brownstein Decl. Ex.

28 at Nos. 11-13, 22-25; Plaintiffs' Second Amended Responses & Objections to Howard's First

Set of Interrogatories (Brownstein Decl. Ex. 32) at No. 7.

      Third, Defendants each have asserted an "unclean hands" defense (*see* ECF Nos. 75 at

103; 76 at 107; 77 at 43), and assert that discovery from Plaintiffs and third parties into what

they say may amount to "illegal" conduct may be a defense to the claims against them.  *See e.g.*,

Jan. 12 Letter (Brownstein Decl. Ex. 51) at 4-5; *see also* ECF No. 161 at 28.  They are wrong,

because the Irrelevant Topics have nothing to do with any potential valid unclean hands defense.

The unclean hands doctrine "only applies when there is a *direct nexus* between the bad conduct

and the activities sought to be enjoined."  *Cent.  United Life, Inc. v. Burwell*, 128 F. Supp. 3d

321, 330 (D.D.C. 2015), *aff'd sub nom. Cent. United Life Ins. Co. v. Burwell*, 827 F.3d 70 (D.C.

Cir. 2016) (emphasis added); *accord Heiner v. Kmart Corp*., 84 Cal. App. 4th 335, 346 n.4 (Cal.

App. Ct. 2000) (alleged conduct supporting an unclean hands defense "must relate directly to the

cause at issue").  The Irrelevant Topics – including Plaintiffs' own business dealings, efforts

concerning Qatar and its support of terrorism, and an unrelated investigation into Mr. Broidy –

have no nexus, let alone the requisite "direct nexus," to an unclean hands defense to the claims here, even assuming Defendants' inflammatory characterizations of such matters are accurate (though they are not). *See also* Section III.B, *infra*.

Fourth, Defendants claim that they may seek discovery regarding Plaintiffs' purported "use of various litigations to obtain Qatar's privileged information" for others – without *any support* for leveling such an outrageous (and false) accusation. Jan. 12 Letter (Brownstein Decl. Ex. 51) at 4. Defendants apparently believe that this entitles them to seek discovery from Plaintiffs and third parties concerning Plaintiffs' business relationships and sentiments about Qatar. *See, e.g.*, Muzin RFPs (Brownstein Decl. Ex. 2) at No. 81 ("All documents and communications regarding Broidy's advocacy, lobbying, or consulting efforts relating to the State of Qatar or any Qatar-based entity."). But a party may not seek discovery without a legitimate basis to do so, and Defendants do not have any such basis. *See Food Lion, Inc. v. United Food and Commercial Workers Int'l Union*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997) (finding information sought irrelevant because, "While the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'"). Even if there were some semblance of truth to the contention (and there is none), it would still have absolutely no bearing on the merits of any of the claims or defenses in this action, and therefore is not a valid defense and cannot be a basis for discovery pursuant to Rule 26(b).

## C.     Defendants Improperly Seek Privileged Information

Defendants are also improperly attempting to use the discovery process to obtain privileged information of Plaintiffs and third parties. "A valid claim of privilege is considered

good cause to justify a protective order." *Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64, 69 (D.D.C. 2017) (quotations omitted). *See* Appendix A, at Column 4.

A number of Defendants' requests to Plaintiffs and to third parties explicitly seek all "documents relating to" communications between Mr. Broidy's attorneys and a variety of governments, entities, and individuals, which requests implicitly call for disclosure of privileged information. *See, e.g.*, Muzin RFPs (Brownstein Decl. Ex. 2), at Request Nos. 64-72; Howard RFPs (Brownstein Decl. Ex. 3) at Nos. 34, 39. Other requests could implicate the common interest privilege. *See, e.g.*, Muzin RFPs (Brownstein Decl. Ex. 2) at Nos. 66-72. For example, Defendants seek:

> All communications with any official or representative of the government of the UAE regarding the State of Qatar, including communications between Broidy's attorneys and any such official, representative, or attorney of the official or representative, as well as any documents relating to such communications. For purposes of this request, Broidy's attorneys include without limitation Latham & Watkins LLP and Boies Schiller Flexner LLP.

*Id.* at No. 65. The portion of this request demanding "any documents relating to such communications" would include information protected by the attorney client privilege.

