IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BROIDY CAPITAL MANAGEMENT,
LLC, *et al.*

        *Plaintiffs*,

        v.                             Civil Action No. 1 1:19-cv-00150-DLF

NICOLAS D. MUZIN, *et al.*,

        *Defendants*.

## NON-PARTY BENJAMIN WIEDER'S MOTION TO QUASH PLAINTIFFS' SUBPOENA FOR DOCUMENTS

Pursuant to Federal Rules of Civil Procedure 26(b) and 45(d)(3)(A)(iii), non-party journalist Benjamin Wieder ("Mr. Wieder"), through undersigned counsel, respectfully moves to quash Plaintiffs' Subpoena for Documents, and for other and further relief as the Court deems just and proper. As set forth in detail in the accompanying Memorandum of Law, the documents requested in Plaintiffs' subpoena are privileged under a longstanding and vigorously enforced reporter's privilege in this circuit.

Plaintiffs' subpoena seeks documents that go to the heart of the reporter's privilege: confidential sources, interview notes, story pitches to editors, drafts of stories, and an unending list of other privileged newsgathering materials that Plaintiffs have no right – nor need – to inspect. The vast scope of the subpoena seeks documents that have no relation to the underlying lawsuit, and even the requests that come close to the lawsuit are not "crucial" to Plaintiffs' case, as they must be for Plaintiffs to overcome the privilege. Moreover, Plaintiffs have not exhausted all alternative sources for the information, which provides independent grounds for quashing the subpoena. Finally, even absent the reporters' privilege, the subpoena requests are overly broad, cumulative, unduly burdensome, and intended to harass Mr. Wieder, and the motion should be quashed for these reasons as well.

Dated: April 25, 2022                    Respectfully submitted,

                                         HOLLAND & KNIGHT LLP

                                         By: /s/ Christine N. Walz
                                         Christine N. Walz, D.C. Bar #996643
                                         31 West 52nd Street, 12th Floor
                                         New York, NY 10019
                                         Telephone: 212-513-3200
                                         Christine.Walz@hklaw.com

                                         Cynthia A. Gierhart, D.C. Bar #1027690
                                         800 17th St. NW, Suite 1100
                                         Washington, D.C. 20006
                                         Telephone: 202-469-5416
                                         Cindy.Gierhart@hklaw.com

                                         *Attorneys for Benjamin Wieder*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7(M), I hereby certify that I conferred with counsel for Plaintiffs in a good faith effort to resolve the issues raised by this motion. Counsel opposes the relief sought.

                              By:    /s/ Christine N. Walz
                                     Christine N. Walz

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

BROIDY CAPITAL MANAGEMENT,
LLC, *et al.*

        *Plaintiffs*,

        v.                              Civil Action No. 1 1:19-cv-00150-DLF

COLAS MUZIN, *et al.*,

        *Defendants*.

## MEMORANDUM OF LAW IN SUPPORT OF
## NON-PARTY BENJAMIN WIEDER'S MOTION TO QUASH
## PLAINTIFFS' SUBPOENA FOR DOCUMENTS

Non-party journalist Benjamin Wieder ("Mr. Wieder") submits this Memorandum of Law in support of his Motion to Quash Plaintiffs' Subpoena for Documents. Plaintiffs' subpoena seeks documents that go to the heart of a robust reporter's privilege recognized in this circuit, seeking confidential sources, interview notes, and other newsgathering materials. These documents are privileged under the First Amendment to the U.S. Constitution, the federal common law, and the District of Columbia Free Flow of Information Act. For the reasons discussed more fully herein, the subpoena must be quashed in its entirety.

