**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In Re: Motion to Compel Compliance with Subpoena Directed to Non-Parties Richard Miniter and American Media Institute | Case No. 1:19-cv-150-DLF |
| Underlying Matter<br><br>BROIDY CAPITAL MANAGEMENT, LLC and ELLIOTT BROIDY,<br><br>                            Plaintiffs,<br>     v.<br>NICOLAS D. MUZIN, JOSEPH ALLAHAM, GREGORY HOWARD, and STONINGTON STRATEGIES LLC,<br><br>                            Defendants. | |

**DEFENDANTS-MOVANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR
MOTION TO COMPEL SUBPOENA RESPONSES**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 4

    I.    RESPONDENTS HAVE WAIVED THEIR SUBPOENA OBJECTIONS. .............................. 4

    II.   RESPONDENTS CANNOT SATISFY ANY EXCEPTION TO WAIVER .............................. 6

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. F.B.I.*,
    186 F.R.D. 21 (D.D.C. 1998) ................................................................................4, 7, 9, 10

*BNSF Ry. Co. v. Alere, Inc.*,
    No. 18-CV-291, 2018 WL 2267144 (S.D. Cal. May 17, 2018) ................................................6

*Brown v. District of Columbia*,
    No. 10-CV-2250, 2021 WL 1439741 (D.D.C. Apr. 16, 2021) ................................................10

*Concord Boat Corp. v. Brunswick Corp.*,
    169 F.R.D. 44 (S.D.N.Y. 1996) ................................................................................7, 9

*In re Denture Cream Prods. Liab. Litig.*,
    292 F.R.D. 120 (D.D.C. 2013) ................................................................................6, 8

*Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*,
    200 F.R.D. 255 (M.D.N.C. 2001) ................................................................................7, 8

*Fagan v. District of Columbia*,
    136 F.R.D. 5 (D.D.C. 1991) ................................................................................10

*Garlington v. D.C. Water & Sewer Auth.*,
    62 F. Supp. 3d 23 (D.D.C. 2014) ................................................................................10

*Hayes v. Buttigieg*,
    No. 20-CV-2523, 2021 WL 6619326 (D.D.C. May 3, 2021) ................................................5

*Inst. for Pol'y Stud. v. U.S. CIA*,
    246 F.R.D. 380 (D.D.C. 2007) ................................................................................5

*McCoy v. Sw. Airlines Co.*,
    211 F.R.D. 381 (C.D. Cal. 2002) ................................................................................6

*In re Motorsports Merch. Antitrust Litig.*,
    186 F.R.D. 344 (W.D. Va. 1999) ................................................................................10

*Pietrangelo v. Refresh Club, Inc.*,
    No. 18-CV-1943, 2021 WL 1209300 (D.D.C. Mar. 31) ................................................9

*Texas v. United States*,
    798 F.3d 1108 (D.C. Cir. 2015) ................................................................................5

*Thong v. Andre Chreky Salon*,
  247 F.R.D. 193 (D.D.C. 2008)..................................................................................10

*Top Jet Enters., Ltd. v. Kulowiec*,
  No. 21-MC-789, 2022 WL 280459 (S.D.N.Y. Jan. 31, 2022)...........................10, 11

*Weisberg v. Webster*,
  749 F.2d 864 (D.C. Cir. 1984)..................................................................................11

*Yousuf v. Samantar*,
  451 F.3d 248 (D.C. Cir. 2006)....................................................................................6

**Rules and Statutes**

Fed. R. Civ. P. 45.................................................................................................................4, 8

**Other Authorities**

American Media Institute's 2017 Tax Filing,
  https://www.documentcloud.org/documents/6234112-American-Media-
  Institute-s-2017-Tax-Filing.html ................................................................................2

Joseph Hammond, *Qatar Withdraw May Endanger U.S. Forces in Djibouti*,
  RealClear Defense (Sept. 22, 2017),
  https://www.realcleardefense.com/articles/2017/09/22/qatar_withdraw_may_e
  ndanger_us_forces_in_djibouti_112355.html ............................................................2

