**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In Re: Motion to Compel Compliance with Subpoena Directed to Non-Party Adlumin Inc.<br><br>Underlying Matter<br><br>BROIDY CAPITAL MANAGEMENT, LLC and ELLIOTT BROIDY,<br><br>　　　　　　　　　　　Plaintiffs,<br>　　v.<br>NICOLAS D. MUZIN, JOSEPH ALLAHAM, GREGORY HOWARD, and STONINGTON STRATEGIES LLC,<br><br>　　　　　　　　　　　Defendants. | Case No. 1:19-cv-150-DLF |

**MOTION TO COMPEL SUBPOENA RESPONSES**
**AND MEMORANDUM IN SUPPORT**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 4

LEGAL STANDARD............................................................................................................... 4

ARGUMENT............................................................................................................................ 5

      I.      Respondent Waived All Objections to Stonington's Subpoena. ................ 6

      II.     Respondent Is in Violation of Its Obligation to Respond to the Subpoena. .................................................................................................................... 7

      III.    Respondent's Failure to Respond Deprives Stonington of Key Materials to Test Broidy's Allegations and Support Stonington's Potential Defenses. .................................................................... 8

CONCLUSION........................................................................................................................ 11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alexander v. F.B.I.*,
   186 F.R.D. 21 (D.D.C. 1998)...................................................................................................6

*Alexander v. F.B.I.*,
   194 F.R.D. 316 (D.D.C. 2000).................................................................................................5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. 3:07-CV-05944, 2015 WL 12952688 (N.D. Cal. Jan. 16, 2015).......................................9

*Cherokee Nation v. U.S. Dep't of the Interior*,
   531 F. Supp. 3d 87 (D.D.C. 2021)...........................................................................................5

*Comm. on Judiciary v. McGahn*,
   415 F. Supp. 3d 148 (D.D.C. 2019).........................................................................................7

*Comm. on Judiciary v. McGahn*,
   968 F.3d 755 (D.C. Cir. 2020).................................................................................................7

*In re Denture Cream Prods. Liab. Litig.*,
   292 F.R.D. 120 (D.D.C. 2013).................................................................................................5

*McCoy v. Sw. Airlines Co.*,
   211 F.R.D. 381 (C.D. Cal. 2002).............................................................................................6

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978).................................................................................................................5

*Pietrangelo v. Refresh Club, Inc.*,
   No. 18-CV-1943, 2021 WL 1209300 (D.D.C. Mar. 31, 2021) ................................................9

*Pietrangelo v. Refresh Club, Inc.*,
   No. 18-CV-1943, 2021 WL 2156504 (D.D.C. May 26, 2021).................................................5

*In re Sealed Case*,
   141 F.3d 337 (D.C. Cir. 1998).................................................................................................7

*Ted Cruz for Senate v. Fed. Election Comm'n*,
   451 F. Supp. 3d 92 (D.D.C. 2020)...........................................................................................5

*Williams v. Big Picture Loans, LLC*,
   303 F. Supp. 3d 434 (E.D. Va. 2018) ......................................................................................6

**Rules**

Fed. R. Civ. P. 26..................................................................................................................3, 5

Fed. R. Civ. P. 45.............................................................................................................. *passim*

Fed. R. Civ. P. 45, Advisory Committee's Notes to 1991 Amendment ..........................................7

Fed. R. Civ. P. 45, Advisory Committee's Notes to 2013 Amendment ..........................................6

**Other Authorities**

Ellen Nakashima et al., *Trump fundraiser Elliott Broidy sues Qatar alleging cyber
    smear campaign*, Wash. Post (Mar. 26, 2018),
    https://www.washingtonpost.com/world/national-security/trump-fundraiser-
    elliott-broidy-sues-qatar-alleging-cyber-smear-
    campaign/2018/03/26/29f1a962-3118-11e8-8bdd-cdb33a5eef83_story.html......................2, 8

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i), Defendants-Movants Nicolas D. Muzin and Stonington Strategies, LLC (collectively, "Stonington"), respectfully request that this Court compel Adlumin Inc. ("Adlumin" or "Respondent") to comply with the subpoena for documents issued to it.

