UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BROIDY CAPITAL
MANAGEMENT LLC *et al.*,

    *Plaintiffs*,

v.

NICOLAS D. MUZIN *et al.*,

    *Defendants*.

No. 19-cv-150 (DLF)

## MEMORANDUM OPINION AND ORDER

Plaintiffs Broidy Capital Management, LLC, and Elliott Broidy (together, "Broidy") brought this suit against several foreign agents of the State of Qatar: Nicolas Muzin, Joseph Allaham, Gregory Howard, and Stonington Strategies, LLC.  *See* First Am. Compl. (Compl.) ¶¶ 11–18, Dkt. 18-2.  Broidy alleges that the defendants joined a "Qatari Enterprise," which conspired to hack his computers and disseminate the hacked information in retaliation for his anti-Qatari advocacy.  *Id.* ¶¶ 1–2, 199.  This Court previously held that the defendants' affiliation with Qatar did not entitle them to foreign sovereign immunity.  *See* Mem. Op. of Mar. 31, 2020 at 10–17, Dkt. 51, *aff'd*, *Broidy Cap. Mgmt. LLC v. Muzin*, 12 F.4th 789 (D.C. Cir. 2021).  It also held that Broidy stated claims for which relief could be granted under the Computer Fraud and Abuse Act (CFAA), the Defend Trade Secrets Act (DTSA), and the California Uniform Trade Secrets Act (CUTSA), as well as for the torts of receiving stolen property, intrusion upon seclusion, and civil conspiracy.  *See* Mem. Op. of Mar. 31, 2020 at 23–32, 38–39, 41–43.  The case is now in discovery.

On January 24, 2022, Broidy moved to compel discovery that the defendants were withholding based on privileges purportedly held by Qatar. *See* Pls.' Mot. to Compel, Dkt. 109. The defendants responded that the Vienna Convention on Diplomatic Relations (VCDR), the Vienna Convention on Consular Relations (VCCR), and principles of international comity permit them to withhold "[d]ocuments created for Qatar, communications between [them] and Qatar, and communications between [themselves] when they were acting as agents for Qatar." Defs.' Opp'n to Pls.' Mot. to Compel at 12, Dkt. 115. Qatar likewise argued that its communications with the defendants were "inviolable," VCDR, Dec. 13, 1972, 23 U.S.T. 3227, art. 24. *See* Qatar's Statement of Interest Regarding Pls.' Mot. to Compel, Dkt. 114; Qatar's Statement of Interest Regarding Pls.' Mot. to Recons., Dkt. 107.

On June 2, 2022, this Court held that neither the Vienna Conventions nor principles of international comity "permit the defendants to withhold discovery that is otherwise required under the Federal Rules of Civil Procedure." Mem. Op. of June 2, 2022 at 11, Dkt. 149. First, the Court concluded that the text and structure of the Conventions "strongly suggest" that they do not protect "documents freely given to non-[diplomat] parties." *Id.* at 13–17. Second, the Court reasoned that the defendants' interpretation of the Conventions conflicted with the most natural reading of the Foreign Agents Registration Act (FARA). *See id.* at 17–18. Third, the Court noted that the defendants had not identified any authority to support their expansive reading of the Conventions, *see id.* at 19, and that all available authority weighed against them, *see id.* at 18–21. Finally, the Court noted that the defendants had not identified any authority for using comity to "shield private, American parties from discovery," *id.* at 21–22, and declined to extend comity in that fashion, *see id.* at 22. For those reasons, the Court granted Broidy's motion to compel. *See* Order of June 2, 2022, Dkt. 148.

On June 6, 2020, Qatar filed a notice of appeal to the D.C. Circuit. *See* Dkt. 153. It then filed a Motion to Confirm Divestment of District Court Jurisdiction, which seeks two forms of relief. *See* Qatar's Mot. to Confirm, Dkt. 156. First, Qatar requests an "order confirming" that its notice of appeal transferred "jurisdiction . . . with respect to any proceedings relating to the [above] Order," such that "no proceedings . . . related to the matter on appeal [may] continue." *Id.* at 3. Alternatively, Qatar moves for a "partial stay of discovery as to materials subject to the Court's Order, pending resolution of [its] appeal." *Id.* at 8. For the reasons that follow, this Court will deny Qatar's motion for a stay and defer consideration of all remaining jurisdictional issues.

