# EXHIBIT 1

## DECLARATION OF JOSEPH ALLAHAM

I, Joseph Allaham, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. My name is Joseph Allaham. I am a defendant in the matter of Broidy vs. Muzin et al, case # 1:19-cv-00150-DLF, filed in the District of Columbia on January 24, 2019.

2. The majority of the work that I did for the State of Qatar and the Qatar Investment Authority (QIA) involved finding investment opportunities in the United States. For example, I introduced them to Gary Barnett, the head of Extell, a major Manhattan-based real estate company. I also helped them build relationships with Jewish community leaders.

3. I have been informed by my attorneys at ArentFox Schiff that a London-based attorney representing Qatar named Osama Abu-Dehays of Pillsbury Winthrop Shaw Pittman told my attorneys that they could not produce to Broidy any documents and communications that would be embarrassing to Qatar or that would reveal the involvement of Qatar and/or its agents in the hack-and-smear campaign targeting Broidy.

4. Based on my conversations with my attorneys, it is my understanding that the instruction from Pillsbury is why Covington & Burling, which represents the State of Qatar, has submitted privilege logs designating as "privileged" numerous of my WhatsApp communications with Ali Al-Thawadi, Chief of Staff to Mohammed bin Hamad Al Thani, the younger brother of the Emir of Qatar.

5. In addition, my attorneys told me in or around May of this year that they were not allowed to search my documents and communications from 2017 and 2018, because Covington told them that my materials from that time frame "belong" to Qatar.

6. I have reviewed the two privilege logs that Covington has produced based on my materials. I was a party to each of the communications designated as privileged. All but one of the 28 items from the second log came from chat messages that I exchanged with Ali Al-Thawadi.

7. I reviewed all my chat messages with Ali Al-Thawadi. After that review, I can say with certainty that none of my chats discussed "diplomatic strategy" for any country. For example, some of the messages simply discussed Qatar giving very expensive watches, such as Patek Philippe and Rolex, as gifts to high-profile and influential people in the United States. Some of the messages discussed the influential figures that I had helped travel to Doha, such as Alan Dershowitz, Mike Huckabee, and former WABC talk radio host John Batchelor. But those travels and my involvement with them were not secret; I publicly disclosed those actions in my FARA filings, and my former business partner (and co-Defendant in this case) Nick Muzin and I talked about those trips in a front-page story in the *Wall Street Journal* in 2018.

1

8. Nothing in the contents of the documents related to Qatar's foreign policy or diplomacy. None of the documents contain any information that could be considered foreign policy or diplomatic secrets. Nothing in the text of any the documents relates to what I understand are the essential functions of a diplomatic mission.

9. During the time I worked for Qatar and QIA: no one ever told me and I never agreed or believed that I was helping Qatar's diplomacy; no one ever told me and I never agreed or believed that the documents were confidential; no one ever told me and I never agreed or believed that the communications and documents in my possession were the property of Qatar; no one ever gave any instructions regarding the handling or sharing of any information or materials relating to Qatar; and no one ever told me and I never agreed or believed that any materials or information that I had sent or received was "of the mission," including in the sense that they were confidential or proprietary for the purpose of advancing Qatar's foreign policy.

## DECLARATION

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 19 day of August 2023, at 14:22 P.M.

Joseph Allaham

2