**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BROIDY CAPITAL MANAGEMENT, LLC, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil No. Action 1:19-cv-00150-DLF |
| | : | |
| v. | : | |
| | : | |
| NICHOLAS D. MUZIN, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**NON-PARTY MIDDLE EAST FORUM'S**
**MOTION TO QUASH, FOR PROTECTIVE ORDER AND SANCTIONS**

Non-Party Middle East Forum ("MEF") by counsel, pursuant to Rule 26(c), moves to quash and for a protective order (the "Motion") to prohibit further discovery relating to the February 14, 2022 Subpoena (the "Subpoena") issued by Defendant Greggory Howard ("Mr. Howard").

**I.      INTRODUCTION**

For over a year and a half, MEF has expressed concern that Mr. Howard has been using discovery as a tool to harm those that he believes may in some way be seeking to expose Qatari interests and actions, and/or otherwise are aligned with Plaintiff Broidy Capital Management, LLC and Elliott Broidy ("Plaintiffs"). This reasonable and cognizable concern has been heightened as a result of the August 25, 2023 filing by Plaintiffs which exposes potential concerted and subversive activity by Qatar through a Defendant in this lawsuit. In fact, now it is clear that MEF is not alone with its concern. This Court's August 25, 2023 Minute Order stated: "the Court has concerns that certain statements in Qatar's privilege log may be false or materially misleading." MEF has repeatedly asked Mr. Howard's counsel to withdraw the subpoena issued to MEF and/or otherwise to deem it fully satisfied, yet as part of what seems more and more to be

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 Wootton Parkway, Suite 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

an ongoing tactic to abuse the discovery process, Mr. Howard—through counsel—has refused to do so.  As a result, MEF is requesting the Court's intervention to remove it from under the never-ending Subpoena obligation to Mr. Howard.

MEF has unreasonably had the specter of a Subpoena, and its overbroad requests for documents hanging over its head since February 14, 2022. This has all continued despite the fact that MEF has produced nearly two thousand (2,000) pages of documents, has identified applicable and dispositive privilege that apply, has attempted repeatedly to engage in a good faith discussion and has seen this Court rule that discovery must be limited. Despite repeated requests, Mr. Howard to date, has failed to confirm that MEF has fully satisfied its obligations under the Subpoena and that no further obligations are pending relating to this claim.

As a result of Mr. Howard's conduct, MEF has been cast in a false light and is suffering damages. On November 3, 2022, an article was published by Tablet Magazine wherein MEF is expressly mentioned as receiving a Subpoena and Mr. Howard's counsel was quoted as saying "Mr. Howard has issued a small number of targeted subpoenas to parties that he reasonably believes are in the possession of evidence that the Court has deemed to be highly relevant to this case and to Mr. Howard's defenses." Mr. Howard's counsel's vague and inaccurate quote is likely to leave readers—including MEF sources, supporters and potential supporters—with the incorrect and dangerous belief that MEF somehow engaged in some potentially criminal wrongdoing. That implication casts MEF—which depends heavily upon its reputation, to gain the trust of its sources and the support of its donors—in a false light without any basis for so doing. MEF is entitled to a protective order to prevent it from suffering further prejudice.

Additionally, under Rule 45(d)(1) this Court has authority to enforce the duty of a party issuing and serving a subpoena to "take steps to avoid imposing an undue burden or expense on a

person subject to the subpoena" including the imposition of appropriate sanctions (i.e. award of reasonable attorneys' fees). For the reasons set forth more fully below, this Court should impose sanctions against Mr. Howard for the improper conduct associated with the Subpoena that has now been purposefully held open for over eighteen (18) months.

## II.     PERTINENT BACKGROUND

1.     On or about February 14, 2022, Mr. Howard issued three (3) Subpoenas to MEF and two of its senior principles, Gregg Roman ("Mr. Roman"), and Daniel Pipes ("Mr. Pipes") which largely sought the same information. Copies of the Subpoenas to MEF, Mr. Roman and Mr. Pipes are attached hereto and incorporated herein as Exhibit 1.

2.     MEF was served with the Subpoena on or about March 4, 2022.

3.      On March 17, 2022, MEF, along with Mr. Roman and Mr. Pipes,[1] timely responded by issuing Objections and Responses as well as a document production with one thousand nine hundred forty-one (1,941) pages of responsive documents (the "Document Production"). Copies of the Objections and Responses as well as the Document Production are attached hereto and incorporated herein as Exhibit 2 and Exhibit 3A-3D, respectively.

