**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC, and ELLIOTT BROIDY,<br><br>            Plaintiffs,<br><br>    v.<br><br>NICOLAS D. MUZIN, JOSEPH ALLAHAM, GREGORY HOWARD, and STONINGTON STRATEGIES LLC,<br><br>            Defendants. | Civil Action No.:  19-00150 (DLF) |

**DEFENDANT GREGORY HOWARD'S MEMORANDUM**
**OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO**
**COMPEL FORENSIC EXAMINATIONS**

RIFKIN WEINER LIVINGSTON, LLC
Charles S. Fax
D.C. Bar No. 198002
4800 Hampden Lane, Suite 820
Bethesda, Maryland 20814
Tel.: (301) 951-0150
Email: cfax@rwllaw.com

WALDEN MACHT & HARAN LLP
Jeffrey A. Udell (*admitted pro hac vice*)
Jake Gardner (*admitted pro hac vice*)
250 Vesey Street, 27th Floor
New York, NY 10281
Tel.: (212) 335-2030
judell@wmhlaw.com
jgardner@wmhlaw.com

*Attorneys for Defendant Gregory Howard*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................... 1

RELEVANT FACTS ...................................................................................................................... 2

    A.   The Parties ....................................................................................................................... 2

    B.   Discovery Provided by Howard ...................................................................................... 4

    C.   Plaintiffs' Allaham-Related Filing .................................................................................. 6

    D.   Plaintiffs' Instant Motion to Compel Forensic Examinations........................................ 8

ARGUMENT .................................................................................................................................. 9

    I.    The Court Should Deny Plaintiffs' Motion to Compel Forensic Examination of Howard's Electronic Devices .......................................................................................... 9

    II.   The Court Should Deny Plaintiffs' Motion to Collect and Examine ESI from Howard's Counsel ......................................................................................................................... 13

    III.   Plaintiffs' Proposed Protocol Is Unreasonable............................................................ 14

CONCLUSION............................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Advante Int'l Corp. v. Mintel Learning Tech.*,
  2006 WL 3371576 (N.D. Cal. Nov. 21, 2006) ........................................................................... 13

*Allen v. Beirich*,
  2021 WL 2911736 (4th Cir. July 12, 2021) ................................................................................ 4

*Ameriwood Industries, Inc. v. Liberman*,
  2006 WL 3825291 (E.D. Mo. Dec. 27, 2006) ..................................................................... 12, 14

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001) ................................................................................................................... 4

*Bethea v. Comcast*,
  218 F.R.D. 328 (D.D.C. 2003) ............................................................................................ 10, 14

*Bingham v. Baycare Health Sys.*,
  2016 WL 3917513 (M.D. Fla. July 20, 2016) ........................................................................... 10

*Bradfield v. Mid-Continent Cas. Co.*,
  2014 WL 4626864 (M.D. Fla. Sept. 15, 2014) .................................................................... 15, 16

*Covad Communications Co. v. Revonet, Inc.*,
  258 F.R.D. 5 (D.D.C. 2009) ................................................................................................ 10, 11

*Delta T, LLC v. Williams*,
  337 F.R.D. 395 (S.D. Ohio 2021) ............................................................................................. 13

*Ellis v. Toshiba Am. Info.  Sys., Inc.*,
  218 Cal. App. 4th 853 (2013), *as modified* (Aug. 14, 2013), *as modified on denial of reh'g*
  (Sept. 10, 2013) .................................................................................................................. 16, 17

*Gamache v. Hogue*,
  2022 WL 1625028 (M.D. Ga. Mar. 21, 2022) .......................................................................... 10

*Genworth Financial Wealth Mgmt. Inc. v. McMullan*,
  267 F.R.D. 443 (D. Conn. 2010) ............................................................................................... 12

*In re Uranium Antitrust Litig.*,
  32 Fed. R. Serv. 2d 635 (D.D.C. 1980) .................................................................................... 16

*John B. v. Goetz*,
  531 F.3d 448 (6th Cir. 2008) ........................................................................................ 10, 11, 14

*Koosharem v. Spec Personnel, LLC*,
  2008 WL 4458864 (D.S.C. Sept. 29, 2008) ........................................................................ 11, 12

*Peskoff v. Faber*,
  244 F.R.D. 54 (D.D.C. 2007) .................................................................................................... 11

