**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BROIDY CAPITAL MANAGEMENT, LLC and ELLIOTT BROIDY
Plaintiffs,

v.

NICOLAS D. MUZIN, JOSEPH ALLAHAM, GREGORY HOWARD, and STONINGTON STRATEGIES LLC
Defendants.

Civil Action No. 1:19-cv-00150-DLF

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL FORENSIC EXAMINATIONS**

ArentFox Schiff, LLP ("Arent Fox") respectfully submits this memorandum of law in opposition to the motion by Plaintiffs Broidy Capital Management, LLC and Elliott Broidy (collectively, the "Plaintiffs) to compel a forensic examination of Arent Fox's computer systems.

**PRELIMINARY STATEMENT**

The Plaintiffs' arguments in support of their motion for forensic examination are remarkable not for their substance or logic, but for their unfounded presumptions, mischaracterizations, and irresponsible innuendo. Without so much as attempting to meet and confer with Arent Fox before filing the motion, and on the basis of a deeply flawed and demonstrably false declaration purportedly drafted by Mr. Allaham, the Plaintiffs launched what can only be interpreted as an attack on Arent Fox's professionalism and integrity. The "basis" for their attack? A self-serving inaccurate take on formerly privileged communications between Arent Fox and Mr. Allaham, as well as joint defense communications that Mr. Allaham does not have the unilateral right to waive. Yet these communications – cherry-picked out of context, and misinterpreted – do not support the Plaintiffs' allegations that Arent Fox conspired to improperly bury documents in this case on instructions of Qatar. Even a cursory examination of those

documents show that they reveal nothing more than the mundane workings of litigation discovery work in progress. Hardly smoking guns of any sort, they are used by Plaintiffs to construct a false narrative of alleged nefarious conduct that never actually occurred.

The Plaintiffs' purpose: to subject both the workplace and personal computer systems of Arent Fox's attorneys to forensic examination without regard for the privileges and protections that apply to information on those computers related to clients and matters wholly unrelated to this case. The rights of those other clients and Arent Fox's ethical responsibilities to those other clients are completely ignored by the massively overbroad forensic exam sought by the Plaintiffs. A forensic exam that is unjustified and based solely on a misinterpretation of formerly privileged communications and demonstrably false statements by Mr. Allaham. Such a staggering invasion of attorney-client privilege, confidentiality obligations, and personal privacy is unprecedented and should not be condoned by the Court. Even if a forensic exam were justified, which it is not, a much more targeted protocol that respects the relevant privileges, rights of privacy, and ethical responsibilities would need to be crafted.

## ARGUMENT

### A. The Plaintiffs' Proffered Basis For Requesting a Forensic Exam of Arent Fox's Computer Systems Is Simply False

#### 1. Mr. Allaham's August 25th Declaration Contains Materially False Statements

Arent Fox was Mr. Allaham's litigation counsel in this action until the morning of August 24, 2023, when it received an email from him suddenly terminating its representation. *See* Exh. A (Email from Allaham to Arent Fox). In that email, Mr. Allaham (i) stated that he had sorted out his legal issues with the Plaintiffs and was being dismissed from this case, (ii) informed Arent Fox that he would no longer be requiring its services, and (iii) requested that it

return all of his documents and files. *Id.* Arent Fox was not involved with Mr. Allaham's settlement of his dispute with the Plaintiffs.

On the afternoon of August 24th, the Plaintiffs filed a stipulation dismissing, with prejudice, their claims in this action against Mr. Allaham. *See* Exh. B (ECF No. 195). Early the next morning, the Plaintiffs filed their Reply Memorandum Of Law In Further Support of Plaintiffs' Cross-Motion To Compel (ECF No. 197), attaching as an exhibit a declaration by Mr. Allaham in support of their motion (ECF No. 197-2, the "August 25th Declaration"). Arent Fox was not aware that this declaration was being prepared until it appeared in the docket of this case.

