## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BROIDY CAPITAL MANAGEMENT LLC,
and ELLIOTT BROIDY,

        Plaintiffs,

        v.

NICOLAS D. MUZIN, JOSEPH ALLAHAM,
GREGORY HOWARD, and STONINGTON
STRATEGIES LLC,

        Defendants.

Civil Action No.:  19-00150 (DLF)

## DEFENDANT GREGORY HOWARD'S MEMORANDUM
## OF LAW IN OPPOSITION TO NON-PARTY MIDDLE
## EAST FORUM'S MOTION TO QUASH, FOR
## PROTECTIVE ORDER AND SANCTIONS

RIFKIN WEINER LIVINGSTON, LLC
Charles S. Fax
D.C. Bar No. 198002
4800 Hampden Lane, Suite 820
Bethesda, Maryland 20814
Tel.: (301) 951-0150
Email: cfax@rwllaw.com

WALDEN MACHT & HARAN LLP
Jeffrey A. Udell (*admitted pro hac vice*)
Jacob Gardner (*admitted pro hac vice*)
250 Vesey Street, 27th Floor
New York, NY 10281
Tel.: (212) 335-2030
judell@wmhlaw.com
jgardner@wmhlaw.com

*Attorneys for Defendant Gregory Howard*

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

PRELIMINARY STATEMENT ....................................................................................................1

RELEVANT FACTS ...................................................................................................................2

     A.    Plaintiffs' Allegations and Howard's Defense ......................................................2

     B.    Broidy's Funding of Think Tanks to Further His Paid Anti-Qatar Advocacy ...............................................................................................................3

     C.    Howard's Subpoena and MEF's Response............................................................4

     D.    MEF's Continued Withholding of Responsive Documents....................................6

     E.    The *Tablet* Article and MEF's Irrational Response................................................7

ARGUMENT ...............................................................................................................................9

I.     THE COURT SHOULD DENY MEF's MOTION TO QUASH AS UNTIMELY...........9

II.    MEF WAIVED OBJECTIONS AS TO BURDEN OR RELEVANCE...........................10

III.   THE COURT SHOULD DENY MEF'S MOTION TO QUASH, FOR A PROTECTIVE ORDER, AND ATTORNEY'S FEES, BECAUSE MEF DID NOT SATISFY ITS SUBPOENA OBLIGATIONS AND ITS ARGUMENTS FOR PREJUDICE ARE FRIVOLOUS ........................................................................12

CONCLUSION...........................................................................................................................17

## **TABLE OF AUTHORITIES**

**Pages**

__Cases__

*Althridge v. Aetna Cas. & Sur. Co.*,
    184 F.R.D. 181 (D.D.C. 1998) ........................................................................ 11

*Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*,
    107 F.R.D. 288 (D. Del. 1985) ...................................................................... 15

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*,
    82 F. Supp. 3d 344 (D.D.C. 2015) ................................................................. 13

*Darling v. Girard*,
    2015 WL 13898434 (D.D.C. July 20, 2015) ................................................. 10

*Fed. Trade Comm'n v. Thomas Jefferson Univ.*,
    2020 WL 3034809 (E.D. Pa. June 5, 2020) ................................................... 14

*Flanagan v. Wyndham Int'l, Inc.*,
    231 F.R.D. 98 (D.D.C.2005) ......................................................................... 10

*In re Shelton Fed. Grp., LLC*,
    2018 WL 4482560 (Bankr. D.D.C. Aug. 21, 2018) ................................. 10, 15

*Irons v. Karceski*,
    74 F.3d 1262 (D.C. Cir. 1995) ...................................................................... 10

*Klayman v. Jud. Watch, Inc.*,
    2008 WL 11394177 (D.D.C. Jan. 8, 2008), *aff'd*, 2008 WL 11394172 (D.D.C.
    Apr. 2, 2008) ................................................................................................. 14

*Nguyen v. Fraunhofer-Gesellschaft zur Forderung Der Angewandten Forschung, E.V.*,
    2021 WL 5800741 (D.D.C. Dec. 7, 2021), *app. dism'd*, 59 F.4th 1319 (D.C. Cir.
    2023) ............................................................................................................ 9, 10

*North Carolina Right to Life, Inc. v. Leake*,
    231 F.R.D. 49 (D.D.C. 2005) .......................................................................... 9

*Nozinich v. Johnson & Johnson, Inc.*,
    2011 WL 13124088 (W.D. Tenn. Feb. 22, 2011) ........................................... 12

*Peskoff v. Faber*,
    244 F.R.D. 54 (D.D.C. 2007) ........................................................................ 11

