UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT, LLC and ELLIOTT BROIDY<br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>NICOLAS D. MUZIN, JOSEPH ALLAHAM, GREGORY HOWARD, and STONINGTON STRATEGIES LLC<br>　　　　　　Defendants. | Civil Action No.  1:19-cv-00150-DLF |

**STONINGTON DEFENDANTS' SUR-REPLY IN FURTHER OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL FORENSIC EXAMINATIONS**

Broidy's reply,[1] ECF No. 215, largely ignores the opposition filed by Stonington and demonstrates that his request for forensic examination, and the manufactured discovery disputes on which it rests, have nothing to do with Stonington's supposed withholding of relevant discovery. This is no longer about the Allaham declaration, which was Broidy's impetus for seeking relief and which he has now abandoned. Nor is it even about the Dilley letter—which was Broidy's one supposed example of a document improperly withheld by Stonington. Indeed, the Dilley letter makes no appearance in Broidy's reply. Instead, Broidy has changed tack a third time and now apparently takes issue with the scope of Stonington's lawful FARA work, which—in all the documents Broidy has now received, both legitimately and illegitimately—still has no discernible connection to an alleged hack. *See* Reply at 7–8.

The bottom line, as Stonington has said from the beginning, and as discovery has now confirmed, is that Stonington had nothing to do with the alleged hack-and-disseminate scheme underlying the Complaint. Presumably, if Allaham had provided such documents to Broidy, Broidy would have attached them to his reply. Thus, faced with the reality that his claims against Stonington are meritless, Broidy is now transparently grasping for a new frontier in his endless litigation: the lawyers. But his request for forensic examination goes too far. Filing a public brief—with no notice, no meet and confer, and no effort to confirm the underlying accusations—falsely accusing not only Defendants but their lawyers of discovery misconduct is unethical. Rather than admit that he seized on an unreliable declaration secured by his own dealings with a represented party, Broidy has simply rewritten his allegations a third time in his latest submission in the hopes that they will go unanswered.

---

[1]      Defined terms retain their meanings from Stonington's Memorandum in Opposition to Plaintiffs' Motion to Compel Forensic Examination, ECF No. 210.

Setting aside his inflammatory rhetoric (*e.g.*, the "Concealing Parties"), the situation remains that Stonington and Broidy were (and remain) in the middle of discovery when he filed the false Allaham declaration, and Broidy has yet to identify a single relevant document that Stonington has improperly withheld.[2]  Of the four documents at the center of Broidy's new accusations against Stonington, three pre-date the December 2017 formation of the alleged hacking conspiracy and have nothing to do with Broidy or an alleged hack.  *See* Reply at 7–8 (discussing a July 17, 2017 email and an August 14–15, 2017 email exchange relating to Stonington's work for Qatar); Ex. 23, ECF No. 215-24 (a July 27, 2017 email and memorandum relating to Stonington's work for Qatar).  The fourth relates only to, and is consistent with, Stonington's public FARA filings.  *See* Reply at 8 (discussing a February 9, 2018 FARA advisory opinion).  As Stonington has explained to Broidy numerous times, Stonington did months of FARA-registered work for Qatar that has nothing to do with Broidy or this case.  Broidy's new supposed smoking guns are thus anything but.

Indeed, Stonington had made clear since May 2022 that it would not produce documents from pre-December 1, 2017, and only agreed to do so in late July 2023 as a compromise following Broidy's request.  Thus, contrary to Broidy's suggestion, Stonington has not been sitting on these (still-irrelevant) documents.  And their substance confirms the appropriateness of Stonington's objections.  *See id.* at 19 (conceding the above documents are subject to Stonington's relevancy and related objections and August correspondence—neither of which Broidy has answered).  The suggestion that Broidy can continue to ignore Stonington's objections, which are rooted in bedrock principles of civil discovery, to pursue a motion to compel anything and everything he desires

---

[2]   Broidy, meanwhile, has yet to produce anything of substance related to his own allegations.

2

from a cooperating party ignores black letter law and standard civil litigation practice. *See* Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is ***relevant*** . . . ." (emphasis added)); *Covad Commc'ns Co. v. Revonet, Inc.*, 258 F.R.D. 5, 11 (D.D.C. 2009) ("Rule 34 permits a party to copy . . . any non-privileged matter that is ***relevant***." (emphasis added and internal quotations omitted)).

At bottom, Stonington has met and will continue to meet its discovery obligations in good faith. And Broidy's buckshot approach of roping Stonington (and Howard) into this dispute was unprincipled and wrong. Broidy's further accusation that Wiley "helped facilitate" alleged efforts by Stonington to "evade FARA"—in an obvious last-ditch effort to pin anything on Stonington and its lawyers, regardless of its relation to Broidy or this case—is as gratuitous as it is false, unsupported, and irresponsible. *See* Reply at 7.

There are no grounds for a motion to compel anything further from Stonington. And there are no grounds whatsoever to seize or inspect Stonington's electronic devices, much less its attorneys'. Broidy's wholly unsubstantiated request to forensically examine Stonington and its attorneys should be denied.[3]

---

[3] Broidy suggests that the gaps in his meritless and unworkable investigation protocol could be alleviated by the appointment of a special master. *See* Reply at 23 (suggesting that, if Broidy has failed to account for privilege or confidentiality issues—and he has—"the Court also may appoint a special master"). Stonington disagrees that a special master is necessary or appropriate to overcome the obvious lack of merit in Broidy's request for forensic examination, and Broidy's motion should be denied. However, Stonington would not object to the appointment of a special master to oversee the other ongoing discovery issues between the parties moving forward— including the multiple, significant disputes involving Broidy's discovery deficiencies, *see* Udell Email to Friedrich Chambers, July 11, 2023—on a prompt but reasonable and reciprocal timeline in the hopes of avoiding further frivolous and irresponsible motion practice and alleviating the Court's discovery burden in this case.

Dated: September 22, 2023

/s/ Stephen J. Obermeier
Stephen J. Obermeier (D.C. Bar # 979667)
sobermeier@wiley.law
Rebecca Fiebig (D.C. Bar # 976854)
rfiebig@wiley.law
Enbar Toledano (D.C. Bar # 1030939)
etoledano@wiley.law
Krystal B. Swendsboe (D.C. Bar # 1552259)
kswendsboe@wiley.law
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Phone: (202) 719-7000
Facsimile: (202) 719-7049

*Attorneys for Defendants Stonington Strategies LLC and Nicolas D. Muzin*