UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC, and ELLIOTT BROIDY,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>NICOLAS D. MUZIN, JOSEPH ALLAHAM, GREGORY HOWARD, and STONINGTON STRATEGIES LLC,<br><br>　　　　　　　　　　　Defendants. | Civil Action No.:  19-00150 (DLF) |

**DEFENDANT GREGORY HOWARD'S SUR-REPLY IN RESPONSE TO PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL FORENSIC EXAMINATIONS**

Defendant Gregory Howard respectfully submits this memorandum of law in sur-reply to Plaintiffs' Reply Memorandum of Law in Further Support of Plaintiffs' Motion to Compel Forensic Examinations ("Reply") filed by plaintiffs Broidy Capital Management, LLC and Elliott Broidy (together, "Broidy" or "Plaintiffs").  (Dkt. No. 215).  Broidy's Reply asserts three new arguments against Howard and his counsel that are entirely untethered to logic or fact.

**I.　　Plaintiffs' Newly Asserted Arguments Against Howard and His Counsel**

Plaintiffs' opening memorandum of law in support of their Motion to Compel Forensic Examinations buried the *sole* allegation of Howard's purported impropriety in a footnote which read, in its entirety, as follows:

> Moreover, Defendant Howard never preserved, let alone produced, any documents from his three work email accounts—even though he had access to all three accounts as of July 20, 2018, when he was first subpoenaed, and had access to two of those accounts as of Feb 11, 2019, when his counsel supposedly did the full forensic collection.  Plaintiffs subpoenaed all three of his former employers, two of whom produced no emails and the other produced only a modest amount.

(Dkt. No. 206-1 at 11 n.4).  Howard responded to this allegation, noting that Broidy's claim, "made in a factual vacuum, is in any event non-probative, as Plaintiffs make no claim that Howard had the authority to produce these emails."  (Dkt. No. 211 at 9 n.8) (collecting cases).

In his Reply, Broidy added several new allegations directed at Howard and his counsel:

> Contrary to Mr. Howard's suggestion, he and his counsel have "spoliated evidence, suppressed discovery, and engaged in [] wrongdoing." Walden Mem. at 1.  In particular, Mr. Howard and his counsel failed to preserve *any* ESI from the three professional email accounts Mr. Howard used to transact business for Qatar during, and related to, the hack-and-smear attack on plaintiffs.  Mr. Howard's failure to ensure the preservation of all ESI from all three accounts is inexcusable given that he had access to, and was still using, all three accounts at the time plaintiffs served him with a subpoena in July 2018.

Reply at 18 n.48 (Dkt. No. 215); *Id.* at 20.

Thus, Broidy has for the first time in his Reply now alleged: (1) that Howard "spoliated evidence, [and] suppressed discovery"; (2) that *counsel* for Howard likewise purportedly "spoliated evidence, [and] suppressed discovery"; (3) that Howard was using three professional email accounts to "transact business for Qatar during, and related to," what Plaintiffs call a "hack-and-smear attack"; and (4) that Howard was supposedly "still using" all three email accounts at the time Plaintiffs subpoenaed him in July 2018.  (*Id.*).  Tellingly, Broidy articulates *no basis* for these new allegations and, to be sure, there is none.

## II.  Plaintiffs' New Allegations As To Howard and Counsel Are Meritless

Plaintiffs have not a scintilla of proof, nor substantiation, for the grave and untimely allegations they now level against Howard and his counsel.  Indeed, Plaintiffs have not provided the Court with even the most basic facts underpinning their allegations—such as the names of the employers that hosted the email accounts in question—because a simple chronology of Howard's employment history belies Plaintiffs' meritless allegations.

In chronological order, the first professional email account to which the Reply alludes is Howard's Conover + Gould Strategic Communications, Inc. ("Conover & Gould") account. Howard was employed by Conover & Gould until in or about May 2018. (Decl. of Gregory Howard, Sept. 22, 2023 ("Howard Decl.") ¶ 2). Thus, by July 2018—when Howard was first served by Broidy with a subpoena in Broidy's original (now-dismissed) California action—Howard did *not* have access to his Conover & Gould email. (*Id.*) He thus had no obligation nor ability to preserve anything from that account. Plaintiffs' conclusory claim that Howard was "still using" that email account as of July 2018—let alone using it to do work for Qatar (Reply at 18 n.48 (Dkt. No. 215); *Id*. at 20)—is not only entirely unsupported, but it is thus flatly contradicted by the record before the Court.

Moreover, Plaintiffs have subpoenaed Conover & Gould and it has produced over 150 documents, *including* Howard's emails. (Decl. of Jeffrey A. Udell, Sept. 22, 2023 ("Udell Decl.") ¶ 2).[1] Those emails show—as Howard freely admits—his communications with media outlets regarding the shocking and unlawful conduct set forth in Broidy's emails. They do *not* show participation in any hacking conspiracy (because there was no such participation).[2] Plaintiffs have given the Court no reason to believe this production is in any way incomplete, or taken up any issue with the owner of the emails, Conover & Gould, regarding its production.

---

[1] Although Plaintiffs' subpoena was directed to Conover & Gould's principal, Heather Conover, the subpoena's definitions and instructions also called for production of responsive documents in Conover & Gould's possession.

