UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT, LLC and ELLIOTT BROIDY<br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>NICOLAS D. MUZIN, JOSEPH ALLAHAM, GREGORY HOWARD, and STONINGTON STRATEGIES LLC<br>　　　　　　　Defendants. | Civil Action No. 1:19-cv-00150-DLF |

**SUR-REPLY IN SUPPORT OF ARENTFOX SCHIFF LLP'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL FORENSIC EXAMINATIONS**

ArentFox Schiff, LLP ("Arent Fox") respectfully submits this sur-reply in opposition to the motion by Plaintiffs Broidy Capital Management, LLC and Elliott Broidy (collectively, the "Plaintiffs") to compel a forensic examination of Arent Fox's computer systems.

**ARGUMENT**

**A.**   **Arent Fox Has Not Violated Any of the Court's Orders**

In their Reply,[1] the Plaintiffs contend that, in their view, Arent Fox breached a Court order by allegedly allowing Qatar to receive and review ongoing discovery. *See* Reply at 3. More specifically, the Plaintiffs assert that Arent Fox violated a minute order issued by the Court on December 8, 2021 (the "December 8, 2021 Order") by allowing Qatar's legal representatives at Covington to review Mr. Allaham's responses to the Plaintiffs' interrogatories and requests for admission ("RFAs"), and to review documents in December 2022, for information that Qatar was claiming as privileged from discovery under the doctrines of sovereign immunity or the

---

[1] "Reply" refers to Plaintiffs' Reply Memorandum of Law In Further Support of Plaintiffs' Motion to Compel Forensic Examinations (ECF No. 215).

1

Vienna Convention. This characterization, however, is inaccurate and fundamentally misconstrues the Court's directive.

The Court never issued an order imposing a restriction on Mr. Allaham or his prior counsel from speaking with Qatar about Qatar's sovereign privileges. More specifically, the Court never issued an order preventing Mr. Allaham or Arent Fox from sharing its discovery responses with Qatar or from seeking guidance from Qatar regarding the scope and extent of the sovereign privileges it was asserting in this case. Accordingly, none of the conduct outlined by Plaintiffs in its reply ran afoul of any Court order.

The order in question related to Defendants' Emergency Motion For a Protective Order dated November 29, 2021 (ECF No. 90) seeking a protective order that included an "[i]mmunity [p]rotocol," which would obligate third parties to allow Qatar the absolute right to review and assert privilege over any potentially responsive documents from third-party subpoena respondents that it contended were protected by the Vienna Convention and the doctrine of sovereign immunity. *See, e.g.,* Mem. of Law In Supp. of Def. Emergency Mot. For a Protective Order (ECF 90-1) at 8, and Proposed Protective Order (ECF 90-2) at 15-17. After considering the motion, the court rejected the proposed "immunity protocol" as to third parties and ordered as follows:

> MINUTE ORDER. Upon consideration of the State of Qatar's 66 Notice of Interest and the plaintiffs' 69 Response, the Court declines to strike Qatar's 67 Notice of Appearance. **Qatar may not receive or review ongoing discovery in this case, as proposed in the defendants' 90 Emergency Motion, without moving to intervene pursuant to Federal Rule of Civil Procedure 24(b)**. See Minute Order of December 6, 2021; see also In re Sealed Case (Med. Recs.), 381 F.3d 1205, 1211 n.4 (D.C. Cir. 2004) (noting that several "courts of appeals have construed a district court's decision to permit a non-party to participate in a discovery dispute as the equivalent of authorizing intervention" (citation omitted)).

December 8, 2021 Order (emphasis supplied).

The order found that third parties were not required to allow Qatar to receive, review, and assert privilege over third parties' documents prior to production. The Court did not order that the parties were prohibited from communicating with Qatar's counsel regarding Qatar's assertion of privilege, from voluntarily providing information to Qatar that might be covered by the privilege, or sharing draft responses to the Plaintiffs' interrogatories and requests for admission with Qatar's counsel that might disclose information Qatar was claiming as privileged.

