**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BROIDY CAPITAL MANAGEMENT, LLC, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil No. Action 1:19-cv-00150-DLF |
| | : | |
| v. | : | |
| | : | |
| NICHOLAS D. MUZIN, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**NON-PARTY MIDDLE EAST FORUM'S OPPOSITION TO DEFENDANT GREGORY HOWARD'S CROSS-MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Non-Party Middle East Forum ("MEF"), by counsel, pursuant to Federal Rules of Civil Procedure and Local Rules of this Court, opposes Defendant Gregory Howard's Cross-Motion to Compel Production of Documents (the "Cross-Motion"),[1] stating as follows:

**I.     INTRODUCTION**

The Cross-Motion is a dramatically untimely and improper attempt to seek from MEF—a non-party in this litigation—the small subset of fifty-nine (59) documents containing its valuable donor information that MEF has timely, properly, and specifically withheld as trade secret from its large and timely document production many months ago. MEF's donor information clearly constitutes a trade secret, and this trade secret is the lifeblood of MEF's financial and reputational well-being, not to mention the physical safety of its principals. It is information protected from disclosure unless Mr. Howard can demonstrate—which he does not and cannot do—that it is relevant and necessary to his defense in this case and that his need for this information, specifically from MEF, outweighs the harm of disclosure for MEF. This Court should deny the Cross-Motion

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 Wootton Parkway, Suite 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

---

[1] The justifications set forth herein to support the denial of the Cross-Motion also reinforce the need for this Honorable Court to grant MEF's Motion to Quash, for Protective Order and Sanctions filed on August 29, 2023 (the "Motion to Quash").

and in so doing grant the separately pending  Motion to Quash,[2] which is concerned with the same discovery dispute.

## II.     PERTINENT BACKGROUND

1.      On or about February 14, 2022, Mr. Howard issued three (3) subpoenas to MEF and two of its senior principals, Gregg Roman and Daniel Pipes, which largely sought the same information.

2.      On or about March 4, 2022, MEF was served with the February 14, 2022 subpoena (the "Subpoena").

3.      On March 17, 2022, MEF timely responded to the Subpoena by issuing Objections and Responses as well as a document production with One Thousand Nine Hundred Forty-One (1,941) pages of responsive documents. Pursuant to F.R.C.P. 45(e)(2), MEF provided a detailed privilege log with descriptions of the nature of the documents withheld and the claims of privilege being asserted, which included trade secret, reporter privilege, and attorney-client privilege.

4.      In response, Mr. Howard alleged privilege waivers by MEF, demanded the withheld documents and additional documents, and intimated that he may file a motion to compel against MEF.

5.      On June 15, 2022, this Court issued an Order significantly narrowing the scope of available discovery in this case, informing Defendants, including Mr. Howard, that the discovery going forward would be limited to essentially four (4) categories of requests: (i) Plaintiff Elliott Broidy's alleged illegal activities; (ii) Plaintiff Elliott Broidy's plea agreement in Case Number 20-cr-210, (iii) Plaintiff Elliott Broidy's damages, and (iv) Mr. Howard's First Amendment defense. June 15, 2022 Order. Further, this Court expressly indicated that Defendants, including

---

[2] MEF incorporates by reference herein the facts and argument set forth in its Motion to Quash.

Mr. Howard, were required to contact the subjects of third-party subpoenas, including MEF, by June 28, 2022 with modifications consistent with the June 15, 2022 Order. *See* Transcript of June 15, 2022 Status Conference at 11:24-12:3.

6.      Mr. Howard wholly ignored that admonition, and did not contact MEF by June 28, 2022 regarding any modifications to the Subpoena.

7.      Despite his failure to comply with the June 15, 2022 Order's express requirement, and despite ongoing entreaties by undersigned counsel in light of the ongoing exposure and prejudice to MEF as a third party, Mr. Howard refused to withdraw the lingering Subpoena, refused to confirm that MEF has satisfied its obligations under the Subpoena., and for reasons that appeared –and now seem confirmed to have been –baldly tactical,  insisted on keeping the Subpoena open seemingly indefinitely.

