UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BROIDY CAPITAL MANAGEMENT LLC, et al.,

        *Plaintiffs*,

v.

NICOLAS D. MUZIN, et al.,

        *Defendants*.

No. 1:19-cv-00150-DLF

## ARENTFOX SCHIFF'S MOTION FOR A PROTECTIVE ORDER AND SANCTIONS

For the reasons stated in the accompanying memorandum of law (which is incorporated by reference into this motion), ArentFox Schiff LLP ("Arent Fox") moves for an order (1) directing Plaintiffs to (a) promptly return or destroy all work product of Arent Fox possessed by Plaintiffs or their counsel as well as any material that references or is derived from that work product, (b) take reasonable steps to retrieve any such material already disclosed to third parties, and (c) certify compliance with these steps; and (2) sanctioning Plaintiffs for improperly reviewing and using Arent Fox's work product. A proposed order is attached. Arent Fox's counsel further certifies that they have conferred with counsel for Plaintiffs regarding the subject matter of the present motion, *see* LCvR 7(m), and that Plaintiffs do not consent to the motion.

Dated October 10, 2023

*/s/ Randall A. Brater*
Randall A. Brater (D.C. Bar # 475419)
ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, DC 20006-5344
(202) 857-6032
randall.brater@afslaw.com

*Attorneys for ArentFox Schiff LLP*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROIDY CAPITAL MANAGEMENT LLC, et al.,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>NICOLAS D. MUZIN, et al.,<br><br>    *Defendants*. | No. 1:19-cv-00150-DLF |

**ARENTFOX SCHIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR A PROTECTIVE ORDER AND SANCTIONS**

  ArentFox Schiff LLP ("Arent Fox") submits this memorandum in support of its motion for a protective order and sanctions.

**INTRODUCTION**

  In their unfounded request for a breathtakingly expansive "forensic examination" of the computer systems of their opponents and counsel, Plaintiffs have improperly relied on documents clearly protected by the work-product doctrine that they should never have received or reviewed—much less attempted to file with impunity in a public proceeding. Plaintiffs' September 15, 2023 reply in support of their motion for a "forensic examination" cites to and attaches draft discovery responses and emails that on their face reflect Arent Fox's mental impressions, conclusions, opinions, legal theories, and trial strategy. Given the scope of materials that Plaintiffs have publicly displayed, Plaintiffs appear to have received from Arent Fox's former client, Joey Allaham, all of Mr. Allaham's communications with Arent Fox, including a significant amount of Arent Fox's work product (as well as material protected by a joint-defense agreement with the remaining defendants in this case). Arent Fox has not waived its rights to its work product and has never consented to its disclosure to third parties. Plaintiffs and their

counsel had and have no right to review or in any way use this material without Arent Fox's permission. Indeed, they are obligated to return or destroy Arent Fox's work product.

The circumstances under which Plaintiffs obtained this material are not fully clear at this time, but the documents could have come only from Arent Fox's former client, Mr. Allaham. Unlike documents and information protected by the attorney-client privilege, Mr. Allaham had no authority to disclose, or permit others to use, Arent Fox's work product. Although clients and former clients control the attorney-client privilege, the work-product protection is fundamentally different. Clients cannot unilaterally forfeit that protection, and here Arent Fox has never consented to disclosure of its work product to third parties.

Plaintiffs' counsel also has known (and certainly should have known) that this material is protected. Any trial lawyer would appreciate that draft filings, as well as emails discussing draft litigation filings and communications reflecting attorney mental impressions and litigation strategy, constitute work product. Certainly here there could be no doubt on this point: the attorney-authored documents that Plaintiffs have unblushingly used and disclosed contain words like "strategy," and "thinking," and are in some cases clearly labeled "Privileged & Confidential Attorney Work Product."

For these reasons, Plaintiffs' counsel had an ethical obligation to refrain from reviewing or using this material, and to immediately return it to Arent Fox. Instead of complying with these professional responsibilities, Plaintiffs' counsel studied the material and then cherry-picked out-of-context excerpts to file in the public record as purported support for their request for a "forensic examination." When Arent Fox alerted Plaintiffs' counsel to their professional obligations and demanded that they immediately return the material, refrain from further using it, and retrieve it from any third parties to whom it has been disclosed, Plaintiffs' counsel

disregarded these professional obligations and refused to do so. (*See* Sept. 22, 2023 Ltr. attached as Exhibit A.) Plaintiffs' counsel cannot justify their blatant disregard of a host of ethics rules, including D.C. Rules of Professional Conduct 1.15(c), 3.4(a), 8.4(c), 4.4(a), and 4.4(b).

