UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BROIDY CAPITAL MANAGEMENT
LLC, *et al.*,

    *Plaintiffs*,

v.

NICOLAS D. MUZIN, *et al.*,

    *Defendants*,

and

STATE OF QATAR,

    *Limited-Purpose Intervenor*.

No. 19-cv-150 (DLF)

**ORDER**

    Before the Court is the plaintiffs' Motion to Compel Forensic Examinations. Dkt. 206. For the following reasons, the Court will deny the motion.

    This is the latest chapter in a lawsuit between plaintiffs Broidy Capital Management, LLC and Elliott Broidy ("Broidy") and defendants Nicolas Muzin, Gregory Howard, and Stonington Strategies, LLC. Broidy accuses the defendants and their counsel, in concert with the State of Qatar and *its* counsel, of concealing relevant documents in discovery. Mem. in Support of Pls.' Mot. to Compel at 11, Dkt. 206-1. He seeks a "digital forensic investigation" of "all computers, portable or detachable hard drives, e-discovery systems, and personal devices used . . . in any way in connection with this matter" by (1) "each defendant," (2) "counsel for each defendant," and (3) counsel for Qatar. *Id.* at 15–16.

1

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, discovery must be "proportional to the needs of [a] case, considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). This principle applies to forensic investigations. *Id.* 34(a)(1) ("A request . . . to inspect, copy, test, or sample . . . electronically stored information" must fall "within the scope of Rule 26(b)."); *see Covad Comms. Co. v. Revonet, Inc.*, 258 F.R.D. 5, 11–12 (D.D.C. 2009). "It is the rare case that a litigant does not allege some deficiency in the production of electronically stored information," and forensic investigations need not proceed "every time a litigant alleges that the other party's electronic production is deficient in some regard." *Covad*, 258 F.R.D. at 13.

Broidy has not established that the "burden [and] expense" of his investigation would "outweigh[] its likely benefit." Fed. R. Civ. P. 26(b)(1). As to burden, a forensic investigation "would be a significant intrusion and would undoubtedly increase the costs associated with" discovery. *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 128 (D.D.C. 2013) (declining to order forensic investigation on this basis). Rummaging through the defendants' "computers . . . e-discovery systems, and personal devices" would inconvenience them and invade their privacy. Mem. in Support of Mot. to Compel at 11. It would also invade the privacy of those who corresponded with the defendants, including the defendants' clients and personal contacts. And allowing Broidy to access the computer systems of the defendants' attorneys—not to mention Qatar's—would raise complex and sensitive issues regarding privacy, information security, and the attorney-client privilege. *See, e.g.¸* ArendtFox Schiff's Mem. in Opp. to Pls.' Mot. to Compel at 14, Dkt. 212 (observing that a forensic examination of law firm devices would expose unrelated client documents and make them vulnerable to "potential cyber-security threats").

As to benefits, Broidy is correct that if a party's discovery responses suggest "that she is intentionally hiding things . . . or failing to take appropriate steps to respond to discovery, a forensic examination may be appropriate." *Covad*, 258 F.R.D. at 13. But he has not pointed to the kinds of "discrepancies and inconsistencies in . . . document production" that would outweigh the costs of a forensic investigation. *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. at 128; *accord Bethea v. Comcast*, 218 F.R.D. 328, 330 (D.D.C. 2003) (holding that "vague assertion[s]," "speculat[ion]," and "conjecture" did not "warrant the compelled inspection of a computer system [containing] voluminous information relating to many topics other than" those at issue in a lawsuit). Broidy raises three main arguments to support his request for a forensic investigation. None of them—either individually or in combination—justifies such relief.

First, the 2018 agreement between Qatar and Joey Allaham, formerly a consultant for Qatar and defendant in this action, does not give cause for a forensic investigation. *Contra* Broidy's Reply Mem. of L. at 13–14, Dkt. 216. In that agreement, Allaham agreed to transmit certain documents to Qatar, to keep the contents of those documents confidential, and to "acknowledge that all such returned [documents] are and . . . have been the property of Qatar." Confidential Settlement Agreement & Release of Claims § 7(a), (c), Dkt. 197-3. He did not, however, agree to withhold documents from discovery. *Id.* § 7(c)(iii) (contemplating disclosure "during the course of litigation"). And the fact that Qatar entered into a confidentiality agreement with Allaham does not suggest that Allaham or his counsel—much less *other* defendants, their attorneys, or Qatar's—have hidden documents from Broidy or handled discovery haphazardly.[1]

---

[1] Broidy's contention that Qatar drafted the 2018 agreement to "shield" documents "behind [its] purported privileges and immunities," Broidy's Reply Mem. of L. at 14, does not change this conclusion, even if Qatar's claims of privilege were legally insufficient, *cf.* Dkt. 228. Qatar was entitled to take lawful steps to expand the potential reach of its privileges, *cf. Arthur Andersen*

