# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BROIDY CAPITAL MANAGEMENT LLC and
ELLIOTT BROIDY,

        Plaintiffs,

   v.

NICHOLAS D. MUZIN, JOSEPH ALLAHAM,
GREGORY HOWARD, and STONINGTON
STRATEGIES LLC,

      Defendants.

Civil Action No. 1:19-cv-00150-DLF

## MEMORANDUM OF LAW IN OPPOSITION TO ARENT FOX'S MOTION FOR PROTECTIVE ORDER AND SANCTIONS

KASOWITZ BENSON TORRES LLP
Daniel R. Benson
Sarah Gibbs Leivick
Sarmad M. Khojasteh (*pro hac vice* forthcoming)
Henry B. Brownstein
David Tyler Adams (*pro hac vice* forthcoming)

*Counsel for Plaintiffs Broidy Capital
Management, LLC and Elliott Broidy*

Dated: October 17, 2023

Plaintiffs Broidy Capital Management LLC and Elliott Broidy respectfully submit this memorandum of law in opposition to Arent Fox's motion for a protective order and sanctions.

## PRELIMINARY STATEMENT

Arent Fox's motion is flatly contrary to controlling law.  None of the cases or authorities Arent Fox cites comes close to supporting the firm's false assertion that its former client Joseph Allaham was not entitled to provide its work product in his possession to plaintiffs.  In fact, Mr. Allaham owns that work product and is entitled to use it as he sees fit.  Accordingly, there was and is absolutely no bar to plaintiffs' use of them in this case.

Under District of Columbia law, all of Arent Fox's work product—including its "*internal notes and memoranda reflecting [its] views, thoughts and strategies"*—belongs to Mr. Allaham. D.C. Bar Comm. on Ethics & Prof. Resp., Formal Op. 333 (2005) ("Upon the termination of representation, an attorney is required to surrender to a client, to the client's legal representative, or to a successor in interest the entire 'file' containing the papers and property to which the client is entitled. *This includes copies of internal notes and memoranda reflecting the views, thoughts and strategies of the lawyer.*" (emphasis added)).[1]

Moreover, and in any event, the cases are uniform in holding that whatever interest a law firm may have in its work product, that interest does not and cannot override the interests of its client.  *See, e.g.*, *Polin v. Wisehart & Koch*, No. 00CIV.9624(AGS)(MHD), 2002 WL 1033807, at *2 (S.D.N.Y. May 22, 2002) ("[I]t is clear that when the interests of the client and the attorney [in work product, including opinion work product] clash—as here—it is the client's interest that

---

[1] Accordingly, if Arent Fox has any work product in its possession that it has not previously provided to Mr. Allaham, the firm is required to surrender that work product to him as well.

will prevail."); *Martin v. Valley Nat'l Bank,* 140 F.R.D. 291, 320-21 (S.D.N.Y. 1991).

As shown herein and in their response to Arent Fox's September 22, 2023 letter it attaches to its memorandum ("AF Mem."), plaintiffs' counsel "disregard[ed]" no ethical rules. AF Mem. 3.[2]  On the other hand, Arent Fox's disregard, in bringing this frivolous motion, for its duty of candor to the Court in failing to cite plainly controlling law plaintiffs brought to its attention in that response, and its disregard for its duties to its former client, is plain.[3]

Arent Fox's motion—which directly contravenes the express desires of its former client—is wholly devoid of merit and should be denied.

## **ARGUMENT**

I. **Under Well-Established Law, Allaham's Right to Use His Documents as He Desires—Including by Producing Them to Plaintiffs—Prevails Over Any Interest Arent Fox May Have**

The applicable legal and ethical authorities unequivocally establish that: Mr. Allaham, alone, owns all of the documents in his case file (and, thus, all of the documents at issue here) and that he is entitled to use those documents as he, and he alone, sees fit—including by voluntarily producing them to plaintiffs expressly for plaintiffs to receive, review, and use  in the manner plaintiffs have here; and (ii) any work-product interest in Mr. Allaham's case files that Arent may have is subordinate to Mr. Allaham's rights in the materials and cannot be invoked to block his desired use of them.

---

[2] A copy of that response is attached hereto as Exhibit A.

