UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BROIDY CAPITAL MANAGEMENT LLC, et al.,

        *Plaintiffs*,

v.

NICOLAS D. MUZIN, et al.,

        *Defendants*.

No. 1:19-cv-00150-DLF

### ARENTFOX SCHIFF'S REPLY IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER AND SANCTIONS

The Court should enter an order (1) protecting work product of ArentFox Schiff ("Arent Fox") that Plaintiffs improperly possess and (2) sanctioning Plaintiffs for reviewing and using this material. As Arent Fox showed in its opening brief, Plaintiffs received and filed in this case documents that they do not dispute were clearly protected work product, after obtaining the documents from Arent Fox's former client, Joey Allaham. Because Mr. Allaham had no authority to turn the work product over to Plaintiffs, Plaintiffs' counsel had an ethical obligation to stop reviewing and using that material and to immediately return it to Arent Fox. But instead of doing so, Plaintiffs' counsel analyzed the material, filed out-of-context excerpts in the public record in support of their unfounded request for a "forensic examination" of Arent Fox's computer systems, as well as those of Plaintiffs' other remaining opponents and their counsel (which the Court has since rejected), and disregarded Arent Fox's requests to immediately return or destroy the material.

Nothing in Plaintiffs' opposition justifies this misconduct. Plaintiffs do not dispute that material received from Mr. Allaham (including documents filed in this case) reflect attorney work product and joint-defense communications. Plaintiffs' only defense of their improper

review and use of this information is that Mr. Allaham allegedly was entitled to receive the material after he terminated Arent Fox's representation and thus could provide the material to Plaintiffs and allow them to use the material however they wanted. But whether Mr. Allaham had a right *to receive* the "client file" in no way suggests that he also had a unilateral right *to waive* the work-product protection for material in the file. The work-product doctrine exists to promote the adversary process, so lawyers have an independent right to protect their work product from disclosure to nonclients. Moreover, that independent right exists precisely for cases like this one where a former client (like Mr. Allaham) has been dismissed from a case and no longer needs the work product, but others (like the remaining defendants in the case) have a strong interest in protecting the material, which includes joint-defense communications, because the adversary process is still ongoing.

Plaintiffs cite no authority suggesting that Mr. Allaham could unilaterally waive work-product protections under these circumstances. Nor do they dispute that any trial lawyer would recognize the protected nature of this material or that they ignored Arent Fox's demands to return the material and to stop using it. Sanctions accordingly are warranted. Once Arent Fox advised Plaintiffs' counsel of its claim of protection over this material, Plaintiffs' counsel had to stop reviewing the material, return or destroy the material, and retrieve any copies disseminated to others. They refused, arguing only that Mr. Allaham had "authority" to give them the documents. Mr. Allaham had no such "authority" under settled law, and even if he did, Plaintiffs could not ignore Arent Fox's requests to allow the Court to address the issue. For all these reasons, Plaintiffs' counsel have improperly disregarded numerous rules of professional responsibility. That sort of sharp litigation tactic should not be tolerated. As a remedy, the Court

should direct Plaintiffs to immediately return or destroy Arent Fox's work product and enter an appropriate sanction.

### A. Plaintiffs Have No Right To Possess or Use Arent Fox's Work Product.

As Arent Fox explained in its opening brief (ECF No. 226 at 3-4), Plaintiffs undisputedly obtained and filed documents in this proceeding that constitute attorney work product and are covered by a joint-defense agreement. Among other things, Plaintiffs' September 15, 2023, reply alone cites to and attaches draft discovery responses and emails that on their face reflect Arent Fox's mental impressions, conclusions, opinions, legal theories, and trial strategy. (*Id.* at 3 (citing ECF Nos. 215-2, 215-3, 215-4, 215-7, 215-8, 215-21).) Many of these documents actually use words like "strategy," and "thinking," and are in some cases clearly labeled "Privileged & Confidential Attorney Work Product." (*Id.*) These documents, on their face, constitute work product under Federal Rule of Civil Procedure 26(b)(3). (ECF No. 226 at 4.)