Defendants also improperly seek information protected by spousal privilege. For example, Muzin demands that Broidy produce "All communications with Robin Rosenzweig or her staff, agents, or representatives regarding the State of Qatar, the UAE, Saudi Arabia, Defendants, and the alleged hacking, as well as any documents relating to such communications." *Id.* at No. 107; *see* Appendix A. Column 5. Plaintiffs should not be required to produce any such protected information.

In addition to seeking privileged materials from Plaintiffs, Defendants go even further, issuing subpoenas to one of Plaintiffs' attorneys, Mr. Mowbray, as well as Mr. Broidy's wife,

Robin Rosenzweig.  *See* Brownstein Decl. Exs. 14, 15.  These subpoenas necessarily seek information protected by the attorney client and spousal privileges.

## II.       Defendants' Subpoenas Should Be Quashed Or Modified

In addition to issuing the protective order to limit all discovery Defendants seek from Plaintiffs and third parties, all of the subpoenas Defendants have issued that are returnable in this jurisdiction (the "DC Subpoenas") should also be quashed or modified pursuant to Rule 45(d) – which provides additional grounds for the Court to limit discovery – because, like the discovery sought from Plaintiffs, these subpoenas demand irrelevant information from third parties that is not discoverable, and in which Plaintiffs have a personal interest and/or proprietary interest.[14] The DC subpoenas also impose undue burdens on the third parties because, like the demands Defendants have served on Plaintiffs, they seek information from as far back as 2016, which information is not relevant.  *See* Section I.A, *supra*.

Defendants' third-party discovery amounts to a continuation of Defendants' scheme to harm Plaintiffs and their associates by dragging into this litigation third parties (many of whom have also sought to expose and/or criticize Qatar's support for terrorism), even though those third parties could have no information relevant to the claims or defenses in this case.  Further, many of the third parties Defendants have subpoenaed could only be known to Defendants

---

[14] Plaintiffs are only moving to quash the DC Subpoenas because this Court may not currently have jurisdiction to entertain motions to quash concerning the 15 other subpoenas Defendants issued that are returnable in other Districts, until transferred to this Court.  However, the Court unquestionably has the power to issue a protective order in this case governing all discovery, including all subpoenas, that the parties may pursue.  *Coleman*, 275 F.R.D. at 36-37.  *See* Section I, *supra*.  Moreover, the requests contained in the DC Subpoenas mirror the requests in Defendants' other subpoenas (apart from those issued to the telephone carriers), such that Defendants will implicitly be required to apply the Court's ruling on this motion to quash the DC Subpoenas to their other subpoenas as well.

because of the hacked materials  –  making these irrelevant and highly burdensome subpoenas little more than a direct continuation of the Defendants' unlawful campaign to harm Plaintiffs.

### A.   The DC Subpoenas Seek Irrelevant Information And Therefore Are Unduly Burdensome

Courts are required to quash or modify subpoenas that "subject[] a person to undue burden."  Fed. R. Civ. P. 45(d)(3); *see also* Fed. R. Civ. P. 45(d)(1).  A "subpoena imposes an undue burden on a party when [it] is overbroad," and all the more so when it is completely irrelevant.  *In re Subpoena Duces Tecum*, 550 F. Supp. 2d at 612; *see also United States v. International Business Machines Corp.*, 83 F.R.D. 97, 106 (S.D.N.Y. 1979) (a subpoena is overbroad to the extent it "sweepingly pursues material with little apparent or likely relevance to the subject matter.").  *See Gouse v. D.C.*, 359 F. Supp. 3d 51, 56 (D.D.C. 2019) ("If a subpoena compels disclosure of information that is not properly discoverable, then the burden it imposes, however slight, is *necessarily* undue.") (citing *AF Holdings, LLC v. Does* 1-1058, 752 F.3d 990, 995 (D.C. Cir. 2014)) (emphasis added).

Like the requests served on Plaintiffs, virtually all of the subpoenas that Defendants have served on third parties call for information entirely irrelevant to any of the claims and defenses in this case.  *See* Section I, *supra*; Appendix A at Columns 1-3.  For example, in at least 21 of their subpoenas (and at least 5 of the DC subpoenas), Muzin and Howard have demanded "all" of the third parties' communications with "any person regarding Broidy's business dealings with the UAE or Saudi Arabia, or any officials, agents, or representatives of those countries, as well as any documents relating to such communications."  Brownstein Decl. Exs. 6-11, 17-19, 24-27, 39-41, 44-48.