## BACKGROUND

Mr. Wieder is a data and investigative reporter for McClatchy in its Washington bureau. *See* Exhibit 1, Declaration of Benjamin Wieder ("Wieder Decl."), ¶ 1. He has worked as a reporter for McClatchy since May 2017. *Id.* In the course of his reporting, he has at times written about Plaintiff Elliott Broidy, including stories written in 2018 and 2020. *Id.* ¶ 2. Mr. Wieder is not a party to the underlying lawsuit. *Id.* ¶ 3. Mr. Wieder was served Plaintiffs' Subpoena for

Documents on April 11, 2022. *Id.* ¶ 4, Ex. A.[1] The subpoena seeks a wide range of documents that were created or obtained solely in the course of performing Mr. Wieder's duties as a journalist. Mr. Wieder does not have any personal connection to the lawsuit or any knowledge of any events alleged in the lawsuit other than in his role as a journalist, discovered through the course of his reporting. *Id.* ¶ 3. His newsgathering materials are privileged under the First Amendment, federal common law, and the District of Columbia Free Flow of Information Act, and the subpoena should be quashed in its entirety.

## ARGUMENT

The Federal Rules of Civil Procedure provide that "on timely motion, the court for the district where compliance is required must quash or modify a subpoena that…requires disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A). Mr. Wieder moves to quash Plaintiffs' Subpoena for Documents on the grounds that the information sought is protected by a reporter's privilege found under the First Amendment to the U.S. Constitution, the federal common law, and the District of Columbia Free Flow of Information Act. Further, the subpoena is unduly burdensome, unreasonably cumulative, and designed to harass Mr. Wieder, a non-party journalist. For all of these reasons, Mr. Wieder respectfully requests that the subpoena be quashed.

### I. THE REQUESTED DOCUMENTS ARE PROTECTED BY A FIRST AMENDMENT REPORTER'S PRIVILEGE.

The D.C. Circuit has long recognized a qualified reporter's privilege under the First Amendment to the U.S. Constitution against the compelled disclosure of information that journalists "have obtained as part of their news gathering role." *In re Slack*, 768 F. Supp. 2d 189,

---

[1] A true and correct copy of Plaintiffs' Subpoena for Documents to Benjamin Wieder is attached to Mr. Wieder's Declaration as Exhibit A.

2

193 (D.D.C. 2011); *see also Zerilli v. Smith*, 656 F.2d 705, 712 (D.C. Cir. 1981). The reporter's privilege is at its strongest in civil cases where the journalist is a non-party, as here. *See Zerilli*, 656 F.2d at 712 (finding that "the First Amendment and the importance of a vigorous press" have a "preferred position" over a civil litigant's interest in compelled disclosure). "Thus in the ordinary case the civil litigant's interest in disclosure should yield to the journalist's privilege." *Id.* at 713.

Given the strong First Amendment protections at stake, a civil litigant may compel a journalist to disclose information only if (1) the information is "crucial" – not just relevant – to the party's case and goes to "the heart of the matter," and (2) the requesting party has "exhausted all reasonably available alternative sources." *See In re Slack*, 768 F. Supp. 2d at 194–95; *Lee v. Dep't of Just.*, 413 F.3d 53, 59 (D.C. Cir. 2005). This tests applies to both confidential and nonconfidential information. *In re Slack*, 768 F. Supp. 2d at 194; *see also Maughan v. NL Indus.*, 524 F. Supp. 93, 95 (D.D.C. 1981) ("To compel the production of a reporter's resource materials such as his personal notes … 'is equally as invidious as the compelled disclosure of ... confidential informants.'").

Plaintiffs cannot prevail on either of these prongs. Plaintiffs' subpoena illustrates a complete disregard for the First Amendment reporter's privilege, seeking broad categories of documents for which they have no right – or need – to obtain. Because the information that Plaintiffs seek is not crucial to their case, and because the information is available from alternative sources, the information sought is protected by the First Amendment reporter's privilege, and the Court must quash the subpoena.