Bruce Majors, *Time To Get Tough With Qatar*, Daily Caller (May 2, 2017),
  https://dailycaller.com/2017/05/02/time-to-get-tough-with-qatar/ ............................2

*Members*, Am. Media Inst., https://americanmediainstitute.com/aboutus/members/
  (last visited Apr. 26, 2022) .........................................................................................1

*Richard Miniter*, Forbes,
  https://www.forbes.com/sites/richardminiter/?sh=15ef1ce31740 (last visited
  Apr. 26, 2022).............................................................................................................11

Richard Miniter, *Why is Qatar offering to trade dead Israelis for meetings with
  live Jews?*, Forbes (Sept. 15, 2017),
  https://www.forbes.com/sites/richardminiter/2017/09/15/why-is-qatar-
  offering-to-trade-dead-israelis-for-meetings-with-live-jews/?sh=694ee7f66dc4......2

Kenneth P. Vogel, *How a Trump Ally Tested the Boundaries of Washington's
  Influence Game*, N.Y. Times (Aug. 13, 2019),
  https://www.nytimes.com/2019/08/13/us/politics/elliott-broidy-trump.html............2

Defendants-Movants Nicolas D. Muzin and Stonington Strategies LLC (together "Stonington") provide the following reply in further support of their motion to compel subpoena responses from Respondents Richard Miniter and his company American Media Institute ("AMI," and together "Respondents").  Respondents have waived all objections to Stonington's subpoenas due to their failure to timely object or respond, and no exception to this rule applies.  The Court should therefore find Respondents in contempt and order full and complete responses to Stonington's subpoenas.

## INTRODUCTION

Yet again, recipients of Stonington's subpoenas seek to excuse their failure to timely respond by relying on a purported misunderstanding promulgated by Plaintiffs Elliott Broidy and Broidy Capital Management LLC ("Broidy").  Respondents—like four other subpoena respondents before them both here and in other jurisdictions—ask the Court to excuse their unjustified failure to respond to valid subpoenas, endorse Broidy's interference with third-party discovery in this case, and ignore their role in Broidy's scheme of undisclosed lobbying and political influence.  The Court should reject this request to flout the Federal Rules.

Respondents are not ignorant or confused bystanders.  Contrary to their posturing, Respondents are sophisticated investigators that previously sold stories to Forbes, U.S. News and World Report, and many others.[1]  Respondents do not deny that they were paid handsomely by Broidy to aid his campaign to sway public opinion regarding the State of Qatar.  Indeed, Broidy paid AMI $240,000.00 in 2017—the largest "gift" received that year and nearly 50% of AMI's

---

[1] *See Members*, Am. Media Inst., https://americanmediainstitute.com/aboutus/members/ (last visited Apr. 26, 2022); *infra* n.4.

total contribution amount in 2017[2]—to aid Broidy's anti-Qatar efforts and to influence public opinion and members of the U.S. government.[3] Respondents—Mr. Miniter especially—also produced news articles that were critical of Qatar and its lobbyists (including Stonington) and favorable to Broidy's clients and prospective clients.[4] Respondents therefore worked hand-in-hand with Broidy to undermine Qatar and those lobbying on its behalf, including Stonington, to advance the interests of Qatar's political rivals (including the UAE and Saudi Arabia).

Respondents thus could not have been surprised to receive subpoenas in this case. Yet, Respondents cannot make out good, or even colorable, cause for their noncompliance with Stonington's subpoenas. The only explanation that Respondents offer is that they "learned" on February 14, 2022, that Broidy "had filed a Motion to Quash the subpoenas issued to AMI and [Mr. Miniter]." Miniter Decl. ¶ 5, ECF No. 140-1. Based on that motion, Mr. Miniter claims that he "mistakenly believed" he "did not have to respond to the subpoenas until the Court had ruled on the motion." *Id.* ¶ 6.