## INTRODUCTION

As this Court is well aware, Plaintiffs Broidy Capital Management, LLC and Elliott Broidy's (together, "Broidy") First Amended Complaint ("FAC"), ECF No. 18-2, accuses the State of Qatar ("Qatar") of orchestrating an elaborate operation to hack his computer systems and, with Defendants'[1] alleged assistance, disseminate "curated" batches of his emails to reporters, who published numerous articles about them. As this Court is also by now aware, Broidy and/or his counsel have engaged in substantial efforts to stifle third-party discovery in violation of the Federal Rules, apparently telling multiple third parties that they need not respond in any way to Stonington's subpoenas because Broidy himself had filed a motion to quash and motion for protective order (which itself is improper for all the reasons Defendants have outlined). *See, e.g.*, Rabinowitz Decl. ¶¶ 4–5, ECF No. 132-1; Miniter Decl. ¶¶ 5–6, ECF No. 140-1. Notably, Adlumin is now the ***seventh*** subpoena respondent in this case to entirely fail to respond to Stonington's subpoenas. And this is now the ***fifth*** third-party motion to compel that Stonington has been required to file because a subpoena was simply ignored.

While Broidy's generalized and conclusory relevance objections pertaining to all of Defendants' discovery are meritless (which have been belatedly adopted by those third parties that have previously chosen to ignore their obligations under Rule 45), even Broidy cannot seriously

---

[1] Stonington, Gregory Howard, and Joseph Allaham (together, "Defendants").

dispute Adlumin's relevance to this case. Adlumin is a forensic investigation and cybersecurity firm that Broidy hired to investigate the alleged hack. Adlumin's founder and CEO—Robert Johnston—publicized this fact by providing interviews to news media regarding Adlumin's investigation.[2] Mr. Johnston even shared the results of Adlumin's investigation, which supposedly uncovered the alleged hackers' methods and a few of their mistakes. Indeed, according to Mr. Johnston, these discoveries revealed the identities and locations of the allegedly responsible parties. Moreover, in a prior suit brought by Broidy in the Central District of California ("California Litigation") alleging similar hacking claims against Stonington, Broidy identified Mr. Johnston—in his capacity as Adlumin's CEO—in his Rule 26(a)(1) Disclosures as a person with information concerning (1) the alleged hack, including without limitation Broidy's computer systems and security, alleged "plans to hack" Broidy's computer systems, "***the identity of those who planned and participated in the dissemination***" of allegedly stolen materials, payments allegedly made to individuals to hack Broidy's systems, and the materials allegedly stolen from Broidy; (2) the dissemination of the allegedly stolen materials, including without limitation "***the identity of those who planned and participated in the dissemination***" of allegedly hacked materials, review of the allegedly stolen materials, "payments made to individuals and entities to disseminate materials," and "communications with members of the media concerning the dissemination of materials stolen"; and (3) damages caused by the alleged hack and dissemination of materials allegedly stolen from Broidy.[3] Ex. 1, Broidy California Initial Disclosures. That is,

---

[2] *See, e.g.*, Ellen Nakashima et al., *Trump fundraiser Elliott Broidy sues Qatar alleging cyber smear campaign*, Wash. Post (Mar. 26, 2018), https://www.washingtonpost.com/world/national-security/trump-fundraiser-elliott-broidy-sues-qatar-alleging-cyber-smear-campaign/2018/03/26/29f1a962-3118-11e8-8bdd-cdb33a5eef83_story.html.

[3] Unless otherwise noted, all emphasis in the brief has been added, and all internal citations, quotations, and alterations have been omitted.

Broidy himself identified Respondent and its CEO as having knowledge of issues that go to the heart of Broidy's claims and Stonington's defenses.

Pursuant to Federal Rule of Civil Procedure 45, Stonington served Respondent with document requests seeking information about the alleged hack, any investigation of the alleged hack, the dissemination of the allegedly hacked materials, the alleged damages from that alleged hack, and Broidy's unlawful efforts to shape U.S. policy in favor of foreign powers through contact with the media and/or government officials that the hacked documents reveal. Information resulting from these requests goes to the heart of this case and will both undermine Broidy's factual allegations and credibility and challenge his asserted entitlement to damages, including his alleged loss of business relationships and opportunities that he allegedly suffered as a result of Defendants' conduct. That is to say, all of the requests are permissible and seek relevant information. *See* Fed. R. Civ. P. 26(b).

Respondent has failed to provide any response to Stonington's requests. Despite being served with the subpoena nearly two months ago, Respondent has not provided a single objection. Indeed, Respondent has not responded to the subpoena at all.[4] As a result, Respondent is in violation of the subpoena and has waived any objections to the subpoena. This Court should grant Stonington's Motion to Compel in full.

---

[4] Counsel for Broidy requested a conference to discuss the Adlumin subpoena via email on March 29, 2022, suggesting that they represent Adlumin. However, after serving a letter on Broidy's counsel regarding Adlumin's deficient response on April 14, 2022, Broidy's counsel stated that he did not represent Adlumin and did not know whether Adlumin was represented. *See* Ex. 3.