The Court has jurisdiction over Qatar's motion for a stay. As a general matter, the filing of a notice of appeal "divests the district court of control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam). The district court retains jurisdiction, however, to "preserve the status quo until decision by the appellate court," *Newton v. Consol. Gas Co. of New York*, 258 U.S. 165, 177 (1922), and otherwise act "in aid of the appeal," *Grand Jury Proc. Under Seal v. United States*, 947 F.2d 1188, 1190 (4th Cir. 1991). On that basis, several courts of appeals have held that a notice of appeal does not prevent district courts from "addressing in the first instance a motion for stay pending appeal." *Wolfe v. Clarke*, 718 F.3d 277, 281 n.3 (4th Cir. 2013); *see also In re Miranne*, 852 F.2d 805, 806 (5th Cir. 1988) (per curiam); *Rakovich v. Wade*, 834 F.2d 673, 674 (7th Cir. 1987). This Court likewise resolves motions for emergency relief that are filed after a notice of appeal, *see, e.g.*, *Creaghan v. Austin*, No. 22-cv-981, Dkt. 34; *Ass'n of Realtors v. U.S. Dep't of Health & Human Servs.*, No. 20-cv-3377, Dkt. 60; *Comm. on Ways & Means v. U.S. Dep't of the Treasury*, No. 19-cv-1974, Dkt. 155, and the D.C. Circuit has decided cases in that

posture without noting a jurisdictional obstacle, *see, e.g.*, *Ala. Ass'n of Realtors v. U.S. Dep't of Health & Human Servs.*, 2021 WL 2221646 (D.C. Cir. June 2, 2021) (noting the relevant chronology). This Court may thus resolve Qatar's motion for a stay irrespective of Qatar's notice of appeal.[1]

A stay pending appeal is an "extraordinary remedy," *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985) (per curiam), because it "is an intrusion into the ordinary processes of administration and judicial review," *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks omitted). To obtain the remedy, the moving party bears the burden of showing that such an intrusion is warranted upon consideration of four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 433–34 (internal quotation marks omitted). In this case, those factors weigh against extraordinary relief.

Starting with the first factor, Qatar has not shown a substantial likelihood of success on the merits. This Court addressed both the Vienna Conventions and international comity in its prior opinion and held that neither support Qatar's position. *See* Mem. Op. of June 2, 2022 at 10–25. The Court is also unpersuaded that Qatar's appeal raises sufficiently "serious legal questions" to merit a stay under the "sliding-scale" test. *Sherley v. Sebelius*, 644 F.3d 388, 398 (D.C. Cir. 2011). Although the exact scope of the Vienna Conventions is a complex issue, there

---

[1] Because this Court could issue a stay *sua sponte*, *see Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (noting that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket"), it need not decide whether Qatar itself has standing to seek that relief, *see* Broidy's Opp'n to Qatar's Mot. to Confirm at 8, Dkt. 157.

is little reason to think that the Conventions bar the discovery at issue here.  The D.C. Circuit has already held that the defendants lack both status-based and conduct-based sovereign immunity, *see Broidy Cap. Mgmt.*, 12 F.4th 798–804, and noted the "weakness of the defendants' claimed connection with Qatar," *id.* at 801.  Qatar has not cited *any* case in any jurisdiction that supports extending the Conventions to similarly situated individuals.  Nor has Qatar shown cause for protecting specific documents in the defendants' possession, on the grounds that they either "belong to Qatar" or concern the "formulat[ion] its foreign policy," Mem. Op. of June 2, 2022 at 13, 23.  Finally, the State Department has not endorsed Qatar's position.  This Court previously interpreted a statement that the Department issued on December 4, 2002 to support its reading of the Conventions.  *See id.* at 20–21.  And although Qatar now relies a second statement issued on December 11, the second statement simply elaborates on the first.[2]  *See* Statement by Will Taft, U.S. Dep't of State (Dec. 11, 2002), in Hearings Before the House Comm. on Gov't Reform, No. 107-83, at 1671–76.  Qatar has thus failed to identify a serious legal question in this case, which is a sufficient basis alone for denying a stay.  *See Sherley*, 644 F.3d at 393.