4.     On March 25, 2022, MEF also provided a privilege log to Mr. Howard of approximately one hundred eighty-five (185) documents that had been retained as a result of the following privileges: trade secret, reporter privilege, and attorney-client privilege. A copy of the March 25, 2022 privilege log is attached hereto and incorporated herein as Exhibit 4.

5.     On April 18, 2022, Mr. Howard provided an aggressive response which sought substantially more documents, alleged privilege waivers and appeared to accuse MEF of misconduct, stating in part:

---

[1] At that time, Mr. Pipes had not been served with the Subpoenas that was issued to him, but in the spirit of cooperation undersigned counsel accepted service and provided a response.

> MEF's self-serving production strongly suggests that its deficient privilege assertions and unjustified withholding of documents on trade secret grounds are not innocent errors, but rather intentional efforts to advance its anti-Qatar agenda and protect a high-paying donor.

A copy of the April 18, 2022 letter is attached hereto and incorporated herein as <u>Exhibit 5</u>.

6.      On May 2, 2022, MEF through its counsel responded to Mr. Howard's April 18, 2022 letter and substantively addressed the allegations of privilege waiver and the scope of MEF's document production. MEF also made clear that there were serious and identifiable safety concerns that required it to be very conscious and intentional in its efforts to protect certain information, stating:

> Additionally, you are incorrect that the mere existence of a protective order resolves all potential "trade secret" concerns identified by MEF. It most certainly does not. As stated above, at this stage MEF does not bear the burden of proving that it would suffer serious injury and prejudice if production was required. Nonetheless, MEF can proffer that MEF and/or its agents will suffer significant injury if compliance is required. Due to MEF's advocacy, over the years MEF has faced numerous threats including, but not limited to, threats of physical harm. It has received threats from terrorist organizations including al Qaeda and ISIS. These threats have been investigated by the Federal Bureau of Investigation ("FBI"), who visited MEF as recently as September 2021. During that meeting MEF was informed by the FBI to protect its donor information because other nations are looking to access that information. MEF has publicly advocated about the connection between the State of Qatar and these type of terrorist organizations. In a December 17, 2021 article titled "Uncovered Documents Expose Qatari Terrorism Financing," MEF stated:
>
>> Qatar has provided billions of dollars to Muslim Brotherhood regimes and affiliates, such as Hamas, and to Islamists who have fueled civil war in Libya and Syria, such as Ahrar al-Sham, which executed attacks alongside the successor of Jabhat al-Nusra, an offshoot of al Qaeda.
>
> … It is self-evident that there is clear and identifiable danger that disclosure of donor information, source information or identification of sources could legitimately cause physical harm to individuals associated with MEF.

A copy of the May 2, 2022 letter is attached hereto and incorporated herein as <u>Exhibit 6</u>.

7.      On May 10, 2022, Mr. Howard through his counsel again intimated that a Motion

to Compel may be filed against MEF. A copy of the May 10, 2022 letter is attached hereto and incorporated herein as <u>Exhibit 7</u>. At that time, it was unclear whether the obligations had concluded given the vague language contained in the letter.

8.      On July 11, 2022, MEF learned that Mr. Howard still intended to pursue the disclosure of additional documentation from MEF. A copy of the July 11, 2022 letter is attached hereto and incorporated herein as <u>Exhibit 8</u>.

9.      On July 15, 2022, undersigned counsel made clear to Mr. Howard that it was aware of this Court's June 15, 2022 Order which in essence absolved MEF of any further discovery obligation, stating:

> At this time, the Motion for Protective Order has been resolved which as anticipated does give us guidance on the Subpoena that your client issued to MEF.[2] As a result of Judge Friedrich's Order, MEF's obligations are complete for two (2) principal reasons. First, Judge Friedrich expressly indicated that Defendants, including Mr. Howard, were required to contact the subjects of third-party Subpoenas, including MEF, by June 28, 2022 with modifications consistent with Judge Friedrich's Order. *See* Transcript of June 15, 2022 Status Conference at 11:24-12:3. MEF received no contact or modification of the Subpoena from Mr. Howard prior to that date. Hence, Mr. Howard has waived any right to seek additional discovery from MEF by failing to comply with the deadline imposed by Judge Friedrich. Second, even if Mr. Howard has not waived any right to seek additional discovery from MEF, Judge Friedrich significantly narrowed the scope of available discovery, and the requests to MEF do not fall within any of the permissible categories of discovery. *Id*. At 6:11-9:14. As such, no further supplementation of MEF's already sizable document production is necessary.