*Pontikos v. Am. Med. Tech.*,
  2021 WL 634999 (N.D. Ohio Feb. 18, 2021) ........................................................................... 10

*Tingle v. Herbert*,
    2018 WL 1726667 (M.D. La. April 10, 2018) ................................................................. 11, 14

*White v. Graceland College Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*,
    2009 WL 722056 (D. Kan. Mar. 18, 2009) ...................................................................... 12, 13

**Rules**

Rule 26 .................................................................................................................................. 5, 10

Defendant Gregory Howard respectfully submits this memorandum of law in opposition to the Motion to Compel Forensic Examinations filed by plaintiffs Broidy Capital Management, LLC and Elliott Broidy (together, "Broidy" or "Plaintiffs").

## PRELIMINARY STATEMENT

This Court should deny Plaintiffs' motion, which is as breathtaking in scope as it is devoid of merit.  Plaintiffs do not even *allege*—much less offer a scintilla of proof—that Howard or his counsel spoliated evidence, suppressed discovery, or engaged in any wrongdoing whatsoever.

The allegations set forth in the proffered declaration of Defendant Joseph Allaham, with whom Plaintiffs have now settled, do not mention or concern Howard or his counsel.  And Plaintiffs similarly fail to identify *any* discrepancies between Howard's productions and other "known" documents or information.  In short, Plaintiffs present no evidence that could warrant the extraordinary relief they seek.

Instead, the record that Plaintiffs have put before this Court shows that Howard and his counsel have responded fully, transparently, and swiftly to Plaintiffs' inquiries about Howard's document production.  Indeed, the record shows that Howard has fulfilled and completed *all* outstanding discovery obligations owing to Plaintiffs— and their motion does not allege otherwise. (The same, by contrast, cannot be said for Plaintiffs, whose significant discovery gaps and admittedly incomplete productions are the subject of a request for a pre-motion conference that this Court has ruled it will hear at a later date.  (Declaration of Jeffrey A. Udell dated Sept. 8, 2023 ("Udell Decl.") Ex. 1; July 11, 2023 Email).

Plaintiffs' allegations of purported discovery abuse concerning non-party Qatar and other Defendants are of no moment, as the allegations decidedly do *not* concern Howard.[1]  This Court

---

[1] The merit and veracity of those allegations, moreover, is severely suspect for the reasons set forth in the Sur-reply filing of Qatar.  (Dkt.  203).

should therefore reject Plaintiffs' clumsy attempt to bootstrap those allegations into a demand for relief against Howard.

Because Plaintiffs have made no showing whatsoever of spoliation, wrongdoing, or *any* discovery deficiency by Howard, the Court should reject the motion in its entirety as to Howard and his counsel.

## RELEVANT FACTS

### A.     The Parties

***Plaintiff Elliott Broidy****.*  Broidy describes himself as an "outspoken critic of the State of Qatar."  (Dkt.  No. 18, First Amended Complaint ("Complaint" or "FAC") ¶ 1).  A former deputy finance chairman for the Republican National Committee, Broidy is a twice-convicted[2] criminal who most recently pleaded guilty to one count of conspiracy to violate the Foreign Agents Registration Act by lobbying high-level United States officials, including the President and the Attorney General of the United States, on behalf of concealed foreign principals.  (Udell Decl. Exs.  3-4).[3]  In his plea agreement, Broidy agreed that the Government could present information of additional yet uncharged misconduct "relating to [his] efforts to obtain business from a Middle Eastern country [from context, presumably the United Arab Emirates] and [his] efforts to influence

---

[2] In 2009, Broidy pleaded guilty to a felony charge of rewarding official misconduct for his role in a major New York state public corruption and bribery case.  (Udell Decl. Ex. 2).

[3] We note that Broidy's executed Plea Agreement and the Statement of Offense are both responsive to Howard's document requests, and yet not produced by Broidy to Howard in discovery.  Additionally, the transcript of Broidy's recent testimony at the criminal trial of Prakazrel Michel reflects the existence of a cooperation agreement between Broidy and the government relating to his criminal conduct—yet an additional apparently responsive document not produced by Broidy to Howard.  (Udell Decl. ¶ 6 and Ex. 5).