Mr. Allaham's August 25th Declaration – and in particular paragraphs 3, 4, and 5 of that document – contains what can only be described as false statements concerning what Arent Fox purportedly told him about the process and progress of discovery in this case. To the extent anything in Mr. Allaham's declaration suggests that Arent Fox was directed by Qatar or its attorneys to withhold production of discoverable materials or to avoid searching particular documents for responsive materials, or that it complied with any such request – that is simply not true. Nor did Arent Fox ever advise Mr. Allaham that any of this was the case. As such, paragraphs 3 through 5 of Mr. Allaham's August 25th Declaration cannot be relied on for any purpose, much less as the basis for conducting wholesale forensic investigations of the workplace and personal computers of Mr. Allaham's former counsel at Arent Fox.

Paragraph 3 of the August 25th Declaration states:

> I have been informed by my attorneys at ArentFox Schiff that a London-based attorney representing Qatar named Osama Abu-Dehays of Pillsbury Winthrop Shaw Pittman told my attorneys that they could not produce to Broidy any documents and communications that would be embarrassing to Qatar or that would

> reveal the involvement of Qatar and/or its agents in the hack-and-smear campaign targeting Broidy.

August 25th Declaration (ECF No. 197-2), ¶ 3.

That statement is simply untrue. No one from Arent Fox told Mr. Allaham any such thing. More importantly, no one from Arent Fox ever received any such instruction from Mr. Abu-Dehays, from Qatar or its counsel, or any other individual or party. If it had, and it did not, Arent Fox would not have followed it.

As purported evidentiary "support" for Mr. Allaham's allegations in paragraph 3, the Plaintiffs cite an email chain dated June 19, 2023 (the "June 19th emails," ECF No. 206-4), between Arent Fox attorney Mr. Eric Roman and Mr. AllahamIn it, Mr. Roman of Arent Fox responds to an inquiry from Mr. Allaham about conversations that Mr. Roman had had with Mr. Abu-Dehays. Mr. Roman conveys the following facts to Mr. Allaham about these conversations:

- Mr. Abu-Dehays asked whether certain WhatsApp chats that had been collected and were being prepared for production in this action had been produced in response to the subpoena that Mr. Allaham had received in a previous litigation between Broidy Capital Management LLC, Elliot Broidy, and Robin Rosenzweig against the State of Qatar, Stonington Strategies LLC, and Nicolas D. Muzin in the U.S. District Court for the Central District of California (the "California Action").

- Arent Fox investigated whether the WhatsApp chats being produced in this case had been previously produced in the California action and determined that they had not been.[1]

In addition, in response to Mr. Allaham's inquiry as to what the "concern" might be, Mr. Roman responded that there was no concern, and then proceeded to speculate as to what might have motivated Mr. Abu-Dehays' inquiry. More specifically Mr. Roman responded:

> From our perspective, none at all. But I supposed Osama was hoping this would all be considered a non-issue with Qatar if the materials had already been previously disclosed to Broidy.

June 19th email chain (ECF No. 206-4) at p. 2.

From this cherry-picked snippet, taken completely out of context, the Plaintiffs ask the Court to infer that (i) Qatar was directing, or deciding whether to direct, Arent Fox to withhold discoverable documents and (ii) that Arent Fox followed or was prepared to follow such a direction. There is nothing in this June 19th email chain that suggests, much less states, anything of the sort. More importantly, however, as officers of this Court bound by Rule 11 of the Federal Rules of Civil Procedure, the signatories of this memorandum, on behalf of Arent Fox, can state with one hundred percent assurance that what Mr. Roman was conveying to Mr. Allaham was that (i) Mr. Abu-Dehays' inquiry had no bearing whatsoever with respect to Arent Fox's conduct of discovery in this action, and that therefore there was no "concern" as far as either Arent Fox

---

[1] Plaintiffs accuse former counsel for Mr. Allaham of not producing WhatsApp messages in the California Action that "should have been" produced, but fail to identify any request to which those document might have been responsive. In reality, none of the documents discussed in the motion for a forensic exam were responsive to any request served upon Allaham. Mr. Allaham was not a party in the California Action and Mr. Allaham produced materials responsive to the requests contained in the third-party subpoena issued to Mr. Allaham in the California Action, none of which required the production of the communications identified by the Plaintiffs as documents that "should have been" produced in the California Action. *See* Exh. B (Documents Subpoena to Allaham in the California Action).

or Mr. Allaham was concerned, and (ii) that Mr. Roman could only guess at, but had no actual knowledge, of what Mr. Abu-Dehays' motivation for asking the question might have been.