*R.J. Reynolds Tobacco v. Philip Morris, Inc.*,
    29 F. App'x 880 (3d Cir. 2002) .................................................................... 14

*U.S. Dep't of the Treasury v. Pension Benefit Guaranty Corp.*,
    301 F.R.D. 20 (D.D.C. 2014) ........................................................................... 9, 10

*Williams v. Corelogic Rental Prop. Sols., LLC*,
    2016 WL 6277675 (D. Md. Oct. 26, 2016) ........................................................ 12

## **Rules**

Fed. R. Civ. P. 26 ....................................................................................................... 11, 16

Fed. R. Civ. P. 37 ............................................................................................................ 16

Fed. R. Civ. P. 45 ........................................................................................................ 1, 10

Defendant Gregory Howard ("Howard") respectfully submits this Memorandum of Law in opposition to the motion to quash, for a protective order and sanctions filed by non-party Middle East Forum ("MEF").  In addition, Howard relies upon this Memorandum in support of his cross-motion, separately filed herewith, to compel MEF to produce documents in compliance with Howard's subpoena to MEF (the "Subpoena").

**PRELIMINARY STATEMENT**

This Court should deny MEF's bad faith and frivolous motion in its entirety for the following reasons, among others: (1) MEF's motion to quash is untimely; (2) MEF long ago waived any objections to relevance or burden by producing documents; and (3) in any event, on the merits, MEF utterly fails to show entitlement to a protective order or the specific relief sought—*i.e.*, a declaration that the Subpoena is fully satisfied, despite MEF's acknowledged failure to produce relevant, responsive documents.  For these same reasons, the Court should grant Howard's cross-motion, separately filed herewith, to compel MEF to produce 59 documents it has already gathered, logged, and continues to withhold without legal justification.

 The disputed issues are narrow.  On March 17, 2022, MEF, a Philadelphia-based think tank, responded to the Subpoena.[1]  MEF produced roughly 2,000 pages, but withheld roughly 180 documents, including 59 solely on grounds of a purported "trade secret."  (Dkt. 202-9 at 7-25).  The asserted "trade secret" is the identity of MEF's donors.  In response, Howard noted that this assertion did not justify withholding the documents, and that MEF could simply: (1) redact all donor information for any source other than Plaintiff Elliot Broidy and his affiliates; and (2) designate any such documents as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" under the

---

[1] Although MEF is based in Philadelphia and the subpoena was returnable in New York, Howard waives any objection to venue under Fed. R. Civ. P. 45(c)(3)(A) and consents to venue of the motion in this District.  *See* Fed. R. Civ. P. 45(f).

terms of the existing protective order.  (Dkt. 202-11).  MEF refused to adopt these simple expedients.  (Dkt. 202-12).

Instead, several months later, MEF threatened that if Howard would not declare that MEF had fully complied with its obligations under the Subpoena (when it had not), *and* pay MEF $40,000 for its purported attorneys' fees, MEF would move for a protective order.  (Dkt. 202-20). Howard declined to do so, as MEF has *not* fully complied with the subpoena.  (Declaration of Jeffrey A. Udell, Sept. 12, 2023 ("Udell Decl."), Ex. 4 (Letter of Jeffrey A. Udell, Jan. 24, 2023)).

Unsatisfied, MEF has made this wholly unnecessary motion, contending that it is somehow prejudiced by the *non-public* fact (that is, until MEF filed this motion) that Howard contends MEF has not fully complied with the Subpoena.  MEF also cynically claims in this motion that it is prejudiced by an article appearing in *Tablet*—when, in fact, that article mentions *nothing* about MEF's subpoena compliance (or even the contents of its subpoena), and MEF itself has been *republishing* the *Tablet* article on its website to its own perceived supporters.

For these reasons, MEF's motion is meritless and should be denied in its entirety.  At the same time, and now that MEF has brought this issue before the Court, Howard respectfully submits that the Court should grant his separately filed cross-motion to compel MEF to produce the remaining documents it is wrongfully withholding without justification.

## RELEVANT FACTS

### A.    Plaintiffs' Allegations and Howard's Defense

Plaintiff Elliott Broidy and his company, Broidy Capital Management ("Broidy" or "Plaintiffs") allege in their First Amended Complaint ("Complaint" or "FAC") that Howard participated in a hacking conspiracy, sponsored by Qatar, of which Broidy styles himself a critic. (Dkt. 18-2, FAC ¶¶ 6).  Broidy alleges that this hacking involved theft of "trade secrets" and damaged Broidy's business interests.  (*Id.* ¶¶ 8, 211, 214).