[2] As this Court has recognized, if Howard was not a member of any hacking conspiracy, then his publication of Broidy's emails—even if they were stolen by others and even if Howard knew or suspected they were stolen—is protected by the First Amendment. *See Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001) ("[A] stranger's illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern") (citation omitted); *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 435 (S.D.N.Y. 2019) ("A person is entitled to publish stolen documents that the publisher requested from a source so long as the publisher did not participate in the theft") (citation omitted).

Second, Howard worked for Mercury Public Affairs ("Mercury") from in or about May 2018 until in or about April 2019 (all of which post-dates the alleged hack). (Howard Decl. ¶ 3). At that time, Mercury revoked Howard's access to his Mercury emails, and he has not had access to his Mercury account since then. (*Id.*). Although Howard of course had "access" to his Mercury emails from May 2018 through April 2019, Plaintiffs present *nothing* to support their reckless claim of spoliation by Howard, let alone their claim that *counsel* acted improperly. And in any event, upon leaving Mercury, Howard had no right to take any documents from his former employer, including emails that are the employer's property. *See*, *e.g.*, *Gamache v. Hogue*, 2022 WL 1625028 at *4 (M.D. Ga. Mar. 21, 2022) (noting corporate policy that emails sent on company's communications system are property of the company, not the employee).

Moreover, Plaintiffs issued a subpoena to Mercury, the proper target of any requests for documents, on January 28, 2022. (Udell Decl. ¶ 4). Again, Plaintiffs have not questioned the sufficiency of Mercury's search, or provided any reason to believe that Howard used Mercury's account to communicate about Broidy—much less offered any factual basis to believe that this account, which was not activated until May 2018, would have evidence relevant to an alleged hacking conspiracy that occurred between December 2017 and February 2018, when Howard was employed elsewhere.

Third, Howard became affiliated with Turner4D ("Turner") in or about June 2019—that is, about five months *after* Plaintiffs first filed the above-captioned case and four months after Howard's counsel had already collected his electronically stored information ("ESI") in connection with this case. (Howard Decl. ¶ 4; Dkt. 206-17 at 2 (noting that Howard's counsel had "collected data through the evening of February 11, 2019, and [had] produced all responsive, non-privileged, documents through that date")). The Turner account thus could not possibly have *any*

4

information related to the long-completed alleged hacking and, moreover, Howard seldom used the account and has no belief that it contains anything remotely relevant to this case. (Howard Decl. ¶ 4).

Again, Plaintiffs present *no* evidence or basis of any sort to support their reckless claim of spoliation by Howard or his counsel. Nor do Plaintiffs genuinely believe responsive material exists in Howard's Turner account, or they would have bothered to issue a subpoena to Turner. Instead, Plaintiffs issued a subpoena to Suzanne Turner—Howard's friend of many years—in her personal capacity on March 3, 2022. (Udell Decl. ¶ 5).

As these facts make clear, there is no basis for Plaintiffs' allegations of spoliation against Howard—let alone Howard's counsel. Howard had access to only one of the three professional accounts (Mercury) when Plaintiffs first issued a subpoena to him in July 2018, and Plaintiffs have provided *no evidence of any kind* to support any charges of spoliation, let alone that Howard used that account "to transact business for Qatar during, and related to, the hack-and-smear attack on plaintiffs." (Reply at 18 n.48 (Dkt. No. 215); *Id*. at 20). And those unfounded allegations are not backed by any evidence from a third-party source that in any way contradicts or challenges the veracity and completeness of Howard's own discovery responses and document production, as required in a motion to compel forensic examination. *See Covad Communications Co. v. Revonet, Inc*., 258 F.R.D. 5, 13 (D.D.C. 2009) (to compel forensic examination, movant must show that responding party's e-mail production "suggests that she is intentionally hiding things"); *Bethea v. Comcast*, 218 F.R.D. 328, 329-30 (D.D.C. 2003) (forensic examination "is not permitted unless the moving party can 'demonstrate that the documents they seek to compel do, in fact, exist and are being unlawfully withheld'") (quoting *Alexander v. FBI*, 194 F.R.D. 305, 311 (D.D.C.2000)); *see also Peskoff v. Faber*, 244 F.R.D. 54, 61-62 (D.D.C. 2007) (compelling forensic examination

because independent evidence showed that defendant's production was materially incomplete and that defendant had deleted relevant emails maintained on own server).

## CONCLUSION

For the foregoing reasons, the Court should disregard Plaintiffs' new and untimely raised arguments made in Plaintiffs' Reply and the Court should reject Plaintiffs' motion in its entirety as to Howard.

Dated:  September 22, 2023

>Respectfully submitted,
>
>/s/   Jeffrey A. Udell_____
>
>Jeffrey A. Udell (*admitted pro hac vice*)
>Jacob Gardner (*admitted pro hac vice*)
>WALDEN MACHT & HARAN LLP
>250 Vesey Street, 27th Floor
>New York, NY 10281
>Tel.: (212) 335-2030
>judell@wmhlaw.com
>jgardner@wmhlaw.com
>
>Charles S. Fax
>D.C. Bar No. 198002
>RIFKIN WEINER LIVINGSTON, LLC
>4800 Hampden Lane, Suite 820
>Bethesda, Maryland 20814
>Tel.: (301) 951-0150
>cfax@rwllaw.com
>
>*Attorneys for Defendant Gregory Howard*