In the absence of a court order that explicitly directed otherwise, Mr. Allaham, a private party, and Arent Fox, his then counsel, were free to communicate with anyone they chose to about any aspect of this case — including with Qatar's counsel about the scope of Qatar's privilege assertions. There is nothing untoward about Arent Fox sharing its proposed discovery responses with Qatar's counsel. In short, far from violating a Court order, Arent Fox — on behalf of Mr. Allaham — shared its draft written discovery responses with Qatar to accord due respect to Qatar's claims of privilege and immunity. To have provided responses to Plaintiffs' interrogatories and RFAs without first consulting Qatar as to whether the responses contained any information it was claiming as privileged would have been inappropriate under the circumstances. That approach would have risked waiving a privilege that did not belong to either Mr. Allaham or Arent Fox and that was not theirs to waive.

The Plaintiffs also claim that Arent Fox violated the Court's Order when in December 2022, it provided Qatar's counsel with a draft of a document production it was planning on making to the Plaintiffs. Reply at 6-7. This conduct also did not violate any court order. As already noted above, nothing in the Court's orders prohibited Mr. Allaham or his counsel from voluntarily sharing information with Qatar's counsel in order to ensure that Qatar's privileges

and protections were asserted. Moreover, in December 2022, no court order barred the assertion of those privileges and protections by Allaham.

Allaham's discovery responses asserted objections based on Qatar's sovereign immunity and privilege – an issue that was still being heavily litigated when they were asserted and would later be the basis for an appeal to the D.C. Circuit in this case. *See* ECF Nos. 148, 149, 153. As a result of those objections, Plaintiffs moved to compel responses to discovery (ECF No. 109), the Court granted the motion to compel documents implicating Qatar's privileges (ECF No. 148, 149), Qatar appealed (ECF No. 153) and sought a stay in the D.C. Circuit of the district court's orders of June 2, 2022, ECF Nos 148 and 149 "granting a motion to compel discovery of materials implicating Qatar's sovereign immunities and privileges, including the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95, and the Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261," and the D.C. Circuit then stayed that Court's Order on July 1, 2022 (*see Broidy Cap. Mgmt. LLC v. Muzin,* Case No. 22-7082 (D.C. Cir.) at Doc. Nos. 195064, 1953185).

After the D.C. Circuit stay was issued, Arent Fox, on Mr. Allaham's behalf, shared Allaham's proposed production with counsel for Qatar to ensure that, consistent with the D.C. Circuit's stay, the proposed production did not contain materials over which Qatar was claiming privilege. Arent Fox's actions were not a violation of a court order, but instead the process of orderly discovery at work, with due respect paid to court orders and Qatar's claims of sovereign privilege and immunity.

The D.C. Circuit ultimately remanded to this Court for further proceedings (*id.* Mar. 20, 2023, at Doc. Nos. 1989462, 1989461), and then this Court issued the protocol currently in place for the production of documents. ECF No. 177. Once the Court issued the May 3, 2023 Order,

4

Arent Fox on behalf of Mr. Allaham began producing documents that had previously been withheld based on Qatar's claimed privileges and was still in the process of doing so when Mr. Allaham abruptly made his deal with Broidy to settle his case.

There was no violation of a court order here. Arent Fox was simply seeking guidance from Qatar's counsel as to Qatar's claims of privilege. Such conduct was not barred by any court order and does not provide a basis for seeking the broad forensic examination sought by Plaintiffs.

**B.     Arent Fox Was Never Directed By Covington or By Qatar to Alter Its Interrogatory or RFA Responses, and Would Not Have Followed Such a Direction**

The Plaintiffs, based again on cherry-picked communications between Mr. Allaham and his former counsel at Arent Fox that are taken out of context, are attempting to spin a dark tale of deceit and conspiracy. They essentially claim that Qatar's counsel unilaterally vetted and edited Mr. Allaham's responses to the Plaintiffs' RFAs and interrogatories, changing admissions to denials and deleting responsive information and that Arent Fox blindly accepted Qatar's instructions in this regard. Nothing could be further from the truth. Arent Fox has never been directed by Qatar or its counsel to alter its discovery responses or document productions, and would never have blindly followed such directions had they been given.