8.      On August 29, 2023, after an unsuccessful meet-and-confer between counsel, MEF was forced to seek judicial intervention. Through its Motion to Quash, MEF asked the Court to preclude Mr. Howard from seeking further discovery from MEF, quash the Subpoena, and award MEF its reasonable attorneys' fees associated with addressing Mr. Howard's improper and abusive conduct.

9.      On September 12, 2023, Mr. Howard contemporaneously filed his Opposition to the Motion to Quash and his Cross-Motion.

10.      In his Cross-Motion, Mr. Howard seeks "to compel production of the 59 documents that MEF is withholding solely on purported 'trade secret' grounds." Cross-Motion at ¶ 2. Incorporating by reference the facts and legal arguments set forth in his Opposition to the Motion to Quash, the Cross-Motion contends that "[t]he same considerations that warrant denial of MEF's [Motion to Quash], as set forth in the [Opposition to the Motion to Quash], also warrant granting of Howard's [C]ross-[M]otion." *Id.*

20331981_3

## III.     ARGUMENT

### A.     Legal Standard

A grant or denial of a motion to compel falls within a district court's abuse of discretion. *Lipscomb v. Winter*, 2009 WL 1153442, *1 (D.C. Cir. Apr. 3, 2009) (affirming district court because "appellant has not shown the district court abused its discretion in denying his motion to compel discovery"); *Food Lion, Inc. v. United Food and Commercial Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997) ("Trial courts exercise considerable discretion in handling discovery matters[.]").

Procedurally, untimeliness in bringing a motion to compel may constitute a waiver of any alleged discovery violations. *DesRosiers v. Moran*, 949 F.2d 15, 22 n. 8 (1st Cir. 1991). It is especially important that a party file its motion before a specified discovery cutoff. *American Motorists Insurance Co. v. General Host Corp.*, 162 F.R.D. 646, 647-48 (D. Kan. 1995) (motion to compel denied where defendant made "absolutely no effort" to file motion before discovery deadline). "If the moving party has unduly delayed, the court may conclude that the motion [to compel] is untimely." 8A Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2285 (1994 & Supp.1998). "[T]he requesting party cannot delay a motion to compel with impunity." The Rutter Group, Federal Civil Procedure Before Trial, ¶ 11.753 (1998).

Substantively, when deciding on a motion to compel, a court must consider, among other things, whether the discovery being pursued is "discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense[.]" F.R.C.P. 26(b)(1) (emphasis added). When a non-party subject of a subpoena lodges timely objections pursuant to F.R.C.P. 45 (d)(2)(B), "the serving party may move the court . . . for an order compelling production[.]" The party moving to compel production over timely objections has the burden of showing the appropriateness of the subpoenas served on the non-party. F.R.C.P. 45 (d)(2)(B)(ii) ("These acts may be required only

as directed in the order[.]"). The moving party must show the information sought is both relevant and "necessary." *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 269 (6th Cir.2010). When confidential or privileged information is being sought, the moving party must further show that his need for the information outweighs the harm of disclosure for the producing party. § 2043 Protection for Confidential Information, 8A Fed. Prac. & Proc. Civ. § 2043 (3d ed.).

And when such information is being sought from a *non-party*, a court must be particularly sensitive to weighing the probative value of the information sought against the burden of the production on the non-party, including the burden related to having to provide its confidential or privileged information. *Wi-Lan Inc. v. Rsch. in Motion Corp.*, No. 10CV859-W (CAB), 2010 WL 2998850, at *3 (S.D. Cal. July 28, 2010); *cf.* F.R.C.P. 45(d)(3)(B) ("To protect a person subject to or affected by a subpoena, the court . . . may, on motion, quash or modify the subpoena if it requires: (i) disclosure of a trade secret[.]"). Determinations of whether subjecting a non-party to a subpoena would pose an undue burden are committed to the discretion of the court. *See Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003).