## ARGUMENT

**I.      Plaintiffs Have Improperly Reviewed and Used Arent Fox's Work Product.**

There is no dispute that Plaintiffs have obtained and filed documents in this proceeding that are protected by the attorney work-product doctrine. Among other things, Plaintiffs' September 15, 2023 reply includes:

- Arent Fox's draft, unfiled objections and responses to Plaintiffs' first set of interrogatories with attorney notes reflecting strategy and mental impressions (ECF Nos. 215-2, 215-3, 251-4);

- Arent Fox's draft, unfiled responses to Plaintiffs' first set of requests for admission with attorney notes reflecting strategy and mental impressions (*id.*);

- Arent Fox's December 16, 21, 2021 internal emails between its lawyers and former client discussing the draft, unfiled discovery responses and counsel's conclusions and opinions about revisions to the drafts (ECF No. 215-4);

- Arent Fox's December 22, 2021 internal emails between its lawyers and former client discussing the draft, unfiled discovery responses and the legal "strategy" taken in the drafts (ECF Nos. 215-2, 215-3);

- Arent Fox's December 22, 2021 internal emails between its lawyers and former client titled "Some of my thinking" that discuss the discovery responses and the legal strategy and implications of the responses (ECF No. 215-7);

- Arent Fox's December 7, 2022 internal emails between its lawyers and former client titled "Privileged & Confidential Attorney Work Product" discussing an anticipated document production, "key individuals" identified in the documents, and other strategic issues (ECF No. 215-8);

- Arent Fox's May 10, 2023 email from one of its lawyers to its former client analyzing a settlement agreement and providing "My advice" and "my opinion" about discovery, strategy for potential settlement, and the applicability of the joint-defense agreement with parties to this case (ECF No. 215-21).

These materials (and others) are all protected by the work-product doctrine. These documents were all "prepared in anticipation of litigation or for trial by or for another party [Mr. Allaham] or [his] representative" and therefore are protected under Federal Rule of Civil Procedure 26(b)(3)(A). More fundamentally, these documents reflect "mental impressions, conclusions, opinions, or legal theories of a party's attorney" and therefore are opinion work product that is entirely undiscoverable under Rule 26(b)(3)(B).

Arent Fox does not know what other information Plaintiffs have received from Mr. Allaham. But just based on Plaintiffs' submission on September 15, they appear to have received all the documents related to this dispute in Mr. Allaham's possession. These documents contain a trove of work product no different than the documents identified above. Because all this material is immune from discovery or disclosure, Plaintiffs should immediately return or destroy it. Even if Plaintiffs received the material outside the normal discovery process, they have no legal justification for possessing or continuing to use it, and this Court has inherent authority to order its return or destruction. *See*, *e.g.*, *EEOC v. George Washington Univ.*, 502 F. Supp. 3d 62, 71 n.6 (D.D.C. 2020) (collecting cases in which courts "relied on [their] inherent power to order the plaintiffs to return [privileged] documents" obtained "outside of the discovery process"); *United States v. Comco Mgmt. Corp.*, No. SACV08-0668, 2009 WL 4609595, at *5 (C.D. Cal. Dec. 1, 2009) (same; compelling return and precluding use of privileged and work-product information improperly obtained from party's employee); *In re Shell Oil Refinery*, 143 F.R.D. 105, 109 (E.D. La. 1992) (same); *see also Reinsdorf v. Skechers U.S.A., Inc.*, No. CV 10-7181, 2013 WL 12116415, at *4 (C.D. Cal. May 31, 2013) (exercising inherent power to order party to "return, sequester or destroy" documents obtained outside the discovery process pending resolution of a claim of privilege by analogy to Rule 26(b)(5)(B)).