3

Second, that ArendtFox, Allaham's former counsel, failed to produce the 2018 agreement in discovery is concerning, but it does not alter the Court's conclusion. *Contra* Broidy's Mem. of L. at 3. ArentFox represents that it "was in the process of determining whether any privilege could attach to the 2018 agreement and, if it determined there was none," would have produced the agreement before discovery closed.[2] ArentFox Schiff, LLP's Mem. of L. in Opp. at 9, Dkt. 212. So too for other documents Broidy says the defendants should have produced. Discovery has not yet concluded, and Broidy has failed to present evidence—as opposed to "conjecture," *see Bethea*, 218 F.R.D. at 330—that the defendants intentionally hid those documents or negligently failed to produce them.[3]

---

*LLP v. United States*, 544 U.S. 696, 704 (2005), and Broidy has not shown that the agreement was itself unlawful or improper.

[2] This claim is arguably inconsistent with the defendants' prior representations to this Court. In an email to chambers dated July 11, 2023, the defendants told the Court that they "[had] produced all non-privileged documents subject to discovery of which they [were] aware." That statement is not easy to reconcile with ArentFox's current position—that, as of July, it continued to review potentially responsive documents for privilege. Even so, the Court cannot conclude that ArentFox's attorneys, who are also officers of the court, intentionally misled the Court.

[3] As to Muzin and Stonington Strategies, Broidy objects that they failed to produce (1) a letter in which Qatar's counsel directed them to stop their work for Qatar, Dkt. 206-5, and (2) certain documents relating to their work with Qatar and its alleged affiliates, *see* Dkts. 206-7, 206-13, 215-9, 215-10, 215-11, 215-23, 215-24, 215-28. Muzin and Stonington represent that they did not produce these documents pursuant to a standing objection as to their relevance, *see* Dkt. 210-2, and Broidy has not shown that their representation is false or pretextual.

As to Howard, Broidy objects that he failed to preserve emails from three of his professional email accounts. Broidy's Reply Mem. of L. at 18 n.48, 20. Howard represents that he lacked access to two of those accounts when he was first served with a subpoena in this case and that he did not have control over the third account at that time. *See* Howard Sur-Reply at 3–5, Dkt. 222. Once again, Broidy has not offered evidence to the contrary.

As to Allaham, Broidy objects that he failed to produce (in addition to the 2018 agreement) documents relating to 2018 agreement's drafting history and certain other correspondence. Dkts. 206-4 (WhatsApp chats); 206-20 through 23, 215-12 through 22, 215-25 through 28 (documents relating to settlement); 215-29 through 31 (documents appearing to relate to settlement). But

4

Finally, that Covington & Burling, Qatar's counsel, viewed and proposed changes to certain of Allaham's responses to interrogatories does not make a forensic examination warranted, even assuming without deciding that the Court may properly consider documents that potentially include attorney work product. *Cf.* Qatar's Sur-Reply in Opp. at 7–10 (arguing that the documents are privileged). None of this Court's orders precluded Allaham from allowing Qatar to review his discovery responses.[4] And on the merits, the changes proposed by Qatar's counsel—while aggressive, to be sure—do not rise to the level of discovery misconduct that would warrant a forensic investigation, particularly as to the defendants other than Allaham and the lawyers representing them.

## CONCLUSION

For the foregoing reasons, the plaintiffs' Motion for a Forensic Examination, Dkt. 206, is **DENIED.**

October 13, 2023

DABNEY L. FRIEDRICH
United States District Judge

---

many of these documents appear subject to reasonable claims of privilege or objections as to relevance. To the extent that some of the documents are not shielded from discovery, the Court is not convinced that ArentFox acted in bad faith or with a desire to conceal evidence.

And it is not surprising that the defendants did not produce these documents or log them as privileged before June 8, 2023, the deadline the Court imposed on Qatar in its May 3, 2023 Order, *see* Order Granting Joint Mot. to Stay at 2 (May 3, 2023), Dkt. 177. That order addressed *Qatar's* assertions of privilege under the Vienna Convention, not *every* defendant's assertion of privilege.

[4] In December 2021, the Court ordered that "Qatar may not receive or review ongoing discovery in this case, *as proposed in the defendants' Emergency Motion*, without moving to intervene." Minute Order of Dec. 8, 2021 (emphasis added). Although that order declined to give Qatar a formal opportunity to assert privilege in discovery, as an "Immunity Protocol" in the defendants' emergency motion had proposed, it did not bar Qatar from consulting with Allaham about his discovery responses in other ways.