[3] The only supposed interest Arent Fox articulates is the "adversary process"—but that interest of course is in no way furthered by opposing the interests of its own client.  Arent Fox instead appears to still be working in the interests of Qatar, which paid its bills and directed the effort to cover up Qatar's unconscionable attack on American citizens for exercising their constitutionally protected rights to speak out against the wealthy country's tireless support for and funding of Hamas.

First, all of Arent Fox's work product—including documents reflecting the mental impressions of and work product generated by his attorneys on his behalf—belongs to Mr. Allaham.  *See* D.C. Bar Comm. on Ethics & Prof. Resp., Formal Op. 333 ("Upon the termination of representation, an attorney is required to surrender to a client, to the client's legal representative, or to a successor in interest the entire 'file' containing the papers and property to which the client is entitled. *This includes copies of internal notes and memoranda reflecting the views, thoughts and strategies of the lawyer.*" (emphasis added)); *see also In re Hughes*, No. 05-00488, 2006 WL 3019556, at *1 (Bankr. D.D.C. Oct. 20, 2006) ("Rule 1.16(d) of the D.C. Rules of Professional Responsibility makes clear that the files pertaining to an attorney's representation of a client are the property of the client.").

Second, the law is clear that Mr. Allaham's interest in using the documents as he sees fit—including by sharing his former counsel's work product with plaintiffs—prevails over any interest Arent Fox may have had in that work product.  *See, e.g.*, *In re Black Diamond Min. Co., LLC*, 507 B.R. 209, 216 (E.D. Ky. 2014) ("[A]ttorneys cannot invoke the work-product doctrine against their own clients."); *S.E.C. v. McNaul*, 271 F.R.D. 661, 667 (D. Kan. 2010) ("[A] law firm should not have an independent right to prevent production of its work product, even opinion work product, when the interests of the former client and the law firm are not aligned, and the interests of the former client show a compelling need for production of the information."); *M & C Corp. v. Erwin Behr GmbH & Co.*, No. 91-CV-74110-DT, 2008 WL 3066143, at *1 (E.D. Mich. Aug. 4, 2008) (holding that former attorneys could not invoke work product doctrine against Plaintiff, their former client, where the former client "has clearly indicated its preference . . . that the material be produced . . . ."); *Polin*, 2002 WL 1033807, at *2 ("[I]t is clear that when the interests of the client and the attorney [in the work product] clash—

as here—it is the client's interest that will prevail.").

In fact, Fed. R. Civ. P. 23(b)(3), the work product rule, by its terms, limits only discovery by a party and in no way limits an attorney's duties to the client.  *See Martin*, 140 F.R.D. at 320-21 ("[T]he rule does not give an attorney the right to withhold work product from his own client.").  "Indeed, the result for which [Arent Fox] presses would be strikingly inconsistent with the accepted principle that an attorney is obliged to serve in a fiduciary capacity to protect the client's interests." *Id.* at 320.

Arent Fox nonetheless asserts that "[m]any cases" have "made the point" that Mr. Allaham "has not waived—and could not waive—Arent Fox's right to protect its own work product from disclosure."  AF Mem. 6.  That is false—and Arent Fox does not cite a *single* case standing for that proposition.  The cases Arent Fox cites and blatantly mischaracterizes (AF Mem. 5-6) are entirely inapposite—none involved an attorney's attempt to claw back work product that the client owned, possessed, and voluntarily disclosed.  As the *Martin* court put it, the "crucial distinction between these cases and the present one is that none involved an invocation of the rule against the client or against the client's stated wishes and interests." *Id.* at 321; *see also In re Grand Jury Proc.*, 43 F.3d 966, 968 (5th Cir. 1994) (crime-fraud exception applicable to implicated client did not apply to innocent attorneys who therefore could not be compelled to produce their work product); *Moody v. I.R.S.*, 654 F.2d 795, 801 (D.C. Cir. 1981) (holding only that an attorney's misconduct could vitiate any right to assert work-product protection); *United States v. AT&T,* 642 F.2d 1285, 1299 (D.C. Cir. 1980) (holding only that voluntary disclosure of certain work product "not inconsistent with maintaining secrecy against opponents" does not, unlike disclosure of privileged communications, necessarily work a waiver