Plaintiffs do not dispute these points—nor do they argue that any exception overrides the work-product protection for these materials. Instead, they insist only that (a) Mr. Allaham allegedly "owns all of the documents in his case file" and (b) for that reason, he alone could determine whether to turn those documents over to Plaintiffs "as he sees fit." (ECF No. 231 at 2-3.) But regardless of Mr. Allaham's rights to obtain the case file, Plaintiffs' contention is wrong because "(b)" does not follow from "(a)." Under D.C. Rule of Professional Responsibility 1.16 and D.C. Bar Ethics Opinion 333 (which interprets Rule 1.16), lawyers must "surrender[] papers and property to which the client is entitled" upon "termination of representation." Of course, here Plaintiffs appear to have received Arent Fox's work product *before* this point. On August 25, 2023, Plaintiffs filed material received from Mr. Allaham (ECF No. 197) along with a lengthy affidavit he had previously executed on August 19, 2023 (ECF No. 197-2), even though Arent Fox's representation was not terminated until August 24, 2023 (ECF No. 212-1). But even

putting aside the timing, Rule 1.16 and Ethics Opinion 333 at most give Mr. Allaham a right to access portions of his client file—not to unilaterally waive work-product protection for documents in the file. Nothing in Rule 1.16 or Ethics Opinion 333 provides that a client's right to obtain (or "own") an attorney's work product implies a further right to unilaterally waive protection for that work product against disclosure to third parties.

Any other rule would contradict decades of settled law. The D.C. Circuit and numerous other courts have established that *both* lawyers and clients have an independent right to assert the work-product protection and that clients accordingly cannot waive that protection on their own. *See, e.g.*, *Moody v. IRS*, 654 F.2d 795, 801 (D.C. Cir. 1981) ("[T]he work product privilege creates a legally protectable interest in non-disclosure in two parties: lawyer and client." (internal footnote omitted)); *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) ("*AT&T*") (client waiver does not preclude law firm's assertion of work-product protection); *In re Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir. 1994) (client waiver "will not deprive the attorney of his own work product privilege"); *QBE Ins. Corp. v. Griffin*, No. 08-cv-949, 2009 WL 2913478, at *3 (M.D. Ala. Sept. 4, 2009) (holding that clients cannot "unilaterally waive the privilege" and that "the attorney may contest disclosure even in the face of a client's waiver"); *In re Hechinger Inv. Co. of Delaware*, 303 B.R. 18, 24-25 (D. Del. 2003) ("[W]ork product is the privilege of the attorney, and thus the attorney is the one who may waive it." (internal quotation marks and citation omitted)); *see also Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) ("An attorney has an independent interest in privacy, even when the client has waived its own claim, as long as invoking the privilege would not harm the client's interests."); *In re China Med. Techs., Inc.*, 539 B.R. 643, 658 (S.D.N.Y. 2015) ("[W]ork product protection belongs to … counsel and cannot be waived by the client" (citation omitted)).

Plaintiffs erroneously call these cases "inapposite" because none allegedly "involved an invocation of the [work-product] rule against the client or against the client's stated wishes and interests." (ECF No. 231 at 4 (quoting *Martin v. Valley Nat'l Bank of Arizona*, 140 F.R.D. 291, 321 (S.D.N.Y. 1991)).) That contention is wrong on several levels. Many of these cases upheld lawyers' assertions of work product in the face of intentional waivers of that protection by their clients or former clients. For example, in *In re China Medical Technologies*, the client's successor (a liquidating trustee) expressly waived the work-product protection and then subpoenaed the "client file" possessed by former counsel, yet the court held that the waiver could not override the lawyers' independent interest in asserting work-product protection. 539 B.R. at 658 ("[E]ven assuming that the Liquidator owns those documents for which Appellees have asserted work-product protection, he cannot waive this protection unilaterally."). Likewise, in *In re Grand Jury Proceedings*, former clients expressly waived privilege as part of a plea agreement, yet despite that waiver, the Fifth Circuit reversed an order directing turnover of a law firm's work product. 43 F.3d at 968, 972 (reasoning that "the work product privilege belongs to both the client and the attorney, either one of whom may assert it"). And in *Hobley*, a law firm's former client similarly "waived any claims to either attorney-client or work-product privilege," yet the Seventh Circuit reversed an order compelling production of the law firm's work product because the firm objected and this objection was "not inconsistent with the [former client's] interests in this litigation." 433 F.3d at 948-49.