Though Defendants have not tried to explain the relevance or need for any of these subpoenas, it is clear that all of the information sought through them is "patently irrelevant" to

the elements of any of the claims or available defenses. *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 36 (D.D.C. 2012). It is the type of "information that has no conceivable bearing on the case." *Food Lion*, 103 F.3d at 1012. Details about the communications of Mr. Broidy, his legal team, his spouse, or any other third parties for whom such details were sought from the carriers have absolutely no bearing on the claims or defenses in this action. As such, these four subpoenas should also be quashed in their entirety.

### B.     Certain of Defendants' DC Subpoenas Seek Privileged Information

Rule 45 requires courts to quash subpoenas that call for the disclosure of privileged or other protected matter. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv); *see also Worldwide Film Ent., LLC v. Does* 1-749, No. CIVA100038HHKDAR, 2010 WL 2011306, at *2 (D.D.C. May 20, 2010); *Watts* v. *SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007).[9]  In addition to the other defects discussed above, at least the subpoena from Muzin to Circinus should also be quashed or at the very least modified because it seeks clearly privileged information to which Defendants are simply not entitled. Circinus, a non-party entity affiliated with Mr. Broidy, is a defense contractor and consultant. Muzin's subpoena demands that Circinus produce

> All communications with Broidy, his agents, or his representatives, including
> without limitation lawyers at Boies Schiller Flexner LLP and Latham & Watkins,
> regarding Defendants, the alleged hacking, the State of Qatar, Saudi Arabia, or
> any individuals or entities – including without limitation nonprofit organizations,
> think tanks, and media organizations – that received funding from those countries,
> as well as any documents relating to such communications.

Muzin Subpoena to Circinus (Brownstein Decl. Ex. 6) at No. 9; *see also* Appendix A, at Column 4. The requests in this subpoena, as well as in any other of the DC Subpoenas, which call for Plaintiffs' privileged information should be quashed.

---

[9] The pre-2013 cases cite to an older version of Rule 45. Rule 45(c) is now Rule 45(d), but the privilege, burden, and commercial information clauses are identical.

**C.      Defendants' Subpoenas Call For Disclosure Of Protected Confidential Information**

A court may quash or modify a subpoena if it requires disclosing a trade secret or other confidential research, development, or commercial information.  Fed. R. Civ. P. 45(d)(3)(B)(i). In determining whether information is protected, courts must evaluate whether the information being sought is the type of commercial information that should not be disclosed to the public. *Albany Molecular Rsch., Inc. v. Schloemer*, 274 F.R.D. 22, 25 (D.D.C. 2011).  Among the factors courts typically consider is "whether release of the information would unfairly harm the disclosing party's ability to compete in the marketplace.  *Falicia v. Advanced Tenant Serv., Inc*., 235 F.R.D. 5, 7 (D.D.C. 2006).

Many of Defendants' requests should be quashed because they invade Mr. Broidy's personal and professional privacy.  Defendants seek confidential commercial information that should not be disclosed to the public and that could cause Mr. Broidy, as well as the third parties who have been subpoenaed, financial or competitive injury.  *See, e.g.*, Appendix A, at Column 6. For example, defendant Muzin seeks the following from Circinus

> All documents and communications regarding monetary payments or donations made or received by You or Broidy, in connection with Broidy's or Your own advocacy, lobbying, or consulting efforts relating to the State of Qatar, including without limitation monetary payments or donations made by or received from Saudi Arabia or the UAE, or any individuals or entities – including but not limited to nonprofit organizations, think tanks, and media organizations – that received funding from either countries.

Muzin Subpoena to Circinus (Brownstein Decl. Ex. 6) at No. 10.  He also demands communications "regarding Broidy's non-Circinus business dealings with the UAE or Saudi Arabia…." *Id.* at No. 11.  Requests for confidential information concerning the details of Circinus and Mr. Broidy's business dealings – which is irrelevant to the claims and defenses here

(*see* Section I.A.i, *supra*) – can have no purpose other than to cause financial or competitive harm to Mr. Broidy and the subpoenaed parties.

## III.   The Court Should Strike Defendants' Affirmative Defenses

The Court should also strike Defendants' affirmative defenses based on the First Amendment and the equitable doctrine of unclean hands that Defendants' have used as a Trojan horse for the vast and irrelevant discovery detailed above.  These defenses are deficient as a matter of law and granting the motion will eliminate the unnecessary expense of litigating these frivolous defenses.[15]

### A.   The Court Has Already Rejected Howard's First Amendment Defense As A Matter Of Law

In flagrant violation of the Courts' motion to dismiss decision, Howard alone has asserted an affirmative defense based the First Amendment.