### A. The Information Sought Does Not Go to "Heart" of Plaintiffs' Case.

Plaintiffs have sued Defendants for claims including violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, computer fraud, conversion,

3

misappropriation of trade secrets, and intrusion upon seclusion, among others. *See* Dkt. No. 18-2 (First Amended Complaint, "FAC"). Among Plaintiffs' allegations are claims that Defendants hacked Plaintiffs' email accounts and distributed the allegedly hacked emails to the media. *See, e.g.*, FAC ¶ 33. But the claims of RICO violations, computer fraud, conversion, and so on, all surround the alleged acts of hacking emails and unlawfully accessing computer servers – without regard to how the accessed records were distributed after the fact. *See, e.g.*, FAC ¶¶ 203-209 (sending spear phishing emails); ¶¶ 237-240 (conspiring to steal and deprive Plaintiffs of their trade secrets); ¶¶ 266-273 ("willfully and intentionally access[ing]" email servers in violation of the Stored Communications Act); ¶¶ 274-288 (unlawfully accessing Plaintiffs' servers, causing "harm to the integrity and availability of their servers" and loss of value of their confidential business information); ¶¶ 350-356 (intruding on Plaintiffs' seclusion by repeatedly hacking Plaintiffs' computers systems); ¶¶ 357-361 (converting Plaintiffs' property by stealing electronic information). Whether the allegedly hacked information was distributed to the media is wholly irrelevant to Plaintiffs' claims. Plaintiffs' claims can be proven without mention of what Defendants did with the information after it was obtained. Therefore, the information sought from a non-party journalist is not "crucial" to Plaintiffs' claims, nor does it go to "the heart of the matter." *See In re Slack*, 768 F. Supp. 2d at 194–95. Under governing case law, when the information sought is only marginally relevant, disclosure is not warranted. *Zerilli*, 656 F.2d at 713.

Moreover, the subpoena seeks information that goes far beyond Plaintiffs' claims and that does not even concern the allegations. It goes without saying that this information is not "crucial" to Plaintiffs' case. For example, the first request seeks "[a]ll documents and communications concerning Plaintiffs, their associates, their activities, and/or their business

4

interests." *See* Wieder Decl., Ex. A, Request No. 1. Mr. Wieder's notes and interviews are not probative of Plaintiffs' allegations that Defendants hacked Plaintiffs' computer servers. They do not even relate to allegations that Defendants distributed hacked materials to the media. Rather, the requested documents about Mr. Wieder's interviews about Plaintiffs and their undefined "associates" (including interviews about matters unrelated to the litigation) are entirely unmoored from Plaintiffs' claims in the underlying litigation.

The same is true of the unsupported (and offensive) requests about whether Mr. Wieder received payments or other benefits from Qatar. *See* Wieder Decl., Ex. A, Request Nos. 7-9. Aside from the harassing nature of the questions (*see* Section IV, *infra*), the requests cannot possibly produce documents "crucial" to Plaintiffs' case. Qatar is not a defendant in the underlying lawsuit, nor is Mr. Wieder. Whether Mr. Wieder, a non-party, received money from Qatar, another non-party, has zero probative value in determining whether Defendants unlawfully accessed Plaintiffs' computer servers.

As another example, Plaintiffs seek "[a]ll documents and communications concerning Anatoly Motkin, Strategeast, Yuri Vanetik, the Institute for Law and Justice, VTB Bank, Investment Capital Ukraine, Valeriya Gontareva, Quillas Esquities, their associates, their activities and/or their business interests." *See* Wieder Decl., Ex. A, Request No. 4. Not a single one of these individuals or entities is referenced in the First Amended Complaint. *See generally* Dkt. No. 18-2. Obtaining documents from a non-party journalist regarding these individuals and entities can hardly be "crucial" to Plaintiffs' case when they did not even bear mentioning in the complaint.

The same is true of the request for communications with Emily Mahoney of the *Tampa Bay Times*. *See* Wieder Decl., Ex. A, at Request No. 5. Neither Emily Mahoney nor the *Tampa*

5

*Bay Times* is referenced in the complaint. Moreover, one journalist's private communications with another journalist have no probative value in proving that Defendants hacked Plaintiffs' computers or even proving that Defendants provided those documents to the media. Communications between two journalists have no connection to allegations regarding ***Defendants' actions*** at all.