Respondents' own filing belies any alleged mistake regarding the need to respond to Stonington's subpoenas. Indeed, Mr. Miniter admits in his declaration that he understood the

---

[2] American Media Institute's 2017 Tax Filing 22, https://www.documentcloud.org/documents/6234112-American-Media-Institute-s-2017-Tax-Filing.html (last visited Apr. 26, 2022).

[3] *Id.*; Kenneth P. Vogel, *How a Trump Ally Tested the Boundaries of Washington's Influence Game*, N.Y. Times (Aug. 13, 2019), https://www.nytimes.com/2019/08/13/us/politics/elliott-broidy-trump.html.

[4] *See, e.g.*, Richard Miniter, *Why is Qatar offering to trade dead Israelis for meetings with live Jews?*, Forbes (Sept. 15, 2017), https://www.forbes.com/sites/richardminiter/2017/09/15/why-is-qatar-offering-to-trade-dead-israelis-for-meetings-with-live-jews/?sh=694ee7f66dc4; Joseph Hammond, *Qatar Withdraw May Endanger U.S. Forces in Djibouti*, RealClear Defense (Sept. 22, 2017), https://www.realcleardefense.com/articles/2017/09/22/qatar_withdraw_may_endanger_us_forces_in_djibouti_112355.html (article by AMI senior contributor); Bruce Majors, *Time To Get Tough With Qatar*, Daily Caller (May 2, 2017), https://dailycaller.com/2017/05/02/time-to-get-tough-with-qatar/ (article by AMI fellow).

importance of responding to the subpoena and "promptly" sought legal counsel. Miniter Decl. ¶ 5. Yet, Mr. Miniter claims that he stopped looking for counsel when he learned of Broidy's motion—apparently from Broidy or his counsel—only days after the subpoenas were served. *Id.* (stating that Mr. Miniter learned of Broidy's motion on February 14, only a week after service of the subpoenas). And then, since the filing of the motion to compel, he has managed to be represented by two top law firms. Even if this purported explanation were true (and it strains credulity), Mr. Miniter's justification does not excuse his noncompliance.

This is just another instance of Broidy's (or his counsel's) interference with non-party subpoena responses in this case. Due to Broidy's interference, at least *six* separate subpoena respondents—including Respondents—have simply failed to object or respond to Stonington's subpoenas, forcing Stonington to file motions to compel in three separate jurisdictions. *See* Mot. Compel Subpoena Responses from Non-Parties Steven Rabinowitz and Bluelight Strategies (D.D.C. Mar. 21, 2022), ECF No. 124; Mot. Compel, *In re: Motion to Compel Compliance with Subpoena Directed to Non-Party David Reaboi*, No. 1:22-MC-20786 (S.D. Fla. Mar. 16, 2022) ("Reaboi Proceedings"), ECF No. 1; Mot. Compel, *In re: Motion to Compel Compliance with Subpoena Directed to Non-Party Delon Cheng*, No. 2:22-MC-79 (C.D. Cal. Apr. 1, 2022), ECF No. 1. And nearly all of these subpoena respondents have purported to rely on Broidy's motion to quash to explain their violation of Stonington's subpoenas. *See* Miniter Decl. ¶¶ 5–6; Rabinowitz Decl. ¶¶ 4–5, ECF No. 132-1 (stating that he "learned that Plaintiff Elliott Broidy had filed a motion with the court to quash the subpoenas" and "I misunderstood the effect of that court filing, and I stopped looking for an attorney at that time"); Reaboi Decl. ¶¶ 5–6, Reaboi Proceedings (S.D. Fla. Apr. 11, 2022), ECF No. 13-1 (stating that he "was aware that the plaintiffs in the D.C. litigation were filing a motion that was related to the documents that were requested from [him] in

3

the subpoena" and that he "believed that [he] did not have to respond to the subpoena because of that motion").