**BACKGROUND**

On March 3, 2022, Stonington issued a subpoena directed to Respondent, with a compliance deadline of April 4, 2022. Ex. 2, Adlumin Subpoena. On March 4, 2022, Stonington personally served the subpoena on Adlumin's registered agent, CT Corporation System. Ex. 4, Adlumin Affidavit of Service.

Under the Federal Rules, written objections to the subpoena were therefore due by March 18, 2022. *See* Fed. R. Civ. P. 45(d)(2)(B) (stating objections are due the earlier of the compliance deadline or 14 days after subpoena service). But Respondent failed to serve any objections to the subpoena by the objection deadline. Respondent then proceeded to ignore the compliance deadline.[5]

To date, more than six weeks after the objection deadline and a month after the subpoena's due date, Respondent has failed to contact Stonington regarding the subpoena or produce a single document. It has thus entirely failed to comply with its obligations under Rule 45, and it has offered no good faith reason for its noncompliance. This Court should compel Respondent to fully and immediately comply with the subpoena.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 45, a party may serve a subpoena on a non-party seeking the production of documents. Fed. R. Civ. P. 45(a)(1)(A)(iii). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."

---

[5] On February 14, Broidy filed a motion for protective order and motion to quash, which seeks to limit the scope of Defendants' third-party subpoenas. *See* ECF No. 118. For the reasons explained in Defendants' response, including Broidy's lack of standing, the Court should deny that motion. ECF No. 121. Regardless, Broidy's motion could not affect the Court's ruling here—as other third parties have improperly argued—because Broidy's motion pre-dated the Adlumin subpoena, and Respondent has waived any potential objections and has not made a good faith effort to respond to the subpoena.

4

Fed. R. Civ. P. 26(b)(1). In the context of discovery, "relevance is construed broadly." *Pietrangelo v. Refresh Club, Inc.*, No. 18-CV-1943, 2021 WL 2156504, at *5 (D.D.C. May 26, 2021) (Friedrich, J.); *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("[Relevance] encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."). "Therefore, with respect to a Rule 45 subpoena, a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013). "This broad interpretation of relevance advances Rule 26's liberal and expansive purpose of permitting the parties to develop the facts, theories, and defenses of the case." *Ted Cruz for Senate v. Fed. Election Comm'n*, 451 F. Supp. 3d 92, 98 (D.D.C. 2020); *Alexander v. F.B.I.*, 194 F.R.D. 316, 325 (D.D.C. 2000) ("[A] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action."). "Ultimately, discovery generally should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." *Cherokee Nation v. U.S. Dep't of the Interior*, 531 F. Supp. 3d 87, 98 (D.D.C. 2021); *see also Ted Cruz for Senate*, 451 F. Supp. at 98–99 (compelling production because the court could not "conclude that the information sought by Defendants would have no bearing on any merits-based defense [Defendants] may raise"); *Alexander*, 194 F.R.D. at 326 ("Discovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient.").

## ARGUMENT

Stonington's subpoena seeks non-privileged documents from Respondent that are directly probative of specific allegations in the FAC, elements of Broidy's claims and alleged damages, Broidy's credibility and motives for bringing this case, and Stonington's defenses. Broidy himself conceded as much when he named Adlumin's CEO in his initial disclosures in the California

Litigation. Nevertheless, rather than serving timely written objections or even bothering to comply with the subpoena as contemplated by the Federal Rules of Civil Procedure, Respondent has ducked its obligations entirely.

This Court should thus order Respondent to promptly produce all responsive documents. Respondent has waived any potential objections. Respondent has further violated its duty to comply with the subpoena by failing to respond. And Respondent's failure to respond harms Stonington's ability to test Broidy's allegations and prepare Stonington's defenses.

### I.   RESPONDENT WAIVED ALL OBJECTIONS TO STONINGTON'S SUBPOENA.

Under Rule 45, a non-party may object to a subpoena. Objections, however, "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). "Normally, failure to object timely waives any objection, including privilege." *Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 441 (E.D. Va. 2018); *see also Alexander v. F.B.I.*, 186 F.R.D. 21, 34 (D.D.C. 1998) ("[T]he failure to serve written objections to a subpoena within the time frame specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections.");[6] *McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002) ("[A] nonparty's failure to timely make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objection, including attorney-client privilege, has been waived.").