Turning regardless to the second stay factor, the risk of irreparable harm to Qatar does not warrant a stay.  Qatar cites *United States v. Philip Morris Inc.*, 314 F.3d 612 (D.C. Cir. 2003), to argue that the disclosure of privileged information is always an irreparable harm.  *See id.* at 621; *see also* Qatar's Mot. to Confirm at 11.  But the Supreme Court abrogated that portion

---

[2] The Department wrote in its second statement that "the mere fact that archives have passed to a third party does not resolve [their status under the Vienna Conventions]."  Hearings Before the House Comm. at 1675.  But the Department expressed that view because the issue "ha[d] rarely been tested by courts," without reaching a firm conclusion on its merits.  *Id.*  Moreover, this Court held that the contested documents fall outside the Vienna Conventions both because Qatar "freely [gave]" them to the defendants, *see* Mem. Op. of June 2, 2022 at 13, and because the defendants lacked a sufficient connection to Qatar to merit either status-based or conduct-based sovereign immunity, *id.* at 11–12 (citing *Broidy Cap. Mgmt.*, 12 F.4th at 804).

5

of *Philip Morris* in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), which held that rulings on attorney-client privilege are not collaterally appealable because "postjudgment appeals generally suffice to protect the rights of litigants and ensure the [privilege's] vitality." *Id.* at 109. Similarly here, a postjudgment appeal could cure any harm associated with the disclosure of material protected under the Vienna Conventions. *See id.* Moreover, to the extent that *Philip Morris* remains good law, this Court has mitigated the harms that would result from any improper discovery by approving a protective order that limits the parties' use and disclosure a wide range of confidential materials. *See* Am. Protective Order, Dkt. 150. The Court has also "advised that violating this Order may be punished by appropriate measures, including contempt proceedings and monetary sanctions." Minute Order of Dec. 8, 2021. And because this case is in the early stages of discovery, this Court is ways away from addressing the admissibility of any discovered evidence at trial. Accordingly, even assuming that allowing the contested discovery would injure Qatar, the extent of that injury provides little support for a stay pending appeal.

In contrast, there is good reason to believe that issuing a stay would substantially injure Broidy. The defendants have taken the position that almost all of Broidy's discovery requests implicate either the Vienna Conventions and international comity. *See, e.g.*, Decl. of Henry B. Brownstein Ex. 1 (Gregory Howard's Resps. and Objs. to Pls.' First Reqs. for Produc. of Docs.) ¶¶ 1–5, 7, 9, 13, Dkt. 109-3; *see also* Mem. Op. of June 2, 2022 at 24. And although discovery in this case began on December 8, 2022, it appears that the defendants have yet to produce a single document. *See* Broidy's Opp'n at 18; *see also* Pls.' Statement in Reply to Defs.' Notice of Non-Opposition, Dkt. 141 (representing that the defendants had failed to produce any document as of April 21, 2022). Those considerations suggest that granting a stay in this case would postpone *all* discovery from the defendants. Moreover, both the volume and scope of the

defendants' discovery requests suggest that they are approaching the discovery process in bad faith.  In those circumstances, the Court finds the costs to Broidy of staying this particular order weigh against extraordinary relief.  *See Horn v. Huddle*, 647 F. Supp. 2d 66, 69 (D.D.C. 2009).

Finally, Qatar has failed to show that the public interest favors a stay.  First, Qatar argues that the United States has "strong interests . . . in preventing interference with its treaty obligations."  Qatar's Mot. to Confirm at 12 (quoting *Texas v. New Mexico*, 138 S. Ct. 954, 959 (2018)).  But that interest is not implicated here, as Qatar has failed to raise a serious legal question regarding the interpretation of the Vienna Conventions.  *See supra.*  Qatar further argues that "respecting the requirements of the Conventions . . . helps to ensure that the United States will benefit from reciprocal treatment from foreign states."  Qatar's Mot. to Confirm at 13.  But as this Court discussed in its Memorandum Opinion, a House committee previously issued subpoenas to lobbyists for Saudi Arabia based on a similar interpretation of the Vienna Conventions.  *See* Mem. Op. of June 2, 2022 at 20–21; *see also* Brownstein Decl. Ex. 12 (Chairman Burman letter) at 9, Dkt. 109-14 (explaining the committee's reasoning).  Accordingly, to the extent that this Court's interpretation has diplomatic significance, it hardly breaks new ground.  And in any event, it is uncertain whether foreign states would grant reciprocal treatment to an interpretation of the Vienna Conventions that lacks support in their text, structure, or purpose.  The predominant public benefits at issue thus appear to be "the usual benefits of deferring appeal until litigation concludes."  *Mohawk Indus.*, 558 U.S. at 107.