A copy of the July 15, 2022 letter is attached hereto and incorporated herein as <u>Exhibit 9</u>.

10.      The response by MEF addressing this Court's June 15, 2022 Order and its impact on this case did not satisfy Mr. Howard. On July 21, 2022, counsel for Mr. Howard again intimated about a threatened potential motion to compel. A copy of the July 21, 2022 letter is attached hereto

---

[2] It was curious that your July 11, 2022 communication omitted any reference to the decision on the Motion for Protective Order and the limitations that have been placed on Defendant Gregory Howard by the Hon. Dabney L. Friedrich on June 15, 2022.

and incorporated herein as <u>Exhibit 10</u>.

11.     Needing to bring closure to this matter and having been unable to do so despite all of the above-described efforts and communications, on August 4, 2022, MEF reaffirmed the position it had articulated in the July 15, 2022 letter and indicated a willingness to meet in person, in a good faith effort, to resolve this dispute if the matter had not been resolved. A copy of the August 4, 2022 letter is attached hereto and incorporated herein as <u>Exhibit 11</u>.

12.     Mr. Howard's counsel did not respond, and simply refused to confirm that MEF is under no further obligation relating to the Subpoena.

13.     On November 3, 2022, this issue came back into the spotlight due to the publication of an article by Tablet Magazine wherein MEF is expressly identified.  Rather than state that MEF has no further obligation of any kind, Mr. Howard's counsel instead stated for attribution in the article that: "Mr. Howard has issued a small number of targeted subpoenas to parties that he reasonably believes are in the possession of evidence that the Court has deemed to be highly relevant to this case and to Mr. Howard's defenses." A copy of the Tablet Magazine Article titled "Biden Administration Backs Qatar Lobby" (the "Tablet Article") is attached hereto and incorporated herein as <u>Exhibit 12</u>.

14.     In the Tablet Article there is no clear reference as to what type of non-privileged and probative information Mr. Howard's counsel conceivably could contend MEF continues to have in its possession that it has not produced. The vague language used by Mr. Howard's counsel leads to the possibility that readers—including donors, sources and others involved with MEF, as well as those who fight against the work of MEF, could believe that MEF was somehow involved in the alleged hacking or stealing of Plaintiffs' emails that is at the heart of the litigation initiated by Mr. Howard.

15.     As a result of the article, counsel for MEF quickly wrote to Mr. Howard's counsel to seek immediate action and prevent further prejudice. A copy of the November 7, 2022 letter is attached hereto and incorporated herein as Exhibit 13. The November 7, 2022 letter stated in pertinent part:

> We are very concerned that your client is engaging in a course of conduct that is designed to harm MEF under the guise of a Subpoena process. In addition to your lack of confirmation that nothing further is required from MEF, it has come to our attention that on November 3, 2022 Tablet Magazine published an article wherein MEF is expressly mentioned as receiving a Subpoena and you are quoted as saying "Mr. Howard has issued a small number of targeted subpoenas to parties that he reasonably believes are in the possession of evidence that the Court has deemed to be highly relevant to this case and to Mr. Howard's defenses." Enclosed is a courtesy copy of the Tablet Magazine Article titled "Biden Administration Backs Qatar Lobby." Your vague and inaccurate quote is likely to leave readers of that article with the incorrect belief that MEF somehow engaged in some wrongdoing. That implication casts MEF in a false light without any basis for doing so.
>
> At this time, we demand that you take the following immediate action: (1) contact Mr. Armin Rosen and retract your statement or at a minimum expressly state that the statement does not apply to MEF, (2) confirm that MEF has properly complied and satisfied its obligations relating to the Subpoena you issued, and (3) provide confirmation that neither Mr. Howard nor any of the Defendants in the above referenced litigation will seek any further discovery from MEF. Time is of the essence and we request that you take the above action **by no later than close of business on Wednesday, November 9, 2022**.

See Exhibit 13.

16.     The above request was necessary and appropriate in order for MEF to forcefully push back and protect its reputation.

17.     On November 8, 2022, Mr. Howard declined to provide the requested confirmation, instead continuing to leave open the insinuation and possibility that MEF somehow remains potentially culpable, stating:

> [W]ith respect to your demand that we "confirm that MEF has properly complied and satisfied its obligations relating to the Subpoena," we can of course confirm that MEF has provided timely responses and objections to the subpoena and has produced documents responsive to some of the subpoena requests. Beyond that, our

7

position with respect to MEF's subpoena compliance is detailed in the letters we have exchanged with you.