U.S. policy towards a second Middle Eastern country [presumably Qatar] and its alleged support of terrorist activities…"  (Udell Decl. Ex. 4 ¶ 5).[4]

In his Complaint, Broidy alleges that at the behest of Qatar, in January and February 2018, an entity named Global Risk Advisors ("GRA") conducted a cyberattack against Broidy's computer networks and obtained unauthorized access to Broidy's emails.  (FAC ¶¶ 78-106).  Broidy contends that he suffered unspecified damages after his private emails—in which he discussed his illicit business dealings—were obtained by the press and widely reported.  (FAC ¶¶ 33, 111-37; Udell Decl. Exs.  6-12).

***Defendants Nicholas D. Muzin, Joseph Allaham, and Stonington Strategies LLC.*** Nicholas D. Muzin is the CEO of Stonington Strategies LLC ("Stonington"), an entity that provided consulting services for Qatar.  (FAC ¶¶ 13, 18).  Joseph Allaham is a co-founder of Stonington.  (*Id.* ¶ 16).  Broidy alleges that Muzin and Allaham received various payments from Qatar and that they participated in a coordinated "smear campaign" against Broidy by disseminating his hacked documents to the media.  (*Id.* ¶¶ 138-187).  On August 24, 2023, Plaintiffs stipulated to the dismissal of all claims against Allaham, with prejudice (Dkt.  195), and this Court so-ordered such dismissal via Minute Order on August 28, 2023.

***Defendant Gregory Howard.***  Howard is a former employee of public relations firms Conover & Gould ("C&G") and Mercury Public Affairs ("Mercury"), now residing in Maine. (FAC ¶ 17.)  While employed by C&G, Howard duly registered under the Foreign Agents Registration Act as an agent of Qatar from June 30, 2017 to January 18, 2018. (*Id.*; Udell Decl. Ex.  13).  Broidy alleges that Howard participated in the charged Qatari hacking conspiracy by

---

[4] On January 20, 2021, Broidy was pardoned by then-President Donald J. Trump.

placing materials "obtained from the hacking in the hands of journalists, media organizations, and public relations professionals." (FAC ¶ 116).

Howard, a former low-level contractor who lives modestly in Maine, denies participation in any conspiracy and maintains that his alleged conduct is entirely protected by the First Amendment because the content of Broidy's emails—reflecting his pervasive improper and illegal conduct—were newsworthy matters of public concern. (Dkt. 75, Answer at Second Defense, p. 1020). Indeed, when Howard reviewed these publicly disseminated documents, he realized the shocking criminal conduct evidenced therein—which ultimately resulted in Broidy's (second) criminal conviction—and he exercised his First Amendment right to discuss them with the press. (*See* Dkt. 159, Tr. at 8-9 (noting that if Howard played no role in the alleged conspiracy, the "First Amendment could well provide a defense to his receiving stolen property")). *See Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001) ("a stranger's illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern"); *Allen v. Beirich*, 2021 WL 2911736, at *4 (4th Cir. July 12, 2021) (noting that *Bartnicki* immunizes a publisher from liability for speech about matters of public concern, even if the publisher "knew, or had reason to know, that the information was obtained unlawfully" (citation omitted)). Howard has inexplicably found himself sucked into Broidy's proxy war against Qatar.

**B.    Discovery Provided by Howard**

The case was filed on January 24, 2019. (Dkt. 1). Discovery was stayed pending the parties' motions to dismiss. (Minute Order, June 17, 2019). Following an appeal to the D.C. Circuit and a mandate returned to this Court on October 12, 2021 (Dkt. 91), the parties set a discovery schedule on December 2, 2021 (Dkt. 91), which was amended pursuant to a Minute Order on April 25, 2022. Following Qatar's second appeal to the D.C. Circuit, the Court vacated all existing discovery deadlines via Minute Order dated July 28, 2022. After a mandate returned

the case to this Court on March 10, 2023 (Dkt. 170), the State of Qatar moved to intervene to assert its privileges and immunities under the Vienna Convention (Dkt. 173). Resolution of a privilege dispute between Plaintiffs and Qatar—to which Howard has taken *no* position—has required adjustment of the parties' discovery schedule. (Dkt. 178, 180).

Plaintiffs have served on Howard just one set of Requests for the Production of Documents ("RFPs"), two sets of Interrogatories, and one set of Requests for Admission. Howard timely objected and responded to all such requests and has also served timely Rule 26(a)(1)(A) initial disclosures. (Udell Decl. ¶ 2 (a)-(c)).