In short, there is no "evidence" supporting the statements that Mr. Allaham made in paragraph 3 of his August 25th Declaration. Those statements are very simply untrue.

Paragraph 4 of Mr. Allaham's Declaration states that:

> Based on my conversations with my attorneys, it is my understanding that the instruction from Pillsbury is why Covington & Burling, which represents the State of Qatar, has submitted privilege logs designating as "privileged" numerous of my WhatsApp communications with Ali Al-Thawadi, Chief of Staff to Mohammed bin Hamad Al Thani, the younger brother of the Emir of Qatar.

August 25th Declaration (ECF No. 197-2), ¶ 4.

This statement is also false. As was previously explained, Arent Fox never received and is unaware of any instruction from "Pillsbury" or from any other person or party for that matter, to withhold documents from production. Arent Fox certainly never told Mr. Allaham that this non-existent instruction was the motivation behind the privilege logs entries prepared and submitted by Covington & Burling in this action in connection with WhatsApp chats with Mr. Al-Thawadi, and in any event, as far as Arent Fox is aware that was not the case.

Additionally, paragraph 5 of Mr. Allaham's August 25th Declaration is also patently false. Paragraph 5 states:

> In addition, my attorneys told me in or around May of this year that they were not allowed to search my documents and communications from 2017 and 2018, because Covington told them that my materials from that time frame "belong" to Qatar.

*Id.*, ¶ 5.

Arent Fox, however, never made any such statement to Mr. Allaham. On the contrary, Arent Fox collected, searched, and produced over 200 documents to the Plaintiffs that date from

2017 to 2018 (Bates Nos. Allaham00000275-0001108). And, there are various documents from the 2017 to 2018 time frame that appear in the privilege log prepared and submitted by Qatar to the Plaintiffs in this action. What motivated Mr. Allaham to make this particular statement is difficult to discern. In any event, given the content of Mr. Allaham's prior document productions, and the content of Qatar's privilege log, the statement in paragraph 5 is demonstrably false.

For these reasons, the statements made by Mr. Allaham in paragraphs 3 to 5 of his August 25th Declaration should not be believed or credited, and cannot serve as a reliable basis for justifying a forensic examination of his former counsel's computers and electronic devices.

**2. Arent Fox Has Not Withheld Discoverable Material**

As of August 24th, when Arent Fox's representation of Mr. Allaham was terminated, fact discovery was ongoing in this action and Arent Fox was in the process of substantially completing its review and production of documents responsive to the Plaintiffs' document requests to Mr. Allaham, and a subpoena to Lexington Strategies, Mr. Allaham's company. The document production protocol that Arent Fox was following was (i) search documents and communications that had been collected from Mr. Allaham for responsiveness, (ii) make determinations as to attorney-client and other applicable privileges, (iii) submit the production set to Qatar's counsel at Covington for a separate review for issues relating to diplomatic or sovereign immunity, and (iv) produce all non-privileged, responsive documents to the Plaintiffs. There was nothing nefarious about this process. The collection and review process was standard, and the Covington review for privileges belonging to Qatar had been approved by the Court, as counsel for the Plaintiffs are well aware.

At the point in time when Mr. Allaham terminated Arent Fox's representation of him as litigation counsel, Arent Fox had been in the process of reviewing a final tranche of documents

containing certain of Mr. Allaham's WhatsApp communications that had been stored on his iPhone. This review effort had its genesis in a July 10, 2023, letter that Plaintiffs sent to Arent Fox raising several discovery issues with Mr. Allaham's production, including text communications between Mr. Muzin and Mr. Allaham that Mr. Muzin had previously produced. *See* Exhibit C. On July 14, 2023, Arent Fox responded, assuring the Plaintiffs that it was investigating the issue, which it did. *See* ECF No. 206-10 at p. 9 of 10.