Howard denies that he was involved in any conspiracy and offers a vastly different narrative of the events alleged in the Complaint, that is: (1) that Howard availed himself of his First Amendment Right to publish matters of public concern; and (2) that those matters relate, specifically, to a vast operation of undisclosed foreign lobbying, corruption, and other criminal conduct by Broidy.  (*See* Answer, Dkt. 75, at 102; Dkt. 159, Tr. at 6, 9).

**B.      Broidy's Funding of Think Tanks to Further His Paid Anti-Qatar Advocacy**

The leaked emails suggest that, contrary to Broidy's self-portrayal in his Complaint as someone whose public "criticism of Qatar" was supposedly driven by his "advocacy against terrorism and extremism, and in protection of his country" (FAC ¶ 12), in fact Broidy supported a large-scale public relations effort against Qatar on behalf of Qatar's political rivals, the United Arab Emirates ("UAE") and Saudi Arabia—from whom Broidy was feverishly soliciting multi-millions of dollars in business.  To stoke this public relations effort, Broidy relied on, and made large contributions to, think tanks to spread the anti-Qatar message of his foreign sponsors.  (Udell Decl. Exs. 1 (Eileen Sullivan, *4 Takeaways from a Close Look at Elliott Broidy*, N.Y. Times (Aug. 13, 2019)), 2 (Desmond Butler and Tom LoBianco, *The Princes, the President, and the Fortune Seekers*, The Associated Press (May 21, 2018))).

Through these influential think tanks, among other means, Broidy sought to shape U.S. foreign policy against Qatar in exchange for payments of millions of dollars, all while concealing his activity as a foreign agent.  Broidy eventually pleaded guilty to conspiring to violate the Foreign Agents Registration Act,[2] although he was subsequently pardoned by then-President Trump.  The

---

[2] *U.S. v. Broidy*, 1:20-cr-00210-CKK (D.D.C. Oct. 20, 2020), Dkt. No. 13 at 80.

3

Department of Justice described Broidy as "secretly do[ing] the bidding of foreign principals" in "a covert campaign to influence the U.S. Government.[3]

MEF is a Philadelphia-based think tank that purports to "promote[] American interests in the Middle East and protect[] Western values from Middle Eastern threats."[4]   MEF, which disburses millions of dollars annually to those "who work to further [MEF's] mission,"[5] is an outspoken critic of Qatar[6] that has openly supported Saudi Arabia, the UAE, and Broidy.[7]

### C.     Howard's Subpoena and MEF's Response

On March 14, 2022, Howard served MEF with the Subpoena, seeking documents about Broidy's relationships with foreign principals hostile to Qatar, the work Broidy performed on their behalf through MEF, Broidy's unlawful efforts to shape U.S. foreign policy, and the alleged hacking.  (Dkt. 202-1; Udell Decl. Ex. 3 (Aff. of Service)).  Such documents are relevant to Howard's defenses against Broidy's claims, Broidy's credibility, and his damages claims.  (*See* Dkt. Nos. 115, 121, 124, 126; Dkt. No. 159, Tr. at 6-9).  For example:  any documents that show, directly or indirectly, that Broidy was funneling funds from his foreign paymasters to MEF to sponsor anti-Quarter activity would be highly relevant.

---

[3]  U.S. Dep't of Justice, *Recent FARA Cases* (Dec. 3, 2021), https://www.justice.gov/nsd-fara/recent-cases.

[4]  https://www.meforum.org/ (last visited 9/15/2023).

[5]  https://www.meforum.org/activities/education-fund (last visited 9/15/2023).

[6]  MEF's website lists 102 anti-Qatar media posts between 2018 and the present.  *See* https://www.meforum.org/topics/98/qatar (last visited 9/15/2023).

[7]  *See, e.g.*, Clifford Smith, *Saudi Arabia: A Scapegoat for Human-Rights Abusers*, MIDDLE EAST FORUM (October 28, 2020), https://www.meforum.org/61706/saudi-arabia-scapegoat-for-human-rights-abusers;; Bradley Bowman, Seth J. Frantzman and Ryan Brobst, *US, Israel Should Add Egypt, UAE to Noble Dina Military Drill*, MIDDLE EAST FORUM (July 5, 2021), https://www.meforum.org/62484/add-egypt-uae-to-noble-dina-military-drill; Gregg Roman (MEF's Director and COO), *Ambassador Haley's last gift to Israel*, JEWISH NEWS SYNDICATE (Nov. 2, 2018), https://www.jns.org/opinion/ambassador-haleys-last-gift-to-israel.

MEF did not move to quash.  Instead, on March 17, 2022, MEF served its Objections and Response.  (Dkt. 202-2).  MEF's response broadly breaks down into three categories:

First, in response to eleven of the eighteen total requests, MEF stated that it did not possess any responsive documents whatsoever.  (Dkt. 202-2, Resp. to Req. Nos. 1, 4-6, 9, 11-12, 14-16, 17-18).