The Plaintiffs cite specific examples of Arent Fox's confidential work product (*see infra*, § D) *that* the Plaintiffs claim, incorrectly, prove their spurious claims. In each of the cited instances, however, Arent Fox was editing Mr. Allaham's draft responses to (i) avoid an inadvertent waiver of Qatar's claims of sovereign immunity and privilege, or (ii) to ensure the accuracy of the responses of a (now former) client who was suffering from the misguided belief that responses to RFAs and interrogatories were the appropriate place to make inflammatory arguments based on *post hoc* conjecture and that flatly contradicted his prior sworn testimony.

The Court has Mr. Allaham's deposition in its possession as it was filed under seal on September 1, 2023 (ECF No. 205).  Arent Fox invites the Court's attention to pages 47 and 84 of the deposition for the Court to determine the content of Mr. Allaham's testimony as compared to the discovery responses.

For example, the Plaintiffs specifically point to Mr. Allaham's draft response to Plaintiffs' RFA No. 5, which states: "Admit that you had prior knowledge of the hacking of Plaintiffs' computers, email accounts, and computer systems as described in the First Amended Complaint before the first news article based on Hacked materials was published on March 1, 2018."  Reply at 5.  It is true that Mr. Allaham initially wanted to submit a response that admitted that "he heard about the alleged hacking efforts before March 1, 2018."  *Id*.  And it is true that Qatar's counsel reviewed the response, and suggested some edits.  But those suggested edits were consistent with Arent Fox's concerns.

The discovery responses that Mr. Allaham ultimately filed were consistent with his prior sworn testimony, given at his June 19, 2018, deposition in the Central District of California Action.  ECF No. 205 at 47, 84 (*under seal*).  Before submitting the final discovery responses, Mr. Allaham recognized that his prior testimony was accurate, and that it was appropriate for him to respond based on facts and personal knowledge, rather than speculation or conjecture.

Mr. Allaham was insistent that he wanted to send the draft response as initially written to Qatar's counsel.  After receiving Qatar's counsel's feedback, Arent Fox then discussed the draft response with Mr. Allaham.  Based on those discussions, Mr. Allaham added an objection to RFA No. 5 that Mr. Allaham understood "prior knowledge" to mean direct, personal, or first-hand knowledge.  Subject to that objection, Mr. Allaham agreed it was appropriate to change his admission to a denial.  *See* Ex. 4, ECF No. 215-5 at 6.  This was also the reason why Mr.

6

Allaham changed his admission to a denial for RFA Nos. 13 and 14, which are two additional RFAs that the Plaintiffs cite in their Reply relating to Mr. Allaham's "knowledge" about the alleged hacking of Broidy's systems, as well as interrogatory No. 10 concerning the alleged conversation with Mr. Benomar. In any event, it is simply *not* the case that Qatar or its counsel directed either Arent Fox or Mr. Allaham to change their response. Whatever suggestions Qatar's counsel may have made were just that: suggestions. Arent Fox and Mr. Allaham were always free to accept or reject those, based on Mr. Allaham's recollection and their own independent judgment.

The Plaintiffs cite three additional RFAs – Nos. 17, 22, and 26 – as further examples of Qatar's purported control over Arent Fox and Mr. Allaham's discovery responses. In these examples, however, Arent Fox was (as was previously explained) simply allowing Qatar to advance its claims regarding sovereign immunity and privileges. While Mr. Allaham was free to ignore Qatar's arguments, doing so could have exposed him to liability that could otherwise be avoided by allowing the Court to resolve those claims. Again, at no point did Qatar or its counsel direct Arent Fox to change any answers. They made their suggestions, and Arent Fox evaluated them and advised Mr. Allaham accordingly. Any decision to accept Qatar's suggestion was based on Arent Fox's conversations about, and its independent evaluation of, what would be best for Mr. Allaham, its then client.