B.      Procedurally, the Cross-Motion must be dismissed because it is untimely.

The Cross-Motion is untimely because Mr. Howard failed to comply with this Court's June 15, 2022 Order requiring him to contact the subjects of any third-party Subpoenas, including MEF, by June 28, 2022, with modifications consistent with the Order. *See* Transcript of June 15, 2022 Status Conference at 11:24-12:3. The reason for that failure can quite clearly be traced to the fact that the Court's ruling narrowing the scope of permissible discovery effectively rendered moot any remaining debate about whether MEF had fully complied with the Subpoena.  In any event, given Mr. Howard's failure to contact MEF by June 28, 2022 (or for that matter anytime thereafter) with modifications to the Subpoena, discovery in this case involving third-party MEF essentially closed on June 28, 2022, and Mr. Howard waived any right to seek additional discovery from MEF.

5

Discovery that is waived thus may not be compelled. *See United States v. All Assets Held at Bank Julius Baer & Co.*, No. 04-CV-798 (PLF/GMH), 2019 WL 1167743, at *1 (D.D.C. Mar. 13, 2019) (denying a motion to compel discovery as untimely that was filed after the close of discovery) (citing *Suntrust Bank v. Blue Water Fiber*, L.P., 210 F.R.D. 196, 201 (E.D. Mich. 2002) (finding that a party who waits until after discovery has closed to file a motion to compel has waived its objections to the allegedly deficient discovery responses)). In this case, not only did Mr. Howard not timely contact MEF to modify the Subpoena as directed by this Court, Mr. Howard waited *over a year* after that deadline before seeking to compel discovery from MEF.[3] This Court must dismiss the Cross-Motion solely based on its fatal procedural defect.

      C.    <u>Substantively, the Cross-Motion must be dismissed because the information sought from MEF is protected from disclosure as trade secret and Mr. Howard fails to show that his need overcomes this privilege.</u>

Even if, *arguendo*, the Cross-Motion can overcome its procedural defect of untimeliness, it lacks substantive merit. "[T]he requirements of relevance and necessity must be established where disclosure of a trade secret is sought . . . , and . . . the burden rests upon the party seeking disclosure to establish that the trade secret sought is relevant and necessary to the prosecution or defense of the case before a court is justified in ordering disclosure." *Hartley Pen Co. v. U.S. Dist. Ct.*, 287 F.2d 324, 331 (9th Cir. 1961). Even then, a trial court may deny the motion to compel if it finds that the moving party's need is outweighed by the harm of disclosure for the producing person, especially when that person is a non-party to the litigation. *See Jones*, 219 F.R.D. at 74.

---

[3] MEF's fears of being under a never-ending Subpoena were vindicated when Mr. Howard filed the Cross-Motion. Mr. Howard improperly kept the threat of further discovery obligations over MEF's head for over eighteen (18) months and then finally, when it suited him, he sought this Court's assistance to impose further financial strain on MEF. Such conduct should not be rewarded and in fact should be affirmatively discouraged. The granting of MEF's Motion to Quash would serve as an important reminder of the obligations on Parties about the duty to "avoid imposing an undue burden or expense on a person subject to the subpoena." *See* Rule 45(d)(1).

20331981_3

Donor information, analogous to customer information, may constitute trade secrets, especially for a non-profit organization. *See, e.g.*, *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1251 (N.D. Cal. 1995) ("[N]onprofit entities . . . can also claim trade secret protection for economically valuable information such as lists of prospective members or donors." (internal citation omitted)). Significantly, specifically as to MEF's donor information, another district court has already found conclusively that it qualifies as a trade secret:

> *Middle East Forum has sufficiently established that its donor lists are a trade secret.*[] Both the [Defend Trade Secrets Act of 2016] and [Pennsylvania Uniform Trade Secrets Act] define a protected trade secret as information that: "(a) the owner has taken reasonable means to keep secret; (b) derives independent economic value, actual or potential, from being kept secret; (c) is not readily ascertainable by proper means; and (d) others who cannot readily access it would obtain economic value from its disclosure or use." . . . *Here, Middle East Forum took reasonable steps to keep its donor lists secret.* Its [Confidentiality & Non-Disclosure Agreement] specifically classifies donor information as the company's confidential information and it prohibits disclosure of such information to any third party. . . . Further, Barbounis testified that *Middle East Forum's donor list is closely held within Middle East Forum.* . . .
>
> *Middle East Forum's donor lists, as well as the organizations it was targeting as prospective donors, satisfy the remaining elements of a trade secret.* The donor lists, which include the identity and information of Middle East Forum's financial supporters and prospective targets, can best be analogized to customer lists. And a customer list can qualify as a trade secret. *See Bimbo Bakeries USA, Inc. v. Botticella*, No. 10-0194, 2010 WL 571774, at *10 (E.D. Pa. Feb. 9, 2010), *aff'd* 613 F.3d 102 (3d Cir. 2010) (holding customer list, including identities of company's customers targeted for upcoming bids, qualified as a trade secret) . . . Whether customer lists in fact rise to the level of a trade secret requires the Court to consider "(1) whether the information contained on the customer lists is obtainable in significant part; and (2) whether it is freely available without great difficulty."