## II. Mr. Allaham Could Not Unilaterally Waive the Work-Product Protection.

That Mr. Allaham gave protected materials to Plaintiffs is of no consequence. As Arent Fox explained in its September 22, 2023 sur-reply (ECF No. 223 at 9-11), the attorney-client privilege and work-product doctrines differ fundamentally on this point. Whereas clients control the attorney-client privilege, they cannot unilaterally waive work-product protections. *See*, *e.g.*, *Moody v. IRS*, 654 F.2d 795, 801 (D.C. Cir. 1981) ("Unlike the attorney-client privilege, which exists solely for the benefit of the client, and can be asserted and waived exclusively by him, the work product privilege creates a legally protectable interest in non-disclosure in two parties: lawyer and client.") (internal footnotes omitted); *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) ("*AT&T*") (explaining that a client's "voluntary disclosure to a third person … should not suffice in itself for waiver of the work product privilege" because "the work product privilege does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparations").

Under these and many other decisions, attorneys have an independent right to protect their own work product. Attorneys have this independent right because the work-product doctrine exists "to protect the adversary trial process itself," *Moody*, 654 F.2d at 800 (internal quotation and citation omitted), and "to protect the work of the attorney from disclosure *for the benefit of the attorney*." *In re Special Sept. 1978 Grand Jury (II)*, 640 F.2d 49, 63 (7th Cir. 1980) (emphasis added). Here, for example, Mr. Allaham no longer needs Arent Fox's work product, since he has been dismissed from this case. But there is a strong adversary-process interest in continuing to protect this material from disclosure to *Plaintiffs*, particularly since the material contains communications covered by a joint-defense agreement among Plaintiffs' adversaries who remain in the case. *See, e.g., AT&T*, 642 F.2d. at 1298-1300 (explaining that there is no waiver of work product through disclosure among parties with "common interests" because the

disclosure promotes "trial preparation within the adversary system" and that where the disclosure among parties with a common interest "is conducted under a guarantee of confidentiality, the case against waiver is even stronger"). Whatever interest Mr. Allaham may have in possessing Arent Fox's work product does not justify giving Plaintiffs access to the mental impressions and trial strategy of their current opponents. Disclosing this material to Plaintiffs would disserve the adversary trial process, and it would have an extraordinary chilling effect on attorneys in general. Attorneys would no longer operate within the "zone of privacy" guaranteed by the work-product doctrine, *Moody*, 654 F.2d at 800, for fear that their clients could indiscriminately disclose work product after terminating the attorney-client relationship.

Under these circumstances, Mr. Allaham has not waived—and could not waive—Arent Fox's right to protect its own work product from disclosure. Many cases have made this point. *E.g.*, *In re Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir. 1994) ("[A] waiver by the client of the work product privilege will not deprive the attorney of his own work product privilege, and vice-versa."); *QBE Ins. Corp. v. Griffin*, 08-cv-949, 2009 WL 2913478, at *3 (M.D. Ala. Sept. 4, 2009) ("Nor can the client unilaterally waive the privilege; the attorney may contest disclosure even in the face of a client's waiver."); *In re Hechinger Inv. Co. of Delaware*, 303 B.R. 18, 24-25 (D. Del. 2003) ("Unlike the attorney-client privilege, work product is the privilege of the attorney, and thus the attorney is the one who may waive it." (internal quotation and citation omitted)); *see also In re China Med. Techs., Inc.*, 539 B.R. 643, 658 (S.D.N.Y. 2015) ("[W]ork product protection belongs to … counsel and cannot be waived by the client."). Because Mr. Allaham had no authority to unilaterally forfeit the protections afforded to Arent Fox's work product, the Court should order Plaintiffs and their counsel to promptly return or destroy that material, to take reasonable steps to retrieve the material if it already has been

disclosed to others, and to certify compliance with these steps. *Cf.* Fed. R. Civ. P. 26(b)(5)(B) (requiring retrieval in addition to prompt return, sequestration, or destruction of documents subject to a claim of privilege or work-product protection); *see also AT&T*, 642 F.2d at 1299 (prohibiting access to third-party work product voluntarily disclosed to the plaintiff because the disclosure was not a waiver); D.C. Rule of Prof'l Conduct 3.4(a) (lawyers must make good-faith efforts to "preserve" and "return" evidence owned by third parties and received by the lawyer).

### III.   The Court Should Sanction Plaintiffs' Counsel for Improperly Reviewing and Using Protected Materials.

The Court also should sanction Plaintiffs and their counsel for improperly reviewing and using Arent Fox's work product. Through its September 15, 2023 sur-reply (ECF No. 223 at 9-11) and its September 22, 2023 letter (*see* Exhibit A), Arent Fox notified Plaintiffs that they had improperly received protected documents. Plaintiffs accordingly have an ethical obligation to return or destroy this material and to take reasonable steps to retrieve the material if it already has been disclosed to third parties. *See George Washington*, 502 F. Supp. 3d at 75-76 ("[W]hen an attorney has been put on notice that she has received material to which she is not entitled, her review of that material 'would be unethical'" (quoting D.C. Bar Ethics Opinion No. 256 (May 1995)).