with respect to all work product);[4] *In re China Med. Techs., Inc.*, 539 B.R. 643, 646 (S.D.N.Y. 2015) (bankruptcy liquidator could not waive work-product protection as to documents possessed by bankruptcy estates which asserted such protection); *QBE Ins. Corp. v. Griffin*, No. 2:08-CV-949-MEF, 2009 WL 2913478, at *3 (M.D. Ala. Sept. 4, 2009) (implied waiver based on insurance company's failure to timely object in declaratory judgment action to discovery requests on work-product grounds did not prevent lawyer for insured in underlying case from asserting work-product protection); *In re Hechinger Inv. Co. of Delaware*, 303 B.R. 18, 26 (D. Del. 2003) (holding only that inadvertent production waived work-protection protection as to certain documents but not all the documents at issue).

## II.   Plaintiffs' Receipt, Review, and Use of Mr. Allaham's Documents Was Entirely Proper

Given that Mr. Allaham owned and was perfectly entitled to provide to plaintiffs the documents at issue, plaintiffs and their counsel were unquestionably entitled to receive, review and use those materials.  All of the cases Arent Fox cites involved *unauthorized* disclosures of materials owned by a separate party who objected to the disclosure and to counsel's review and use of the misappropriated materials.  *See United States v. Comco Mgmt. Corp.*, No. SACV08-0668-JVS RNBX, 2009 WL 4609595, at *1 (C.D. Cal. Dec. 1, 2009) (defendant could seek the return of its own documents that were disclosed to government without authorization); *Reinsdorf v. Skechers U.S.A., Inc.*, No. CV 10-7181 DDP (SSX), 2013 WL 12116415, at *4 (C.D. Cal. May 31, 2013) (defendant's non-managerial employee provided plaintiff with defendant-owned

---

[4] In quoting *AT&T* for the proposition that work-product protection is intended to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations," AF Mem. 5, Arent Fox omitted the rest of the sentence: "from the discovery attempts of the opponent."  Arent Fox did so because, apparently much to Arent Fox's chagrin, plaintiffs, having settled with Mr. Allaham, were no longer his opponent.

documents without authorization); *In re Shell Oil Refinery*, 143 F.R.D. 105, 109 (E.D. La. 1992)

(same).  Those cases are fundamentally inapposite to this case, which involves Mr. Allaham's

voluntary disclosure of materials that he—and he alone—owns.

Not surprisingly, given Mr. Allaham's ownership of the documents, none of the rules of

professional conduct and ethics opinions Arent Fox cites is in any way applicable here:

- D.C. Rule of Professional Conduct 3.4 applies only where "evidence received by the lawyer belongs to anyone other than the client" and requires the lawyer "to make a good-faith effort to preserve it and to return it to the owner."  Mr. Allaham is the owner of the documents, so the rule has no application.

- D.C. Rule of Professional Conduct 4.4(a), pertaining to the rights of third parties, is, as shown entirely inapplicable here, because no third-party rights were in any way violated—Mr. Allaham who owns the documents voluntarily produced them to plaintiffs for use in this case.

- D.C. Rule of Professional Conduct 4.4(b)—which "addresses the obligations of a lawyer who receives writings containing client secrets or confidences in material delivered by an adversary lawyer," D.C. Rule of Professional Conduct Rule 4.4(b), cmt. 2—does not apply because the materials in question were voluntarily and intentionally produced to plaintiffs by Mr. Allaham and were in no way "delivered by an adversary lawyer."  None of the cases cited by Arent Fox in support of Rule 4.4(b)'s applicability even involve or discuss D.C. Rule of Professional Conduct 4.4(b).[5]