The same is true here. Mr. Allaham has no genuine interest in disclosing Arent Fox's work product because he is no longer a party to this case. At the same time, Arent Fox has a strong interest in withholding its work product both "to protect the adversary trial process itself" and "to protect the work of the attorney from disclosure for the benefit of the attorney." (ECF

No. 226 at 5 (quoting *Moody*, 654 F.2d at 800 and *In re Special Sept. 1978 Grand Jury (II)*, 640 F.2d 49, 63 (7th Cir. 1980)).) Plaintiffs' suggestion that they are no longer Arent Fox's "opponent" (ECF No. 231 at 5 n.4) is just plain wrong. Plaintiffs and Arent Fox unquestionably remain adverse, and even more clearly were adverse at the time Plaintiffs obtained and used Arent Fox's work product. Plaintiffs used snippets of Arent Fox's work product out of context in an attempt to justify their motion seeking a complete "forensic examination" of Arent Fox's computers. They then served Arent Fox with a subpoena (which potentially was itself informed by their counsel's improper review of Arent Fox's work product). That subpoena remains pending.

More importantly, Arent Fox's mental impressions, legal theories, and trial strategies undisputedly were formed and communicated within a "zone of privacy." *Moody*, 654 F.2d at 800. Many of these materials also are separately protected by a joint-defense privilege. As the D.C. Circuit explained in *AT&T*, "the case against [work-product] waiver is even stronger" where—as here—lawyers seek to protect their work product for their own benefit and the benefit of third parties with common interests who reasonably expect that the materials will remain protected. *See* 642 F.2d. at 1298-1300; *see also M & C Corp. v. Erwin Behr GmbH & Co.*, No. 91-CV-74110, 2008 WL 3066143, at *3 (E.D. Mich. Aug. 4, 2008) (cited by Plaintiffs; recognizing that lawyers "should not have to disclose documents which might violate a duty of nondisclosure owed to a third party"). This is not a situation where the litigation in which the work product was created is long over. Plaintiffs have used, and intend to continue to use, Arent Fox's work product, including communications made pursuant to a joint defense arrangement, in the very same litigation for which that material was created.

Beyond making ungrounded and wildly unprofessional aspersions (*see* ECF No. 231 at 2 n.3), Plaintiffs do not acknowledge the "adversary trial process" rationale for the work-product doctrine or attempt to explain how disclosing Arent Fox's work product would serve that process. It would not. A rule allowing Plaintiffs to retain and use work product and joint-defense communications in the litigation where the work product and communications were created would impermissibly permit Plaintiffs to "tak[e] a free ride on the research and thinking of [their] opponent's lawyer." *Hobley*, 433 F.3d at 949 (citation omitted). Plaintiffs' proposed rule also would drastically change how lawyers document and communicate trial strategy. And such a rule would have a massive chilling effect on the ability of lawyers to form effective joint-defense or other "common interest" arrangements. Lawyers enter into joint defense arrangements with the expectation that their shared communications and work product will remain protected. If a former client, who has settled out of the litigation, suddenly obtains the unilateral ability to turn over their former lawyer's work product, including joint-defense material, to that party's former adversary while the litigation remains pending, attorneys will need to think long and hard about sharing any material. To provide lawyers with a protected zone of privacy in which to prepare for trial, courts sensibly have recognized that clients cannot unilaterally waive work-product protections in the manner that Plaintiffs claim here.

Nothing in the cases that Plaintiffs have cited is to the contrary. Some of Plaintiffs' cases stand for the unremarkable proposition that the right of a client (or its successor) to access the "case file" for a lawsuit includes a right to demand transfer of work product in the file to new counsel to use as the lawsuit continues. *E.g., In re Black Diamond Mining Co.*, 507 B.R. 209, 216-17 (E.D. Ky. 2014) (explaining that such turnover is warranted because it protects the client's interests in the ongoing litigation and "creates no penalty for an attorney's diligence and

preparation and therefore presents little risk to the adversarial system" or of "free riding on rival counsel's preparation"); *Martin*, 140 F.R.D. at 320-21 (same; turnover of work product to counsel "now litigating on behalf of the former client" does not disserve "the integrity of the adversary process" or allow adversaries to "obtain[] a free ride on the work of the attorney"); *see also M & C Corp.*, 2008 WL 3066143, at *2-3 (same; following *Martin* and concluding that transfer from former counsel to new counsel would not disserve the "adversary process" and "free ride" rationales underlying the work-product doctrine). Here, Plaintiffs do not claim to be new counsel for Allaham, which would be nonsensical given that Allaham is no longer a party to this case. Therefore, these cases in no way support Plaintiffs' position.