Where, as here, "a court has already considered and rejected an affirmative defense, striking that defense is proper so as to avoid confusion and eliminate defenses that are legally insufficient." *Asphaltos Trade, S.A. v. Bituven Puerto Rico, LLC*, No. 18-1876 (BJM), 2021 WL 965645, at *5 (D.P.R. Mar. 15, 2021) (striking affirmative defenses that were previously raised and rejected); *see also Bureau of Consumer Financial Protection v. Fair Collections & Outsourcing, Inc.*, No. GJH-19-2817, 2021 WL 2685251, at *5 (D. Md. June 30, 2021) (rejecting

---

[15]   In the alternative, the Court may grant partial summary judgment striking the defenses where, as here, the basis for doing so is purely legal.  *See United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 13, 17 (D.D.C. 2004) (striking affirmative defense on purely legal grounds on summary judgment and finding that "[a] determination on a strict legal issue can narrow the issues in a case, advance the progress of the litigation, and provide the parties with some guidance as to how they proceed with the case.") (internal citations, quotations and modifications omitted); *see also 325–343 56th Street Corp. v. Mobil Oil Corp.*, 906 F.Supp. 669, 679 (D.D.C. 1995) ("When the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate.").

affirmative defenses that had been considered and rejected in prior court opinion); *E.E.O.C. v. Spoa, LLC*, No. CIV. CCB-13-1615, 2014 WL 47337, at *4 (D. Md. Jan. 3, 2014) (striking defense of laches where the court had already considered and rejected that argument in connection with defendant's motion to dismiss); *United States v. CVS Caremark Corp.*, No. CIV.A. 09-4672, 2013 WL 1755214, at *4 (E.D. Pa. Apr. 24, 2013) (striking affirmative defenses that reiterated arguments in the defendant's motion to dismiss, which the Court previously rejected); *AMEC Civ., LLC v. DMJM Harris, Inc.*, No. CIV.A. 06-64(FLW), 2007 WL 433328, at *5 (D.N.J. Feb. 6, 2007) (striking affirmative defenses previously raised and decided by the court).

As shown above, the Court expressly "reject[ed] Howard's First Amendment defense" in connection with Defendants' Motions to Dismiss.  ECF No. 51 at 44.  Howard asserts in a footnote in Defendants' recent motion to compel that "[t]he Court did *not* reject that defense." Dkt. No. 166 at n.13 (emphasis added).  Of course, the Court unambiguously did reject that defense in those exact terms, and, in doing so, the Court correctly distinguished Howard – a paid lobbyist – from a reporter who was a "stranger[] [to the] illegal conduct" and "played no part in the illegal interception of information."  ECF No. 51 at 44.  Plaintiffs are unaware of any case applying the First Amendment defense asserted by lobbyists (and non-reporters), who were part of a conspiracy to illegally obtain a plaintiff's materials, to claims based on theft.  While Howard's role in the conspiracy is a fact issue, the viability of Howard's First Amendment defense is not.

Thus, Howard's First Amendment defense should be stricken as a matter of law.

**B.      The Court Should Strike Defendants' Unclean Hands Defenses**

The Court should also strike Defendants' unclean hands defense as a matter of law.

While not specified in their Answers, which is itself a basis to strike that defense,[16] Defendants subsequently explained the bases of their "unclean hands" defense in their recent motion to compel.  Specifically, they assert that their unclean hands defense is based on: "Broidy's lobbying of U.S. government officials on behalf of foreign principals; Broidy's contracts with, payments from, and communications with the UAE, Saudi Arabia, Angola, Malaysia, and other foreign clients; and Broidy's efforts to attack and undermine Qatar, a geopolitical rival of Broidy's foreign clients and prospective clients in the region."  ECF No. 161 at 28.