And while the documents Plaintiffs seek are not even relevant to their claims, the reporter's privilege demands an even higher bar than relevance – a bar that is sorely out of reach here. *In re Slack*, 768 F. Supp. 2d at 194 ("[T]he court must examine how important, not just relevant, the reporter's information is to the party's case."). It is not a question of whether the information sought is "relevant" to the litigation, but whether it is "crucial" to proving Plaintiffs' case. *See Zerilli*, 656 F.2d at 713. Here, the requested information is not crucial to Plaintiffs' case, which requires proof that Defendants unlawfully accessed Plaintiffs' email and computer systems. A non-party journalist's notes, interviews, and other newsgathering materials are not crucial to Plaintiffs' case.[2]

The information that Plaintiffs seek is not crucial to their claim, and the subpoena should therefore be quashed.

### B.     The Information Sought Is Available from Alternative Sources.

Even if the information sought was crucial to Plaintiffs' case, the Court still must quash the subpoena because Plaintiffs have not "exhausted every reasonable alternative source of

---

[2] In fact, "in civil cases, the privilege typically prevails because any interest in overcoming the privilege is by definition a private rather than a public interest." *U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Companies, Inc.*, 507 F. Supp. 2d 45, 51 (D.D.C. 2007). Plaintiffs' private interest in seeking to hold Defendants liable for an alleged intrusion into their computer systems cannot justify the harm to the public interest in and reverberating consequences of forcing a journalist to turn over his newsgathering materials to aid a party in a private dispute.

information." *Zerilli*, 656 F.2d at 713. Reporters can be compelled to disclose information only as a "last resort." *In re Slack*, 768 F. Supp. 2d at 196; *see also Zerilli*, 656 F.2d at 713 (compelled disclosure is "normally the end, and not the beginning, of the inquiry"). This burden cannot be met with conclusory statements regarding the lack of availability of other sources. *See In re Slack*, 768 F. Supp. 2d at 197 (finding it insufficient that the requesting party claimed that it "had difficulty finding witnesses" and that that street performers who may have been witnesses were "transient").

For example, in *Zerilli*, the Court found that the requesting party had not exhausted alternative sources to determine who leaked confidential documents to the press because the party did not depose four individuals within the government who had the greatest access to wiretap logs. *Zerilli*, 656 F.2d at 714-15. The Court held that "Appellants cannot escape their obligation to exhaust alternative sources simply because they feared that deposing Justice Department employees would be time-consuming, costly, and unproductive." *Id.* at 715.

Here, the requested documents are – by the very nature of some of the requests – available from other sources. For example, the third request asks for "[a]ll communications with any of the Defendants …." *See* Wieder Decl., Ex. A, at Request No. 3. Communications sent or received by Defendants are obviously in Defendants' own possession and are more appropriately obtained from Defendants – parties in this litigation – than a non-party journalist. Likewise, the second request asks for documents concerning "emails or other communications sent or received by Plaintiffs …. including the emails or messages themselves." *Id.* at Request No. 2. Again, emails sent or received by Plaintiffs are, of course, in Plaintiffs' own possession. They need not obtain them from a non-party journalist.

The remaining requests are so vague and overly broad it is difficult to even ascertain which documents Plaintiffs seek, let alone who is likely to have the documents. *See also* Section IV, *infra* (regarding vagueness and overbreadth). But it is safe to assume documents regarding these vast categories of information exist in any other number of locations. For example, Plaintiffs seek "[a]ll documents and communications concerning Anatoly Motkin, Strategeast, Yuri Vanetik, the Institute for Law and Justice, VTB Bank, Investment Capital Ukraine, Valeriya Gontareva, Quillas Esquities, their associates, their activities and/or their business interests." *See* Wieder Decl., Ex. A, Request No. 4. To take just one example, documents regarding Stategeast exist in any number of locations, not the least of which include its website (www.strategeast.org), social media accounts, other publicly available sources, and from the entity Strategeast itself.