Broidy's widespread subpoena interference does not give Respondents—or any third-party—good cause to ignore valid subpoenas, serve late objections, or escape the consequences of their failure to respond. Respondents waived their objections and lack any good cause to have them considered now because (1) Stonington's subpoena requests are tailored in scope and time; (2) Respondents have failed to act in good faith; and (3) Respondents had no communication with Stonington's counsel until after Stonington filed its motion to compel. Respondents have thus given the Court no reason why they should not be compelled to provide full and complete responses to the subpoena, and the Court should not excuse such blatant violation of the Federal Rules, either by Respondents or Broidy.

## ARGUMENT

### I. RESPONDENTS HAVE WAIVED THEIR SUBPOENA OBJECTIONS.

Respondents cannot escape the Federal Rules. Objections "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B); *see Alexander v. F.B.I.*, 186 F.R.D. 21, 34 (D.D.C. 1998) ("[T]he failure to serve written objections to a subpoena within the time frame specified by Rule 45(c)(2)(B) typically constitutes waiver of such objections.").[5] Failure to serve timely objections means that those objections are waived. *See* Mot. Compel 4–5 (collecting cases), ECF No. 126. Even Respondents do not dispute that waiver is the typical consequence for untimely objections.

---

[5] Unless otherwise noted, all emphasis in the brief has been added, and all internal citations, quotations, and alterations have been omitted.

4

Respondents failed to serve timely objections and have still made no production. Stonington personally served the subpoenas on AMI's registered agent and Mr. Miniter on February 7 and 8, respectively. *See* Mot. Compel Exs. 3 and 4, ECF Nos. 126-3 and 126-4. The response deadline was March 7, 2022, and all objections were due on February 21 and 22, 2022. Respondents, however, failed to serve ***any*** objections until it came time to oppose Stonington's motion to compel nearly two months later. *See* Opp'n Exs. D and E, ECF Nos. 140-4 and 140-5 (noting a service date of April 20). Respondents have thus waived all objections, and the Court should compel subpoena responses on this basis alone.

Respondents' claimed destruction of AMI's materials does not change the need for an order compelling AMI to respond. AMI blew through the deadline to object or respond to Stonington's subpoena, and it failed to obtain an extension of time in which to oppose Stonington's motion to compel, ignoring that deadline as well. *See* Minute Order (D.D.C. Apr. 7, 2022) (granting only Mr. Miniter an extension to file his opposition brief). For these reasons alone, Stonington's motion should be granted as to AMI. *See* LCvR 7(b) ("If [an opposition] is not filed within the prescribed time, the Court may treat the motion as conceded."); *see, e.g., Hayes v. Buttigieg*, No. 20-CV-2523, 2021 WL 6619326, at *2 (D.D.C. May 3, 2021) ("[T]he Court finds that the defendant has conceded the plaintiff's motion to amend, as more than fourteen days have passed since the filing of the motion without the filing of an opposition."); *Inst. for Pol'y Stud. v. U.S. CIA*, 246 F.R.D. 380, 386 (D.D.C. 2007) ("Defendant has not filed an opposition in compliance with the time limitations set forth in LCvR 7(b) . . . . Plaintiff's motion is therefore granted as unopposed."); *see also Texas v. United States*, 798 F.3d 1108 (D.C. Cir. 2015) (affirming order awarding fees based on failure to oppose).

An order compelling compliance is also necessary to ensure that Stonington receives the information to which it is entitled and does not have to revisit the motion to compel process. If—contrary to Mr. Miniter's sworn statement—Stonington determines that AMI (or one of its agents) retains responsive materials, it should have the ability to seek relief and relevant documents. Absent such an order, Stonington would have to waste additional time and resources to ensure Respondents do not further shirk their obligations. With discovery deadlines fast approaching,[6] Stonington should not be forced to accept additional delay beyond what Respondents have already caused. An order compelling compliance with Stonington's subpoena in full is therefore the best mechanism for ensuring that Respondents will satisfy their obligations.