Here, Respondent has failed to serve any objections at all. The time specified for Respondent's compliance with Stonington's subpoena was April 4, 2022, and fourteen days from

---

[6] Citations in pre-2013 cases to Rule 45(c)(2)(B) refer, in substance, to the same 14-day provision now housed under Rule 45(d)(2)(B). Amendments to the Rule in 2013 caused "[s]ubdivision (d) [to] contain[ ] the provisions formerly in subdivision (c)." Fed. R. Civ. P. 45, Advisory Committee's Notes to 2013 Amendment.

service was March 18, 2022. *See* Exs. 2, 4. Objections were thus due on March 18, and Respondent failed to serve objections by that date. More than six weeks later, Respondent still has not attempted to object or otherwise even acknowledge the need to comply with the subpoena seeking relevant information. Thus, Respondent has waived any objection to the subpoena, and for that reason alone, the Court should compel Respondent to comply with the subpoena in full.

## II. RESPONDENT IS IN VIOLATION OF ITS OBLIGATION TO RESPOND TO THE SUBPOENA.

A subpoena is a type of a court order. As the Advisory Committee's commentary makes clear, Rule 45 allows "attorneys in distant districts to serve as officers authorized to issue commands in the name of the court," and "defiance of a subpoena is . . . an act in defiance of a court order." Fed. R. Civ. P. 45, Advisory Committee's Notes to 1991 Amendment. "[A] valid subpoena ordinarily gives rise to a legally enforceable duty to perform in the requested manner." *Comm. on Judiciary v. McGahn*, 415 F. Supp. 3d 148, 168 (D.D.C. 2019), *vacated on other grounds* 951 F.3d 510 (D.C. Cir. 2020).

Violation of a subpoena thus "exposes the defiant witness to contempt sanctions." Fed. R. Civ. P. 45, Advisory Committee's Notes to 1991 Amendment; *see* Fed. R. Civ. P. 45(g). And "the court may enforce the subpoena by holding in contempt a person who refuses to obey it." *Comm. on Judiciary v. McGahn*, 968 F.3d 755, 772 (D.C. Cir. 2020); *In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998) (noting that failure to comply with a subpoena "is a contempt of [the issuing] court").

Respondent has ignored its obligation to respond to the subpoena. The Court should thus not only order full and immediate production of all requested materials, but also find Respondent in contempt.

### III. RESPONDENT'S FAILURE TO RESPOND DEPRIVES STONINGTON OF KEY MATERIALS TO TEST BROIDY'S ALLEGATIONS AND SUPPORT STONINGTON'S POTENTIAL DEFENSES.

Fact discovery in this litigation is quickly coming to a close. *See* Minute Order (Apr. 25, 2022).[7]  By flouting Stonington's subpoena, Respondent has deprived Stonington of reasonable and necessary discovery material and prejudiced its ability to defend itself in this case.  Indeed, the subpoena seeks important information that bears on Stonington's defenses.

*First*, the subpoena seeks information about Respondent's relationship with Broidy and his associates, Respondent's work in relation to the alleged hacking, and the topics on which Broidy himself stated Respondent had knowledge.[8]  Indeed, Broidy specifically named Respondent has a person with knowledge of: (A) "the nature of [Broidy's] computer systems"; (B) "the ***security measures*** protecting [Broidy's] computer systems"; (C) "the ***materials stored*** on [Broidy's] computer systems"; (D) "***plans to hack*** [Broidy's] computer systems"; (E) "the ***identity of those who planned and participated in the hacking*** of [Broidy's] computer systems"; (F) "***efforts to acquire the usernames and passwords*** of those with access to [Broidy's] computer systems"; (G) "***payments made to individuals and entities to hack*** [Broidy's] computer systems"; (H) "the ***infiltration*** of [Broidy's] computer systems"; and (I) "the ***materials stolen*** from [Broidy's] computer systems."  Ex. 1.  And Adlumin's CEO has publicly discussed these issues, including that the investigation revealed information about the alleged location and identity of the alleged hackers.[9]  Broidy also stated that Respondent possesses specific knowledge of the dissemination of the allegedly hacked materials—including the identity of those who planned and participated in

---

[7] The deadline for "Substantial Completion of Document Discovery," now set for August 19, 2022, has already been extended once.  *See* Minute Order (D.D.C. Apr. 25, 2022).

[8] Ex. 2, Adlumin Subpoena, Reqs. 1–8, 12, 16–41.

[9] Nakashima et al., *supra* n.2.

the alleged dissemination and the contents of material allegedly disseminated—as well as the alleged damage resulting from the alleged hack and dissemination. *Id.* Respondent is therefore a percipient witness. There should be no question that Stonington's subpoena is proper, and its defense is prejudiced due to Respondent's failure to respond.