For those reasons, in addition to those stated in its recent Memorandum Opinion, the Court finds that Qatar does not satisfy the requirements for the "extraordinary remedy" of a stay pending appeal.  *Cuomo*, 772 F.2d at 978.

Further, this Court will deny the motion to clarify its own jurisdiction because Qatar has failed to show that underlying issues of appellate jurisdiction are ripe for review. Both parties agree that a notice of appeal does not divest a district court of jurisdiction when it seeks "an interlocutory appeal from a non-appealable order." *United States v. DeFries*, 129 F.3d 1293, 1303 (D.C. Cir. 1997); *see* Qatar's Mot. to Clarify at 7. Therefore, to resolve the instant motion, this Court would need to decide whether denials of immunity under the Vienna Conventions qualify for immediate appeal under the collateral order doctrine. *Compare Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16, 16–17 (2d Cir. 2014) (holding that disclosure orders implicating the Vienna Conventions do so qualify), *with Mohawk*, 558 U.S. at 103 (holding that disclosure orders implicating attorney-client privilege do not). The Court would also need to decide whether Qatar can appeal a discovery order that applies only to the defendants, in a case where the defendants have vigorously pressed the same position as Qatar and have a clear interest in withholding the contested discovery. *Cf. In re Sealed Case*, 141 F.3d 337, 340 (D.C. Cir. 1998) (holding that the *Perlman* doctrine does not apply when the party that is subject to a discovery order has the "requisite incentives (as well as the clear ability) to . . . force review [of that order] into the usual channel"). Finally, the Court would need to decide whether Qatar can appeal a discovery order and seek an active role in the discovery process without waiving its immunity from suit.³ *See* Qatar's Mot. to Confirm at 1 (emphasizing that Qatar has not waived its immunity).

---

³ Qatar proposes collaborating with the defendants to prepare a "privilege log itemizing any materials over which Qatar will assert its sovereign privileges and immunities." Qatar's Mot. to Confirm at 12 n.6. But this Court previously held that Qatar "may not receive or review ongoing discovery in this case . . . without moving to intervene," such that it is subject to this Court's control over the discovery process. Minute Order of Dec. 8, 2021; *see also In re Sealed Case (Med. Recs.)*, 381 F.3d 1205, 1211 n.4 (D.C. Cir. 2004) (noting that several "courts of appeals

The Court need not resolve those complex questions at this time. Although Qatar seeks clarification of this Court's jurisdiction to determine whether "proceedings . . . related to the matter on appeal [may] continue," Qatar's Mot. to Confirm at 3, this Court already held that "neither the Vienna Conventions nor principles of international comity permit the defendants to withhold discovery that is otherwise required under the Federal Rules of Civil Procedure." Mem. Op. of June 2, 2022 at 24–25. The Court also granted Broidy's motion to compel the discovery that the defendants had withheld on that basis. *See* Order of June 2, 2022. That order remains "operative" "[u]nless a stay is granted." *Deering Milliken, Inc. v. FTC*, 647 F.2d 1124, 1128–29 (D.C. Cir. 1978). This Court retains its "powers to enforce" that order "throughout the pendency of the appeal," *id.*, including through civil contempt proceedings, *see NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987); *In re Grand Jury Subpoena No. 7409*, 2018 WL 8334866, at *2 (D.D.C. Oct. 5, 2018) (collecting cases). And federal courts do not ordinarily opine on their jurisdiction absent an underlying controversy on the merits. Should the parties raise a legitimate merits issue related to the Vienna Conventions or international comity, the Court will address its jurisdiction at that time.

## CONCLUSION

Accordingly, it is

**ORDERED** that the Qatar's Motion to Confirm Divestment of District Court Jurisdiction Over Discovery Issues on Appeal, Dkt. 67, is **DENIED** to the extent that it seeks a stay pending

---

have construed a district court's decision to permit a non-party to participate in a discovery dispute as the equivalent of authorizing intervention" (citation omitted)). To date, Qatar has not filed a motion to intervene, challenged the above holding, or identified any case that allowed an absent sovereign to screen a private party's discovery.

appeal and **DENIED WITHOUT PREJUDICE** to the extent that it seeks further clarification of this Court's jurisdiction.

      **SO ORDERED.**

June 15, 2022

_____
DABNEY L. FRIEDRICH
United States District Judge