A copy of Mr. Howard's November 8, 2022 letter is attached hereto and incorporated herein as

Exhibit 14.

18.    On December 14, 2022, undersigned counsel made a further attempt to resolve this

matter without needing to involve this Court stating:

> This matter needs finality and MEF refuses to continue with this untenable status quo. That finality can be accomplished one of two ways; either a direct and unambiguous confirmation from you that the Subpoena has fully been complied with, or alternatively by a determination from the Court.  In the event that you do not provide the requested simple and unequivocal confirmation that MEF has fully complied and satisfied its obligations pursuant to the Subpoena, then we intend to provide the Court with a copy of everything our client has produced in response to the Subpoena, including our document production as well as all of the related correspondence, and ask the Court –in the context of a Motion for Protective Order—to determine whether MEF has met all of its obligations under the Subpoena.
>
> We look forward to receiving your response by **no later Friday, December 16, 2022 at 12:00 p.m**. We hope that the Court's involvement on these issues will not be necessary, but we will need to proceed in that fashion if left with no other option. Thank you.

A copy of MEF's counsel's December 14, 2022 letter is attached hereto and incorporated herein

as Exhibit 15.

19.    To ensure that no that there was no inadvertent oversight of MEF's December 14,

2022 letter, MEF's counsel followed up via email on December 16, 2022, stating: "Just wanted to

follow up on this and reiterate that we will be filing in Court today unless we get the requested

response by **12:00 p.m. today**." A copy of the December 16, 2022 email communication is

attached hereto and incorporated herein as Exhibit 16.

20.    Shortly thereafter, Mr. Howard's counsel responded by declining MEF's request

for a withdrawal of the Subpoena and requested a meet and confer.

21.     MEF promptly agreed to proceed in good faith with the requested meet and confer on December 22, 2022.

22.     During the meet and confer conversation MEF's counsel reiterated the concern about the never-ending nature of the Subpoena that Mr. Howard insists on keeping open. Mr. Howard's counsel responded by indicating that Mr. Howard was only seeking documents regarding whether or not Plaintiff Elliot Broidy (and/or his related entities) was a donor to MEF, despite issuing a Subpoena that was significantly broader in scope. At the conclusion of the meet and confer, MEF's counsel requested that Mr. Howard either act and seek a Motion to Compel against MEF to bring this matter to a conclusion or finally withdraw the Subpoena.

23.     Nearly a month passed and still Mr. Howard decided to continue his approach of prejudicial inaction.

24.     On January 21, 2023, undersigned counsel again wrote to Mr. Howard's counsel restating that Mr. Howard has violated the express requirements and the spirit of the Federal Rules of Civil Procedure. Rule 45(d)(1) provides as follows:

> A party or attorney responsible for issuing and serving a subpoena must take steps to avoid imposing an undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

In the January 21, 2023 letter, undersigned counsel further stated as follows:

> Mr. Howard has violated the requirements under Rule 45(d)(1) in a number of ways. First, Mr. Howard issued a grossly overbroad Subpoena to MEF which required time, efforts and costs to defend and respond to when Mr. Howard was only truly seeking one category of documents. Second, Mr. Howard has not withdrawn the Subpoena despite the failure to comply with Judge Friedrich's express requirement that Defendants, including Mr. Howard, were required to contact the subjects of third-party Subpoenas, including MEF, by June 28, 2022 with modifications consistent with Judge Friedrich's Order. Third, even if Mr. Howard has not waived any right to seek additional discovery from MEF, Judge

9

Case 1:19-cv-00150-DLF   Document 202   Filed 08/29/23   Page 10 of 21


Friedrich significantly narrowed the scope of available discovery, and the purported sole request to MEF does not fall within any of the permissible categories of discovery. As a result of Mr. Howard's improper misconduct, MEF has suffered undue burden and expense.

At this point, the time for Mr. Howard simply agreeing to voluntarily withdrawing the Subpoena in order to resolve this matter has passed. Since we have complied with our Meet & Confer obligation, MEF intends to swiftly proceed to request the Court's input on this matter. In the event that Mr. Howard wishes to avoid the Court's involvement, he will not only need to voluntarily withdraw the Subpoena, but will also need to reimburse MEF in full for the attorneys' fees that it has incurred to date totaling Forty Thousand Dollars ($40,000.00). Mr. Howard should bear in mind that if we need to involve the Court, the monetary request will be in excess of this amount due to the additional attorneys' fees that will need to be incurred in the Motions practice.