Subject to his objections, Howard has made multiple rolling document productions, such that as of July 11, 2023, Howard informed this Court that he had produced *all* responsive non-privileged documents of which he was aware. (Udell Decl. Ex. 1). Thereafter, by letters dated July 21 and August 11, 2023, Plaintiffs raised various questions with respect to Howard's productions and Howard responded promptly, in detail, on July 28 and August 21, 2023, respectively. (Dkt. 206-16, -17, -18, -19). In such correspondence, Plaintiffs identified *no* documents or other discovery improperly withheld by Howard.[5] Additionally, among other things in this correspondence:

- Plaintiffs asked Howard for a privilege log and Howard agreed to produce one on a reciprocal basis, once Plaintiffs had completed *their* document production, which was (and remains) admittedly incomplete. (Dkt. 206-16, -17, -18, -19 ¶ 4).[6]

---

[5] Plaintiffs did identify two documents that were referenced in Howard's production but inadvertently omitted due to vendor error (*see* Dkt. 206-19, ¶¶ 1(a) and (c)), and Howard promptly produced the same (Udell Decl. Ex. 14).

[6] Howard has produced approximately 3,469 pages of documents. (*See* Udell Decl. Ex. 14). Additionally, Qatar is asserting a privilege as to 34 otherwise responsive documents in Howard's possession. (Dkt. 184, 204). Howard is *not* asserting any separate privilege over those documents and will produce them promptly, if and to the extent that the Court were to overrule Qatar's assertion of privilege. Howard respectfully

- Plaintiffs asked Howard to "confirm" that he "has produced" or "will produce" all documents relating to various persons or subject matters.  Many of these requests involved persons or topics not listed in Plaintiffs' initial document requests, and all expanded the responsive time period well beyond that for which the parties had agreed to produce responsive documents. Howard objected on such grounds, but also confirmed that he had produced all non-privileged documents in his possession, custody, or control that were responsive to Plaintiffs' RFPs, through the period ending on February 11, 2019 (the date when Howard made his forensic collection, one month after this lawsuit was filed).  (Dkt.  206-17 ¶ 2; 206-19 ¶¶ 2, 7(b)-(f), (h)-(j), (l)).

Nowhere in this correspondence do Plaintiffs accuse Howard of spoliation or intentionally withholding evidence.  Critically, Plaintiffs do *not* claim in this correspondence that some *other* source contradicts Howard's representations about his document production.

Nor did Plaintiffs ever respond to Howard's August 21, 2023 correspondence (Dkt.  206-19), much less express any dissatisfaction or disagreement with any of its contents.  Plaintiffs similarly do not accuse Howard's counsel of discovery misconduct.

### C.    Plaintiffs' Allaham-Related Filing

On August 24, 2023, within reply papers filed in support of their cross-motion to compel discovery from Qatar, Plaintiffs claimed that they had recently received three documents from Allaham: (1) a December 20, 2018 putative settlement agreement between Qatar and Allaham; (2) a July 13, 2018 email from Allaham's then-counsel concerning that settlement; and (3) an August 19, 2023 declaration from Allaham that, according to Plaintiffs, cast doubt on the nature of his

---

submits that there is nothing in those documents suggesting any improper discovery conduct.  Howard has asserted attorney-client privilege over a separate, significantly smaller, number of documents and, as noted to Plaintiffs, is prepared to exchange privilege logs when Plaintiffs' own production is complete.  (Dkt. 206-17, ¶ 4; 206-19, ¶ 4).

relationship with Qatar and its assertions of privileges and immunities under the Vienna Convention as to documents held by Allaham. (Dkt. 197).

In their filing, Plaintiffs repeatedly and indiscriminately used the word "defendants" to accuse all defendants and their respective counsel of discovery misconduct. (*See, e.g.*, Dkt. 197 at 2 ("the *lawyers for defendants* and nonparties and Qatar itself went to extraordinary lengths to help Qatar cover up that egregious misconduct") (emphasis added); *id.* at 5 ("The Allaham Declaration, December 2018 Agreement, and July 2018 Email establish, among other things, that … Qatar and its counsel—*with the assistance of defendants and their respective counsel*—have sought to wrongfully conceal discoverable evidence," and "unmistakably reflect Qatar's and *defendants'* intentional scheme to circumvent the basic rules of discovery." (emphasis added)).