Far from trying to conceal anything, Arent Fox promptly wrote to the Plaintiffs' counsel about this issue, and about the steps AFS was taking to review and supplement Mr. Allaham's production of documents. *See* July 21, 2023 email (ECF No. 206-10 at pp. 6 to 8 of 10). Arent Fox then commenced the process to search for, review, and produce documents according to the Court's protocol.[2] On August 24, 2023, the date that Mr. Allaham terminated Arent Fox's representation, Arent Fox was in the process of completing its review and complying with the Court's protocol. Mr. Allaham's termination of Arent Fox's representation, and his unilateral settlement with the Plaintiffs, is what interrupted that production.

The Plaintiffs also argue that Mr. Allaham's "failure" to produce the Confidential Settlement Agreement and Release of Claims, dated December 20, 2018, between Mr. Allaham and Qatar (the "2018 Agreement," ECF No. 197-3) is also somehow evidence of discovery misconduct. It is not. As Arent Fox explained to Plaintiffs' counsel in a letter dated August 4, 2023, Arent Fox was still in the process of conducting its review, and would "produce materials,

---

[2] In fact, Arent Fox had already notified counsel for Qatar that we would be providing additional documents to them according to the Court's protocol. *See* Docket No. 192, at 5 n.1 ("Counsel for Defendant Joseph Allaham informed counsel for Qatar that it has identified an additional set of potentially responsive ESI…"). Qatar noted that it would supplement its privilege logs, as necessary, according to the Court's May 3, 2023 Order. Again, this shows that the discovery process was unfolding appropriately – and certainly is not evidence of any alleged wrongdoing.

if any, that are non-privileged and responsive subject to any assertion of privilege or immunity by Qatar." *See* August 4, 2023 Ltr. (ECF No. 206-9) at p. 2. Arent Fox was in the process of determining whether any privilege could attach to the 2018 Agreement and, if it determined there was none, would follow the Court's protocol to permit Qatar an opportunity to assert any privilege or protection. While it is true that this agreement had not (yet) been produced, it was not due to any discovery misconduct. Arent Fox was in the process of conducting a legitimate review of its discoverability.

The Plaintiffs further argue that Qatar "was instructing the attorneys who do Qatar's bidding, including Mr. Allaham's former counsel, to rely on the sham provisions in the December 2018 Agreement retroactively claiming Qatar ownership of Mr. Allaham's documents as a basis to withhold production" of supposedly discoverable documents. Plaintiffs' MOL at p. 6. The Plaintiffs suggest that somehow Arent Fox's June 19th email chain (ECF No. 206-4) with Mr. Allaham concerning Mr. Abu-Dehays supports this exercise in complete speculation, but it does not. Nowhere in the June 19th email chain does Arent Fox even suggest to Mr. Allaham that they had to return documents to Qatar. Nor did Qatar or its counsel at any time instruct Arent Fox to return documents to Qatar, whether from Mr. Allaham's records or otherwise. This just never happened, and the Plaintiffs' argument in this regard is simply wrong. The Court's discovery protocol contemplated Qatar reviewing material before Allaham produced it, and there is nothing improper about that protocol being followed.

Despite the Plaintiffs' assertions, there is nothing nefarious to be found here. Indeed, the Plaintiffs' inquiries and Arent Fox's responses throughout discovery are exactly why discovery meet and confer processes are required by the Court. Plaintiffs identified a supposed issue, Arent Fox investigated it and was in the process of producing additional documents as a result of the

inquiry. The only reason the process was not completed is that its client terminated the representation and was dismissed from the case.

Had Mr. Allaham not independently settled with the Plaintiffs, the documents and communications that they now complain were being withheld as part of some nefarious conspiracy would have either been produced in relatively short order, would have been added to a supplemental log by Qatar, or would have identified for a discovery conference or motion to compel. There was no misconduct here. This was simply the discovery process working as it should have been.

**B. A Forensic Examination of Arent Fox's Computer Systems Is Neither Legally Justified Nor Necessary**

The Plaintiffs are not seeking a forensic examination of Mr. Allaham's computers or electronic devices and with good reason. Mr. Allaham is no longer a defendant in this action, and in any event is providing the Plaintiffs' counsel with full, unrestricted access to all of his documents and communications, including communications with his former counsel. There is no plausible justification for seeking the court's permission to forensically examine his electronic devices.