Second, in response to two other requests (which sought information regarding MEF conferences and publications), MEF produced, without objection, nearly 2,000 pages of materials. (*Id.*, Resp. to Req. Nos. 8, 16).  Those documents consist of: (1) non-public opposition research attempting to gather evidence of misconduct by Qatar and its agents; (2) dossiers on various Qataris purporting to contain their confidential personal information; (3) articles and other written materials criticizing Qatar and/or praising Qatar's rivals; and (4) the transcript of a deposition taken by Broidy in a failed lawsuit he previously brought against Qatar and Howard's co-defendants regarding the same alleged hack that is at issue in this case.  (Dkt. 202-8 at 3).

Third and finally, in response to the five remaining requests, MEF acknowledged that it possesses 183 *responsive* documents that it was withholding on grounds of purported privilege. (Dkt. 202-2, MEF Resp. to Req. 2, 3, 7, 10, 13; Dkt. 202-7).   The five remaining requests sought:

- "All communications with [Broidy's close associate] Joel Mowbray [who is featured prominently in the FAC] or [Mowbray's company] Fourth Factor Consulting . . . regarding Broidy, Defendants, the State of Qatar, the UAE, Saudi Arabia, or the alleged hacking"; (Req. 2)

- "All communications between [MEF] and any person regarding Broidy's advocacy, lobbying, public relations, or consulting efforts relating to the State of Qatar"; (Req. 3)

- "All communications between [MEF] . . . and members of the press . . . regarding the alleged hacking, Broidy, or Defendants"; (Req. 7)

- "All documents and communications regarding payments, distributions, donations, or disbursements that were made to [MEF] on behalf of, received

from, or made by Broidy or [Broidy's company] Circinus Worldwide"; (Req. 10) and

- "All documents and communications relating to financial transactions or exchanges of anything of value . . . between [MEF] . . . and Broidy, Circinus Worldwide, or any Broidy-affiliated entity."  (Req. 13).

Except with respect to Request 7 (regarding communications with the press), MEF did not state any other objections—such as lack of relevance, undue burden, lack of proportionality, or availability from another source—apart from its assertions of purported privilege.  (Dkt. No. 202-2, MEF Resp. to Req. 2, 3, 10, 13).  MEF subsequently produced three of those documents and continues to withhold the remaining 180.  (Dkt. 202-9).

### D.    MEF's Continued Withholding of Responsive Documents

Thereafter, Howard, having previously objected to MEF's *withholding* of responsive documents—rather than production of such documents subject to appropriate confidentiality protections (Dkt. 202-8 at 3)—sent a letter reserving its rights given those continuing objections. (Dkt. 202-10).

Howard also offered that, to the extent MEF sought to protect the identity of donors *other than* Broidy, MEF could simply: (1) produce the documents and designate them as CONFIDENTIAL or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" under the existing protective order, or (2) alternatively, redact identifying information, because Howard "only cares about donor and source information to the extent it involves Mr. Broidy, whom there is no need to protect." (Dkt. 202-10; emphasis added).

MEF then claimed that in light of the Court's June 15, 2022 ruling (Dkt. 159), MEF's discovery obligations were "complete."  (Dkt. 202-12).  Howard disagreed, noting that the withheld documents fell well within the scope of permitted discovery concerning: (1) Broidy's undisclosed advocacy on behalf of foreign sponsors, (2) Broidy's illegal efforts to influence U.S.

policy toward Qatar, and (3) Howard's First Amendment defense relating to Broidy's efforts to influence U.S. policy through think tanks like MEF.  (Dkt. 202-13).  Howard asked whether MEF would, accordingly, produce the withheld documents.  (*Id.*).  In a letter dated August 4, 2022, MEF adhered to its position.  (Dkt. 202-14).

E.      **The *Tablet* Article and MEF's Irrational Response**

On November 3, 2022, an article largely supportive of Broidy and critical of Qatar and the instant Defendants, including Howard, appeared in *Tablet*.  (Dkt. 202-15).  The article described, long after the fact, several third-party subpoenas issued by Defendants, which the article's author claimed to have reviewed.  The article named no fewer than nine supposed subpoena recipients, including MEF, and quoted some of the subpoena recipients describing the subpoenas as "despicable harassment" and the Defendants' "law firms" that issued the subpoenas as "incapable of shame" (*id.* at 5) and "idiots and assholes" (*id.* at 7).  The article further reported that it sought comment from Howard's counsel, who responded in writing: "In light of the pending litigation, I am not going to comment on subpoenas issued to any specific individual or party," and then further added, in relevant part, "Mr. Howard has issued a small number of targeted subpoenas to parties that he reasonably believes are in the possession of evidence that the Court has deemed to be highly relevant to this case and to Mr. Howard's defenses." (*Id.* at 6).  Howard's counsel thus made *no* comments whatsoever about MEF (or the recipient of any other subpoena issued by Howard).