**C.    Plaintiffs' Allegation That Arent Fox Advised Mr. Allaham Not to Settle With Plaintiffs and Not to Produce Documents Is Demonstrably False**

Plaintiffs argue that in a May 10, 2023, email to Mr. Allaham, Arent Fox advised Mr. Allaham not to settle with the Plaintiffs and not to produce "the documents that had been withheld and concealed at Covington's direction …" Reply at 11. That is false, as is

7

demonstrated by the very email they cite and reproduce as Exhibit 20 to the Benson Declaration in support of their Reply. ECF No. 215-21.

The email itself is part of a conversation between Arent Fox and Mr. Allaham concerning an inquiry by Mr. Allaham as to whether he should simply turn over all of his documents to the Plaintiffs as a means of effectuating a settlement. In the May 10 email, Arent Fox advised Mr. Allaham that simply turning over all documents at this point in the litigation would be inadvisable because it could expose Mr. Allaham to liability on many fronts, including through unilateral waiver of joint defense materials, violation of the Court's protective order, and potential breach of Mr. Allaham's settlement agreement with Qatar. Arent Fox further noted to Mr. Allaham that the Plaintiffs would get the documents soon anyway because Arent Fox was in the process of producing responsive documents to the Plaintiffs that had previously been withheld based on Qatar's sovereign immunity and the Vienna Convention. Based on all of this, Arent Fox's advice was:

> [L]et the discovery play out over the next month or two and then get Mr. Broidy to drop you from the law suit (sic). In my opinion, a conversation with Mr. Broidy about dropping you from the law suit is certainly permitted (it would be best if was communicated through a lawyer).

Benson Decl., Ex. 20, ECF No. 215-21.

Far from advising Mr. Allaham *not* to settle with the Plaintiffs, Arent Fox was attempting to advise Mr. Allaham on how *best* to approach settlement, which would be (i) to wait until after discovery was completed, at which point the Plaintiffs would learn that there is no factual basis to continue with this action against Mr. Allaham, (ii) to remain compliant with his obligations under his settlement agreement with Qatar, the joint defense agreement, and the Court's Protective Order; and (iii) to do so under the auspices and with the guidance of an attorney.

As is now apparent, Mr. Allaham ultimately rejected Arent Fox's advice.

**D.      Plaintiffs' Disclosure of Arent Fox's Work Product Compels Against Plaintiffs' Request for Unfettered Access to Arent Fox's Computer Systems.**

Plaintiffs blatant disregard for Arent Fox's interests in its own work product only heightens Arent Fox's concerns with respect to Plaintiffs' request for a forensic exam. Plaintiffs appear to be operating under an assumption that Mr. Allaham had the ability to waive both the attorney-client privilege and protections afforded to Arent Fox's work product. Arent Fox has no knowledge regarding Mr. Allaham's communications with the Plaintiffs or their lawyers, including any information related to the circumstances or scope of Mr. Allaham's waiver. But whatever waiver Mr. Allaham may have made as to his interests, that waiver has absolutely no impact on the protections independently afforded Arent Fox in its own work product. *See United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) ("the mere showing of a voluntary disclosure to a third person will generally suffice to show waiver of the attorney-client privilege, it should not suffice in itself for waiver of the work product privilege").

While a client has the ability to unilaterally waive the attorney-client privilege, the law is quite different in regard to attorney work product. *Moody v. I.R.S.*, 654 F.2d 795, 801 (D.C. Cir. 1981) ("Unlike the attorney-client privilege, which exists solely for the benefit of the client, and can be asserted and waived exclusively by him, the work product privilege creates a legally protectable interest in non-disclosure in two parties: lawyer and client.") Mr. Allaham does **not** have the ability to waive Arent Fox's right to protect its work product. *Id.* An attorney has an independent right to protect that work product. *Id*. The work product privilege exists to create a zone of privacy within which an attorney can prepare their case free of adversarial scrutiny. *See id*. at 800. Courts recognize that preparation for litigation requires that an attorney "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *See AT&T*, 642 F.2d at

1299.  Ultimately, the determination of whether material is work product and, if so, whether that protection has been waived is for the Court to decide – not the parties or their counsel.  *See Moody,* 654 F.2d at 801.