*Middle E. F. v. Reynolds-Barbounis*, No. CV 19-5697, 2021 WL 84054, at *4 (E.D. Pa. Jan. 8, 2021) (emphasis added). Additionally, as further evidence of the protected nature of donor lists as trade secrets, the Supreme Court has made abundantly clear that pursuant to the First Amendment of the Constitution, Americans have the right to anonymously support charities and political nonprofits. *See Americans for Prosperity Foundation v. Bonta*, 141 S.Ct. 2373 (2021) & *NAACP*

20331981_3

*v. Alabama*, 357 U.S. 449 (1958).

As in the *Reynolds-Barbounis* case, MEF's donor information continues to (1) be subject to reasonable means to keep secret; (2) derive independent economic value, actual or potential, from its secret status; (3) not be readily ascertainable by proper means; and (4) to have economic value for others who cannot readily access it. A copy of the Affidavit of Gregg Roman is attached hereto and incorporated herein as <u>Exhibit 1</u>.  In fact, the secrecy, the measures taken to protect its secrecy, and the economic value of MEF's donor information have only increased since the above-cited case from 2021.

Further, disclosure of the donor information is likely to harm MEF in numerous ways. As explained in the Motion to Quash, such disclosure is likely to harm the physical safety of MEF and affiliated persons, as well as the reputational and economic well-being of MEF. *See, e.g.*, Motion to Quash at ¶¶ 6, 15. MEF's donor information constitutes a trade secret and is protected from disclosure.

Mr. Howard's latest position, as articulated in his Opposition to the Motion to Quash and his Cross-Motion, seems to be that he is only seeking information from MEF regarding whether or not Plaintiff Elliot Broidy (and/or his related entities) was a donor to MEF. *See, e.g.*, Opposition to Motion to Quash at pp. 11-12; Cross-Motion at ¶ 4. In doing so, Mr. Howard continues to ignore, among other things, his burden of showing that it is *necessary* for him to obtain such information constituting trade secret *from* MEF. In fact, Mr. Howard does not even touch on this critical issue and try to explain why it is necessary for him to get the formation regarding whether Plaintiff Elliot Broidy (and/or his related entities) was a donor to MEF from MEF. To be clear, the requirement of the disclosure of even one (1) individual who may or may not have donated to MEF would unwind the enshrined protections that individuals have to donate to entities without fear or concern

that the entity will allow the breach of that confidentiality.[4]

Certainly, it would be far more logical and less burdensome for sources other than MEF—in particular from the parties in this case and their agents (e.g., plaintiff themselves, their accountants, or their financial institutions)—to provide Mr. Howard with the information he purportedly seeks.[5] Information coming from these other sources regarding whether Mr. Broidy (and/or his related entities) ever donated to MEF would presumably not be in the form of a trade secret.[6] As explained in the Motion to Quash, from the start that the relevant information sought by Mr. Howard was obtainable directly from Plaintiffs or their agents; his Subpoena to MEF seems aimed at causing MEF annoyance, embarrassment, and undue expense. *See* Motion to Quash at pp. 12-16. This Court should put an end to Mr. Howard's endless, improper, abusive attempts to seek further discovery from MEF.

## IV.   CONCLUSION

This Court should (i) deny Mr. Howard's Cross-Motion, (ii) in effect further grant MEF's Motion to Quash, and (iii) grant MEF such other and further relief as is appropriate.