But even absent this notification, Plaintiffs should never have reviewed or used Arent Fox's work product—much less file some of it in a public proceeding—because the documents themselves announce their protected status. For example, among the documents attached to Plaintiffs' September 15, 2023 filings are draft discovery requests with substantive attorney comments, emails expressly discussing attorney "strategy" and titled "Some of my thinking," while still others are clearly labeled "Privileged & Confidential Attorney Work Product." (ECF Nos. 215-2, 215-3, 251-4, 215-7, 215-8, 215-21.)

No trial lawyer could review these documents and fail to appreciate that they constitute work product—nor could any lawyer reasonably believe that Arent Fox had authorized its former client to disclose these materials. As Arent Fox has explained (ECF No. 212 at 2-3), it was unaware of its former client's settlement with Plaintiffs until August 24, 2023—one day before Plaintiffs disclosed the settlement in filings with the Court and the same day that Mr. Allaham advised Arent Fox of his decision to terminate the firm's representation. Arent Fox does not know what Mr. Allaham may or may not have discussed with Plaintiffs or their counsel before that date (when he was still represented by Arent Fox), but at no point did anyone from Arent Fox suggest that the firm would waive its right to protect its work product.

For these reasons, Plaintiffs' counsel could not ethically review or use Arent Fox's work product. When an attorney receives materials that "might be privileged," the attorney "violates her ethical responsibilities" by merely reviewing the materials if the materials are "privileged on their face" and the attorney has "a reasonable basis to conclude" both that "the privilege has not been waived" and the materials "have been obtained without authorization." *George Washington*, 502 F. Supp. 3d at 77-78 (quoting D.C. Bar Ethics Opinion No. 318 (Dec. 2002)). All of these circumstances exist here. Arent Fox's emails, draft discovery responses, and likely other documents in Mr. Allaham's possession, facially constitute work product, and Plaintiffs' counsel has never had any reason to think that Arent Fox waived this protection or authorized Mr. Allaham to waive it.

As *George Washington* and Ethics Opinion No. 318 show, Plaintiffs' counsel could not review or use Arent Fox's work product without violating the D.C. Rules of Professional Conduct. *See George Washington Univ.*, 502 F. Supp. 3d at 76-78. For example, Rule 1.15(c) requires that lawyers "promptly notify" third parties upon receipt of their property (such as Arent

Fox's work product) and deliver that property to the third party upon request. Rule 3.4(a) similarly provides that a lawyer may receive evidence from clients or another person, but "[i]f the evidence received by the lawyer belongs to anyone other than the client, the lawyer shall make a good-faith effort to preserve it and to return it to the owner." Here Plaintiffs' counsel failed to notify Arent Fox that it had received the firm's work product and made absolutely no effort to preserve or return it. Instead, they tried to use it to their strategic advantage by filing it in this case as purported support of their clients' unjustified requests for relief.

D.C. Rule of Professional Conduct 8.4(c) also applies here. That rule provides that it is professional misconduct for a lawyer to engage in any dishonest act. *George Washington*, 502 F. Supp. 3d at 78 ("Ethics Opinion 318 expressly reaffirms that an attorney who reviews material known to be privileged may be 'engaging in a dishonest act' in violation of the Rules of Professional Conduct."). Reviewing and using Arent Fox's work product cannot be squared with Rule 8.4(c)'s proscription.

The same is true for D.C. Rule of Professional Conduct 4.4. Under Rule 4.4(a), lawyers cannot "use methods of obtaining evidence that violate the legal rights of … a [third] person." As explained in Comment 1 to this rule, this prohibition includes "unwarranted intrusions into privileged relationships." D.C. Rule of Professional Conduct Rule 4.4(a), cmt. 1; *see also Gifford v. Target Corp.*, 723 F. Supp. 2d 1110, 1117, 1119-22 (D. Minn. 2010) (Rule 4.4(a) protects "the right not to have privileged and confidential information disclosed"); *Calise v. Brady Sullivan Harris Mills, LLC*, C.A. No. 18-99, 2019 WL 1397245, at *1, *11 (D.R.I. Mar. 28, 2019) (violation of Rule 4.4(a) where attorneys merely "came into possession" and "reviewed" "only a few documents" reflecting "contractually protected confidential information, attorney-client information and related work product"); *In re Eisenstein*, 485 S.W.3d 759, 762-63 (Mo. 2016)

(en banc) (violation of Rule 4.4(a) and 8.4(c) where attorney improperly reviewed and used work product of opposing counsel that his client had improperly obtained).