---

[5] In any case, the authorities cited by Arent Fox regarding Rule 4.4 concern circumstances far afield from the facts here.  Most involve direct attorney solicitations of third-party *non-privilege holders* who were privy to privileged or confidential information by virtue of their positions as former high-level employees, executives, and directors.  *See Harris Davis Rebar, LLC v. Structural Iron Workers Loc. Union No. 1, Pension Tr. Fund, No. 17 C 6473*, 2019 WL 447622 (N.D. Ill. Feb. 5, 2019) (attorneys met with former officer and director of company against which they had ongoing litigation and accepted over 3,000 emails and 1,500 attachments); *Calise v. Brady Sullivan Harris Mills*, LLC, No. CV 18-100WES, 2019 WL 1397245 (D.R.I. Mar. 28, 2019) (attorneys took on as clients the former employees of a company against whom they had separate ongoing litigation); *Gifford v. Target Corp.*, 723 F. Supp. 2d 1110 (D. Minn. 2010) (attorneys solicited information from high-level corporate employee heavily exposed to privileged information).  Others similarly involve facts entirely unlike those here, *see In re Eisenstein*, 485 S.W.3d 759 (Mo. 2016) (in dissolution of marriage action, attorney used documents that husband had obtained from wife's personal email account without her knowledge); *Stengart v. Loving Care Agency, Inc.*, 990 A.2d 650 (N.J. 2010) (attorneys improperly accessed employee's private, password protected email account through a forensic examination of her work computer), or involve an attorney's refusal to return documents following legitimate mistakes, *see Marshall v. McGill,* No. CV 10-01436, 2011 WL 13118589,

- D.C. Rule of Professional Conduct 8.4(c) likewise does not apply here because there were absolutely no "dishonest acts," given that Mr. Allaham had full authority to provide the documents to plaintiffs.

- D.C. Bar Ethics Opinion 318—which pertains to "material known to be privileged" and for which the "privileged status is readily apparent on its face"—similarly has no application to the materials at issue here. As noted, those materials are either entirely non-privileged or contain solely Mr. Allaham's own communications with respect to which he was perfectly entitled to waive any privilege or protection. For the same reasons, *EEOC v. George Washington Univ.*, 502 F. Supp. 3d 62, 71 n.6 (D.D.C. 2020) 2has no applicability here.

Arent Fox's reference to Federal Rule of Civil Procedure 26(b)(5)(B) is likewise misplaced. Rule 26(b)(5)(B), which has nothing to do with a client's rights, applies solely to "information produced in discovery" and, therefore, does not govern the documents Mr. Allaham has voluntarily shared with plaintiffs outside of discovery. *See, e.g.*, *Eaglesmith v. Ray*, No. 2:11-CV-0098-JAM-JFM, 2012 WL 1554922, at *2 (E.D. Cal. May 1, 2012) (holding that documents disclosed first during a deposition were produced outside of discovery such that Rule 26(b)(5)(B) was not applicable).

## III.    Plaintiffs Are Entitled to Their Fees for Opposing Arent Fox's Motion

Plaintiffs respectfully requests that they be awarded their attorneys' fees incurred in opposing this frivolous motion. *See, e.g.*, *Scruggs v. Getinge USA, Inc.*, 258 F.R.D. 177, 180 (D.D.C. 2009) ("[u]nder Rule 11 and § 1927, the appropriate sanction for such a motion is an award of attorneys' fees reasonably incurred by plaintiff because of defendant's motion").

---

at *3 (D. Ariz. June 8, 2011) (attorney filed privileged document as an exhibit one hour after being informed of its mistaken production in discovery); *Wyndham Vacation Ownership, Inc. v. Slattery, Sobel & DeCamp, LLP,* No. 19-cv-1908-Orl78, 2020 WL 5876951, at *4 (M.D. Fla. Oct. 2, 2020) (same). Critically, not a single case cited by Arent Fox even approaches the facts here, where the privilege-holder intentionally used personal files related to his own representation from his own private email inbox.

## **CONCLUSION**

Arent Fox's motion should be denied, and plaintiffs awarded their attorneys' fees

incurred in responding to it.

Dated: October 17, 2023

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By: */s/ Daniel R. Benson*
Daniel R. Benson (*pro hac vice*)
Sarah G. Leivick (*pro hac vice*)
Sarmad M. Khojasteh (*pro hac vice*
forthcoming)
David Tyler Adams (*pro hac vice* forthcoming)
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700
dbenson@kasowitz.com
sleivick@kasowitz.com
skhojasteh@kasowitz.com
dadams@kasowitz.com

Henry B. Brownstein
D.C. Bar No. 1026042
1401 New York Avenue, Suite 401
Washington, D.C. 20005
Tel.: (202) 760-3400
hbrownstein@kasowitz.com

*Counsel for Plaintiffs Broidy Capital*
*Management and Elliott Broidy*