      Plaintiffs' other cases involve the entirely different situation where lawyers and their former clients are litigating *against each other* or the lawyers' work product otherwise is "at issue." *E.g.*, *Polin v. Wisehart & Koch*, No. 00CIV.9624, 2002 WL 1033807, at *2 (S.D.N.Y. May 22, 2002) (involving "a malpractice claim against defendants based on their conduct in representing plaintiff in the prior case" where "the work product at issue here reflects, in the most direct way, the performance of the attorneys in that case"); *SEC v. McNaul*, 271 F.R.D. 661, 667 (D. Kan. 2010) ("[D]efendants, as former clients, have clearly placed the advice of their former law firm at issue in this case" as a defense and therefore could rely on work product to support that defense). Where a lawyer and their former client are litigating against each other about the quality of a prior representation, the rationale underlying any work product protection in that prior matter ceases to exist because the prior matter has concluded. No one disputes that disclosure of work product and other privileged information should occur in these kinds of situations. But that is not the situation here. Mr. Allaham is no longer a party to this case and

preparation and therefore presents little risk to the adversarial system" or of "free riding on rival counsel's preparation"); *Martin*, 140 F.R.D. at 320-21 (same; turnover of work product to counsel "now litigating on behalf of the former client" does not disserve "the integrity of the adversary process" or allow adversaries to "obtain[] a free ride on the work of the attorney"); *see also M & C Corp.*, 2008 WL 3066143, at *2-3 (same; following *Martin* and concluding that transfer from former counsel to new counsel would not disserve the "adversary process" and "free ride" rationales underlying the work-product doctrine). Here, Plaintiffs do not claim to be new counsel for Allaham, which would be nonsensical given that Allaham is no longer a party to this case. Therefore, these cases in no way support Plaintiffs' position.

      Plaintiffs' other cases involve the entirely different situation where lawyers and their former clients are litigating *against each other* or the lawyers' work product otherwise is "at issue." *E.g.*, *Polin v. Wisehart & Koch*, No. 00CIV.9624, 2002 WL 1033807, at *2 (S.D.N.Y. May 22, 2002) (involving "a malpractice claim against defendants based on their conduct in representing plaintiff in the prior case" where "the work product at issue here reflects, in the most direct way, the performance of the attorneys in that case"); *SEC v. McNaul*, 271 F.R.D. 661, 667 (D. Kan. 2010) ("[D]efendants, as former clients, have clearly placed the advice of their former law firm at issue in this case" as a defense and therefore could rely on work product to support that defense). Where a lawyer and their former client are litigating against each other about the quality of a prior representation, the rationale underlying any work product protection in that prior matter ceases to exist because the prior matter has concluded. No one disputes that disclosure of work product and other privileged information should occur in these kinds of situations. But that is not the situation here. Mr. Allaham is no longer a party to this case and

there is no cognizable dispute between Mr. Allaham and Arent Fox. These cases thus do not support Plaintiffs' contentions.

What Plaintiffs cases do not show is that a client's right to access the "client file" implies a right to unilaterally waive the work-product protection in litigation in which the client is no longer a party, especially where the remaining parties have a joint-defense interest in the protected material. As explained above, Arent Fox is not disputing that Mr. Allaham can obtain the "case file" under Rule 1.16. The point is that this right does not mean that he can unilaterally waive the protections associated with material in the file by giving that material to Plaintiffs. Mr. Allaham's rights to the file do not give Plaintiffs rights to the file. On the contrary, the basic principles underlying the work-product doctrine—including creating a zone of privacy for attorneys to develop theories and trial strategy, promoting the integrity of the adversary process, and deterring free riding on other lawyer's work—show that Plaintiffs have no rights to Arent Fox's work product. The Court accordingly should order its return or destruction.

      **B.    The Court Should Sanction Plaintiffs' Counsel for Improperly Reviewing and Using Protected Materials.**

The Court also should impose an appropriate sanction. Arent Fox notified Plaintiffs that they had improperly received protected documents through its September 15, 2023 sur-reply and a September 22, 2023 letter demanding return of the documents under Federal Rule of Civil Procedure 26(b)(5)(B). (*See* ECF No. 223 at 9-11; ECF No. 226-1.) At that point, Plaintiffs had an obligation under Rule 26(b)(5)(B) to "return, sequester, or destroy" this material until the claim of protection was resolved. Yet Plaintiffs refused, insisting that Mr. Allaham allegedly had waived the protection. (*See* ECF No. 231-1.) That response itself was improper. *EEOC v. George Washington Univ.*, 502 F. Supp. 3d 62, 78 (D.D.C. 2020) ("[O]nce Rule 26(b)(5)(B) is invoked, the resolution of the claim of privilege is in the hands of the court, regardless of the party in

possession's belief that the documents were not privileged, and regardless of whether the documents were in fact privileged" (internal quotation marks and alterations omitted)).