Putting aside that neither lobbying nor having contracts with foreign governments is improper, none of Mr. Broidy's alleged conduct has the required "direct nexus" to Plaintiffs' claims based on Defendants' unlawful conspiracy to hack Plaintiffs' servers.  *See* Section I.B, *supra*.  Defendants do not – and cannot – tie Plaintiffs' purported "illegal or unethical conduct . . . into the sort of 'direct relation' to the causes of actions [P]laintiffs' assert in this case."  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 713-14 (N.D. Cal. 2019); s*ee also S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 932 (9th Cir. 2014) (unclean hands defense based on plaintiff's violation of various laws stricken because such unlawful conduct did not have an "immediate and necessary relation to the equity that [a

---

[16] *See Brown v. Wells Fargo Bank, N.A.*, No. 11-CV-1156 (BJR), 2012 WL 13214663, at *3 (D.D.C. Oct. 1, 2012) ("Court[s] have 'consistently struck' the defenses of waiver, estoppel, and laches 'where they are insufficiently pled.'") (citation omitted); *United States for Use & Benefit of A&C Constr. & Installation Co. WLL v. Zurich Am. Ins. Co.*, No. 17 C 4307, 2019 WL 195025, at *2 (N.D. Ill. Jan. 15, 2019) (despite a lower pleading threshold applicable to affirmative defenses, the allegations in these affirmative defense must still provide Plaintiff with "appropriate notice" of the basis for the defense"); *Devermont v. City of San Diego*, No. 12-CV-1823-BEN(KSC), 2013 WL 2898342, at *16-17 (S.D. Cal. June 12, 2013) (striking boiler plate defense that lacks any indication "of the conduct supporting the defense" and thus do "not pass muster, even under the fair notice standard").

plaintiff] seeks in respect of the matter in litigation"); *Malibu Media, LLC v. Peterson*, No. 16-CV-786 JLS (NLS), 2017 WL 1550091, at *4 (S.D. Cal. May 1, 2017) (striking unclean hands defense because "general violations of law both in the creation of the works and in monitoring Defendant's IP address. . . does not go to the copyrightability of the works here at issue").

Defendants' inclusion of the unclean hands defense is a not-so-veiled attempt to paint Mr. Broidy as a "bad guy" to suggest absurdly that Plaintiffs' somehow deserved to be hacked.  But "[t]he determination of the unclean hands defense cannot be distorted into a proceeding to try the general morals of the parties."  *Heiner*, 84 Cal. App. 4th at 346 n.4; *see also id*. ("[p]ast improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice"); *Planned Parenthood Fed'n of Am., Inc.*, 402 F. Supp. 3d at 714 (rejecting unclean hands defense where, as here, "defendants are attempting to 'try the general morals of the parties,' which is beyond the scope of this affirmative defense").

"An unclean hands defense further requires proof that the offending conduct materially prejudiced a party's ability to defend itself."  *Hynix Semiconductor Inc. v. Rambus, Inc.*, 591 F. Supp. 2d 1038, 1067 (N.D. Cal. 2006), *vacated on other grounds,* 645 F.3d 1336 (Fed. Cir. 2011) (collecting cases).  Defendants have not alleged in their boilerplate pleadings (or in their motion to compel for that matter) how Plaintiffs' alleged lobbying or contracts with foreign governments "materially prejudiced" their ability to defend themselves here, nor could they.

Thus, this Court should strike Defendants' unclean hands defense.  *See NIANTIC, INC., Plaintiff, v. GLOBAL++, et al.*, No. 19-CV-03425-JST, 2020 WL 1548465, at *10 (N.D. Cal. Jan. 30, 2020) (striking unclean hands as legally insufficient because "Defendants allege no facts to show (1) inequitable conduct by [plaintiff], (2) that [plaintiffs'] conduct directly relates to any claims it has asserted against Defendants, or (3) that [plaintiff's] conduct injured Defendants").

## **<u>CONCLUSION</u>**

Defendant's discovery demands to both Plaintiffs and third parties are plainly aimed at causing Mr. Broidy additional harm.  The discovery sought from Plaintiffs and dozens of third parties is harassing, invasive of Plaintiffs' and the third parties' privacy rights, unduly burdensome, and designed to cause unnecessary delay while needlessly increasing the cost of litigation (including by necessitating the instant motion).  Defendants are abusing the process of discovery to once again re-target their victims, and to try and use the fruits of their earlier efforts in order to identify new critics of Qatar that also, in their view, need to be silenced.