Plaintiffs cannot demonstrate that they have exhausted all alternative sources for the information sought in the subpoena, and the subpoena must therefore be quashed.

## II.   THE REQUESTED DOCUMENTS ARE PROTECTED BY A COMMON LAW REPORTER'S PRIVILEGE.

Courts in the D.C. Circuit have expressed support for a federal common law reporter's privilege, in addition to the First Amendment privilege. *See, e.g.*, *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1149 (D.C. Cir. 2006). The need for a common law privilege is substantial: "If litigants and investigators could easily discover journalists' sources, the press's truth-seeking function would be severely impaired." *Id.* at 1168 (J. Tatel, concurring).

Moreover, the fact that forty-nine states and the District of Columbia each recognize at least a qualified privilege for journalists "confirms that 'reason and experience' support recognition of the privilege." *Id.* at 1168 (J. Tatel, concurring). According to Judge Tatel's concurrence, the test under a common law reporter's privilege requires the Court to consider (1)

8

the requesting party's need for the information, (2) exhaustion of alternative sources, and (3) a balancing between the public interest in compelling disclosure and the public interest in newsgathering. *Id.* at 1175 (J. Tatel, concurring). Judge Tatel thus advocated for recognizing a common law reporter's privilege even in a grand jury context, where a reporter's privilege is at its weakest. The privilege is much stronger in civil cases, as here, "because any interest in overcoming the privilege is by definition a private rather than a public interest." *U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Companies, Inc.*, 507 F. Supp. 2d 45, 51 (D.D.C. 2007).

As discussed in Section I, *supra*, Plaintiffs cannot show that they *need* the information sought from Mr. Wieder, nor can they prove that they have exhausted alternative sources to obtain the information. Finally, under the balancing test that comprises the third prong of the common law analysis – that is, Plaintiffs' interest in compelling disclosure versus the public interest in protecting newsgathering materials – the public interest must prevail. Plaintiffs seek unfettered access to rifle through Mr. Wieder's notes, interviews, and other newsgathering materials related to a broad range of people, institutions, and activities – many of which have no bearing on the underlying litigation. The balance clearly favors the protection of the journalistic materials, and the subpoena should be quashed.

### III. THE REQUESTED DOCUMENTS ARE PROTECTED BY THE DISTRICT OF COLUMBIA FREE FLOW OF INFORMATION ACT.

In addition to the First Amendment and federal common law, federal courts in this circuit have applied the District of Columbia reporter's privilege statute – known as the Free Flow of Information Act – particularly in civil cases involving state law claims. *See Grunseth v. Marriott Corp.*, 868 F. Supp. 333, 336 (D.D.C. 1994) (applying the Free Flow of Information Act); *Gray v. Hoffman-La Roche, Inc.*, No. 02-136(RMU), 2002 WL 1801613, at *1 (D.D.C. Mar. 27, 2002)

9

(same); *Lee v. U.S. Dep't of Just.*, 287 F. Supp. 2d 15, 17 (D.D.C. 2003) (noting the Free Flow of Information Act may be applicable "in the context of a civil common law action in a court of the District of Columbia," but not where the "*sole* cause of action in [the] case is predicated upon a federal statute") (emphasis added). Here, while some of Plaintiffs' causes of actions are predicated on federal statutes, a number of Plaintiffs' claims are based on state common law claims – including those most closely related to disclosure of materials to the media. These state law claims include public disclosure of private facts (Count Nine), intrusion upon seclusion (Count Ten), conversion (Count Eleven), tortious interference (Count Twelve), and civil conspiracy (Count Thirteen). *See* Dkt. 18-2, at 71-77. The District's reporter's privilege statute should thus apply.