## II.     RESPONDENTS CANNOT SATISFY ANY EXCEPTION TO WAIVER.

Seeking to avoid waiver, Respondents ask the Court to apply an exception to the general rule. But that exception is not available in these circumstances. *See McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002) (finding waiver of all objections because "the Court does not find good cause" where "nonparty SWAPA failed to make timely objections"). Indeed, none of the exception cases cited by Respondents address circumstances where a subpoena respondent entirely fails to respond to a subpoena and delays all contact with the issuing party until **after** a motion to compel is served. *See Yousuf v. Samantar*, 451 F.3d 248, 252 (D.C. Cir. 2006) (affirming exception, in part, because "counsel for the Department acted promptly to contact counsel for the plaintiffs and to file his objections"); *BNSF Ry. Co. v. Alere, Inc.*, No. 18-CV-291, 2018 WL 2267144, at *2–3 (S.D. Cal. May 17, 2018) (describing the months of communications between counsel, including before the subpoena was even served); *In re Denture Cream Prods. Liab. Litig.*,

---

[6] The deadline for "Substantial Completion of Document Discovery," now set for August 19, 2022, has already been extended once. *See* Minute Order (D.D.C. Apr. 25, 2022).

292 F.R.D. 120, 124 (D.D.C. 2013) (finding exception to waiver because counsel "were in contact concerning [the Sarfez Entities'] compliance prior to the time [they] challenged [the] legal basis for the subpoena[s]"); *Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255, 259 (M.D.N.C. 2001) (excusing waiver of party objections because "defendants acted quickly in making their position known concerning the confidentiality of documents"); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 52 (S.D.N.Y. 1996) (explaining that the parties' counsel "were in frequent contact concerning Merrill's compliance with the Brunswick Subpoena prior to the time Merrill filed the instant motion"); *see also Alexander*, 186 F.R.D. at 34 (finding waiver for over 90% of nonparty's objections even though counsel were in contact and nonparty served objections a mere two days late). And that is not surprising because Respondents' failure to respond for **months**, retention of two separate law firms, and attempt to belatedly object and respond only after Stonington had filed its motion to compel are truly extraordinary.

To the extent an exception is somehow available, this District only permits late objections "in unusual circumstances and for good cause." *Alexander*, 186 F.R.D. at 34. Courts in this District consider three factors to determine the presence of unusual circumstances:

> (1) whether the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) whether the subpoenaed witness is a non-party acting in good faith; and (3) whether counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena.

*Id.* at 42 (citing *Concord Boat Corp.*, 169 F.R.D. at 48).

Respondents attempt to distort this test by importing a "prejudice" obligation. That is, Respondents attempt to avoid the consequences of their actions by claiming that **Stonington**—the party that has been denied responses to its subpoena for more than two months and has had to invest substantial resources to compel compliance—has not been harmed *that* much. Not surprisingly, Respondents do not cite—and Stonington is not aware of—a single case relying on a

7

party to show prejudice in order for its subpoena to be enforced. *See Drexel Heritage Furnishings, Inc.*, 200 F.R.D. at 259 (cited by Respondents and dealing with *party* discovery). Indeed, such a rule would be antithetical to the Rule 45, because "defiance of a subpoena is . . . an act in defiance of a court order." Fed. R. Civ. P. 45 advisory committee's notes to 1991 amendment.