*Second*, the subpoena seeks information regarding allegations stated in the FAC, including those about the alleged hacking and the alleged basis for targeting Broidy.[10] In addition to alleging specifics regarding the alleged hacking, FAC ¶¶ 78–110, the FAC contains wide-ranging allegations relating to Broidy's theory that Defendants conspired to hack and leak his emails in order to punish him for his supposedly altruistic opposition to Qatar, *see, e.g., id.* ¶¶ 8, 12, 27 (alleging Defendants "manufactur[ed] negative news stories" about Broidy, describing Broidy as a "civic leader and philanthropist," and claiming the coverage of his leaked emails harmed Broidy's "standing and business relationships in Washington, D.C."). By asserting these allegations in the FAC, Broidy has necessarily put them at issue for purposes of discovery and Stonington may investigate these topics through third-party discovery. *See Pietrangelo v. Refresh Club, Inc.*, No. 18-CV-1943, 2021 WL 1209300, at *9 & n.3 (D.D.C. Mar. 31, 2021) (explaining that even "one word" in a complaint can "open a can of discovery worms," and that a "seasoned litigator such as Plaintiff ought to know better than to include such superfluous language in a complaint if he is not prepared to litigate it"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-CV-05944, 2015 WL 12952688, at *3 (N.D. Cal. Jan. 16, 2015) (holding discovery that can "rebut allegations" is discoverable even if allegations are not central to plaintiff's claims).

---

[10] Ex. 2, Adlumin Subpoena, Reqs. 1–15, 18–41.

As noted above, Respondent is a forensic investigative and cybersecurity firm that Broidy hired to investigate the alleged hacking. In performing this work, Respondent no doubt gained access to information about Broidy's campaign to influence U.S. policy against Qatar at the behest of Broidy's foreign principals, including the UAE and Saudi Arabia, and to improve his own business opportunities with those countries. Respondent's materials, therefore, may show Broidy's role in orchestrating attacks on Qatar, efforts to influence U.S. policy regarding Qatar, and Broidy's true motives for doing so, as well as information about the alleged hacking.

*Third*, the subpoena seeks information about the illegal activity that is evidenced in the supposedly hacked materials underlying Broidy's claims.[11] Indeed, Stonington has reason to believe that Respondent's materials may shed light on Broidy's illegal efforts to influence U.S. policy regarding Qatar—and other countries and individuals—on behalf of foreign principals. *See, e.g.*, Defs.' Cross-Mot. Compel at 26–33, ECF No. 115; Defs.' Mot. Compel Subpoena Resps. at 7–11, ECF No. 124.

As Defendants explained in their motion to compel Broidy to comply with discovery requests, as well as their motions to compel other recalcitrant subpoena respondents, information relating to Broidy's illegal conduct is highly relevant. Among other things, this information is relevant to refute Broidy's claim that publication of his allegedly hacked emails "create[d] a false and injurious image" of him and thereby caused him harm. FAC ¶ 33. Further, the information is relevant to rebut Broidy's repeated allegation that he was targeted because of his altruistic opposition to Qatar, when in fact he was covertly working on behalf of foreign powers to influence

---

[11] Ex. 2, Adlumin Subpoena Reqs. 1–15, 24–30.

U.S. policy and to improve his own business opportunities with those foreign powers. *See also* ECF No. 115.

Respondent's failure to respond prevents Stonington from fully exploring these important areas of discovery. Despite ample time to comply with Stonington's subpoena, Respondent has chosen simply to ignore the subpoena. The Court should grant this motion.

## CONCLUSION

Stonington respectfully requests that the Court compel Adlumin to respond in full to the discovery requests identified above and listed in Exhibit 2, to find Adlumin in contempt for its failure to obey Stonington's subpoena, *see* Fed. R. Civ. P. 45(g), and to grant such other relief as appropriate.

Dated: May 3, 2022

/s/ Stephen J. Obermeier
Stephen J. Obermeier (D.C. Bar # 979667)
sobermeier@wiley.law
Rebecca Fiebig (D.C. Bar # 976854)
rfiebig@wiley.law
Enbar Toledano (D.C. Bar # 1030939)
etoledano@wiley.law
Krystal B. Swendsboe (D.C. Bar # 1552259)
kswendsboe@wiley.law
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Phone: (202) 719-7000
Facsimile: (202) 719-7049

*Attorneys for Defendants-Movants Stonington Strategies LLC and Nicolas D. Muzin*