A copy of the January 21, 2023 letter is attached hereto and incorporated herein as Exhibit 17.

25.     Mr. Howard's counsel declined to provide the requested payment, declined to withdraw the Subpoena, and instead maintained that he was well within his rights to continue dragging out this matter without taking further action.

26.     Mr. Howard also demanded that MEF proceed with the procedure set forth in the Court's May 4, 2022 Minute Order. MEF noted that based on the language of the Court's May 4, 2022 Minute Order, that the Court only intended that procedure to apply to the "Parties" and that was not binding on MEF since it is a "Non-Party."

27.     Nevertheless, out of an abundance of caution, on February 6, 2023, MEF complied with the Court's May 4, 2022 Minute Order and sent a clear and concise joint communication requesting a teleconference. A copy of the February 6, 2023 communication to the Court is attached hereto as Exhibit 18.

28.     On February 7, 2023, the Court confirmed MEF's understanding and stated:

The Court is not inclined to arrange a telephone conference as Middle East Forum is not a party to this proceeding. Middle East Forum may, of course, avail itself of any remedies authorized by the Federal Rules of Civil Procedure.

20270588_2

A copy of the Court's response on February 7, 2023 is attached hereto and incorporated herein as Exhibit 19.

29.     MEF had hoped that a submission on this issue would not be necessary and has attempted to take all options available to it in order to avoid the need for this filing, and the corresponding expense associated herewith.

30.     Unfortunately, once Plaintiffs filed the Reply Memorandum of Law in Further Support of Plaintiffs' Cross-Motion to Compel on August 25, 2023 which presented compelling and explosive evidence through—a sworn affidavit—that Qatar had improperly been using a Defendant in this litigation to further its goals, MEF simply could not continue to wait to obtain relief. *See* Docket No. 197.

31.     This Court's August 25, 2023 Minute Order stated: "the Court has concerns that certain statements in Qatar's privilege log may be false or materially misleading."

32.     While there is presently no direct evidence that Mr. Howard and his counsel are behaving in the same manner as Defendant Joseph Allaham had been behaving prior to submission of his affidavit, MEF has reasonable concerns that given Qatar's alleged misconduct with one Defendant, it may be using its influence with others, including misusing the discovery process here to further an agenda that is designed not to further Mr. Howard's litigation but rather to harm MEF and others.

## III.   ARGUMENT

### A.   Legal Standard

Discovery is generally governed by the principles identified in Fed. R. Civ. P. 26. Rule 26 is also interpreted within the bounds of Rule 1 which states that "[t]hese rules … should be construed, administered, and employed by the court and the parties to secure the just, speedy, and

inexpensive determination of every action and proceeding." Rule 26(c) provides that a Party "may move for a protective order in the court where the action is pending[.]… The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"

The Federal Rules of Civil Procedure also provide mandatory language regarding impermissible conduct that warrants the Court's intervention:

> The court **must** limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (i)  the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive:

> (ii)  the party seeking discovery has had ample opportunity to obtain the information by discovery in the action: or

> (iii)  the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Rule 26(b)(2)(C) (emphasis added). Under either scenario, should the Court find that protection is necessary, it is permitted to "forbid[] the disclosure or discovery[.]" Rule 26(c)(1)(A). "In general, district courts have broad authority, under FED. R. CIV. P. 26, to distinguish reasonable and productive uses of discovery procedures from abusive invocations of those procedures and to design protective orders to curtail the latter." *Doe v. District of Columbia*, 697 F.2d 1115, 1120 (D.C. Cir. 1983).

> B.  A Protective Order is Appropriate and Warranted to Prevent Annoyance, Embarrassment, Undue Expense and Prejudice.

Mr. Howard's Subpoena to MEF should never have been issued and was only issued for purposes of causing MEF annoyance, embarrassment, and undue expense. It was clear from the start that the relevant information sought by Mr. Howard was otherwise obtainable directly from Plaintiffs. Even if Mr. Howard could claim, at the time the Subpoena was issued, that the

documents sought were relevant, that assertion could no longer be maintained after this Court issued its June 15, 2022 Order. A copy of the pertinent portions of the Transcript of the June 15, 2022 Ruling is attached hereto and incorporated herein as Exhibit 20.

Additionally, a Protective Order has become necessary due to the prejudice that MEF is suffering from the continued existence of the Subpoena and the negative connotations that Mr. Howard's counsel is attempting to ascribe to MEF.