In fact, the referenced documents evidence *no* such misconduct by Howard or his counsel. The Allaham Declaration focuses entirely on the specific work that *Allaham* (not Howard) did for Qatar and *Allaham's* own communications (or his counsel's) with Qatar and its representatives. (Dkt. 197-2). On its face, therefore, the declaration says nothing about Howard or Howard's counsel. The December 20, 2018 Settlement Agreement likewise concerns a settlement agreement solely between Allaham, his wife, Qatar, and its public relations agency—it, too, says not a word about Howard or his counsel. (Dkt. 197-3). Finally, the July 13, 2018 email between Allaham's counsel and Qatar's counsel again nowhere mentions Howard or his counsel. (Dkt. 197-4).[7]

Plaintiffs base their explosive accusations about "defendants" instead upon: (1) Allaham's description of communications between his own attorneys and attorneys representing Qatar and (2) Allaham's own review of private chat messages between himself and a Qatari official. (Dkt.

---

[7] To be sure, the merits of Allaham's allegations are severely undermined by the arguments set forth in Qatar's Sur-reply. (Dkt. 203). For purposes of adjudicating Plaintiff's motion with respect to Howard, however, the Court need not address the veracity of Allaham's wild allegations, as nothing he says remotely implicates Howard in any event.

197 at 3-5).  Again, not Howard.  Plaintiffs also point to a single document they claim should have been produced by Muzin's and Stonington's counsel, regarding Stonington's consulting agreement with Qatar, that Plaintiffs instead received from non-party Squire Patton Boggs.  (Dkt.  197 at 8).  Again, no relevance to Howard.

Plaintiffs' filing contains exactly *one* reference to Howard—buried in footnote 10 on page 19—which simply addresses Qatar's characterization of statements the government made about a discovery request addressed to Howard.  The reference says nothing about Howard's conduct in discovery and certainly does not disparage that conduct.

None of the foregoing provides any grounds for Plaintiffs' reckless and false accusation that "defendants"—thus including Howard—are "withholding documents" to "cover up crimes and torts" (Dkt.  197 at 3) against Broidy.

### D.    Plaintiffs' Instant Motion to Compel Forensic Examinations

Painting with the same broad brush, Plaintiffs now demand a forensic examination of all electronic devices of Howard and his counsel.  The motion provides no basis for this extraordinary relief at all, let alone as to Howard (*see supra* notes 1 and 6).

Plaintiffs confine their factual averments about Howard and his counsel to parts of two pages of their brief.  (*See* Dkt.  206-1 at 10-11).  Those averments contain no evidence or accusation of any "secret" agreement with Qatar, or the withholding of documents produced by some third party, or spoliation, discovery misconduct, skullduggery, or double-dealing of any kind.  Instead, Plaintiffs merely recount the anodyne correspondence between counsel, described in Section B, above.   Plaintiffs do not challenge, and offer no basis to challenge, any of Howard's representations.  (*See* Dkt.  206-1 at 10).

Plaintiffs point to their informal letter demand that Howard confirm he: (1) "has produced" all documents concerning any payments from a Qatari agent for the period June 1, 2017 to January

24, 2019 and (2) "will produce" all such documents through December 31, 2019.  Howard properly objected to that demand as beyond the scope of the document requests actually made to Howard in Plaintiffs' RFPs, but nonetheless confirmed that Howard had produced all non-privileged documents through February 11, 2019 (the day of his forensic collection, a month after this lawsuit was filed).  (*See* Dkt. 206-17 ¶ 2).  On this motion, Plaintiffs have not challenged that cut-off date, the ample justification for which has been explained by Howard in multiple letters and live conferrals, all set forth (again) in Howard's July 28, 2023, letter to Plaintiffs.  (*Id.*)

Plaintiffs now claim that Howard's discovery responses somehow prove *non-compliance*, because they purportedly "beg the question" of whether Howard has "transferred [responsive documents] to Qatar or Qatar's counsel or withheld [such documents] pursuant to a claim of ownership by Qatar."  (Dkt. 206-1 at 11).  Howard's response could only "beg the question" if some *other* evidence showed discovery misconduct by Howard.  Yet Plaintiff's motion suggests no such misconduct.[8]