Rather, the Plaintiffs are seeking a forensic examination of the entire computer systems of Mr. Allaham's former counsel at Arent Fox. The request is not limited to material related to this matter. They seek to obtain access to all of the lawyers' stored information, and only then search that material for information related to this case. And their request is not limited to these attorneys' work computers. They are also seeking to have the personal computer systems and electronic devices of those individual attorneys forensically copied at the attorneys' places of residence. And yet, despite the ridiculously invasive nature of their request, they cite to no authority – not a single case – in which a court authorized a forensic examination of the

computer systems and electronic records belonging to the attorneys to resolve an ordinary discovery dispute where the attorneys' records were not at issue in the litigation and there was no direct evidence of spoliation or destruction of evidence by the attorneys themselves.

The Plaintiffs cite only one case in which an attorney's electronic devices were made subject to a forensic examination: *Ellis v. Toshiba Am. Info. Sys., Inc*., 218 Cal. App. 4th 853, 160 Cal. Rptr. 3d 557 (2013). In that case, which was a decision out of California state court, what was at issue was a motion by a plaintiffs' class action attorney for an award of attorney's fees. The fee petition put that attorney's billing records at issue. In that case, there was direct evidence – in the form of an admission by the attorney at deposition – that the attorney had committed discovery misconduct by deleting computer files and metadata relevant to her fee award request. That decision is not binding on this court, and more importantly, is wholly distinguishable from this case.

Firstly, Arent Fox's files are not at issue in this action. It was Mr. Allaham's documents and communications that were the focus of discovery – at least before the Plaintiffs settled their dispute with him and dismissed him from this action. Mr. Allaham is no longer a defendant here and Arent Fox is no longer his counsel. Arent Fox is in the process of returning all the files that it collected from Mr. Allaham during discovery. There is no evidence that Arent Fox destroyed or deleted any of the documents or communications that the Plaintiffs claim to be seeking, which makes sense as Arent Fox did not delete any such files or otherwise engage in spoliation or discovery misconduct while it was still active in this case. Moreover, by the Plaintiffs' own account, Mr. Allaham has already handed over all his files for the Plaintiffs to inspect and review, and the Plaintiffs will presumably have full access to the hard drive that Arent Fox is in the process of returning to Mr. Allaham. Therefore, the Plaintiffs already have access to all of

Mr. Allaham's documents, whether discoverable, non-discoverable, and as it turns out, privileged as well.

In these circumstances, there is no legal basis to subject Arent Fox to an invasive, expensive, and ultimately pointless forensic examination. At best, the Plaintiffs allege that they requested the production of certain documents and communications in Mr. Allaham's possession, custody, or control and that it had not yet received in discovery. However, such run-of-the-mill discovery disputes cannot form the basis for ordering the forensic examination of a party's computers, much less those of a former party's former attorneys. *See Covad Commc'ns Co. v. Revonet, Inc.,* 258 F.R.D. 5, 13 (D.D.C. 2009) ("It is the rare case that a litigant does not allege some deficiency in the production of electronically stored information . . . I cannot find any authority in the cases to date that permit a court to conclude that allegations of deficiencies in themselves automatically require a forensic search whenever a party claims that there are, for example, fewer e-mails from a person or about a subject or transmitted in a given time than the party expected to find. This would result in forensic examinations in virtually every case . . .").

Moreover, here the Plaintiffs are well aware from Arent Fox's correspondence that it was in the process of completing Mr. Allaham's production and was preparing additional non-privileged responsive documents for production when the litigation against Mr. Allaham abruptly ended. There is no evidence whatsoever, whether circumstantial or otherwise, that any discoverable documents or communications were destroyed or altered by Mr. Allaham's former counsel at Arent Fox, or of any other spoliation of evidence by counsel. As such, the Plaintiffs' request for a forensic examination of former counsel's electronic devices should be denied.

### C. The Proposed Forensic Exam Would Subject Arent Fox and its Clients to Extreme Risk

The *Covad* decision also cautioned against the widespread use of forensic examinations to resolve ordinary discovery disputes due to its inherent intrusiveness:

> The advisory committee note to Rule 34 cautions against making forensic examination the default, however, and encourages courts to "guard against undue intrusiveness." Fed.R.Civ.P. 34, Advisory Comm. Note (2006). Because these examinations raise issues of confidentiality and can produce thousands of documents that have to be reviewed for relevance and privilege, "compelled forensic imaging is not appropriate in all cases, and courts must consider the significant interests implicated by forensic imaging before ordering such procedures."