Immediately thereafter, MEF used the *Tablet* article as a pretext to claim that Howard was engaging in conduct "designed to harm MEF" and demanded, among other things, that Howard retract the statement and confirm that MEF had fully satisfied its subpoena obligations.  (Dkt. 202-16).  As Howard responded, both statements are obviously misplaced, since: (1) nothing in the Tablet article states that *Howard* subpoenaed MEF; (2) Howard's counsel made *no comment* about MEF specifically; (3) Howard's counsel's statement reflected, accurately, a good-faith, reasonable

7

belief that Howard's subpoenas sought relevant discovery held by third parties, without impugning any third party, let alone MEF; and (4) while MEF had produced some responsive documents, it continued to withhold others, improperly, for reasons Howard had previously explained.  (Dkt. 202-17).

Unsatisfied, MEF asserted on December 14, 2022, that because Howard had not involved the Court in any motion practice, MEF was somehow "saddled with . . . public and other insinuations" of an undescribed—and inexplicable—nature.  (Dkt. 202-18).  In a December 22, 2022, meet and confer, counsel for MEF presented Howard with two choices:  either move to compel (and thereby burden the Court with the third-party discovery motion at time when the parties were still in the midst of multiple discovery disputes), or withdraw the subpoena.  (Udell Decl. ¶ 5).  Howard's counsel expressly assured MEF's counsel that Howard had not yet made any decision on whether to move to compel, and that he ultimately may decide not to do so, but certainly would not do so without contacting MEF first.  (*Id.*).

Again unsatisfied, MEF continued to demand in a January 21, 2023, letter that Howard either make a motion or withdraw the subpoena *and* pay MEF $40,000 for its purported attorneys' fees.  (Dkt. 202-20).  But nothing in the Federal Rules requires Howard to march to the beat of MEF's drum in this fashion.  Nor did MEF articulate any *prejudice* it would suffer from simply continuing to withhold the 59 documents listed as "trade secrets" on its privilege log.  In short, MEF gave no reason why motion practice was required, as Howard responded on January 24, 2023.  (Udell Decl. Ex. 4).

Nonetheless, on February 6, 2023, MEF requested this Court to hold a telephonic conference and on February 7, 2023, the Court declined that request.  (Dkt. 202-22).  On August 29, 2023, MEF—purportedly prompted by Plaintiffs' August 25, 2023, filing (Dkt. 197)—"simply

could not continue to wait to obtain relief" (Dkt. 202 ¶ 30), and filed this motion, styled as a "Motion to Quash, for Protective Order and Sanctions."

MEF's motion should be denied in its entirety.  Moreover, now that MEF has brought the issue before this Court, the Court should compel MEF to disclose the remaining documents it continues to withhold on the grounds of purported "trade secrets."

## **ARGUMENT**

## I.    **THE COURT SHOULD DENY MEF's MOTION TO QUASH AS UNTIMELY**

"Limiting discovery and quashing subpoenas pursuant to Rule 26 and/or Rule 45 'goes against courts' general preference for a broad scope of discovery.'"  *U.S. Dep't of the Treasury v. Pension Benefit Guaranty Corp.*, 301 F.R.D. 20, 25 (D.D.C. 2014) (quoting *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005)).  "The quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances." *Nguyen v. Fraunhofer-Gesellschaft zur Forderung Der Angewandten Forschung, E.V.*, 2021 WL 5800741, at *3 (D.D.C. Dec. 7, 2021) (internal quotation marks and citations omitted), *app. dism'd*, 59 F.4th 1319 (D.C. Cir. 2023).

A movant seeking to quash a subpoena "'bears a heavy burden of proof.'"  *Darling v. Girard*, 2015 WL 13898434, at *3 (D.D.C. July 20, 2015) (quoting *Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995)).   "'A court should be loath to quash a subpoena if other protection of less absolute character is possible.  Consequently, the movant's burden is greater for a motion to quash than if she were seeking more limited protection.'"  *Pension Benefit Guaranty Corp.*, 301 F.R.D. at 25 (quoting *Flanagan v. Wyndham Int'l, Inc.*, 231 F.R.D. 98, 102 (D.D.C.2005)); *see also In re Shelton Fed. Grp., LLC*, 2018 WL 4482560 (Bankr. D.D.C. Aug. 21, 2018) (denying motion to quash subpoena for documents that movant claimed were "trade secrets" because parties had entered into protective order); *Girard*, 2015 WL 13898434, at *3 (denying motion to quash

subpoena seeking testimony and documents and imposing protective order over certain documents).