Plaintiffs and their counsel were obligated to make a good faith effort to notify Arent Fox that it possessed Arent Fox's work product and return that work product to Arent Fox.  *U.S. EEOC v. George Washington, Univ.*, 502 F. Supp. 3d 62, 76, 77-78 (D.D.C. 2020) (citing D.C. R. of Pro. Conduct 1.15.)  They failed to make any attempt to do so.  Instead, Plaintiffs boldly tried to take advantage of their access to Arent Fox's work product by rushing to disclose portions of it to the world in a public filing while misconstruing its meaning and context.

D.C. Rule of Professional Conduct 3.4(a) states, in relevant part, that:

> [A] lawyer may receive physical evidence of any kind from the client or from another person.  If the evidence received by the lawyer belongs to anyone other than the client, the lawyer shall make a good-faith effort to preserve it and to return it to the owner, subject to Rule 1.6.

Plaintiffs clearly are in possession of work product that belongs to Arent Fox.  That material includes information reflecting Arent Fox lawyers' mental impressions.  Instead of notifying Arent Fox and attempting to find a good faith resolution that would protect Arent Fox's rights in its work product, the Plaintiffs disregarded their ethical obligations and disclosed that work product in a public filing without any notice to Arent Fox.

Plaintiffs and their lawyers' disregard of their obligations appear to be calculated.  If Plaintiffs complied with their obligations under the D.C. Rules of Professional Conduct and notified Arent Fox, Arent Fox could have objected to the disclosure of that information under Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure.  Under Rule 26, once Arent Fox objected, Plaintiffs would have been prevented from publicly disclosing that information until the Court resolved the work product issue.  *See U.S. EEOC*, 502 F. Supp. 3d at 73-75 (A party in

possession of material that an opposing party has claimed as privileged must not review or use material until the Court resolves the determination of the claim. Otherwise, the use of the disputed material is a violation of Rule 26(b)(5)(B)).  By ignoring their ethical obligation, Plaintiffs sought to evade any restriction under the Federal Rules that would have prevented them from distorting and misconstruing the work product to the public.

Plaintiffs' disregard for Arent Fox's work product rights raises serious concerns regarding Plaintiffs' request for unfettered access to Arent Fox's computer systems.  As explained in Arent Fox's opposition, the Plaintiffs made no effort to limit the scope of their exam to matters related to Allaham and, instead, want complete, unlimited access to all business and personal electronic files of every timekeeper who ever worked on Allaham's matters.  Putting aside the unreasonableness of that broad request, Plaintiffs seek access to information protected by the attorney-client privilege, the work product doctrine, and D.C. Rule of Professional Conduct 1.6 for clients and matters that have nothing to do with this case – not to mention additional work product related to this case for which that protection has not been waived. Plaintiffs' disregard for their ethical obligations is yet another reason that they should not have unfettered access to confidential and privileged information related to Arent Fox's clients.

## **CONCLUSION**

For the foregoing reasons, Arent Fox respectfully requests that the Court deny the Plaintiffs' motion to compel a forensic examination of the computers of Mr. Allaham's former counsel at Arent Fox.

Dated: September 22, 2023

    /s/ *Randall A. Brater*
Randall A. Brater
ARENTFOX SCHIFF LLP
1717 K Street NW
Washington, DC 20006
P: 202.857.6000
F: 202.857.6395
randall.brater@afslaw.com

Eric Roman
ARENTFOX SCHIFF LLP
1301 Avenue of the Americas, Floor 42
New York, NY 10019
P: 212.484.3900
F: 212.484.3990
eric.roman@afslaw.com

*On behalf of ArentFox Schiff LLP*