---

[4] This reality exists even if this Court limits the disclosure of donor information to being subject to a Protective Order. As MEF has previously informed Mr. Howard's counsel, MEF's mission often puts it directly opposite to the State of Qatar. Plaintiffs' Complaint in the instant litigation is replete with allegations regarding Mr. Howard's close ties with the State of Qatar including, but not limited to, the fact that Mr. Howard "was a registered foreign agent of Qatar through Conover." *See* Docket No. 18-2 at ¶ 17. As such, MEF would suffer significant prejudice if this information were to be disseminated, especially to the State of Qatar or its agents, including Mr. Howard.
[5] *See Millenium TGA, Inc. v. Comcast Cable Communications LLC*, 286 F.R.D. 8, 11 (D. D.C. 2012) (citation omitted) ("[O]ur circuit court has admonished district courts to be 'generally sensitive to the costs imposed on third parties' when considering a motion to compel (or quash) pursuant to Rule 45, reminding us to consider 'whether the discovery sought is 'obtainable from some other source that is more convenient, less burdensome, or less expensive.'")
[6] This point had been conveyed to counsel for Mr. Howard from early on in this process. Despite the ability to obtain this information from a Party to this lawsuit, it appears Mr. Howard for some reason elected not to pursue that path.

Respectfully Submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

By:        */s/ Jeffrey M. Schwaber*
Jeffrey M. Schwaber (D.C. Bar # 419681)
jschwaber@steinsperling.com
(301) 354-8110 (facsimile)

        */s/ Eduardo S. Garcia*
Eduardo S. Garcia (D.C. Bar # 1028040)
egarcia@steinsperling.com
(301) 354-8326 (facsimile)

1101 Wotton Parkway, Suite 700
Rockville, Maryland 20852
(301) 340-2020

*Attorneys for Non-Party Middle East Forum*

20331981_3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th of September, 2023, a copy of the foregoing was served via Court's CM/ECF system on the following person(s):

Jeffrey Udell
Jake Gardener
Walden Macht & Haran LLP
250 Vesey Street, 27th Floor
New York, NY 10281
judell@wmhlaw.com
jgardener@wmhlaw.com

Adam P. Cohen
Kraig Ahalt
Walden Macht & Haran LLP
1 Battery Park Plaza
34th Floor
New York, New York 10004
acohen@wmhlaw.com
kahalt@wmhlaw.com

Charles Samuel Fax
Liesel J. Schopler
Rifkin Weiner Livingston LLC
4800 Hampden Lane
Suite 820
Bethesda, Maryland 20814
cfax@rwlls.com
lschopler@rwlls.com

Stephen J. Obermeier
Enbar Toledano
Krystal Brunner Swendsboe
Rebecca J. Fiebig
Rebecca Lynn Saitta
Wiley Rein LLP
2050 M Street NW
Washington, DC 20036
sobermeier@wiley.law
etoledano@wilerein.com
kswendsboe@wileyrein.com
rfiebig@wiley.law
rsaitta@wileyrein.com

20331981_3

Eric Roman
Nicholas L. Collins
Temitope K. Yusuf
Mohammed T. Farooqui
Arent Fox LLP
1301 Avenue of the Americas
Suite Floor 42
New York, New York 10019
Eric.roman@arentfox.com
Nicholas.collins@arentfox.com
Temitope.yusuf@arentfox.com
Mohammed.farooqui@arentfox.com

Laura E. Zell
Randal Adam Brater
Arent Fox LLP
1717 K Street NW
Washington, DC 20006
Laura.Zell@arentfox.com
Randall.brater@arentfox.com

David M. Zionts
Alexander Adelman Berengaut
Megan O'Neill
Covington & Burling LLP
850 Tenth Street, NW
One City Center
Washington, DC 20001
dzionts@cov.com
aberengaut@cov.com
moneill@cov.com

Daniel R. Benson
Andrew Kurland
Jacob Benson
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
dbenson@kasowitz.com
akurland@kasowitz.com
jbenson@kasowitz.com

Henry B. Brownstein
Kasowitz Benson Torres LLP
1399 New York Avenue, NW
Suite 201
Washington, DC 20005
hbrownstein@kasowitz.com


_____/s/ Eduardo S. Garcia_____
Eduardo S. Garcia