Finally, Plaintiffs' counsel have violated D.C. Rule of Professional Conduct Rule 4.4(b). That rule provides that lawyers cannot examine documents if they know the documents were delivered to them "inadvertently" and must instead "notify the sending party and abide by the instructions of the sending party regarding the return or destruction of the writing." Under the ethics rules, "'inadvertence' is to be determined from the point of view of the party whose privileged or otherwise protected material has been disclosed." *George Washington*, 502 F. Supp. 3d at 76. Thus, if a party (like Mr. Allaham) makes an intentional but "apparently unauthorized" disclosure of another's protected information (as he did here with respect to Arent Fox's work product), then that disclosure still "qualifies as inadvertent" and triggers Rule 4.4(b). *Id*. at 76-77 ("[A]n opposing party gains access to privileged material 'inadvertently' if the holder of the privilege did not intend for that material to be disclosed."); *see also Harris Davis Rebar, LLC v. Structural Iron Workers Local Union No. 1*, No. 17 C 6473, 2019 WL 447622, at *4 (N.D. Ill. Feb. 5, 2019) (collecting cases holding that "although … Rule 4.4(b) does not explicitly extend to situations involving intentionally-sent privileged or confidential information[,] an attorney's duty in that scenario remains the same"); *Stengart v. Loving Care Agency, Inc.*, 990 A.2d 650, 665-66 (N.J. 2010) (reviewing and using protected emails retrieved from temporary cache folder of departed employee, without employee's knowledge, violated Rule 4.4(b) for this reason). Mr. Allaham's apparently intentional but undisputedly unauthorized disclosure of Arent Fox's work product is no different.

Given these violations and that Plaintiffs' counsel have not only received and reviewed Arent Fox's work product but affirmatively used it, sanctions are warranted. *E.g., Marshall v.*

*McGill*, No. CV 10-01436, 2011 WL 13118589, at *3 (D. Ariz. June 8, 2011) (awarding attorneys' fees and costs associated with motions to remedy violation of Rule 26(b)(5)(B) and Rule 4.4(b) where protected material was attached in two separate court filings); *Wyndham Vacation Ownership, Inc. v. Slattery, Sobel & DeCamp, LLP*, No. 19-cv-1908-Orl78, 2020 WL 5876951, at *4 (M.D. Fla. Oct. 2, 2020) (same); *Gifford*, 723 F. Supp. 2d at 1119-23 (disqualifying counsel in part for receiving information in violation of Rule 4.4(a)); *Eisenstein*, 485 S.W.3d at 762–64 (suspending counsel indefinitely for violating Rule 4.4(a)); *Harris Davis*, 2019 WL 447622, at *4 (violation of Rule 4.4(b) required destruction of protected documents and any materials "that reference or were derived from them" and further warranted an award of attorneys' fees and costs incurred in bringing motion for protective order and sanctions); *Stengart*, 990 A.2d at 665-66 (violation of Rule 4.4(b) warranted sanctions).

Plaintiffs' conduct at a minimum justifies awarding Arent Fox its attorneys' fees and costs incurred in bringing this motion. Before filing this motion, Arent Fox asked Plaintiffs to return or destroy any work product that they have received (or will receive in the future) and to retrieve any copies shared with third parties. (Exhibit A.) Plaintiffs could have obviated the need to file this motion by simply agreeing to adhere to their ethical obligations. Yet they refused. Because Arent Fox should not have had to incur expenses associated with bringing this motion, those expenses should be awarded as a sanction.

## CONCLUSION

For the foregoing reasons, Arent Fox respectfully requests that the Court grant its motion and enter the attached proposed order.

Dated October 10, 2023

*/s/ Randall A. Brater*
Randall A. Brater (D.C. Bar # 475419)
ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, DC 20006-5344
(202) 857-6032
randall.brater@afslaw.com

*Attorneys for ArentFox Schiff LLP*