It does not matter that Rule 26(b)(5)(B) refers to information "produced in discovery," as Plaintiffs erroneously contend. (ECF No. 231 at 7.) As Arent Fox explained in its opening brief (ECF No. 226 at 4), the requirements of Rule 26(b)(5)(B) still apply by analogy to disclosures outside the discovery process where (as here) lawyers request return or destruction of disclosed material based on a claim of privilege. *See*, *e.g.*, *George Washington Univ.*, 502 F. Supp. 3d at 71 n.6; *Reinsdorf v. Skechers U.S.A., Inc.*, No. CV 10-7181, 2013 WL 12116415, at *4 (C.D. Cal. May 31, 2013). Whether the rule applies directly or by analogy, Plaintiffs had the same obligation: "an attorney who has been informed that she possesses material over which a claim of privilege has been made must not review that material." *George Washington Univ.*, 502 F. Supp. 3d at 75. Plaintiffs' disregard of this responsibility alone warrants sanctions.

The Court also should impose sanctions for other ethics violations. As explained above, Plaintiffs' counsel do not dispute having received material that on its face constitutes work product, including draft discovery responses with substantive attorney comments, emails expressly discussing attorney "strategy" and "thinking," and other documents clearly labeled "Privileged & Confidential Attorney Work Product." (*See* ECF No. 226 at 3-4.) Plaintiffs' only response is that Mr. Allaham ostensibly "owns" this material and therefore could give it to Plaintiffs. (*See* ECF No. 231 at 6-7 (claiming that solely on this basis, there was no violation of D.C. Rules of Professional Conduct 3.4, 4.4(a), 4.4(b), or 8.4(c)).) For the reasons explained above, that contention is unavailing. Mr. Allaham's right to receive (or "own") the "client file" does not give him a right to unilaterally waive Arent Fox's work-product protection. Plaintiffs' counsel therefore could not ethically review or use Arent Fox's work product.

Nor is this case "afield" from those cited in Arent Fox's opening brief, as Plaintiffs incorrectly suggest. (ECF No. 231 at 6 n.5.) This case is no different than numerous others where courts have sanctioned lawyers for reviewing material that was obviously disclosed to them by a party without authority to make the disclosure. *E.g., Marshall v. McGill*, No. CV 10-01436, 2011 WL 13118589, at *3 (D. Ariz. June 8, 2011) (awarding attorneys' fees and costs); *Wyndham Vacation Ownership, Inc. v. Slattery, Sobel & DeCamp, LLP*, No. 19-cv-1908-Orl78, 2020 WL 5876951, at *4 (M.D. Fla. Oct. 2, 2020) (same); *Gifford v. Target Corp.*, 723 F. Supp. 2d 1110, 1117, 1119-23 (D. Minn. 2010) (disqualifying counsel); *In re Eisenstein*, 485 S.W.3d 759, 762-64 (Mo. 2016) (en banc) (suspending counsel); *Harris Davis Rebar, LLC v. Structural Iron Workers Local Union No. 1*, No. 17 C 6473, 2019 WL 447622, at *7 (N.D. Ill. Feb. 5, 2019) (ordering destruction of protected documents and awarding attorneys' fees and costs).

Finally, some sanction is all the more appropriate here given the circumstances under which Plaintiffs appear to have received material from Mr. Allaham. Under D.C. Rule of Professional Conduct 4.2, Plaintiffs' counsel could not communicate or cause someone else to communicate with Mr. Allaham while Arent Fox represented him. Yet that appears to be exactly what occurred. As Arent Fox has explained (ECF 226 at 8; ECF No. 212 at 2-3), its representation ended on August 24, 2023—just one day before Plaintiffs filed documents received from Mr. Allaham with the court, together with a lengthy declaration that Mr. Allaham executed five days earlier on August 19, 2023 (without Arent Fox's knowledge and when Arent Fox still represented him). Plaintiffs' counsel has never explained how they could have settled with Mr. Allaham, received documents from him, and obtained a declaration executed while he was represented by Arent Fox without communicating with him in violation of Rule 4.2.

Plaintiffs' total silence on this issue is telling and one more reason that the Court should not permit their improper review and use of Arent Fox's work product.

## CONCLUSION

For the foregoing reasons, Arent Fox respectfully requests that the Court grant its motion.

Dated October 20, 2023

*/s/ Randall A. Brater*
Randall A. Brater (D.C. Bar # 475419)
ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, DC 20006-5344
(202) 857-6000
randall.brater@afslaw.com

*Attorneys for ArentFox Schiff LLP*