In light of the foregoing, Plaintiffs respectfully request that the Court enter a protective order limiting all party and non-party discovery in this case to matters relevant to the claims in the Complaint and any legitimate defenses to those claims; preventing Defendants from seeking discovery concerning any of the Irrelevant Topics as well as discovery of privileged and protected matters; forbidding Defendants from pursuing discovery for the improper purposes of harassing, causing unnecessary delay, and/or needlessly increasing the cost of litigation; and quashing or modifying the DC Subpoenas as appropriate.  Plaintiffs also request that the Court strike the affirmative defenses based on the First Amendment and unclean hands, with prejudice.

Dated: February 14, 2022

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By: /s/ *Henry B. Brownstein*

  Henry B. Brownstein
  D.C. Bar No. 1026042
  1399 New York Avenue, Suite 201
  Washington, D.C. 20005
  Tel.: (202) 760-3400
  hbrownstein@kasowitz.com

  Daniel R. Benson (*pro hac vice*)
  Andrew R. Kurland (*pro hac vice*)
  Jacob Benson (*pro hac vice*)
  1633 Broadway
  Tel.: (212) 506-1700
  New York, New York 11019
  dbenson@kasowitz.com
  akurland@kasowitz.com
  jbenson@kasowitz.com

  *Counsel for Plaintiffs Broidy Capital*
  *Management, LLC and Elliott Broidy*

Appendix A

| REQUESTS TO PLAINTIFFS | | | | | | |
|---|---|---|---|---|---|---|
| | 1. Plaintiffs' Purported Business Relationships | 2. Information Related To Qatar | 3. DOJ Investigation | 4. Attorney Client Privilege | 5. Spousal Privilege | 6. Confidential/ Private Information |
| **Howard's First Set of Requests for Admission (Brownstein Decl. Ex. 1)** | 1-9, 11-12, 14-15, 19, 29-30, 37-39, 41-50 | 10, 13, 16-18, 20-28, 31-36 | | | | |
| **Muzin's First Set of Requests for Production of Documents (Brownstein Decl. Ex. 2)** | 20, 21*, 33, 50*, 58-63, 66-72, 73*, 74, 82, 86-96, 105*, 107*, 119 | 50*, 51, 54-56, 58-72, 74, 80-81, 83-85, 96, 103-104, 105*, 107*, 116, 118* | 74-79, 100-102 | 14, 64-72, 76, 78, 104, 109 | 107 | |
| **Howard's First Set of Requests for Production of Documents (Brownstein Decl. Ex. 3)** | 34-36, 40, 41 | 33-34, 37-40, 42, 44 | | 31-32, 34, 39 | | |
| **Muzin's First Set of Interrogatories (Brownstein Decl. Ex. 4)** | 4-8, 20-22 | 7, 17-22 | | | | |
| **Howard's First Set of Interrogatories (Brownstein Decl. Ex. 5)** | 8-11 | 5-6 | | | | |

**\***An asterisk indicates an agreement to search for and produce information in response to the portion of the request which does seek relevant information, through objections have been asserted with respect to the remainder of the request which seeks irrelevant and/or protected information.

Appendix A

| DC SUBPOENAS | | | | | | |
|---|---|---|---|---|---|---|
| | **1. Plaintiffs' Purported Business Relationships** | **2. Information Related To Qatar** | **3. DOJ Investigation** | **4. Attorney Client Privilege** | **5. Spousal Privilege** | **6. Confidential/ Private Information** |
| **Muzin's Document Subpoena to Circinus (Brownstein Decl. Ex. 6)** | 1, 2*, 3-8, 9*, 10-11, 12*, 13*, 14-28, 31-36 | 1, 2*, 4, 8, 9*, 10, 12*, 13*, 20-22, 24-35 | | 6, 9*, 29-30 | | 10-11, 14-16, 21-23, 31, 36 |
| **Muzin's Document Subpoena to Bluelight Strategies (Brownstein Decl. Ex. 7)** | 1-2, 4-7,  9-16 | 1-2, 3, 5, 9, 11, 16-18 | | 1-2 | | 10-13 |
| **Muzin's Document Subpoena to Ronald Bonjean (Brownstein Decl. Ex. 8)** | 1-2, 4, 6-23 | 1-2, 4-5, 7, 9-11, 13, 20-21 | | 1-2 | | 12-15 |
| **Muzin's Document Subpoena to Steven Rabinowitz (Brownstein Decl. Ex. 9)** | 1-2, 4-16 | 1-3, 5, 9, 11, 16 | | 1-2 | | 10-13 |
| **Muzin's Document Subpoena to Edward Royce (Brownstein Decl. Ex. 10)** | 1-2, 4-24 | 1-3, 5, 9, 11, 17, 19-21 | | 1-2 | | 10-13 |
| **Muzin's Document Subpoena to Charles Wald (Brownstein Decl. Ex. 11)** | 1-2, 4-16, 18-24 | 1-3, 5, 9, 17, 21 | | 1-2 | | 11-15 |
| **Muzin's Document Subpoena to American Media Institute (Brownstein Decl. Ex. 12)** | 1-2, 4-14-18 | 1-3, 5, 9, 11, 16-17 | | 1-2 | | 10-13 |