Like the First Amendment and common law privileges, the Free Flow of Information Act protects newsgathering materials from compelled disclosure. D.C. Code § 16-4702.

> It provides, in relevant parts:
>
> no judicial ... body ... shall compel any person who is or has been employed by the news media and acting in an official news gathering or news disseminating capacity to disclose:
> …
> (2) Any news or information procured by the person while employed by the news media in the course of pursuing professional activities that is not itself communicated in the news media, including any Notes, Outtakes; Photographs or photographic negatives; Video or sound tapes; Film; or Other data, irrespective of its nature, not itself communicated in the news media.
>
> [except]
> if the court finds that the party seeking the news or information established by clear and convincing evidence that:
>
> (1) The news or information is relevant to a significant legal issue before a judicial ... body;
>
> (2) The news or information could not, with due diligence, be obtained by any alternative means;

10

    (3) There is an overriding public interest in the disclosure.

D.C. Code §§ 16-4702 to 16-4704. *See also Grunseth*, 868 F.Supp. at 336.

    In sum, the D.C. statute accords complete protection to unpublished information, whether confidential or not. The materials requested in Plaintiffs' subpoena include confidential sources, interview notes, story pitches to editors, drafts of stories, and other privileged newsgathering materials. The documents sought under these requests are covered under the District's Free Flow of Information Act, specifically falling into the categories of "the source of any news or information," "notes," "outtakes," and "[o]ther data, irrespective of its nature, not itself disseminated in any manner to the public." D.C. Code § 16-4702.

    The statute provides in Section 4702(2) that the protection may be overcome *only* if the court finds *by clear and convincing evidence* that the news or information sought "is relevant to a significant legal issue"; that it "could not, with due diligence, be obtained by any alternative means"; and that there is an "overriding public interest in the disclosure." *See Grunseth*, 868 F.Supp. at 336-37.

    The first two prongs of the District's Free Flow of Information Act closely track the First Amendment test set forth in *Zerilli* and related cases in this circuit. As demonstrated in Section I, *supra*, the requested documents are not relevant to a significant legal issue to prove Plaintiffs' case, and the documents can be obtained from other sources. Additionally, regarding the third prong of the statute, Plaintiffs cannot establish by clear and convincing evidence that there is an "overriding public interest in the disclosure," as the public interest in protecting journalists' newsgathering materials outweighs Plaintiffs' private interests in compelled disclosure. The subpoena issued to Mr. Wieder therefore must be quashed under the Free Flow of Information Act, as well.

11

## IV.  THE SUBPOENA IS OVERLY BROAD, VAGUE, UNDULY BURDENSOME, AND INTENDED TO HARASS A NON-PARTY.

In addition to the protections afforded by the reporter's privilege, the Federal Rules of Civil Procedure also limit discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …." Fed. R. Civ. P. 26(b)(1). The Court is required to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" and where "burden or expense of the proposed discovery outweighs its likely benefit," among other factors. Fed. R. Civ. P. 26(b)(1), (2). Further, the Court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense …." Fed. R. Civ. P. (c)(1).

Thus, even without a reporter's privilege, discovery obligations are subject to a balancing test, "weighing the burdensomeness to the moving party against the deponent's need for, and the relevance of, the information being sought." *Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005). "[A] more demanding weighing of these factors is imperative" where the subpoena is directed to a third party. *In re Subpoena to Goldberg*, 693 F. Supp. 2d 81, 88 (D.D.C. 2010). "This is so whether the third party is a reporter, or a butcher, baker or candlestick maker." *Id.*

Here, the subpoena requests are unduly burdensome, overly broad, vague, and intended to oppress and harass Mr. Wieder. The *de minimis* value to Plaintiffs in such irrelevant information is far outweighed by the burden to Mr. Wieder in having to produce documents in response to such broad requests intruding on the journalist's privilege.