Tellingly, Respondents invoke prejudice as a means to avoid the contact factor, likely to avoid acknowledging that Respondents did not contact counsel for Stonington in any way until *after* the motion to compel was filed. This total lack of communication is alone sufficient to bar any finding of good cause. *Cf. In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. at 124 (considering respondents' objections only because counsel "were in contact concerning [the Sarfez Entities'] compliance prior to the time [they] challenged [the] legal basis for the subpoena[s]"). Respondents could have avoided this entire motion proceeding with a simple phone call or email. Indeed, that is precisely what a typical subpoena recipient with no responsive documents would do. Instead, Respondents waited until they were required to oppose a motion to compel to serve responses to the subpoena—stating for the first time that *all* AMI materials have been destroyed, Miniter Decl. ¶ 2—and belatedly asserted that Stonington's requests seek irrelevant information. This is nothing short of wilful gamesmanship, forcing Stonington—and the Court—to waste resources on this necessary, but avoidable, motion to compel.[7]

No other good-cause factors exist here. Respondents have failed to demonstrate that Stonington's requests are overbroad or exceed the bounds of fair discovery. Rather than attempting to show—because they cannot—why each specific request is overbroad,

---

[7] Respondents' opposition further suggests gamesmanship, because Stonington offered Respondents a reasonable compromise that would have allowed Respondents to satisfy their obligations and would have given Stonington the needed confirmation that all responsive material would be produced. Respondents rejected that offer out of hand without a single counterproposal.

8

Respondents—consistent with Broidy's approach, again demonstrating coordination—make general, boilerplate statements about relevance and burden. That is not how courts evaluate good cause. Indeed, in *Alexander*, the court conducted a request-by-request analysis, finding that the subpoena respondent waived objections to 33 of 36 requests. *See Alexander*, 186 F.R.D. at 34–35 (finding waiver for all but three requests, which "implicate[d] the [*Concord Boat*] factors" because they were "over broad and impermissibly vague"). Here, Respondents identify only a few specific requests as potentially overbroad (Request Nos. 1, 3, 4, 7, 10–13) and instead generally claim that requests related to (1) "Qatar, UAE, Saudi Arabia, and Romania," (2) Broidy's "business dealings and lobbying and consulting work," (3) Broidy's "financial transactions," and (4) communications regarding Broidy and Defendants are irrelevant and overbroad. Opp'n 7, ECF No. 140.

Stonington has repeatedly explained the relevance of Broidy's business relationships, his lobbying and consulting work (including the money earned from those ventures), and his relationships to Qatar, the UAE, Saudi Arabia, and Romania. *See* Mot. Compel 7–9; *see also* Stonington and Howard Defs.' Mot. Compel Discovery Responses 26–42, ECF No. 115; Defs.' Opp'n Pls.' Mot. Protective Order 15–21, ECF No. 121; Stonington and Howard Defs.' Reply Supp. Mot. Compel Discovery Responses 5–18, ECF No. 122; Reply Supp. Mot. Compel Rabinowitz and Bluelight Strategies 7, ECF No. 135. As a defendant, Stonington may seek discovery to test Broidy's allegations and to seek to rebut Broidy's theory of the case. *See Pietrangelo v. Refresh Club, Inc.*, No. 18-CV-1943, 2021 WL 1209300, at *9 (D.D.C. Mar. 31) (holding that, by alleging he acted "genuinely," plaintiff opened himself to discovery on his genuineness; noting "Plaintiff himself raised the allegation in the first place") *aff'd*, 2021 WL 2156504 (D.D.C. May 26, 2021) (Friedrich, J.). And, in any event, Stonington's requests are "self-limiting with respect to both time and subject matter." *Alexander*, 186 F.R.D. at 36; *cf. In re*

9

*Motorsports Merch. Antitrust Litig.*, 186 F.R.D. 344, 349–50 (W.D. Va. 1999) (compelling subpoena responses over late objections even though court found subpoena "broad on its face").

Respondents similarly fail to demonstrate—with specific evidence—why or how Stonington's requests are burdensome.  "In order to satisfy its burden, the objecting party must make a ***specific, detailed showing*** of how the discovery request is overbroad."  *Brown v. District of Columbia*, No. 10-CV-2250, 2021 WL 1439741, at *4 (D.D.C. Apr. 16, 2021).  "The objecting party must do more than just state the objection, it must also ***submit affidavits or offer evidence*** which reveals the nature of the burden."  *Id*.  The responding party cannot "merely state in a conclusory fashion that the requests are burdensome," *Thong v. Andre Chreky Salon*, 247 F.R.D. 193, 197 (D.D.C. 2008), and "[t]he mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden," *Fagan v. District of Columbia*, 136 F.R.D. 5, 7 (D.D.C. 1991).  Respondents have not shown in any way how Stonington's requests are improperly burdensome.