> i. The Subpoena to MEF was issued to annoy, embarrass, and cause undue expense.

The Subpoena, as written, would have improperly required MEF to disclose confidential donor information as well as to disclose the identity of sources and methods relating to its reporting. Mr. Howard sought such sensitive and protected information from MEF, even though MEF had nothing to do with the disputes at issue in the instant litigation. Nowhere in the Complaint filed by Plaintiffs nor in the Answer filed by Mr. Howard is there *any* representation or allegation that MEF was involved in improper conduct. Based on MEF's understanding of the issues that are in dispute in this matter, this lawsuit related to Mr. Howard's conduct and whether or not he was involved in a criminal enterprise that purportedly purposefully targeted Plaintiffs. *See generally* Docket Entry No. 18-2 at ¶ 6 & 115-137.

Notwithstanding the lack of relevance of information from MEF, Mr. Howard persisted not only in issuing the overboard Subpoena, but also in continuing to request sensitive and protected documents after MEF's sizable document production and the substantive and appropriate assertions of the applicable privileges that protected further disclosure. MEF in this matter had to protect more than a simple business interest. As stated in the May 2, 2022 letter, MEF raised serious concerns about these potential disclosures due to the fact that:

Due to MEF's advocacy, over the years MEF has faced numerous threats including,

20270588_2

> but not limited to, threats of physical harm. It has received threats from terrorist organizations including al Qaeda and ISIS. These threats have been investigated by the Federal Bureau of Investigation ("FBI"), who visited MEF as recently as September 2021. During that meeting MEF was informed by the FBI to protect its donor information because other nations are looking to access that information.

*See* Exhibit 6. Mr. Howard did not dispute that MEF had faced such serious threats as a result of its advocacy positions opposite to the State of Qatar.

Thus, given the above referenced lack of relevance and insistence on disclosure of sensitive and protected information, it is evident that Mr. Howard possessed an ulterior motive; namely to annoy, embarrass and to cause MEF to incur undue expenses solely due to Mr. Howard's assumption that MEF is supportive of Plaintiffs because MEF's mission often places it directly opposite to the State of Qatar. This conduct was and remains improper.

        ii.    The information sought in the Subpoena to MEF is outside the scope permitted by Rule 26(b)(1) and warrants being quashed in its entirety.

From the outset, the Subpoena to MEF sought information that was outside of the scope of discovery in this case. While discovery is broadly construed, Rule 26(b)(1) provides the following guardrails:

> [T]he scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is **relevant** to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to **relevant** information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

(Emphasis Added). As stated above, "[t]he court **must** limit the frequency or extent of discovery" if it is "outside the scope of Rule 26(b)(1)." Rule 26(b)(2)(C) (emphasis added).

Assuming *arguendo* that the Subpoena to MEF was seeking information that was relevant at the time they were issued, this Court's June 15, 2022 Order totally foreclosed any remaining relevance that MEF's documents could have. In this Court's June 15, 2022 Order, Defendants,

14

including Mr. Howard, were informed that the discovery going forward would be limited to essentially four (4) categories of requests: (i) Plaintiff Elliott Broidy's alleged illegal activities, (ii) Plaintiff Elliott Broidy's plea agreement in Case Number 20-cr-210, (iii) Plaintiff Elliott Broidy's damages and (iv) Mr. Howard's First Amendment defense. *See* Exhibit 14 at 6:11-9:14. None of the documents sought in the Subpoena to MEF –including those that MEF already had produced—even arguably fell within the narrowed scope of permissible discovery. As a result, after the issuance of the Court's June 15, 2022 Order, Mr. Howard immediately should have ceased any efforts to gather additional information from MEF.[3] Instead, Mr. Howard insisted that MEF was misinterpreting the Court's Order while yet again intimating that Mr. Howard may file a motion to compel MEF to produce even more documents. *See* Exhibit 10. Since the matters contemplated in the Subpoena to MEF are beyond the scope of permissible discovery, this Court should exercise is authority under Rule 26(b)(2)(C) to quash the Subpoena and issue a protective order precluding Mr. Howard from seeking further discovery from MEF.

> iii.    A Protective Order is necessary to avoid further prejudice for MEF.