## **ARGUMENT**

### I.   **The Court Should Deny Plaintiffs' Motion to Compel Forensic Examination of Howard's Electronic Devices**

Plaintiffs' own brief, and the cases cited therein, demonstrate the insufficiency of Plaintiffs' application.  At a *minimum,* the movant for the relief sought here must demonstrate that the adverse "party's e-mail production suggests that she is intentionally hiding things, or failing

---

[8] Plaintiffs claim in a footnote that Howard failed to preserve documents from his three work email accounts, although he allegedly had "access" to two of those accounts as of February 11, 2019.  (Dkt. 206-1 at 11 n.4).  This claim, made in a factual vacuum, is any event non-probative, as Plaintiffs make no claim that Howard had the authority to produce these emails.  *See, e.g.*, *Gamache v. Hogue*, 2022 WL 1625028, at *4 (M.D. Ga. Mar. 21, 2022) (noting corporate policy that emails sent on company's communications system are property of the company, not the employee); *Pontikos v. Am. Med. Tech.*, 2021 WL 634999, at *1 (N.D. Ohio Feb. 18, 2021) (same); *Bingham v. Baycare Health Sys.*, 2016 WL 3917513, at *5 (M.D. Fla. July 20, 2016) (same).

steps to respond to discovery." *Covad Communications Co. v. Revonet, Inc.*, 258 F.R.D. 5, 13 (D.D.C. 2009) (citing cases). *See also Bethea v. Comcast*, 218 F.R.D. 328, 329-30 (D.D.C. 2003) ("inspection or seizure [of computer records and systems] is not permitted unless the moving party can 'demonstrate that the documents they seek to compel do, in fact, exist and are being unlawfully withheld'") (citation omitted). As set forth above, Plaintiffs make no such showing as to Howard.

"Mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic discovery measures," such as a forensic examination of a party's electronically stored information ("ESI"). *John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008). *See also Tingle v. Herbert*, 2018 WL 1726667, at *6 (M.D. La. April 10, 2018) (same, citing *John B.*). Thus, the movant also must show "that the producing party has not complied with Rule 26(g) because the production is not 'complete and correct at the time it was made.'" *Covad*, 258 F.R.D. at 14. As Plaintiffs acknowledge, courts require the movant to show *discrepancies* between the producing party's production and that of other sources, or the existence of non-produced documents that are not adequately explained by the producing party. (*See* Dkt. 206-1, at 12-13 (citing cases)). That is the common thread running throughout all Plaintiffs' citations, and precisely the showing Plaintiffs fail to make here. Thus, each of Plaintiffs' citations are easily distinguished:

- In *Peskoff v. Faber*, 244 F.R.D. 54 (D.D.C. 2007), the defendant failed to produce emails for the period 2001 to 2003, even though at a minimum, the technician who conducted a search should have found emails dating back to November 2003, and independent evidence indicated that defendant had deleted all of plaintiff's emails maintained on its servers. *Id.* at 61-62.

- In *Koosharem v. Spec Personnel, LLC*, 2008 WL 4458864 (D.S.C. Sept. 29, 2008), the plaintiffs showed that the emails produced had faulty time stamps, were listed as produced from a "Trevor Doyle," who was neither a recipient nor an addressee, and were modified after the defendants were put on notice of the litigation. *Id.* at *1.

- In *Genworth Financial Wealth Mgmt. Inc. v. McMullan*, 267 F.R.D. 443 (D. Conn. 2010), a third party, Schwab, produced emails sent from defendant's personal email account and computer that were not produced by defendants; the evidence showed that defendants submitted plaintiff's confidential data to Schwab while still employed by plaintiff; and while defendant testified that he had downloaded plaintiff's data to his personal computer, but discarded his personal computer after receiving notice of litigation, Schwab's emails showed that he sent emails from his personal account and personal computer after that date. *Id.* at 445-47.

- In *Ameriwood Industries, Inc. v. Liberman*, 2006 WL 3825291 (E.D. Mo. Dec. 27, 2006), a third-party customer of plaintiff produced an email sent from defendant's personal email account to the third party while defendant was still in plaintiff's employ, after defendant failed to produce the same email in response to discovery requests. *Id.* at *3.

- In *White v. Graceland College Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 2009 WL 722056 (D. Kan. Mar. 18, 2009), the court found "discrepancies in the metadata as to the creation dates" of key emails, which "Defendants have not adequately explained." *Id.* at *4.