*Covad*, 258 F.R.D. at 11.

Here, the forensic examination that the Plaintiffs are proposing is ridiculously broad. For example, under the Plaintiffs's proposed protocol:

- A computer forensics expert selected by the Plaintiffs would, after executing a confidentiality agreement and an undertaking under the blanket protective order in place in this action, image "all computers, portable or detachable hard drives, e-discovery systems, and personal devices . . . used by counsel . . . including . . . any computer, portable or detachable hard drives, or personal devices in their homes and offices" and "the computer forensics expert" chosen by the Plaintiffs "will use its best efforts to avoid unnecessarily disrupting the normal activities or business operations" of counsel "while inspecting, copying, and imaging" counsel's systems. Plaintiffs' MOL (ECF No. 206-1) at 15.
- The computer forensics expert – again, selected by the Plaintiffs – will then be given unfettered access to inspect those computers "for any signs of intentional file removal or modification within the scope of this specific case." *Id.*at 16.

Essentially, the Plaintiffs seek to have a third party, under the protection of a mere confidentiality agreement and a protective order that protects the confidentiality of documents produced in discovery (but not documents merely viewed by an outside third party) complete and unfettered access to all materials stored on any computer or storage device used, for any purpose, by Mr. Allaham's former Arent Fox attorneys, including for personal use. That would require Arent Fox to disclose materials and information to a third party – hired by the Plaintiffs – the overwhelming majority of which belong to or are associated with clients of the firm other than its former client Mr. Allaham, risking not only the confidentiality of those materials but the privileged status of attorney-client communications and work product that have nothing whatsoever to do with Mr. Allaham or this action.

Moreover, allowing a third party – selected by Plaintiffs' counsel, no less – to access Arent Fox's computer systems and electronic storage devices exposes Arent Fox's internal network to potential cyber-security threats, such as viruses or other malware that a data forensics expert may not even be aware is present in the forensic software it is using. Recent incidents demonstrate that law firms are increasingly being targeted for cyber-security threats.[3] These threats can lay hidden and idle for extended periods of time. It would be extremely difficult, if not impossible, to attribute any future incident to this forensic examination. As such, a mere confidentiality agreement or even a complete indemnification against that risk would be ineffective and unworkable.

---

[3] *See, e.g.,* https://www.rollonfriday.com/news-content/kirkland-kl-gates-and-proskauer-hit-ransomware-attack; https://techcrunch.com/2023/04/06/proskauer-confidential-client-data/; https://www.abajournal.com/news/article/proskauer-acknowledges-cyberattack-on-vendor-left-its-data-exposed; https://www.law.com/americanlawyer/2023/04/12/proskauer-data-breach-underscores-hazards-of-transitioning-to-the-cloud/?slreturn=20230808211638; https://nypost.com/2023/07/08/large-global-law-firms-affected-by-massive-data-brach/

Here, the Plaintiffs have produced no evidence whatsoever – whether circumstantial or otherwise – that any discoverable document or communication has been altered or deleted by an Arent Fox attorney during their tenure as counsel for Allaham. Under these circumstances, there is no justification for the stunningly broad forensic examination that Plaintiffs' counsel is proposing.

## CONCLUSION

For the foregoing reasons, the Court should deny the Plaintiffs' motion to compel a forensic examination of the computers of Mr. Allaham's former counsel at Arent Fox.

Dated: September 8, 2023

/s/ *Randall A. Brater*

Randall A. Brater
ARENTFOX SCHIFF LLP
1717 K Street NW
Washington, DC 20006
P: 202.857.6000
F: 202.857.6395
randall.brater@afslaw.com

Eric Roman
ARENTFOX SCHIFF LLP
1301 Avenue of the Americas, Floor 42
New York, NY 10019
P: 212.484.3900
F: 212.484.3990
eric.roman@afslaw.com

*On behalf of ArentFox Schiff LLP*