MEF cannot come close to meeting its heavy burden here.  First and foremost, a motion must be timely—and the motion here is not.  A motion made *after* the compliance date is untimely.  *Nguyen*, 2021 WL 5800741, at *2.  Here, the Subpoena was served on March 14, 2022.  (Udell Decl. Ex. 3).  MEF objected and responded on March 14, 2022, including by producing all purportedly non-privileged documents.  (Dkt. No. 202-2).  Howard promptly notified MEF in writing that its production was deficient for failure to produce documents claimed by MEF as privileged "trade secrets," when MEF could have enjoyed the protection of this case's Protective Order.  (Dkt. No. 202-8, at 3).   In the event that MEF sought a motion to quash, the time within which to make that motion expired in March 2022, over eighteen months ago.  *See* Fed. R. Civ. P. 45(d)(2)(B) ("The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.").

MEF's application to quash is thus made well beyond its expiration date, and the Court should deny the motion for this reason alone.

## II.    MEF WAIVED OBJECTIONS AS TO BURDEN OR RELEVANCE

The motion should also be denied because, to the extent that MEF claims the Subpoena seeks irrelevant documents or imposes an undue burden (*see, e.g.*, Dkt. 202 at 2 (complaining of "overbroad requests" and "'undue burden'")), MEF waived any such objections in three separate ways.

*First*, MEF failed to assert any relevance or burden objections to all but one request, thereby waiving those objections as to all requests (save one).  *See Peskoff v. Faber*, 244 F.R.D. 54, 64 (D.D.C. 2007) ("the failure to state any objections to the production of documents in a timely manner constitutes a waiver of objections").

*Second*, MEF similarly waived any such objections by producing documents in response to the subpoena without objection. *See Althridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 191 (D.D.C. 1998) ("Because Aetna agreed to produce the documents and did not lodge specific relevance objections to these nine requests, I conclude it has waived its right to objection").

*Third*, by listing documents on its privilege log, MEF conceded the responsiveness and relevance of the withheld documents. *See, e.g., Williams v. Corelogic Rental Prop. Sols., LLC*, 2016 WL 6277675, at *3 (D. Md. Oct. 26, 2016) ("[W]hen a party produces a privilege log, information on that log is presumed to be 'otherwise discoverable,' i.e., relevant.") (citing Fed. R. Civ. P. 26(b)(5)); *Nozinich v. Johnson & Johnson, Inc.*, 2011 WL 13124088, at *2 (W.D. Tenn. Feb. 22, 2011) ("By including the document on the privilege log, the [withholding party] by implication concede[s] the relevance.").

Regardless, any objection to burden or relevance of the withheld documents is meritless. MEF already has identified and segregated the roughly 180 documents it claims to withhold on privilege grounds.  It only asserts "trade secret" protection alone (not coupled with reporter's privilege or attorney-client privilege)—ostensibly because the documents would reveal donor information—as to 59 such documents, which are easily producible without any burden.

And to the extent those documents reveal funding by Broidy, particularly as to anti-Qatar initiatives, they fall well within the scope of discovery relevant to Broidy's claims and Howard's defenses.  (Dkt. 202-13 at 1-2; Dkt. 202-14 at 1)  Throughout the extensive correspondence and conferrals regarding the Subpoena, MEF has never substantively challenged the relevance of the documents.[8]

---

[8] Contrary to MEF's implausible assertion, Howard's counsel has never remotely "indicat[ed that Mr. Howard was *only* seeking documents regarding whether or not … Broidy … was a donor to MEF."  (Dkt. No. 202 ¶ 22) (emphasis added).  As explained in Howard's January 24, 2023 letter to MEF (conspicuously *omitted* from MEF's otherwise

III.    **THE COURT SHOULD DENY MEF'S MOTION TO QUASH, FOR A PROTECTIVE ORDER, AND ATTORNEY'S FEES, BECAUSE MEF DID NOT SATISFY ITS SUBPOENA OBLIGATIONS AND ITS ARGUMENTS FOR PREJUDICE ARE FRIVOLOUS**

Even if the Court were to reach the merits of MEF's motion, it would fail.  MEF seeks a protective order stating that it has complied with all discovery obligations.  Yet MEF continues to withhold approximately 59 documents solely on purported "trade secret" grounds without adequately addressing why such documents are shielded from production.  MEF's motion fails for at least two fundamental reasons.