Appendix A

| DC SUBPOENAS | | | | | | |
|---|---|---|---|---|---|---|
| | 1. Plaintiffs' Purported Business Relationships | 2. Information Related To Qatar | 3. DOJ Investigation | 4. Attorney Client Privilege | 5. Spousal Privilege | 6. Confidential/ Private Information |
| **Muzin's Document Subpoena to Richard Miniter (Brownstein Decl. Ex. 13)** | 1-2, 4-14-18 | 1, 3, 5, 9, 11, 16-17 | | 1-2 | | 10-13 |

Appendix A

| OTHER SUBPOENAS | | | | | | |
|---|---|---|---|---|---|---|
| | **1. Plaintiffs' Purported Business Relationships** | **2. Information Related To Qatar** | **3. DOJ Investigation** | **4. Attorney Client Privilege** | **5. Spousal Privilege** | **6. Confidential/ Private Information** |
| **Muzin's Document Subpoena to Robin Rosenzweig (Brownstein Decl. Exh. 14)** | 2*, 3*, 4*, 12-14, 16, 17*, 19-23, 25 | 3*, 10-11, 13-14, 17*, 18*, 20 | | 1*, 4*,  5*, 10-11, 13-14, 15*, 16, 17*, 18*, 19-21, 22*, 25 | 1*, 4*, 5*, 10-11, 15*, 16, 17*, 19-21 | 4*, 17*, 19, 23 |
| **Muzin's Document Subpoena to Joel Mowbray (Brownstein Decl. Ex. 15)** | 4*, 6*, 7, 14-33, 36-43, 46-47, 49*, 50, 51, 53, 55, 56*, 57, 59-66, 67-68*, 69-77, 79-80 | 4*, 7*, 14, 16-17, 19-20, 26-28, 29-34, 35-42, 46-48, 49*, 54, 55, 56*, 61, 67-68, 76, 78-79 | | 2, 4*, 5*, 26-27, 34-42, 45-51, 53-55, 56*, 57, 59-65, 77, 81*, 82* | | 4*, 19-22, 27-28, 46, 59-60, 63-65, 69-76 |
| **Howard's Document Subpoena to Circinus (Brownstein Decl. Ex. 16)** | 1-34 | | | 30 | | 6-8, 26-28 |
| **Muzin's Document Subpoena to Delon Cheng (Brownstein Decl. Ex. 17)** | 1-2, 10-27, 29, 31 | 1-2, 9-10, 14, 16-18, 21, 31 | | 1, 31, 36-38 | | 12, 13, 20-22 |
| **Muzin's Document Subpoena to David Reaboi (Brownstein Decl. Ex. 18)** | 1-2, 4-15 | 1-3, 5, 9, 11 | | 1-2 | | 10-13 |
| **Muzin's Document Subpoena to Ileana Ros-Lehtinen (Brownstein Decl. Ex. 19)** | 1-2, 4-20, 22-24 | 1-3, 5, 9, 11, 17-21 | | 1-2 | | 10-13 |