The requests are both overly broad and vague and ambiguous. The subpoena repeatedly asks for information "concerning Plaintiffs [or other parties or entities], their associates, their

12

activities, and/or their business interests." *See, e.g.*, Wieder Decl., Ex. A, at Request Nos. 1, 5, 6. "Associates" and "business interests" are not defined, and the request is not confined to information related to this litigation. The potential people and issues this single request could encompass are limitless. One particularly noteworthy associate of Plaintiff Elliott Broidy is Donald Trump. The subpoena therefore, in essence, seeks all newsgathering materials from stories that Mr. Wieder wrote about Donald Trump, regardless of whether the materials have anything to do with the underlying lawsuit. The overly broad nature of the subpoena creates an undue burden on Mr. Wieder – a non-party – that is grossly outweighed by the paltry probative value of the information sought, which is largely irrelevant to the lawsuit.

Additionally, Plaintiffs seek all of Mr. Wieder's drafts, story pitches, and other journalistic work product that, first, have no relation to Plaintiffs' claims and, second, are unduly burdensome on Mr. Wieder to collect and produce. They are burdensome not only in scope and volume but in the invasive nature of the request, seeking documents at the heart of the reporter's privilege.

Furthermore, some of the subpoena requests appear designed solely to harass Mr. Wieder by asking for documents and information regarding money or things of value provided to Mr. Wieder by Qatar or any of its agents. It is a baseless request that bears no relation to the underlying litigation, and the insinuation alone is offensive and designed to harass a non-party who has no stake in the underlying litigation.

The entire subpoena is a fishing expedition, which is precisely the "sort of abuse from which the privilege shields reporters." *U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Companies, Inc.*, 507 F. Supp. 2d 45, 54 (D.D.C. 2007). Even without the privilege, "[d]iscovery [ ] is not intended to be a fishing expedition, but rather is meant to allow the parties

13

to flesh out allegations for which they initially have at least a modicum of objective support." *Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 340 (D.D.C. 2021). And a subpoena *duces tecum* especially may not be used to ascertain whether documents exist but instead may be used only to obtain specifically requested materials. *United States v. Binh Tang Vo*, 78 F. Supp. 3d 171, 180 (D.D.C. 2015). "[T]he test ... is whether the subpoena constitutes a good faith effort to obtain identified evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device." *Id.* Hypothetical guesses as to what Plaintiffs' subpoena might reveal are wholly inadequate to support a subpoena request. *See Diamond Servs. Mgmt. Co., LLC*, 339 F.R.D. at 340.

Here, Plaintiffs have not identified specific documents. Rather, they repeatedly ask for "all documents and communications" relating to at least a dozen individuals and entities – and their "associates" – regarding their "activities" or even simply their "business interests." *See, e.g.*, Wieder Decl., Ex. A, at Request No. 1, 4, 6. Such a request is the definition of a fishing expedition, and is not permitted in a subpoena. Mr. Wieder therefore respectfully requests that the Court quash the subpoena.

## CONCLUSION

For the foregoing reasons, non-party journalist Benjamin Wieder respectfully requests that the Court grant his Motion to Quash Plaintiffs' Subpoena for Documents.

Dated: April 25, 2022

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: /s/ Christine N. Walz
Christine N. Walz, D.C. Bar #996643
31 West 52nd Street, 12th Floor
New York, NY 10019
Telephone: 212-513-3200
Christine.Walz@hklaw.com

14

Cynthia A. Gierhart, D.C. Bar #1027690  
800 17th St. NW, Suite 1100  
Washington, D.C. 20006  
Telephone: 202-469-5416  
Cindy.Gierhart@hklaw.com  

*Attorneys for Benjamin Wieder*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Non-Party Benjamin Wieder's Motion to Quash Plaintiffs' Subpoena for Documents, and accompanying Memorandum of Law, was served by ECF filing on April 25, 2022 on all counsel of record.

/s/ Christine N. Walz  
Christine N. Walz  
HOLLAND & KNIGHT LLP

*Counsel for Non-Party Benjamin Wieder*