Finally, Respondents cannot show they acted in good faith.  Indeed, Respondents' sole basis for good faith boils down to Mr. Miniter's apparent communication with Broidy or Broidy's counsel, which inspired Mr. Miniter to ***quit looking for legal counsel*** based on his view that he need not respond to the subpoena.  This coordination with a party to ignore what is effectively a court order is the opposite of good faith.  And Respondents cite ***no authority*** for the proposition that a purported "mistake" constitutes good faith.  Indeed, Respondents' position cannot be the law.  If it were, subpoena respondents would have no incentive to take seriously their "crucial" obligations under the Federal Rules.  *Top Jet Enters., Ltd. v. Kulowiec*, No. 21-MC-789, 2022 WL 280459, at *4 (S.D.N.Y. Jan. 31, 2022); *cf. Garlington v. D.C. Water & Sewer Auth.*, 62 F. Supp. 3d 23, 24 (D.D.C. 2014) ("[E]ven for unsophisticated, untrained plaintiffs, courts require

adherence to the Federal Rules of Civil Procedure."). They would simply respond and object at their leisure, like Respondents did here, knowing that a claim of "mistake" would save them from any consequences. Opp'n 5; *cf. Top Jet Enters.*, 2022 WL 280459, at *5 ("[L]itigation is not a game, and parties cannot engage in halfhearted or ineffective [discovery] efforts."). And even if such a supposed mistake could *ever* constitute good faith, here the third-party is a seasoned investigator who surely was able to read and understand the subpoena, which included an attachment explaining his "duty to respond to th[e] subpoena and the potential consequences of not doing so," and which states that he had 14 days after service to lodge objections.[8] Mot. Compel Ex. 1, ECF No. 126-1.

At bottom, it is clear from Mr. Miniter's declaration that the real reason he failed to respond to the subpoenas was because he was informed (likely by Broidy or his counsel) that pending discovery motions obviated his need to respond. This is blatant subpoena interference. *Cf. Weisberg v. Webster*, 749 F.2d 864, 872 (D.C. Cir. 1984) ("Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents."). The Court should reject any invitation to condone Broidy's interference by categorizing it as "unusual circumstances" or "good cause" sufficient to justify untimely objections.

## CONCLUSION

For the reasons stated above, as well as those stated in its motion to compel subpoena responses, Stonington respectfully requests that the Court grant the motion, compel Richard Miniter and American Media Institute to respond in full to the discovery requests stated in

---

[8] Mr. Miniter is an award-winning journalist who served as a national security columnist for Forbes, and who has authored three New York Times bestsellers. *See Richard Miniter*, Forbes, https://www.forbes.com/sites/richardminiter/?sh=15ef1ce31740 (last visited Apr. 26, 2022).

11

Stonington's subpoenas, find Richard Miniter and American Media Institute in contempt, award attorneys' fees and costs, and grant such other relief as appropriate.

Dated: April 27, 2022

/s/ Stephen J. Obermeier
Stephen J. Obermeier (D.C. Bar # 979667)
sobermeier@wiley.law
Rebecca Fiebig (D.C. Bar # 976854)
rfiebig@wiley.law
Enbar Toledano (D.C. Bar # 1030939)
etoledano@wiley.law
Krystal B. Swendsboe (D.C. Bar # 1552259)
kswendsboe@wiley.law
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Phone: (202) 719-7000
Facsimile: (202) 719-7049

*Counsel for Defendants-Movants Stonington Strategies LLC and Nicolas D. Muzin*