The Tablet Article caused MEF to suffer additional prejudice which now can only be controlled by the issuance of a protective order. Mr. Howard's counsel knew or should have known that his statement that: "Mr. Howard has issued a small number of targeted subpoenas to parties that he reasonably believes are in the possession of evidence that the Court has deemed to be highly relevant to this case and to Mr. Howard's defenses[,]" would likely have a negative effect on those specific entities that he issued Subpoenas to, including MEF. *See* Exhibit 12.  This

---

[3] In fact, Mr. Howard waived his ability to seek further discovery from MEF. This Court expressly indicated that Defendants, including Mr. Howard, were required to contact the subjects of third-party Subpoenas, including MEF, by June 28, 2022 with modifications consistent with the June 15, 2022 Order. *See* Exhibit 20 at 11:24-12:3. MEF received no contact or modification of the Subpoena from Mr. Howard prior to that date. Hence, Mr. Howard waived any right to seek additional discovery from MEF by failing to comply with the deadline imposed by this Court.

is particularly true since the Tablet Article offers scarce nuance and context to the public regarding all of the issues in the case and Mr. Howard's defenses. In this situation, the Tablet Article only directly mentions that the instant lawsuit involves the fact that Plaintiffs' emails were hacked and stolen. The vague language used by Mr. Howard's counsel leads to the possibility that the readers of the Tablet Article would believe that MEF somehow was involved in the hacking or stealing of Plaintiffs' emails in coordination with the Qatari government. Even a hint of association with criminal conduct would be exceedingly detrimental to MEF because its mission often puts it in direct opposition to the Qatari government and any hint of association could severely impact the donations that MEF relies on to operate.

MEF attempted in good faith to avoid the need for this Court's involvement and took immediate action through counsel to try to mitigate the prejudice that it has suffered. On November 7, 2022, MEF's counsel requested that Mr. Howard "(1) contact Mr. Armin Rosen and retract [the] statement or at a minimum expressly state that the statement does not apply to MEF, (2) confirm that MEF has properly complied and satisfied its obligations relating to the Subpoena [Mr. Howard] issued, and (3) provide confirmation that neither Mr. Howard nor any of the Defendants in the above referenced litigation will seek any further discovery from MEF." *See* Exhibit 13. Mr. Howard declined to provide the requested relief. At this stage, it appears clear that Mr. Howard and those interests that are backing him are aware of the damage that this false light is causing MEF and want it to continue.  Since Mr. Howard has failed to provide the reasonable protections that are necessary as a result of Mr. Howard's counsel's statement, this Court's intervention pursuant to Rule 26(c) is necessary to prevent any further efforts by Mr. Howard to seek any further discovery from MEF.

20270588_2

C.  Mr. Howard's conduct merits sanctions in favor of MEF.

As stated more fully above, Mr. Howard has abjectly failed to comply with his duty to "take steps to avoid imposing an undue burden or expense on a person subject to the subpoena." Rule 45(d)(1). MEF has consistently acted in good faith, has been responsive, has attempted to address Mr. Howard's concerns and justify the basis for its actions. On the other side, MEF has been met with intransigence and a complete unwillingness to close out this matter one way or another. MEF respectfully requests that this Court consider the conduct of both sides and use its authority under Rule 45 to impose sanctions against Mr. Howard and award MEF its reasonable attorneys' fees.

**IV.     CONCLUSION**

This Court should grant the Motion and preclude Mr. Howard from seeking further discovery from MEF, quashing the Subpoena and awarding MEF its reasonable attorneys' fees associated with addressing Mr. Howard's improper conduct.

Respectfully Submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

By:          */s/ Jeffrey M. Schwaber*
Jeffrey M. Schwaber (D.C. Bar # 419681)
jschwaber@steinsperling.com
(301) 354-8110 (facsimile)

          */s/ Eduardo S. Garcia*
Eduardo S. Garcia (D.C. Bar # 1028040)
egarcia@steinsperling.com
(301) 354-8326 (facsimile)

1101 Wotton Parkway, Suite 700
Rockville, Maryland 20852
(301) 340-2020

*Attorneys for Non-Party Middle East Forum*

17

20270588_2

## **CERTIFICATION OF GOOD FAITH**

Undersigned counsel has engaged in multiple good faith attempts in this case to resolve this discovery dispute and avoid the need to seek a Motion to Quash and for Protective Order from this Court.

MEF could have availed itself of its rights under Fed. R. Civ. P. 45 and stood on its objections. Under that scenario, no response would have been required from MEF until Ordered by this Court. Instead, MEF proceeded in good faith to make a significant document production. Counsel for MEF wrote letters to Mr. Howard's counsel on May 2, 2022 and July 15, 2022 precisely describing its objections and privilege assertions. On August 4, 2022, when it appeared that Mr. Howard was still not willing to deem the Subpoena satisfied, MEF firmly stated its position that no further production would be forthcoming. No further response was received from Mr. Howard regarding MEF's obligations going forward.