- In *Advante Int'l Corp. v. Mintel Learning Tech.*, 2006 WL 3371576 (N.D. Cal. Nov. 21, 2006), the defendant showed that copies of plaintiffs' emails were materially altered and presented "other discrepancies in [plaintiffs'] discovery responses." *Id.* at *1.

- In *Delta T, LLC v. Williams*, 337 F.R.D. 395 (S.D. Ohio 2021), the movant presented "evidence, besides the deleted webpages, that Defendants possess discoverable information but

have not produced it," including emails produced by third parties, and obviously relevant documents whose non-production defendants did not adequately explain. *Id.* at 402.

To merely recount the circumstances of the above cases is to recognize why they are inapposite here. By contrast, Plaintiffs here offer no third-party document productions that call into question *anything* about the completeness of Howard's document production. Plaintiffs make no showing that Howard deleted or destroyed relevant evidence. Plaintiffs do not allege *any* discovery default by Howard and offer no proof that Howard failed to produce responsive, non-privileged documents.[9] Instead, Plaintiffs rely on statements made: (1) by another party, Allaham, (2) about supposed communications with his own attorney, (3) regarding that attorney's alleged communications with an attorney for Qatar . . . all having nothing whatsoever to do with Howard. Such evidence "fall[s] far short of the kind of willful default or failure to respond to discovery requests that other courts have required before ordering forensic examinations." *Tingle*, 2018 WL 1726667, at * 7 (citation omitted).

Courts quintessentially deny forensic examination where there is such a paltry evidentiary showing. *John B.*, 831 F.3d at 460 ("the record lacks evidence that defendants have intentionally destroyed relevant ESI in the past"); *Bethea*, 218 F.R.D. at 329 ("plaintiff has failed to make any showing that relevant materials exist on the hard drive or that defendants have destroyed or unlawfully withheld any documents"). Indeed, the very fact that Plaintiffs included Howard in

---

[9] Nor do Plaintiffs claim that inspection of Howard's own computer and electronic devices is necessary because they are instrumentalities of the alleged hacking. *Cf. Ameriwood*, 2006 WL 3825291, at *4-*5 (noting that to justify forensic imaging, the movant should show a "connection between the computers [to be imaged] and the claims in the lawsuit"; finding forensic examination appropriate because "defendants are *alleged to have used the computers, which are the subject of the discovery request*, to secrete and distribute plaintiff's confidential information") (emphasis added). To the contrary, the alleged hacking, according to the Complaint, was done by "phishing" and other actions allegedly committed by a third party, GRA, and Plaintiffs do not claim that Howard was in any way affiliated with GRA. (FAC ¶¶ 78-106).

their Motion to Compel on these facts (or lack thereof) itself undermines the credibility of Plaintiffs' entire motion.

For these reasons, the Court should reject Plaintiff's request for a forensic examination of Howard.

## II.    The Court Should Deny Plaintiffs' Motion to Collect and Examine ESI from Howard's Counsel

Since Plaintiffs demonstrate no basis to forensically examine Howard's electronic devices, they necessarily also fail to make any such showing as to Howard's counsel.  Plaintiffs in any event fall far short of establishing the *more* stringent showing required for the latter relief.

Plaintiffs must demonstrate not only "good cause" for such relief, but also that the expected utility outweighs "the intrusiveness of the search and inherent privacy concerns" of a forensic examination of *counsel's* computing systems.  *Bradfield v. Mid-Continent Cas. Co.*, 2014 WL 4626864, at *4 (M.D. Fla. Sept. 15, 2014).  Plaintiffs can show neither element.

To begin, Plaintiffs "ha[ve] not identified a single document or category of documents that [they] ha[ve] reason to believe is missing from those already obtained in discovery" from Howard. *Id.*  Nor does Plaintiffs' offer to bear the cost, or to conduct the examination in off-hours, alleviate the intrusiveness and privacy concerns of forensically imaging "all computers, portable or detachable hard drives, e-discovery systems, and personal devices used by counsel," including "all attorneys, paralegals, administrative staff, professional staff, technical support staff, agents, contractors, etc." at the firms representing Howard.  (Dkt.  206-1, at 16 & n.6).