*First*, MEF nowhere denies that some, or even all, of the requested documents concern the very activities by Broidy—use of funding from foreign powers to fund anti-Qatar activities—that are the subject of Broidy's damages claims and Howard's defenses.  Such silence is deafening.

*Second*, MEF also does not explain (and has *never* addressed in correspondence) why Howard's proposed compromise solution—either redaction of all non-Broidy donor names or production of such documents under the CONFIDENTIAL or HIGHLY CONFIDENTIAL designations set forth in this Court's Protective Order—would not suffice to allay any of MEF's concerns.  As a threshold matter, it is doubtful that donor lists constitute "trade secrets."  *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 82 F. Supp. 3d 344, 361 (D.D.C. 2015) ("Plaintiffs have not identified anything about the process of developing the lists or shown how their particular value derives from their secrecy").  Regardless, it is well established that a party, such as MEF here, may not withhold documents, the relevance of which is undisputed, where any purported trade secrets will be protected through application of a robust Protective Order

---

fulsome reporting of the parties' correspondence): "That has never been the sole objective of the subpoena, nor [has counsel] ever stated or implied otherwise." (Udell Decl. Ex. 4 at 1-2).  Rather, MEF appears to be cynically distorting Howard's "good-faith and common-sense compromise proposal . . . made after [MEF] complied with the bulk of the subpoena requests: that is, [that] MEF may simply redact [] information that is unrelated to Mr. Broidy (and in which Mr. Howard has no interest) or designate it as Confidential or Highly Confidential under the robust Protective Order issued in this case." (*Id.* at 2).  Such documents are certainly relevant and discoverable.

(specifically, through use of redactions and confidentiality designations). *See, e.g., R.J. Reynolds Tobacco v. Philip Morris, Inc.*, 29 F. App'x 880, 882 (3d Cir. 2002) (affirming order compelling compliance with subpoena, despite claimed trade secrets, because production "would be made under the limitations of the protective order entered in" the underlying litigation); *Fed. Trade Comm'n v. Thomas Jefferson Univ.*, 2020 WL 3034809, at *3 (E.D. Pa. June 5, 2020) (finding that protective order "allow[ing] nonparties like Shannondell to safeguard their confidential information to prevent unauthorized disclosure" negated potential for injury); *Klayman v. Jud. Watch, Inc.*, 2008 WL 11394177, at *3 (D.D.C. Jan. 8, 2008), *aff'd*, 2008 WL 11394172 (D.D.C. Apr. 2, 2008) ("Even if the Subpoenas seek proprietary, trade secret, or confidential information, however, this Court need not grant the Motion to Quash because a [protective order] already exists in this case for protecting sensitive material.").

The absence of injury is especially pronounced here because none of the parties in this case is a competitor of MEF. *See Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 107 F.R.D. 288, 293 (D. Del. 1985) ("disclosure to a party who is not in competition with the holder of the trade secret will be less harmful than disclosure to a competitor"). *See also In re Shelton Fed. Grp., LLC*, 2018 WL 4482560, at *4 (Bankr. D.D.C. Aug. 21, 2018) (noting that quashing subpoena is extraordinary relief and a court should be loath to quash if other protection of a less absolute character, *e.g.,* redaction or production to counsel under an existing confidentiality agreement).

Howard has explained these common-sense propositions, including its legal citations, to MEF several times. Tellingly, at *no* time ever—including in its instant Motion to Quash—has MEF so much as attempted to address this dispositive defect in its argument. Accordingly, each of these above failures forecloses the relief sought.

13

Moreover, MEF's asserted pretexts for its motion make little sense.   MEF claims that it is somehow prejudiced by Howard's failure to relent to MEF's demand that Howard (falsely) declare MEF's compliance complete.   MEF cites *no* case law (and Howard is aware of none) in support of this proposition.   And just as importantly, the facts contradict MEF's wild claim.   There was precisely *no* public disclosure of the status of MEF's subpoena compliance *prior to MEF's filing of the instant motion*.   But for MEF's own motion, the public would have no reason to know *who* subpoenaed MEF, *what* the subpoena sought, and whether or not MEF had complied.   MEF's claim that it "has been cast in a false light and is suffering damages" from the Subpoena (Dkt. 202 at 2) is nothing short of baffling.

The "sole" prejudice claimed by MEF is purportedly from a November 2022 *Tablet* article in which Howard's counsel made no reference to MEF and did no more than stand by the propriety of the subpoenas he issued—*without* ever identifying MEF as a subpoena recipient, let alone identifying what materials were sought from MEF, or whether MEF had complied.  (Dkt. 202 at 15-16).  Again, but for the instant motion, *none* of the *Tablet* readers would even know that Howard had issued a subpoena to MEF, as the *Tablet* article alleged that all three Defendants were issuing subpoenas and that at least ten third parties had received them—without identifying who had subpoenaed whom.  (*Id.*).   And *nothing* in Howard's counsel's statement, or the issuance of a subpoena, references MEF or impugns MEF's conduct in any way.