Appendix A

| OTHER SUBPOENAS | | | | | | |
|---|---|---|---|---|---|---|
| | 1. Plaintiffs' Purported Business Relationships | 2. Information Related To Qatar | 3. DOJ Investigation | 4. Attorney Client Privilege | 5. Spousal Privilege | 6. Confidential/ Private Information |
| **Howard's Document Subpoena to AT&T (Pacific Bell) (Brownstein Decl. Ex. 20)** | | | | | | 1-6 |
| **Howard's Document Subpoena to T-Mobile USA, Inc. (Brownstein Decl. Ex. 21)** | | | | | | 1-6 |
| **Howard's Document Subpoena to Bandwidth (Brownstein Decl. Ex. 22)** | | | | | | 1-6 |
| **Howard's Document Subpoena to Verizon Wireless (Brownstein Decl. Ex. 23)** | | | | | | 1-6 |
| **Howard's Document Subpoena to The Hudson Institute, Inc. (Brownstein Decl. Ex. 24)** | 1-2, 5-17 | 1-3, 5, 9, 11, 16-17 | | 1-2 | | 10-13 |
| **Howard's Document Subpoena to Secure America Now Foundation (Brownstein Decl. Ex. 25)** | 1-2, 5-17 | 1-3, 5, 9, 11, 16-17 | | 1-2 | | 10-13 |
| **Howard's Document Subpoena to The Jewish Institute for National Security of America (Brownstein Decl. Ex. 26)** | 1-2, 5-17 | 1-3, 5, 9, 11, 16-17 | | 1-2 | | 10-13 |

Appendix A

| OTHER SUBPOENAS | | | | | | |
|---|---|---|---|---|---|---|
| | 1. Plaintiffs' Purported Business Relationships | 2. Information Related To Qatar | 3. DOJ Investigation | 4. Attorney Client Privilege | 5. Spousal Privilege | 6. Confidential/ Private Information |
| **Howard's Document Subpoena to Aaron Keyak (Brownstein Decl. Ex. 27)** | 1-2, 5-17 | 1-3, 5, 9, 11, 16-17 | | 1-2 | | 10-13 |
| **Howard's Second Document Subpoena to Aaron Keyak (Brownstein Decl. Ex. 39)** | 1-2, 5-17 | 1-3, 5, 9, 11, 16-17 | | 1-2 | | 10-13 |
| **Howard's Document Subpoena to Adelle Nazarian (Brownstein Decl. Ex. 40)** | 1-2, 5-18 | 1-3, 5, 9, 11, 16-18 | | 1-2 | | 10-13 |
| **Howard's Document Subpoena to Andrew Harrod (Brownstein Decl. Ex. 41)** | 1-2, 5-18 | 1-3, 5, 9, 11, 16-18 | | 1-2 | | 10-13 |
| **Howard's Second Document Subpoena to AT&T (Pacific Bell) (Brownstein Decl. Ex. 42)** | | | | | | 1-6 |
| **Howard's Second Document Subpoena to Bandwidth (Brownstein Decl. Ex. 43)** | | | | | | 1-6 |

Appendix A

| OTHER SUBPOENAS | | | | | | |
|---|---|---|---|---|---|---|
| | 1. Plaintiffs' Purported Business Relationships | 2. Information Related To Qatar | 3. DOJ Investigation | 4. Attorney Client Privilege | 5. Spousal Privilege | 6. Confidential/ Private Information |
| Howard's Document Subpoena to Daniel Pipes (Brownstein Decl. Ex. 44) | 1-2, 5-18 | 1-3, 5, 9, 11, 16-18 | | 1-2 | | 10-13 |
| Howard's Document Subpoena to EJ Kimball (Brownstein Decl. Ex. 45) | 1-2, 5-18 | 1-3, 5, 9, 11, 16-18 | | 1-2 | | 10-13 |
| Howard's Document Subpoena to Foundation for the Defense of Democracies (Brownstein Decl. Ex. 46) | 1-2, 5-18 | 1-3, 5, 9, 11, 16-18 | | 1-2 | | 10-13 |
| Howard's Document Subpoena to Gregg Roman (Brownstein Decl. Ex. 47) | 1-2, 5-18 | 1-3, 5, 9, 11, 16-18 | | 1-2 | | 10-13 |
| Howard's Document Subpoena to Middle East Forum (Brownstein Decl. Ex. 48) | 1-2, 5-18 | 1-3, 5, 9, 11, 16-18 | | 1-2 | | 10-13 |

Appendix A

| OTHER SUBPOENAS | | | | | | |
|---|---|---|---|---|---|---|
| | 1. Plaintiffs' Purported Business Relationships | 2. Information Related To Qatar | 3. DOJ Investigation | 4. Attorney Client Privilege | 5. Spousal Privilege | 6. Confidential/ Private Information |
| **Howard's Second Document Subpoena to T-Mobile USA, Inc. (Brownstein Decl. Ex. 49)** | | | | | | 1-6 |
| **Howard's Second Document Subpoena to Verizon Wireless (Brownstein Decl. Ex. 50)** | | | | | | 1-6 |