Again, after the Tablet Article was published, MEF's cousnel promptly reached out to Mr. Howard's counsel in order to prevent further prejudice from attaching and to begin the efforts to cure the prejudice that has already attached. Mr. Howard declined take the requested steps to prevent MEF from continuing to suffer prejudice as a result of the improper use of the Subpoena process.

For a final time on December 14, 2022, undersigned counsel followed up with counsel for Mr. Howard to request finality on this issue via a confirmation that MEF has fully complied and satisfied its obligations pursuant to the Subpoena. This was part of MEF's repeated good faith efforts to put an end to this never-ending legal process that Mr. Howard has refused to conclude. Mr. Howard declined MEF's request and instead demanded a meet and confer.

During the meet and confer conversation MEF's counsel reiterated the concern about the never-ending nature of the Subpoena that Mr. Howard insists on keeping open. Mr. Howard's counsel responded by indicating that Mr. Howard was only seeking documents regarding whether or not Plaintiff Elliot Broidy (and/or his related entities) was a donor to MEF, despite issuing a Subpoena that was significantly broader in scope. At the conclusion of the meet and confer, MEF's counsel requested that Mr. Howard either act and seek a Motion to Compel against MEF to bring this matter to a conclusion or finally withdraw the Subpoena.

Nearly a month passed and still Mr. Howard decided to continue his approach of prejudicial inaction. On January 21, 2023, counsel for MEF demanded payment of the significant and unnecessary attorneys' fees that MEF has incurred as a result of Mr. Howard's conduct and the withdrawal of the Subpoena. Mr. Howard yet again declined and maintained his posture of prejudicial inaction.

The undersigned hereby certifies that he is unable to reach agreement on the disputed issues due to Mr. Howard's insistence on maintaining undue pressure on MEF resulting in it being cast in a false light.

*/s/ Eduardo S. Garcia*
_____
Eduardo S. Garcia

20270588_2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of August, 2023, a copy of the foregoing was served via Court's CM/ECF system on the following person(s):

Jeffrey Udell
Jake Gardener
Walden Macht & Haran LLP
250 Vesey Street, 27th Floor
New York, NY 10281
judell@wmhlaw.com
jgardener@wmhlaw.com

Adam P. Cohen
Kraig Ahalt
Walden Macht & Haran LLP
1 Battery Park Plaza
34th Floor
New York, New York 10004
acohen@wmhlaw.com
kahalt@wmhlaw.com

Charles Samuel Fax
Liesel J. Schopler
Rifkin Weiner Livingston LLC
4800 Hampden Lane
Suite 820
Bethesda, Maryland 20814
cfax@rwlls.com
lschopler@rwlls.com

Stephen J. Obermeier
Enbar Toledano
Krystal Brunner Swendsboe
Rebecca J. Fiebig
Rebecca Lynn Saitta
Wiley Rein LLP
2050 M Street NW
Washington, DC 20036
sobermeier@wiley.law
etoledano@wilerein.com
kswendsboe@wileyrein.com
rfiebig@wiley.law
rsaitta@wileyrein.com

19

20270588_2

Eric Roman
Nicholas L. Collins
Temitope K. Yusuf
Mohammed T. Farooqui
Arent Fox LLP
1301 Avenue of the Americas
Suite Floor 42
New York, New York 10019
Eric.roman@arentfox.com
Nicholas.collins@arentfox.com
Temitope.yusuf@arentfox.com
Mohammed.farooqui@arentfox.com

Laura E. Zell
Randal Adam Brater
Arent Fox LLP
1717 K Street NW
Washington, DC 20006
Laura.Zell@arentfox.com
Randall.brater@arentfox.com

David M. Zionts
Alexander Adelman Berengaut
Megan O'Neill
Covington & Burling LLP
850 Tenth Street, NW
One City Center
Washington, DC 20001
dzionts@cov.com
aberengaut@cov.com
moneill@cov.com

Daniel R. Benson
Andrew Kurland
Jacob Benson
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
dbenson@kasowitz.com
akurland@kasowitz.com
jbenson@kasowitz.com

20

20270588_2

Henry B. Brownstein
Kasowitz Benson Torres LLP
1399 New York Avenue, NW
Suite 201
Washington, DC 20005
hbrownstein@kasowitz.com


_____/s/ Eduardo S. Garcia_____
Eduardo S. Garcia