Indeed, in *Bradfield*, the court declined such extraordinary relief even where the lawyer in question was a solo practitioner, whose own files were directly relevant to the issue of the objective reasonableness of a settlement he negotiated on his clients' behalf, and who admitted that his server

13

was damaged as a result of a power surge. *Id.* at *1.  *A fortiori*, Plaintiffs fail to demonstrate a basis for such extraordinary relief here.

Nor do the two cases Plaintiffs cite in their one paragraph of briefing show otherwise.  (Dkt. 206-1 at 14).  Each case involved a lawyer or law firm whose own files: (1) were directly subpoenaed, and (2) indisputably contained relevant evidence, along with (3) other aggravating factors.  Thus, in *In re Uranium Antitrust Litig.*, 32 Fed. R. Serv. 2d 635 (D.D.C. 1980), "compelling evidence" showed that the law firm's client was the offspring of an alleged cartel and that law firm's own actions went beyond merely providing professional advice and included "recruiting" other cartel members for its client. *Id.* at *2.  Nothing like those facts exists here.

Similarly, in *Ellis v. Toshiba Am. Info.  Sys., Inc.*, 218 Cal. App. 4th 853 (2013), *as modified* (Aug. 14, 2013), *as modified on denial of reh'g* (Sept. 10, 2013), plaintiff's class counsel requested a $24 million fee.  The supporting time records she produced indicated that she worked on the class action nearly every day, seven days a week, including holidays, for 22 months; counsel, however, initially produced only a CD containing .pdf time records and apparently had deleted the underlying native format files, including associated metadata, making it impossible to tell when or how often she created time records, among other things.  Unsurprisingly, the court ordered a forensic examination of counsel's hard drives to determine whether contemporaneous billing data was obtainable.  *Id.* at 581.  Again, nothing like those facts facts exists here.

Examination of Howard's counsel's ESI is therefore unwarranted.

## III.    Plaintiffs' Proposed Protocol Is Unreasonable

For the reasons set forth in Point I and Point II, *supra*, the Court should deny the relief sought by Plaintiffs in its entirety as to Howard and Howard's counsel.

Plaintiffs' motion should additionally be denied because Plaintiff's "Proposed Protocol" is overwrought, oppressive, grossly disproportionate to the circumstances, untethered to any case

precedent, and simply unworkable.  As Plaintiffs would have it, every defendant and *all* "attorneys, paralegals, administrative staff, professional staff, technical support staff, agents, contractors, etc. at the firms representing defendants and Qatar" would submit *all* of their "computer[s], portable or detachable hard drives, or personal devices in their homes and offices" for inspection by Plaintiffs' expert, who would then examine *each* of these hundreds (or thousands?) of devices for "any signs of intentional file removal or modification within the scope of this specific case."  (*See* Dkt.  296-1 at 15-16 & n. 6).  Just how the expert would detect *improper* from innocuous "file removal" is not specified.  Then, *within ten days*, the expert will submit a full report to the Court and the parties.  We respectfully submit that Plaintiffs' unprecedented proposal is not only unwarranted and oppressive in the context of this case, but it is also simply not achievable and for these reasons should be rejected.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' motion for forensic examinations of Howard and Howard's counsel in its entirety.

Dated:  September 8, 2023

Respectfully submitted,

*/s/ Charles S. Fax*
Charles S. Fax
D.C. Bar No. 198002
RIFKIN WEINER LIVINGSTON, LLC
4800 Hampden Lane, Suite 820
Bethesda, Maryland 20814
Tel.: (301) 951-0150
cfax@rwllaw.com

Jeffrey A. Udell (*admitted pro hac vice*)
Jacob Gardner (*admitted pro hac vice*)
WALDEN MACHT & HARAN LLP
250 Vesey Street, 27th Floor
New York, NY 10281

Tel.: (212) 335-2030
judell@wmhlaw.com
jgardner@wmhlaw.com

*Attorneys for Defendant Gregory Howard*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2023, I caused a true and correct copy of the foregoing

Opposition to Broidy's Motion to Compel Forensic Examinations to be filed through the Court's

e-file and serve system, which will serve notice electronically on all counsel of record, as reflected

on the Notice of Electronic Filing.

_____
Jeffrey A. Udell (*admitted pro hac vice*)
WALDEN MACHT & HARAN LLP
250 Vesey Street, 27th Floor
New York, NY 10281
Tel.: (212) 335-2030
judell@wmhlaw.com

*Attorney for Defendant Gregory Howard*