In perhaps the height of hypocrisy and bad faith, MEF implausibly claims that Howard's counsel's quotation in *Tablet* was "likely to leave readers—including MEF sources, supporters and potential supporters—with the incorrect and dangerous belief that MEF somehow engaged in some potentially criminal wrongdoing" (Dkt. 202 at 2), and more specifically the belief "that MEF somehow was involved in the hacking or stealing of Plaintiffs' emails in coordination with the

Qatari government." (*Id.* at 16).  That this fantastical claim is not remotely supported by the text of the article is plain enough.  But the bad faith and cynicism of the claim is further revealed by the fact that MEF is actually *trumpeting* the *Tablet* article—approvingly—on its website and has in multiple articles recently *directed its readers* to read the *Tablet* article.  *See* "Middle East Forum Exposes Qatari Efforts to Manipulate US Justice System," Middle East Forum, Aug. 25, 2013, https://www.meforum.org/64739/middle-east-forum-exposes-qatari-efforts-to  ("MEF,  [its Executive Director, Gregg] Roman, and others were named in the court summons, which was part of a larger Qatari plot that Tablet Magazine described as transforming U.S. courts into 'a proxy battlefield for geopolitical opponents half a world away'") (linking directly to *Tablet* article); Sam Westrop, "New Documents Indicate Qatari Conspiracy to Hide Materials from U.S. Courts," Middle East Forum, Aug. 25, 2023, https://www.meforum.org/64737/new-documents-indicate-qatari-conspiracy-to-hide (also linking directly to *Tablet* article in sixth paragraph at word "support").  The menus at the tops of these articles include a link to an online form to donate to MEF.  (*See id.*).  In other words: while MEF now argues to this Court that *Tablet*'s reporting on Howard's Subpoena has caused it harm, MEF instead appears to be fundraising off of the Subpoena and takes pride in its mention (though not by Howard) in the *Tablet* article.

Finally, MEF claims that Broidy's recent filing against Qatar (Dkt. 197) somehow necessitated this motion, arguing that MEF "simply could not continue to wait to obtain relief" in light of Broidy's supposed compelling evidence that Qatar had improperly been using "*a* Defendant in this litigation to further its goals." (Dkt. 202 at 11, ¶ 30 (emphasis added)).  MEF directly undercuts that pretext two paragraphs later by conceding that there is "no direct evidence"—or, for that matter, indirect—"that Mr. Howard and his counsel are behaving in the same manner as Defendant Joseph Allaham had been." (*Id.* ¶ 32).  Nor did MEF meet and confer

with Howard before raising this issue.  Regardless, Howard's recent submission amply demonstrates that no such accusation of discovery abuse has been or could be made against Howard.  (Dkt. 211).

Since MEF has not shown entitlement to the underlying relief sought, its attorney's fee request similarly fails.  Regardless, even if MEF were to secure some kind of relief—and it decidedly should *not*, for the reasons set forth above—Howard respectfully submits that its position is substantially justified so as to warrant a denial of fees, and it would be manifestly unjust to require Howard to pay MEF's fees.  *See* Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).[9]

\* \* \*

The same considerations that warrant denial of MEF's motion, as set forth above, also warrant grant of Howard's cross-motion, filed contemporaneously herewith, to compel production of the 59 documents that MEF is withholding solely on "trade secrets" grounds.

---

[9] Howard also respectfully suggests that if the motion to quash and for a protective order is denied, then the Court in its discretion may award fees to Howard, because MEF's motion was not substantially justified.  *See* Fed. R. Civ. P. 26(c)(3) (stating that Rule 37(a)(5) is applicable to motions for protective order).

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court should deny MEF's motion in its entirety, grant

Howard's cross-motion to compel, and further grant such other relief as appropriate.

Dated: September 12, 2023

Respectfully submitted,

<u>/s/ Charles S. Fax</u>
Charles S. Fax
D.C. Bar No. 198002
RIFKIN WEINER LIVINGSTON, LLC
4800 Hampden Lane, Suite 820
Bethesda, Maryland 20814
Tel.: (301) 951-0150
cfax@rwllaw.com

Jeffrey A. Udell (admitted pro hac vice)
Jacob Gardner (admitted pro hac vice)
WALDEN MACHT & HARAN LLP
250 Vesey Street, 27th Floor
New York, NY 10281

*Attorneys for Defendant Gregory Howard*