**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 1

**Broidy v. Muzin, 19-CV-00150-DLF**

**State of Qatar Privilege Log - Joseph Allaham / Lexington Strategies**

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|---|---|---|---|
| **PRIV-ALLAHAM-001** | September 10, 2017 | Joey Allaham <joeyallaham@icloud.com> | <conciergenyc@stregis.com> | | | | VCDR - Arts. 24, 27 | Confidential email communication and memorandum regarding diplomatic strategy to achieve Qatar's foreign policy objectives, prepared by Nicolas Muzin for Qatar. |

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 2

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Nicolas Muzin / Stonington Strategies

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|---|---|---|---|
| **PRIV-MUZIN-001*** | December 5, 2017 | Nicolas Muzin <nickmuzin@gmail.com> | Greg Howard <ghoward@conovergould.com> | | | | VCDR - Arts. 24, 27 | Confidential email communication regarding diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-MUZIN-002*** | December 5, 2017 | Nicolas Muzin <nickmuzin@gmail.com> | Greg Howard <ghoward@conovergould.com> | | | | VCDR - Arts. 24, 27 | Confidential email communication regarding diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-MUZIN-003** | December 7, 2017 | | | | | Liam Swords; Nick Muzin; Michael Casey; Jacob Kass; Kevin Sexton; Kareem Abouelsoud; Karl Notturno; Chris Berardini; Jassim Mansour Al-Thani; Jamie Gallagher; Erin Pelton; Kevin Fitzmaurice; Jim Moran; Naser Wali; Vinoda Basnayake; Sara Al-Saadi; Monica Huegel; Jassim Al-Asmakh; Greg Howard; Mark Braden; Jeff Miller; Mohammed Abdulaziz Al-Attiyah; Dean Dilley; Carly Hawkins; Robert Crowe; Barry Bennett; Jeff Borda; Abdulla Al-Mohannadi; Jeff Klueter; Christopher Cushing; Sheikha Kaylee; Katie Lewis; Doug Barry; Heather Conover | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials scheduling meeting and discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**Broidy v. Muzin, 19-CV-00150-DLF**
**State of Qatar Privilege Log - Nicolas Muzin / Stonington Strategies**

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|---|---|---|---|
| **PRIV-MUZIN-004** | December 14, 2017 | | | | | Liam Swords; Nick Muzin; Michael Casey; Jacob Kass; Kevin Sexton; Kareem Abouelsoud; Karl Notturno; Chris Berardini; Jassim Mansour Al-Thani; Jamie Gallagher; Erin Pelton; Kevin Fitzmaurice; Jim Moran; Naser Wali; Vinoda Banayake; Sara Al-Saadi; Monica Huegel; Jassim Al-Asmakh; Greg Howard; Mark Braden; Jeff Miller; Mohammed Abdulaziz Al-Attiyah; Dean Dilley; Carly Hawkins; Robert Crowe; Barry Bennett; Jeff Borda; Abdulla Al-Mohannadi; Jeff Klueter; Christopher Cushing; Sheikha Kaylee; Katie Lewis; Doug Barry; Heather Conover | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-MUZIN-005** | December 18, 2017 | | | | | Liam Swords; Nick Muzin; Michael Casey; Jacob Kass; Kevin Sexton; Kareem Abouelsoud; Karl Notturno; Chris Berardini; Jassim Mansour Al-Thani; Jamie Gallagher; Erin Pelton; Kevin Fitzmaurice; Jim Moran; Naser Wali; Vinoda Banayake; Sara Al-Saadi; Monica Huegel; Jassim Al-Asmakh; Greg Howard; Mark Braden; Jeff Miller; Mohammed Abdulaziz Al-Attiyah; Dean Dilley; Carly Hawkins; Robert Crowe; Barry Bennett; Jeff Borda; Abdulla Al-Mohannadi; Jeff Klueter; Christopher Cushing; Sheikha Kaylee; Katie Lewis; Doug Barry; Heather Conover | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing work product related to diplomatic and government-relations strategy to achieve Qatar's foreign policy objectives. |

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Nicolas Muzin / Stonington Strategies

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|---|---|---|---|
| PRIV-MUZIN-006 | December 18, 2017 | | | | | Chris Berardini<br>Joey Allaham<br>Frank Vitello<br>Nick Muzin<br>Jamal Benomar | VCDR - Arts. 24, 27 | Confidential chat communication discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-MUZIN-007 | December 18, 2017 | | | | | Chris Berardini<br>Joey Allaham<br>Frank Vitello<br>Nick Muzin<br>Jamal Benomar | VCDR - Arts. 24, 27 | Confidential chat communication discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-MUZIN-008 | January 29, 2018 | | | | | Nick Muzin<br>Ali Al-Thawadi<br>Tareq Al-Saei | VCDR - Arts. 24, 27<br>Deliberative Process Privilege | Confidential chat communication with Qatari officials related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-MUZIN-009* | March 8, 2018 | | | | | Liam Swords; Nick Muzin; Michael Casey; Jacob Kass; Kevin Sexton; Kareem Abouelsoud; Karl Notturno; Chris Berardini; Jassim Mansour Al-Thani; Jamie Gallagher; Erin Pelton; Kevin Fitzmaurice; Jim Moran; Naser Wali; Vinoda Banayake; Sara Al-Saadi; Monica Huegel; Jassim Al-Asmakh; Greg Howard; Mark Braden; Jeff Miller; Mohammed Abdulaziz Al-Attiyah; Dean Dilley; Carly Hawkins; Robert Crowe; Barry Bennett; Jeff Borda; Abdulla Al-Mohannadi; Jeff Klueter; Christopher Cushing; Sheikha Kaylee; Katie Lewis; Doug Barry; Heather Conover | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing work product related to diplomatic and government-relations strategy to achieve Qatar's foreign policy objectives. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**Broidy v. Muzin, 19-CV-00150-DLF**
**State of Qatar Privilege Log - Nicolas Muzin / Stonington Strategies**

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|---|---|---|---|
| **PRIV-MUZIN-010** | March 13, 2018 | | | | | Liam Swords; Nick Muzin; Michael Casey; Jacob Kass; Kevin Sexton; Kareem Abouelsoud; Karl Notturno; Chris Berardini; Jassim Mansour Al-Thani; Jamie Gallagher; Erin Pelton; Kevin Fitzmaurice; Jim Moran; Naser Wali; Vinoda Banayake; Sara Al-Saadi; Monica Huegel; Jassim Al-Asmakh; Greg Howard; Mark Braden; Jeff Miller; Mohammed Abdulaziz Al-Attiyah; Dean Dilley; Carly Hawkins; Robert Crowe; Barry Bennett; Jeff Borda; Abdulla Al-Mohannadi; Jeff Klueter; Christopher Cushing; Sheikha Kaylee; Katie Lewis; Doug Barry; Heather Conover | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing work product related to diplomatic and government-relations strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-MUZIN-011\*** | March 13, 2018 | | | | | Liam Swords; Nick Muzin; Michael Casey; Jacob Kass; Kevin Sexton; Kareem Abouelsoud; Karl Notturno; Chris Berardini; Jassim Mansour Al-Thani; Jamie Gallagher; Erin Pelton; Kevin Fitzmaurice; Jim Moran; Naser Wali; Vinoda Banayake; Sara Al-Saadi; Monica Huegel; Jassim Al-Asmakh; Greg Howard; Mark Braden; Jeff Miller; Mohammed Abdulaziz Al-Attiyah; Dean Dilley; Carly Hawkins; Robert Crowe; Barry Bennett; Jeff Borda; Abdulla Al-Mohannadi; Jeff Klueter; Christopher Cushing; Sheikha Kaylee; Katie Lewis; Doug Barry; Heather Conover | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing work product related to diplomatic and government-relations strategy to achieve Qatar's foreign policy objectives. |

**Broidy v. Muzin, 19-CV-00150-DLF**
**State of Qatar Privilege Log - Nicolas Muzin / Stonington Strategies**

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|---|---|---|---|
| **PRIV-MUZIN-012** | March 26, 2018 | | | | | Joey Allaham<br>Nick Muzin | VCDR - Arts. 24, 27 | Confidential chat communication drafting communication to Qatari official Sheikh Mohammed discussing work-product completed in relation to diplomatic strategy to achieve Qatar's foreign policy objectives. |

\*Qatar asserts privilege over only a portion of the documents marked with an asterisk.  After Mr. Muzin and Stonington Strategies produce redacted versions of these documents, Qatar will provide production Bates numbers.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 3

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Gregory Howard

| Privilege Identifier | Document Date | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|
| **PRIV-HOWARD-001** | August 8, 2017 | Greg Howard;<br>Kevin Fitzmaurice | VCDR - Arts. 24, 27 | Confidential chat communication and memoranda prepared for Embassy officials summarizing work-product related to proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-HOWARD-002** | August 9, 2017 | Brendan Kelsay;<br>Kevin Fitzmaurice;<br>Liam Swords;<br>Sara Al-Saadi;<br>Jassim M Al-Thani | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-HOWARD-003** | August 10, 2017 | | VCDR - Arts. 24, 27 | Confidential memorandum prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-HOWARD-004** | September 12, 2017 | Greg Howard;<br>Brendan Kelsay | VCDR - Arts. 24, 27 | Confidential chat communication and memorandum prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-HOWARD-005** | September 13, 2017 | Greg Howard;<br>Sara Al-Saadi | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy official reflecting Embassy's request for advice related to proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-HOWARD-006** | September 29, 2017 | Greg Howard;<br>Chris Hayes;<br>Jeff Klueter;<br>Jassim M Al-Thani;<br>Sara Al-Saadi | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials attaching memorandum summarizing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-HOWARD-007** | October 5, 2017 | Greg Howard;<br>Liam Swords;<br>Brendan Kelsay;<br>Kevin Fitzmaurice;<br>Chris Hayes | VCDR - Arts. 24, 27 | Confidential chat communication discussing proposed diplomatic strategy for Embassy to achieve Qatar's foreign policy objectives. |

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Gregory Howard

| Privilege Identifier | Document Date | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|
| PRIV-HOWARD-008 | October 9, 2017 | Greg Howard;<br>Liam Swords;<br>Chris Hayes;<br>Brendan Kelsay;<br>Kevin Fitzmaurice | VCDR - Arts. 24, 27 | Confidential chat communication and memoranda prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-HOWARD-009 | October 16, 2017 | Greg Howard;<br>Sara Al-Saadi;<br>Mohammed Abdulaziz Al-Attiyah | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-HOWARD-010 | October 17, 2017 | Greg Howard;<br>Jeff Klueter;<br>Sara Al-Saadi;<br>Jassim M Al-Thani | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials attaching memorandum summarizing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-HOWARD-011 | October 18, 2017 | Greg Howard;<br>Jeff Klueter;<br>Sara Al-Saadi | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy official attaching document summarizing proposed work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-HOWARD-012 | October 19, 2017 | Greg Howard;<br>Sara Al-Saadi;<br>Mohammed Abdulaziz Al-Attiyah | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-HOWARD-013 | October 22, 2017 | Greg Howard;<br>Chris Hayes | VCDR - Arts. 24, 27 | Confidential chat communication and memorandum prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-HOWARD-014 | October 23, 2017 | Greg Howard;<br>Jeff Klueter;<br>Sara Al-Saadi;<br>Jassim M Al-Thani | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-HOWARD-015 | October 23, 2017 | Greg Howard;<br>Jeff Klueter;<br>Sara Al-Saadi;<br>Jassim M Al-Thani | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials attaching memorandum summarizing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Gregory Howard

| Privilege Identifier | Document Date | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|
| PRIV-HOWARD-016 | October 24, 2017 | Greg Howard; Jeff Klueter; Sara Al-Saadi | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy official requesting advice and attaching memoranda related to proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-HOWARD-017 | October 28, 2017 | Greg Howard; Sara Al-Saadi | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy official discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-HOWARD-018 | November 6, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication and attachments prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-HOWARD-019 | November 6, 2017 | Greg Howard; Jeff Klueter; Sara Al-Saadi; Jassim M Al-Thani; Mohammed Abdulaziz Al-Attiyah | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials attaching memorandum summarizing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-HOWARD-020 | November 7, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication and attachment reflecting work-product prepared for Embassy discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-HOWARD-021 | November 10, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication and attachments prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Gregory Howard

| Privilege Identifier | Document Date | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|
| **PRIV-HOWARD-022** | November 16, 2017 | Greg Howard; Jeff Klueter; Jeff Borda; Jassim M Al-Thani; Sara Al-Saadi; Mohammed Abdulaziz Al-Attiyah | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-HOWARD-023** | November 21, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication discussing contents of documents maintained at Embassy and attachments prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-HOWARD-024** | November 26, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication and attachment prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-HOWARD-025** | November 27, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication and attachments prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-HOWARD-026** | November 27, 2017 | Greg Howard; Kevin Fitzmaurice | VCDR - Arts. 24, 27 | Confidential chat communication discussing documents maintained at Embassy related to Qatar's diplomatic strategy. |

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Gregory Howard

| Privilege Identifier | Document Date | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|
| **PRIV-HOWARD-027** | November 28, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication and attachments prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-HOWARD-028** | November 28, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication and attachments prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-HOWARD-029** | November 29, 2017 | Greg Howard; Jeff Klueter; Sara Al-Saadi; Mohammed Abdulaziz Al-Attiyah | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials attaching document and discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-HOWARD-030** | November 30, 2017 | Sara Al-Saadi; Mohammed Abdulaziz Al-Attiyah; Monica Huegel; Abdulla Al-Mohannadi; Carly Hawkins; Barry Bennett; Jeff Klueter; Liam Swords; Kevin Fitzmaurice; Jeff Borda; James Gallagher; Jeff Miller; Katie Lewis; Mark Braden; Erin Pelton; Sheikha Kaylee; Vinoda Basnayake; Robert Crowe; Dean Dilley; Christopher Cushing; Jim Moran; Nicolas Muzin; Doug Barry; Heather Conover | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials scheduling meeting and discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-HOWARD-031** | December 1, 2017 | Greg Howard; Liam Swords | VCDR - Arts. 24, 27 | Confidential chat communication discussing documents maintained at Embassy related to Qatar's diplomatic strategy. |

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Gregory Howard

| Privilege Identifier | Document Date | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|
| **PRIV-HOWARD-032** | December 12, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication and memoranda prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-HOWARD-033** | December 15, 2017 | Greg Howard; Jeff Klueter; Sara Al-Saadi; Jassim M Al-Thani | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials attaching memorandum summarizing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-HOWARD-034** | December 15, 2017 | Greg Howard; Mohammed Abdulaziz Al-Attiyah | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy official attaching memorandum summarizing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 4

**Broidy v. Muzin, 19-CV-00150-DLF**
**State of Qatar Privilege Log - Heather Conover**

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Privilege(s) | Description |
|---|---|---|---|---|---|---|---|
| **PRIV-CONOVER-001*** | December 5, 2017 | Nicolas Muzin <nickmuzin@gmail.com> | Greg Howard <ghoward@conovergould.com> | | | VCDR - Arts. 24, 27 | Confidential email communication regarding diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-CONOVER-002*** | December 5, 2017 | Nicolas Muzin <nickmuzin@gmail.com> | Greg Howard <ghoward@conovergould.com> | | | VCDR - Arts. 24, 27 | Confidential email communication regarding diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-CONOVER-003*** | December 5, 2017 | Nicolas Muzin <nickmuzin@gmail.com> | Greg Howard <ghoward@conovergould.com> | | | VCDR - Arts. 24, 27 | Confidential email communication regarding diplomatic strategy to achieve Qatar's foreign policy objectives. |

*Qatar asserts privilege over only a portion of the documents marked with an asterisk.  After Ms. Conover produces redacted versions of these documents, Qatar will provide production Bates numbers.

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 5

**Broidy v. Muzin, 19-CV-00150-DLF**

**State of Qatar Privilege Log - Jeffrey Klueter / IMS**

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Privilege(s) | Description |
|---|---|---|---|---|---|---|---|
| **PRIV-KLUETER-001** | March 26, 2018 | Jeff Klueter <jeff@imsdc.com> | Dean Dilley <dean.dilley@squirepb.com> | | | VCDR - Arts. 24, 27 | Confidential email communication discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-KLUETER-002** | April 1, 2019 | Monica Huegel <monica@imsdc.com> | Jeff Klueter <jeff@imsdc.com> | | | VCDR - Arts. 24, 27 | Confidential email communication and attachment related to fulfillment of contract related to diplomatic strategy to advance Qatar's foreign policy objectives. |
| **PRIV-KLUETER-003** | April 1, 2019 | Monica Huegel <monica@imsdc.com> | Jeff Klueter <jeff@imsdc.com> | | | VCDR - Arts. 24, 27 | Confidential email communication and attachment related to fulfillment of contract related to diplomatic strategy to advance Qatar's foreign policy objectives. |

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

CONFIDENTIAL – FILED UNDER SEAL

# EXHIBIT 6

Broidy v. Muzin, 19-CV-00150-DLF

State of Qatar Supplemental Privilege Log - Joseph Allaham / Lexington Strategies

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|---|---|---|---|
| PRIV-ALLAHAM-002 | August 27, 2017 | | | | | Joey Allaham; Nicolas Muzin; Jamal Benomar | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication incorporting message from Qatari official seeking advice regarding potential diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-003 | November 28, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-004 | November 29, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-005 | November 30, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-006 | December 4, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-007 | December 8, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-008 | December 11, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-009 | December 12, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-010 | December 20, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-011 | December 25, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-012 | December 30, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**Broidy v. Muzin, 19-CV-00150-DLF**

**State of Qatar Supplemental Privilege Log - Joseph Allaham / Lexington Strategies**

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|---|---|---|---|
| PRIV-ALLAHAM-013 | January 2, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-014 | January 3, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-015 | January 4, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-016 | January 6, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-017 | January 7, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-018 | January 9, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-019 | January 13, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-020 | January 15, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-021 | January 16, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-022 | January 17, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-ALLAHAM-023 | January 18, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**Broidy v. Muzin, 19-CV-00150-DLF**
State of Qatar Supplemental Privilege Log - Joseph Allaham / Lexington Strategies

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|---|---|---|---|
| **PRIV-ALLAHAM-024** | January 19, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-ALLAHAM-025** | January 25, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-ALLAHAM-026** | January 26, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-ALLAHAM-027** | February 7, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-ALLAHAM-028** | February 9, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-ALLAHAM-029** | March 26, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 7

**Broidy v. Muzin, 19-CV-00150-DLF**
State of Qatar Supplemental Privilege Log - Jeffrey Klueter / IMS

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Privilege(s) | Description |
|---|---|---|---|---|---|---|---|
| **PRIV-KLUETER-004** | March 26, 2018 | Jeff Klueter <jeff@imsdc.com> | Dean Dilley <dean.dilley@squirepb.com> | | | VCDR - Arts. 24, 27 | Confidential email communication discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. |

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 8

**Broidy v. Muzin, 19-CV-00150-DLF**

**State of Qatar Amended Privilege Log - Nicolas Muzin / Stonington Strategies**

| Privilege Identifier (Production Bates) | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|---|---|---|---|
| **PRIV-MUZIN-001 (SSLLC_00000833)** | December 5, 2017 | Nicolas Muzin <nickmuzin@gmail.com> | Greg Howard <ghoward@conovergould.com> | | | | VCDR - Arts. 24, 27 | Confidential email communication regarding diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-MUZIN-002 (SSLLC_00000836)** | December 5, 2017 | Nicolas Muzin <nickmuzin@gmail.com> | Greg Howard <ghoward@conovergould.com> | | | | VCDR - Arts. 24, 27 | Confidential email communication regarding diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-MUZIN-003** | December 7, 2017 | | | | | Liam Swords; Nick Muzin; Michael Casey; Jacob Kass; Kevin Sexton; Kareem Abouelsoud; Karl Notturno; Chris Berardini; Jassim Mansour Al-Thani; Jamie Gallagher; Erin Pelton; Kevin Fitzmaurice; Jim Moran; Naser Wali; Vinoda Basnayake; Sara Al-Saadi; Monica Huegel; Jassim Al-Asmakh; Greg Howard; Mark Braden; Jeff Miller; Mohammed Abdulaziz Al-Attiyah; Dean Dilley; Carly Hawkins; Robert Crowe; Barry Bennett; Jeff Borda; Abdulla Al-Mohannadi; Jeff Klueter; Christopher Cushing; Sheikha Kaylee; Katie Lewis; Doug Barry; Heather Conover | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials scheduling meeting and discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**Broidy v. Muzin, 19-CV-00150-DLF**
**State of Qatar Amended Privilege Log - Nicolas Muzin / Stonington Strategies**

| Privilege Identifier (Production Bates) | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|---|---|---|---|
| **PRIV-MUZIN-004** | December 14, 2017 | | | | | Liam Swords; Nick Muzin; Michael Casey; Jacob Kass; Kevin Sexton; Kareem Abouelsoud; Karl Notturno; Chris Berardini; Jassim Mansour Al-Thani; Jamie Gallagher; Erin Pelton; Kevin Fitzmaurice; Jim Moran; Naser Wali; Vinoda Banayake; Sara Al-Saadi; Monica Huegel; Jassim Al-Asmakh; Greg Howard; Mark Braden; Jeff Miller; Mohammed Abdulaziz Al-Attiyah; Dean Dilley; Carly Hawkins; Robert Crowe; Barry Bennett; Jeff Borda; Abdulla Al-Mohannadi; Jeff Klueter; Christopher Cushing; Sheikha Kaylee; Katie Lewis; Doug Barry; Heather Conover | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-MUZIN-005** | December 18, 2017 | | | | | Liam Swords; Nick Muzin; Michael Casey; Jacob Kass; Kevin Sexton; Kareem Abouelsoud; Karl Notturno; Chris Berardini; Jassim Mansour Al-Thani; Jamie Gallagher; Erin Pelton; Kevin Fitzmaurice; Jim Moran; Naser Wali; Vinoda Banayake; Sara Al-Saadi; Monica Huegel; Jassim Al-Asmakh; Greg Howard; Mark Braden; Jeff Miller; Mohammed Abdulaziz Al-Attiyah; Dean Dilley; Carly Hawkins; Robert Crowe; Barry Bennett; Jeff Borda; Abdulla Al-Mohannadi; Jeff Klueter; Christopher Cushing; Sheikha Kaylee; Katie Lewis; Doug Barry; Heather Conover | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing work product related to diplomatic and government-relations strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-MUZIN-006** | Claim withdrawn.  Entry intentionally left blank. | | | | | | | |

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**Broidy v. Muzin, 19-CV-00150-DLF**
**State of Qatar Amended Privilege Log - Nicolas Muzin / Stonington Strategies**

| Privilege Identifier (Production Bates) | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|---|---|---|---|
| PRIV-MUZIN-007 | Claim withdrawn.  Entry intentionally left blank. | | | | | | | |
| PRIV-MUZIN-008 | January 29, 2018 | | | | | Nick Muzin<br>Ali Al-Thawadi<br>Tareq Al-Saei | VCDR - Arts. 24, 27<br>Deliberative Process Privilege | Confidential chat communication with Qatari officials related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| PRIV-MUZIN-009 | Claim withdrawn.  Entry intentionally left blank. | | | | | | | |
| PRIV-MUZIN-010 | Claim withdrawn.  Entry intentionally left blank. | | | | | | | |
| PRIV-MUZIN-011 | Claim withdrawn.  Entry intentionally left blank. | | | | | | | |
| PRIV-MUZIN-012 | March 26, 2018 | | | | | Joey Allaham<br>Nick Muzin | VCDR - Arts. 24, 27 | Confidential chat communication drafting communication to Qatari official Sheikh Mohammed discussing work-product completed in relation to diplomatic strategy to achieve Qatar's foreign policy objectives. |

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 9

**Broidy v. Muzin, 19-CV-00150-DLF**
**State of Qatar Amended Privilege Log - Heather Conover**

| Privilege Identifier (Production Bates) | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Privilege(s) | Description |
|---|---|---|---|---|---|---|---|
| **PRIV-CONOVER-001 (WH_CONOVER_00000188)** | December 5, 2017 | Nicolas Muzin <nickmuzin@gmail.com> | Greg Howard <ghoward@conovergould.com> | | | VCDR - Arts. 24, 27 | Confidential email communication regarding diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-CONOVER-002 (WH_CONOVER_00000185)** | December 5, 2017 | Nicolas Muzin <nickmuzin@gmail.com> | Greg Howard <ghoward@conovergould.com> | | | VCDR - Arts. 24, 27 | Confidential email communication regarding diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-CONOVER-003 (WH_CONOVER_00000198)** | December 5, 2017 | Nicolas Muzin <nickmuzin@gmail.com> | Greg Howard <ghoward@conovergould.com> | | | VCDR - Arts. 24, 27 | Confidential email communication regarding diplomatic strategy to achieve Qatar's foreign policy objectives. |

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 10

**Broidy v. Muzin, 19-CV-00150-DLF**
**State of Qatar Supplemental Privilege Log - Nicolas Muzin / Stonington Strategies**

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|---|---|---|---|
| **PRIV-MUZIN-020*** | November 30, 2017 | | | | | Sara Al-Saadi; Jamie Gallagher; Erin Pelton; Kevin Fitzmaurice; Jim Moran; Naser Wali; Vinoda Banayake; Monica Huegel; Jassim Al-Asmakh; Greg Howard; Mark Braden; Jeff Miller; Mohammed Abdulaziz Al-Attiyah; Dean Dilley; Carly Hawkins; Robert Crowe; Barry Bennett; Jeff Borda; Nick Muzin; Abdulla Al-Mohannadi; Jeff Klueter; Christopher Cushing; Sheikha Kaylee; Katie Lewis; Doug Barry; Heather Conover | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials scheduling meeting and discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. |

*Qatar asserts privilege over only a portion of the documents marked with an asterisk.  After Mr. Muzin and Stonington Strategies produce redacted versions of these documents, Qatar will provide production Bates numbers.

**Broidy v. Muzin, 19-CV-00150-DLF**
**State of Qatar Supplemental Privilege Log - Nicolas Muzin / Stonington Strategies**

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description |
|---|---|---|---|---|---|---|---|---|
| **PRIV-MUZIN-013** | September 10, 2017 | Nicolas Muzin <nick@stoningtonstrategies.com> | Joey Allaham <joey@stoningtonstrategies.com> Jamal Benomar <jamalbenomar1@gmail.com> | | Nicolas Muzin <nick@stoningtonstrategies.com> | | VCDR - Arts. 24, 27 | Confidential email communication and memorandum regarding diplomatic strategy to achieve Qatar's foreign policy objectives, prepared by Nicolas Muzin for Qatar. |
| **PRIV-MUZIN-014** | September 10, 2017 | Nicolas Muzin <nick@stoningtonstrategies.com> | Joey Allaham <joey@stoningtonstrategies.com> Jamal Benomar <jamalbenomar1@gmail.com> Nicolas Muzin <nick@stoningtonstrategies.com> | | | | VCDR - Arts. 24, 27 | Confidential email communication and memorandum regarding diplomatic strategy to achieve Qatar's foreign policy objectives, prepared by Nicolas Muzin for Qatar. |
| **PRIV-MUZIN-015** | September 10, 2017 | Nicolas Muzin <nick@stoningtonstrategies.com> | Joey Allaham <joey@stoningtonstrategies.com> | | | | VCDR - Arts. 24, 27 | Confidential email communication and memorandum regarding diplomatic strategy to achieve Qatar's foreign policy objectives, prepared by Nicolas Muzin for Qatar. |
| **PRIV-MUZIN-016** | September 10, 2017 | | | | | | VCDR - Arts. 24, 27 | Confidential memorandum regarding diplomatic strategy to achieve Qatar's foreign policy objectives, prepared by Nicolas Muzin for Qatar. |
| **PRIV-MUZIN-017** | September 17,2017 | Nicolas Muzin <nick@stoningtonstrategies.com> | James Frinzi <james@stoningtonstrategies.com> | | | | VCDR - Arts. 24, 27 | Confidential email communication and memorandum regarding diplomatic strategy to achieve Qatar's foreign policy objectives, prepared by Nicolas Muzin for Qatar. |
| **PRIV-MUZIN-018** | September 15, 2017 | | | | | Ali Al-Thawadi; Nicolas Muzin | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. |
| **PRIV-MUZIN-019** | September 18, 2017 | Nicolas Muzin <nick@stoningtonstrategies.com> | Joey Allaham <joey@stoningtonstrategies.com> | | | | VCDR - Arts. 24, 27 | Confidential email communication and memorandum regarding diplomatic strategy to achieve Qatar's foreign policy objectives, prepared by Nicolas Muzin for Qatar. |

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**<u>CONFIDENTIAL – FILED UNDER SEAL</u>**

# EXHIBIT 11

# K A S O W I T Z   B E N S O N   T O R R E S  LLP

Daniel R. Benson
Direct Dial: (212) 506-1720
Direct Fax: (212) 880-8690
DBenson@kasowitz.com

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

**REFERENCES INFORMATION DESIGNATED CONFIDENTIAL
UNDER PROTECTIVE ORDER**

June 15, 2023

**<u>VIA EMAIL</u>**

Alexander A. Berengaut
Covington & Burling LLP
One CityCenter
850 Tenth St., N.W.
Washington, DC 20001-4956

      Re:    <u>*Broidy Capital Management v. Muzin*</u>, Case No. 1:19-CV-150-DLF (D.D.C.)

Dear Alex:

I write on behalf of plaintiffs Elliott Broidy and Broidy Capital Management LLC, pursuant to the District Court's May 3, 2023 Order (ECF 177), to provide Plaintiffs' objections to Qatar's asserted privileges and immunities in its June 8, 2023 privilege logs listing documents Qatar asserts are protected from disclosure to Plaintiffs.

Qatar's privilege logs list 47 documents in Defendants' hands and 6 documents in the hands of subpoenaed non-parties. In an April 21, 2023 email, you represented to us that you needed to review approximately 5,500 documents to prepare Qatar's privilege logs. Plaintiffs have only received approximately 800 additional documents from Defendants and non-parties, after Qatar determined not to assert privileges over those documents. Moreover, during and before the pendency of Qatar's appeal, Defendants, at Qatar's instruction, withheld many documents that could not conceivably be protected by Qatar's purported privileges and immunities. For example, Defendant Stonington Strategies recently produced numerous emails sent by Defendant Nicolas Muzin to various media outlets seeking to publish an op-ed written by Mr. Muzin, and Defendants Gregory Howard and Joseph Allaham also produced communications with journalists.

Please confirm that: (1) Qatar has instructed all of the Defendants and subpoenaed non-parties that they should no longer withhold and should produce all responsive documents not listed in Qatar's privilege logs; (2) Qatar and its counsel have returned to such Defendants and non-parties any and all such documents that may have come into the possession of Qatar or its

K A S O W I T Z   B E N S O N   T O R R E S   LLP

Alexander A. Berengaut
June 15, 2023
Page 2

counsel in connection with their preparation of the privilege logs or otherwise, so that such documents will be produced; and (3) neither Qatar nor its counsel is aware of or in possession of any documents—other than those produced by Defendants and subpoenaed non-parties since the District Court issued the Order—that should have, but have not, been produced pursuant to their discovery obligations or the Order.  The following is a link to all of the documents Defendants and such non-parties have produced since the District Court issued the Order:
**https://kasowitz-my.sharepoint.com/:u:/p/litsup/EcaClQcIB11KhVx5X8uY5rUB-iYXTTFkxn03SBmAMS4zLA?e=oslxd8**
(The password will follow under separate cover.)

**<u>Plaintiffs' Objections to Qatar's Privilege Logs</u>**

The District Court correctly decided in its June 2, 2022 order that documents in the possession of the Defendants and non-parties are not and could not be protected by any of Qatar's asserted privileges or immunities, *see Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-CV-150 (DLF), 2022 WL 1801031 (D.D.C. June 2, 2022) ("MTC Order"), and Plaintiffs continue to object to Qatar's assertions on that basis.  Qatar's privilege logs listing 53 documents only confirm that that order was correctly decided and that Qatar obtained an emergency stay from and took an appeal to the Court of Appeals, and has delayed discovery for over a year in a litigation between U.S. citizens, on the flimsiest of grounds, to put it charitably, or on inaccurate representations to that Court, to put it perhaps more accurately.

But even assuming *arguendo* and contrary to law that such documents could be so protected, Plaintiffs also otherwise object to Qatar's assertion of privileges or immunities with respect to each of the 53 documents listed on its logs, and all of those documents should be produced.  At a minimum, they should be submitted to the District Court for *in camera* review so that the Court can determine whether they even qualify for protection under the standard Qatar itself advanced to the Court of Appeals or the standard the Government advanced in its *amicus* brief.  *See* Brief for Appellant State of Qatar at 31-32, *Broidy Cap. Mgmt. LLC v. Muzin*, 61 F.4th 984 (D.C. Cir. 2023) (No. 22-7082, Doc. No. 1959204) ("Qatar Br."); Brief for the United States as Amicus Curiae at 30-32, *Broidy Cap. Mgmt. LLC v. Muzin*, 61 F.4th 984 (D.C. Cir. 2023) (No. 22-7082, Doc. No. 1961136) ("Gov't Br.").

The documents that Qatar has listed were determined by Defendants and subpoenaed non-parties to be responsive to Plaintiffs' discovery requests, and, as the District Court correctly observed, "are central to the litigation."  MTC Order at *9.  Qatar's sponsorship of a hack-and-dissemination campaign against its critics in an effort to influence U.S. foreign policy in Qatar's favor—and then its attempt to withhold these key documents in this litigation under the guise of the Vienna Convention—is precisely the sort of "nondiplomatic activity" that the Foreign Agents Registration Act ("FARA") is designed to regulate and expose.  *See United States v. Craig*, 401 F. Supp. 3d 49, 54 (D.D.C. 2019) ("The purpose of the Act is to prevent covert influence over U.S. policy by foreign principals."); *see also Att'y Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 942 (D.C. Cir. 1982) ("The Senate Report for the 1966 amendments [to the Act] . . . noted

# Kasowitz Benson Torres llp

Alexander A. Berengaut
June 15, 2023
Page 3

the 'persistent efforts by numerous agents of foreign principals to influence the conduct of U.S. foreign and domestic policies using techniques outside the normal diplomatic channels.'").

The privilege logs summarily assert that the documents withheld are related to, in substance, "diplomatic strategy to achieve Qatar's foreign policy objectives," but as the District Court noted, "it strains credulity to suggest that Qatar engaged the defendants—who work in lobbying and public relations—in formulating its foreign policy." MTC Order at *10. It also strains credulity, and nothing in the logs credibly indicates, that Qatar disclosed any information to the Defendants or the non-parties as to which it has any expectation of confidentiality at all, let alone inviolability. Qatar represented to the Court of Appeals that through the privilege log process, it "could have explained how specific materials 'belong to Qatar,' JA300, or involved 'formulating its foreign policy,' JA310, among other factors." Qatar Br. at 31-32. However, aside from conclusory statements that the documents concern Qatar's "foreign policy," Qatar offers no explanation.

## I.      The Documents Are Not Protected by Article 24 of the Convention

In its privilege logs, Qatar asserts that each of the withheld documents is protected by Article 24 of the Convention, which provides that "[t]he archives and documents of the mission shall be inviolable at any time and wherever they may be." As noted above, the District Court correctly decided that none of the documents in the possession of these Defendants or similarly situated non-parties could be protected by the Convention, given that "sending a consular document to an American lobbyist or media strategist subjects it to civil discovery because doing so places the document outside the realm of privileged, diplomatic communication." MTC Order at *8. Thus, none of the documents on Qatar's privilege logs have been properly withheld under Article 24.

Even if the Court were to apply the two-part inquiry advanced by the Government in its *amicus* brief to determine: (1) whether a document was ever "of the mission," and (2) if so, whether it continues to be so even when possessed by another party, the documents withheld by Qatar would not qualify for protection under Article 24. *See* Gov't Br. at 29-30.

With respect to the first step, of the 53 withheld documents, more than half (28 documents) do not appear to be communications with any official of the Qatar Embassy or Qatari government. *See* PRIV-ALLAHAM-001; PRIV-HOWARD-001, 003-004, 007-008, 013, 018, 020-021, 023-028, 031-032; PRIV-MUZIN-001-002, 006-007, 012; PRIV-CONOVER-001-003; PRIV-KLUETER-001-003. Under the Government's framework, "documents generated by third parties can be subject to Article 24 protections only in rare circumstances." Gov't Br. at 20. None of those circumstances are present here—none of the privilege log descriptions for these documents indicate they were "solicited by the mission," "incorporate information from archives or documents of the mission," or include a portion of an inviolable mission document. *See* Gov't Br. at 20-21.

# Kasowitz Benson Torres llp

Alexander A. Berengaut
June 15, 2023
Page 4

As the Government correctly predicted, "a significant number of the documents do not appear to ever have been documents 'of the mission' because the Qatar mission never possessed the documents (meaning that it also did not provide them to defendants), nor is there any indication that it both solicited the creation of those particular documents and provided information from inviolable documents or archives that is included in the documents." Gov't Br. at 31. Even for those documents purportedly containing memoranda or other work "prepared for Embassy officials," there is no indication in the privilege description that such materials were solicited by the mission, or incorporated inviolable information from the mission. *See, e.g.*, PRIV-ALLAHAM-001; PRIV-HOWARD-001, 003-004, 008, 013, 018, 020-021, 024-025, 027-28, 032. Thus, these 28 documents cannot be "of the mission," and there is no need to go on to the Government's proposed second step.

With respect to the remaining 25 documents, Qatar asserts that these are "confidential chat communications" with Embassy officials (PRIV-HOWARD-002, 005-006, 009-012, 014-017, 019, 022, 029-030, 033-034; PRIV-MUZIN-003-005, 009-012)—six of which were sent to more than 30 individuals (PRIV-MUZIN-003-005, 009-011) —and in one instance, with Qatari officials (PRIV-MUZIN-008). "At step two, materials in this case that were at one time documents of the mission may fall outside Article 24's scope because Qatar may have lacked sufficient objectively reasonable expectations of those documents' confidentiality." Gov't Br. at 31. Such is the case here, because even if information in these communications could have arguably been considered "of the mission" at some point—and the privilege log descriptions in no way establish that they were—Qatar could not have had a reasonable expectation of confidentiality, let alone inviolability, after the transmittal of these communications to Defendants and non-parties who were FARA-registered agents because the documents were subject to inspection by the Department of Justice "at all reasonable times." 22 U.S.C. § 615; *see also* Gov't Br. at 32-33. As the Government concluded, in light of FARA's requirements and Qatar's consulting agreement with Defendants, "Qatar did not have a reasonable expectation that the documents that are in fact subject to inspection under the Act would remain protected from disclosure." Gov't Br. at 33.

The privilege logs do not provide sufficient information to evaluate whether Qatar can even satisfy the first four factors of its own five-factor test (proposed for the first time on appeal): "whether the third party (i) is engaged to assist in the performance of a diplomatic mission's functions; (ii) holds materials for the sole and limited purpose of aiding the mission in those functions; (iii) is restricted from those materials for any other purpose; and (iv) must return those materials to the mission on demand." Qatar Br. at 34. However, for the reasons set forth above, the documents cannot satisfy the fifth factor because they are not "subject to strict requirements of confidentiality regarding those materials," *id.*, in light of, among other things, the inspection requirements of FARA.

K ASOWITZ  B ENSON  T ORRES llp

Alexander A. Berengaut
June 15, 2023
Page 5

## II.     The Documents Are Not Protected by Article 27 of the Convention

Qatar's blanket assertion of Article 27 protection with respect to the documents on its privilege logs is also objectionable.  Article 27 provides as follows: "The official correspondence of the mission shall be inviolable.  Official correspondence means all correspondence relating to the mission and its functions."  The District Court correctly held that Article 27 does not provide "the defendants any greater protection than Article 24" (MTC Order at *7), which does not protect these documents from discovery.

Of the 53 documents withheld, none are communications exclusively between the Qatar Embassy and Qatar.  Indeed, as noted above, 28 of the documents do not involve anyone from the Embassy or government of Qatar at all.  *See* PRIV-ALLAHAM-001; PRIV-HOWARD-001, 003-004, 007-008, 013, 018, 020-021, 023-028, 031-032; PRIV-MUZIN-001-002, 006-007, 012; PRIV-CONOVER-001-003; PRIV-KLUETER-001-003.  Moreover, the descriptions in Qatar's logs in no way establish that these communications relate "to the mission and its functions" under Article 27, where the Defendants and subpoenaed third parties were hired to engage in lobbying and public relations efforts, which are nondiplomatic activities.  *See* Corrected Brief for Plaintiffs-Appellees at 45, *Broidy Cap. Mgmt. LLC v. Muzin*, 61 F.4th 984 (D.C. Cir. 2023) (No. 22-7082, Doc. No. 1964569).

## III.    The Deliberative Process Privilege is Not Applicable

Qatar's assertion that one document, PRIV-MUZIN-008, is protected by the deliberative process privilege is likewise objectionable.  That document is a January 29, 2018 communication between Mr. Muzin and Qatari officials Ali Al-Thawadi and Tareq Al-Saei, that Qatar asserts is a "[c]onfidential chat . . . related to diplomatic strategy to achieve Qatar's foreign policy objectives."  As the District Court correctly held, there is no authority permitting the application of "the deliberative process privilege to shield documents held by a private, non-governmental entity."  MTC Order at *10.  This is because the purpose of the deliberative process privilege "is to prevent injury to the quality of agency decisions by allowing *government officials* freedom to debate alternative approaches in private."  MTC Order at *10, quoting *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).  Further, there is no support for the proposition that a chat conversation in the possession of an American citizen is privileged because the communication purports to reflect foreign sovereign's deliberative process.  *See In re Terrorist Attacks on Sept. 11, 2001*, 2019 WL 3296959, at *6 (S.D.N.Y. July 22, 2019) ("Saudi Arabia argues that three of these exhibits should be sealed because they are 'pre-decisional documents' subject to the deliberative process privilege.  This argument is meritless.")

## IV.    Additional Objections

On appeal, Qatar appeared to agree with the Government's assertion that "documents possessed by non-mission parties are inviolable if that party has a special relationship to the mission, and was provided or generated for purposes of assisting mission functions, subject to reasonable expectations of confidentiality."  Reply Brief for Appellant State of Qatar at 1, *Broidy*

# KASOWITZ BENSON TORRES LLP

Alexander A. Berengaut
June 15, 2023
Page 6

*Cap. Mgmt. LLC v. Muzin*, 61 F.4th 984 (D.C. Cir. 2023) (No. 22-7082, Doc. No. 1966166). Under this framework, documents on Qatar's logs should not have been withheld which: (1) involve Mr. Allaham who, according to his FARA registration, did not have a written agreement with Qatar, and was only FARA-registered from June 15, 2018 to July 17, 2018; or (2) involve individuals who at the time of the communications were no longer FARA-registered agents of Qatar. None of these individuals had a "special relationship to the mission" at the time of these communications, and Qatar could not have had any reasonable expectations of confidentiality. These documents should be produced.

First, Qatar withheld three communications involving Mr. Allaham and Mr. Muzin, among others, two from December 2017 (PRIV-MUZIN-006-007) and one from March 2018 (PRIV-MUZIN-012). Qatar also withheld a September 2017 email and attachment sent by Mr. Allaham to the concierge at the St. Regis Hotel (PRIV-ALLAHAM-001). None of these documents should be withheld because, as noted above, Mr. Allaham did not have a written agreement with Qatar and was not even a registered agent of Qatar at the time, and thus had no "special relationship to the mission." PRIV-ALLAHAM-001 should also be produced because, even assuming the first part of Qatar's own test were satisfied (and it is not), the fact that he sent these materials to the concierge at a hotel shows they were not "subject to reasonable expectations of confidentiality."

Second, Qatar withheld three chat communications from March 2018 that included Mr. Howard. *See* PRIV-MUZIN-009-011. Mr. Howard was a registered agent of Qatar only until January 18, 2018, so at the time of those communications, he did not have any "special relationship to the mission." Similarly, Qatar withheld two emails from April 2019 between Jeffrey Klueter and Monica Huegel. *See* PRIV-KLUETER-002-003. IMS and Mr. Klueter terminated their representation of Qatar on May 31, 2018, so, again, there was no "special relationship to the mission" at the time of these communications, and there could not have been any reasonable expectation of confidentiality.

\*     \*     \*

Plaintiffs thus object to Qatar's withholding of each of the documents listed on Qatar's privilege logs. Qatar should immediately withdraw its privilege assertions and instruct the relevant parties to produce these documents. If Qatar is not willing to do so, Qatar should submit the documents to the Court for *in camera* review.

# KASOWITZ BENSON TORRES LLP

Alexander A. Berengaut
June 15, 2023
Page 7


      As provided by the Court's order, please let us know your availability on Tuesday or Wednesday next week to meet and confer to determine if we can resolve these objections without submitting them to the Court.


                Sincerely,

                Daniel R. Benson


cc:    Stephen J. Obermeier
       Jeffrey A. Udell
       Eric Roman

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 12

# Kasowitz Benson Torres llp

Daniel R. Benson
Direct Dial: (212) 506-1720
Direct Fax: (212) 880-8690
DBenson@kasowitz.com

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

Atlanta
Houston
Los Angeles
Miami
Newark
San Francisco
Silicon Valley
Washington DC

**REFERENCES INFORMATION DESIGNATED CONFIDENTIAL
UNDER PROTECTIVE ORDER**

June 20, 2023

**VIA EMAIL**

Alexander A. Berengaut
Covington & Burling LLP
One CityCenter
850 Tenth St., N.W.
Washington, DC 20001-4956

  Re: *Broidy Capital Management v. Muzin*, Case No. 1:19-CV-150-DLF (D.D.C.)

Dear Alex:

  I write on behalf of plaintiffs Elliott Broidy and Broidy Capital Management LLC, pursuant to the District Court's May 3, 2023 Order (ECF 177), to provide Plaintiffs' objections to Qatar's asserted privileges and immunities in its June 16, 2023 supplemental privilege log withholding additional documents in the possession of defendant Joseph Allaham/Lexington Strategies (the "Supplemental Log").

  Before doing so, in order to confirm Qatar's compliance with the Court's Order, in my June 15, 2023 letter, we asked you to confirm that

  (1) Qatar has instructed all of the Defendants and subpoenaed non-parties that they should no longer withhold and should produce all responsive documents not listed in Qatar's privilege logs; (2) Qatar and its counsel have returned to such Defendants and non-parties any and all such documents that may have come into the possession of Qatar or its counsel in connection with their preparation of the privilege logs or otherwise, so that such documents will be produced; and (3) neither Qatar nor its counsel is aware of or in possession of any documents— other than those produced by Defendants and subpoenaed non-parties since the District Court issued the Order—that should have, but have not, been produced pursuant to their discovery obligations or the Order.

# KASOWITZ BENSON TORRES LLP

Alexander A. Berengaut
June 20, 2023
Page 2

Letter from D. Benson to A. Berengaut, June 15, 2023, at 1-2.  Please confirm in writing by 10:30 am tomorrow that your statement in your letter to me today—that Qatar has "informed the relevant Defendants or non-party subpoena recipients regarding the documents and information subject to production for which Qatar has determined not to assert its privileges"—is the equivalent of an unequivocal affirmative response to our request (1) quoted above.  If your response to (1) is anything other than an unequivocal affirmative response, please explain in detail how it differs.  Please also respond in writing by 10:30 am tomorrow to our other two requests (2) and (3) above.  If your answers to (2) and (3) are anything other than unequivocal affirmative responses, please explain how they differ.  If we do not receive unequivocal affirmative answers to all three questions by 10:30 am tomorrow, we will promptly raise this matter with the Court.

With respect to the Supplemental Log, each of the 28 documents listed is a "chat communication" involving Mr. Allaham which Qatar asserts is "related to diplomatic strategy to achieve Qatar's foreign policy objectives."  Qatar purports to claim the protection of Articles 24 and 27 of the Vienna Convention on Diplomatic Relations (the "Convention"), as well as the Deliberative Process Privilege, over each of the communications in the Supplemental Log.  Plaintiffs' objections to Qatar's assertion of the application of Articles 24 and 27 of the Convention and the Deliberative Process privilege are set forth in our June 15, 2023 letter, and Plaintiffs incorporate by reference those objections here.

Further, as also set forth in our June 15 letter, Qatar's assertion of any privilege or immunity over any communication involving Mr. Allaham is improper because Qatar cannot and does not demonstrate that he had a "special relationship to the mission," and that these communications were "provided or generated for purposes of assisting mission functions, subject to reasonable expectations of confidentiality."  Reply Brief for Appellant State of Qatar at 1, *Broidy Cap. Mgmt. LLC v. Muzin*, 61 F.4th 984 (D.C. Cir. 2023) (No. 22-7082, Doc. No. 1966166) ("Qatar Reply").  Mr. Allaham was not FARA-registered until June 15, 2018, three months after the last communication on the Supplemental Log, and never had a written agreement with Qatar.

Qatar thus has not even tried to demonstrate with respect to any document that it can meet its own five-part test which "speaks to a special relationship with the third party or its 'reasonable expectations of continued confidentiality' in mission information": "whether the third party (i) is engaged to assist in the performance of a diplomatic mission's functions; (ii) holds materials for the sole and limited purpose of aiding the mission in those functions; (iii) is restricted from using those materials for any other purpose; (iv) must return those materials to the mission on demand; and (v) is subject to strict requirements of confidentiality regarding those materials."  *Id.* at 14-15.

Instead, Qatar's claim is two-fold: it claims that the "special relationship" between Mr. Allaham and Qatar is not and did not need to be evidenced by a written agreement but instead is evidenced by the content of the very documents that it is withholding and argues are not even

KASOWITZ BENSON TORRES LLP

Alexander A. Berengaut
June 20, 2023
Page 3

subject to *in camera* review by the Court.  *See* June 20 Letter from A. Berengaut, at 3 ("the substance of the communications reflect that Mr. Allaham had formed a special relationship and was working pursuant to that relationship when he received the communications you identify."). Such circuitous reasoning—this Catch-22—is insufficient, to say the least, for the Court to evaluate Qatar's claimed privileges, under the test advanced by the Government or by Qatar itself.  Qatar has also provided no evidence that Mr. Allaham was subject to any confidentiality requirements at all, let alone "strict requirements of confidentiality," regarding the documents being withheld.  If you have any such proof, please provide it.

PRIV-ALLAHAM-002 is objectionable for an additional reason.  This document is an August 27, 2017 communication between Mr. Allaham, defendant Nicolas Muzin, and Jamal Benomar.  Qatar asserts that this is a "[c]onfidential chat communication incorpor[a]ting message from Qatari official seeking advice regarding potential diplomatic strategy to achieve Qatar's foreign policy objectives."  This document cannot be protected by the Convention because, in addition to and apart from Mr. Allaham's lack of a special relationship, Mr. Benomar also had no such relationship, and Qatar could not have had a reasonable expectation of confidentiality in communications involving Mr. Allaham, Mr. Muzin, and Mr. Benomar.  Until July 1, 2017, Mr. Benomar worked at the United Nations, and in November 2017, Mr. Benomar became an official in Morocco's Permanent Mission to the United Nations.  *See Broidy Cap. Mgmt. LLC et al. v. Benomar*, Case No. 18-6615-CS (S.D.N.Y.), Dkt. No. 39, Declaration of Jamal Benomar ¶¶ 30-31.  According to Mr. Benomar, it was in this position at Morocco's mission that he provided "foreign policy advice" to Qatar, among other regional actors.  *Id.* ¶ 34. That plainly could not give rise to a "special relationship."  Moreover, in August 2017, at the time of the communication with Mr. Muzin and Mr. Allaham in PRIV-ALLAHAM-002, according to his own declaration, Mr. Benomar was not doing any work for Qatar, and thus he did not and could not have had have any special relationship with the mission.  This document must be produced.

*          *          *

Plaintiffs thus object to Qatar's withholding of each of the documents listed on the Supplemental Log.  Qatar should immediately withdraw its privilege assertions and instruct Mr. Allaham to produce these documents.  If Qatar is not willing to do so, Qatar should submit the documents to the Court for *in camera* review.

We will be prepared to discuss these objections to the Supplemental Log during our meet and confer tomorrow morning concerning Plaintiffs' June 15 objections.

Sincerely,

Daniel R. Benson

Kasowitz Benson Torres llp

Alexander A. Berengaut
June 20, 2023
Page 4


cc:     Stephen J. Obermeier
        Jeffrey A. Udell
        Eric Roman

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 13

# KASOWITZ BENSON TORRES LLP

Daniel R. Benson
Direct Dial: (212) 506-1720
Direct Fax: (212) 880-8690
DBenson@kasowitz.com

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

**REFERENCES INFORMATION DESIGNATED CONFIDENTIAL
UNDER PROTECTIVE ORDER**

July 11, 2023

**VIA EMAIL**

Alexander A. Berengaut
Covington & Burling LLP
One CityCenter
850 Tenth St., N.W.
Washington, DC 20001-4956

   Re:  _Broidy Capital Management v. Muzin_, Case No. 1:19-CV-150-DLF (D.D.C.)

Dear Alex:

   I write on behalf of Plaintiffs Elliott Broidy and Broidy Capital Management LLC, pursuant to the District Court's May 3, 2023 Order (ECF 177), to provide Plaintiffs' objections to Qatar's asserted privileges and immunities in its June 29, 2023 supplemental privilege log withholding one additional document in the possession of non-party subpoena recipient Jeffrey Klueter/IMS (the "Klueter Supplemental Log").

   The Klueter Supplemental Log lists one "email communication," dated March 26, 2018, from Mr. Klueter to Dean Dilley that, according to Qatar, "discuss[es] proposed diplomatic strategy to achieve Qatar's foreign policy objectives." Qatar asserts that this email communication is protected under Articles 24 and 27 of the Vienna Convention on Diplomatic Relations (the "Convention"). Plaintiffs' objections to Qatar's assertion of the application of Articles 24 and 27 of the Convention are set forth in our June 15, 2023 letter, and Plaintiffs incorporate by reference those objections here.

   Plaintiffs also object to Qatar's asserted privileges and immunities in both the Klueter Supplemental Log as well as the Joseph Allaham/Lexington Supplemental Log (the "Allaham Supplemental Log"), served on June 16, 2023, for failure to comply with the District Court's May 3, 2023 Order (ECF 177) requiring Qatar to "serve a substantially complete log" by June 8, 2023. Qatar's two belatedly served supplemental logs contain 29 of the 82 documents—more than a third—over which Qatar asserts its claimed privileges and immunities. Qatar's failure to timely log such a substantial proportion of the documents it seeks to withhold, notwithstanding

# KASOWITZ BENSON TORRES LLP

Alexander A. Berengaut
July 11, 2023
Page 2

the District Court's Order, warrants rejection of the purported privileges and immunities asserted in those supplemental logs.  *See*, *Hardin v. Dadlani*, 161 F. Supp. 3d 106, 111 (D.D.C. 2015) ("The Court's discovery deadlines are neither advisory nor guidelines for when the parties should complete discovery, but instead are orders with consequences for parties that fail to abide by those deadlines.").

Plaintiffs thus object to Qatar's withholding of the email communication listed on the Klueter Supplemental Log and the 28 chat communications included in the Allaham Supplemental Log.  Qatar should immediately withdraw its privilege assertions and instruct Mr. Klueter and Mr. Allaham to produce these communications.  If Qatar is not willing to do so, Qatar should submit the documents to the Court for *in camera* review.

Sincerely,

Daniel R. Benson

cc:     Stephen J. Obermeier
        Jeffrey A. Udell
        Eric Roman

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 14

# KASOWITZ BENSON TORRES LLP

DANIEL R. BENSON
DIRECT DIAL: (212) 506-1720
DIRECT FAX: (212) 880-8690
DBENSON@KASOWITZ.COM

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

**REFERENCES INFORMATION DESIGNATED CONFIDENTIAL
UNDER PROTECTIVE ORDER**

July 28, 2023

**<u>VIA EMAIL</u>**

Alexander A. Berengaut
Covington & Burling LLP
One CityCenter
850 Tenth St., N.W.
Washington, DC 20001-4956

Re:     *Broidy Capital Management v. Muzin*, Case No. 1:19-CV-150-DLF (D.D.C.)

Dear Alex:

We represent Plaintiffs Elliott Broidy and Broidy Capital Management LLC.  We write, pursuant to the District Court's May 3, 2023 Order (ECF 177), to lodge objections to the claims of privilege and immunities asserted by Qatar in its July 21, 2023 supplemental privilege log (the "Muzin/Stonington Supplemental Log").

The Muzin/Stonington Supplemental Log lists five "[c]onfidential email communication[s]" dated September 10, 17-18, 2017, two "[c]onfidential chat communications" dated September 15, 2017 and November 30, 2017, and one "[c]onfidential memorandum" dated September 10, 2017, that, Qatar contends, all "regard[] diplomatic strategy to achieve Qatar's foreign policy objectives."  Qatar asserts that all eight of these documents and communications are protected under Articles 24 and 27 of the Vienna Convention on Diplomatic Relations (the "Convention"), and that the September 15, 2017 chat communication also is protected under the deliberative process privilege.  As set forth in our June 15, 2023 and June 20, 2023 letters, neither Articles 24 and 27 of the Convention, nor the deliberative process privilege, protect such communications from disclosure, and Qatar's assertions to the contrary are improper.  Plaintiffs hereby incorporate by reference their prior objections here.

Plaintiffs also object to the privileges and immunities asserted by Qatar in the Muzin/Stonington Supplemental Log as untimely insofar as Qatar failed to comply with the District Court's May 3, 2023 Order (ECF 177) requiring that Qatar "serve a substantially complete log" by June 8, 2023.  Qatar's failure to serve the Muzin/Stonington Supplemental Log

K ASOWITZ  B ENSON  T ORRES  LLP

Alexander A. Berengaut
July 28, 2023
Page 2

in a timely manner effectuates a waiver of any claim of privilege it may otherwise have had over
such materials.  *See*, *Hardin v. Dadlani*, 161 F. Supp. 3d 106, 111 (D.D.C. 2015) ("The Court's
discovery deadlines are neither advisory nor guidelines for when the parties should complete
discovery, but instead are orders with consequences for parties that fail to abide by those
deadlines.").

      Based on the foregoing, Qatar should immediately withdraw its claims of privilege and
instruct Mr. Muzin and Stonington to produce these documents and communications.  If Qatar is
not willing to do so, Qatar should submit the documents to the Court for *in camera* review.

Sincerely,

Daniel R. Benson

cc:    Stephen J. Obermeier
       Jeffrey A. Udell
       Eric Roman

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 15

| From: | David Tyler ("Ty") Adams |
|---|---|
| Sent: | Friday, July 21, 2023 12:10 PM |
| To: | Friedrich_Chambers@dcd.uscourts.gov |
| Cc: | Daniel R. Benson; Sarah G. Leivick; Broidy DC; sobermeier@wiley.law; kswendsboe@wiley.law; wlane@wiley.law; eric.roman@afslaw.com; randall.brater@afslaw.com; nicholas.collins@afslaw.com; Adam Cohen; Jake Gardener; Jennifer Berger; Mitch Kamin; aberengaut@cov.com; Acharles@cov.com; MFields@cov.com; 'Jeffrey Udell' |
| Subject: | BCM et al. v. Muzin et al, 19-cv-0150-DLF |

Your Honor:

Pursuant to Fed. R. Civ. P. 26(c) and this Court's May 4, 2022 Standard Order (ECF No. 145), Plaintiffs Broidy Capital Management LLC and Elliott Broidy respectfully request a teleconference with the Court in advance of Plaintiffs' contemplated filing of a motion to compel the production of documents over which intervenor the State of Qatar ("Qatar") asserts purported privileges and immunities under the Vienna Convention on Diplomatic Relations (the "Convention") and which Defendants are withholding from production at Qatar's direction. This Court's May 3, 2023 Order (ECF No. 177) instructed (i) Qatar to "complete and serve a substantially complete log that asserts its claimed privileges and immunities over the documents and information identified by Defendants or non-party subpoena recipients as [otherwise] subject to production" by June 8, 2023, and (ii) Plaintiffs to "provide Qatar with any objections to Qatar's asserted privileges and immunities" within seven days after receiving Qatar's initial or supplemental log. Qatar served privilege logs on June 8, 2023, and, without any showing as to why its June 8 logs were not or could not have been substantially complete, belatedly served supplemental privilege logs on June 16 and 29, 2023. Plaintiffs timely raised objections to Qatar's assertions of purported privileges and immunities in those logs. The parties subsequently met and conferred in an effort to narrow or resolve the parties' dispute, but were unable to do so.

<u>Plaintiffs' Position</u>

After invoking purported Vienna Convention protection, delaying discovery for over a year and a half, and obtaining an emergency stay of discovery from the Court of Appeals, Qatar now asserts purported privileges and immunities over 82 documents—75 of which are in Defendants' possession and seven of which are in the possession of subpoenaed non-parties—based on nothing more than the conclusory and patently insufficient claim that the documents reflect "diplomatic strategy to achieve Qatar's foreign policy objectives." For numerous reasons, including those summarized below, none of these documents are entitled to any protection from discovery.

Plaintiffs continue to object to Qatar's assertions on the ground that, as this Court correctly held in its June 2, 2022 Order, documents in the possession, custody, and control of American public-relations consultants and lobbyists such as Defendants—including all of the documents on Qatar's privilege logs—are not entitled to protection from disclosure under Articles 24 or 27 of the Convention or the deliberative process privilege. *Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-CV-150 (DLF), 2022 WL 1801031, at *7, 8 (D.D.C. June 2, 2022) ("MTC Order").

Even assuming that documents in the hands of American public-relations consultants and lobbyists could qualify for protection under the Convention, the documents Qatar has been withholding do not merit Article 24 protection under either the two-part test proposed by the Government in its *amicus* brief on Qatar's

appeal, *see* Brief for the United States as Amicus Curiae at 20, *Broidy Cap. Mgmt. LLC v. Muzin*, 61 F.4th 984 (D.C. Cir. 2023) (No. 22-7082, Doc. No. 1961136) ("Gov't Br."), or the five-part test proposed by Qatar itself, *see* Brief for Appellant State of Qatar at 31-32, *Broidy Cap. Mgmt. LLC v. Muzin*, 61 F.4th 984 (D.C. Cir. 2023) (No. 22-7082, Doc. No. 1959204) ("Qatar Br."). (Neither test has been applied or discussed before, including in Professor Denza's authoritative treatise or her Congressional testimony on the Vienna Conventions.)

Under the Government's test—which "asks whether a document ever was 'of the mission' and, if so, whether it continues to be so even when possessed by another party," Gov't Br. at 30-31—Article 24 clearly does not protect any of the 82 documents on Qatar's privilege logs. To satisfy the first prong of the Government's test, a document must have been possessed by the Qatari mission or the Qatari mission must have *both* "solicited the creation" of the particular document and "provided information from inviolable documents or archives that is included in the document[]." *Id.* at 31. Here, 31 of the 82 documents on Qatar's privilege logs fail the first prong on their face, as they are communications exchanged entirely between one or more Defendants or third-party subpoena recipients and other private parties who are not officials of the Qatari Embassy or Qatari government. As the Government stated, "defendants' correspondence with private parties" are an example of documents that "[n]ever have been documents 'of the mission.'" And Qatar's privilege log descriptions do not remotely suggest that any of those communications qualify under the "rare circumstances" in which "documents generated by third parties can be subject to Article 24 protections"—*i.e.*, "either when they were solicited by the mission in the performance of essential functions and incorporate information from archives or documents of the mission, or where they include a portion of an inviolable mission document provided by the mission (for example, if a non-mission document quotes an inviolable mission document)." *Id.* at 20.

The remaining 51 of the 82 documents are all purported "confidential chat communications" between one or more Defendants or third-party subpoena recipients and Embassy officials and, in one instance, Qatari officials, including six communications sent to over thirty people (at least five of whom in each case were neither Qatari officials nor registered Qatari agents). Even assuming *arguendo* that these documents at one time were "of the mission," to satisfy the second prong of the Government's test, Qatar must show that it has had, at all times, an "objectively reasonable expectation" of confidentiality in each of those documents. *Id.* at 31. Qatar could not have had a reasonable expectation of confidentiality in the 31 of those 51 communications exchanged with Defendant Joseph Allaham, for whom Qatar has not produced or referred to any evidence suggesting that he was subject to any confidentiality requirements whatsoever. In fact, Qatar represented in a June 21, 2023 email to Plaintiffs that it would "provide [Plaintiffs] with additional documentation reflecting the nature of Mr. Allaham's special relationship" within two days, but Qatar provided nothing remotely reflecting a special relationship. And Qatar could not have had any expectation of privacy, much less a reasonable one, in the remaining 24 of those 51 communications, which it voluntarily transmitted to FARA-registered agents, because, among other things, doing so subjected those communications to inspection by the Department of Justice "at all reasonable times." 22 U.S.C. § 615. As the Government acknowledged, "Qatar did not have a reasonable expectation that the documents that are in fact subject to inspection under [FARA] would remain protected from disclosure." Gov't Br. at 32-33.

The 82 documents on Qatar's privilege logs likewise fail to satisfy Qatar's own newly minted five-factor test, which Qatar proposed for the first time on appeal. Under Qatar's test, a document in the possession of a third party would qualify for Article 24 protection where "the third party (i) is engaged to assist in the performance of a diplomatic mission's functions; (ii) holds materials for the sole and limited purpose of aiding the mission in those functions; (iii) is restricted from using those materials for any other purpose; (iv) must return those materials to the mission on demand; and (v) is subject to strict requirements of confidentiality regarding those materials." Qatar Br. at 34. The documents in Qatar's privilege logs, at a minimum, fail the fifth prong of Qatar's test because none of them were ever subject to "strict requirements of confidentiality." *Id.* All of the 82 communications on Qatar's logs were transmitted to or from one or more FARA-registered agents, precluding Qatar from having any reasonable expectation of confidentiality in those

communications.  Of those, 28 communications involve Joseph Allaham, who in June 2018 back-registered under FARA to 2017, without submitting any agreement with Qatar, and for whom Qatar has not produced any evidence suggesting that he was subject to any, much less strict, confidentiality requirements.

Likewise, none of the 82 documents on Qatar's privilege logs qualify for protection under Article 27 of the Convention, which extends only to "official correspondence of the mission" that "relat[es] to the mission and its functions." 23 U.S.T. 3227, art. 27 § 2.  Almost half of the communications on Qatar's privilege logs could not conceivably qualify as "correspondence of the mission"—much less "official correspondence of the mission"—having been generated by and exchanged entirely between individuals who are not officials of the Qatar Embassy or Qatari government.  *See In re Terrorist Attacks on September 11, 2001*, No. 03-MDL-01570 (GBD)(SN), 2019 WL 3296959, at *6 n.3 (S.D.N.Y. July 22, 2019) (holding that exhibits "sent by a member of the Embassy" were "official correspondence" and noting that "[t]he drafting history of Article 27 suggests that 'official correspondence' may apply 'only to mail emanating from the mission'").  Indeed, such communications would not qualify for protection even under the interpretation of Article 27 urged by Qatar on appeal—*i.e.*, "that Article 27 should not be construed to categorically exclude confidential communications between a diplomatic mission and its contractors." Qatar Br. at 53.  Moreover, the descriptions in Qatar's logs fail to establish that any withheld communications relate "to the mission and its functions," particularly given that Defendants and subpoenaed third parties were engaged to perform nondiplomatic lobbying and public relations work.

Finally, Qatar's assertion of the deliberative process privilege over 29 documents—all purported "confidential chat communications" between either Mr. Allaham or Defendant Nicholas Muzin and one or more Qatari officials—is improper.  As this Court recognized, there is no basis or authority for applying "the deliberative process privilege to shield documents held by a private, non-governmental entity." MTC Order at *10 (quoting *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)).  Nor is there any support for the proposition that a chat conversation in the possession of an American citizen is privileged because the communication purports to reflect a foreign sovereign's deliberative process.  *See In re Terrorist Attacks*, 2019 WL 3296959, at *6 ("Saudi Arabia argues that three of these exhibits should be sealed because they are 'pre-decisional documents' subject to the deliberative process privilege. This argument is meritless.").

For these reasons, Plaintiffs object to the withholding of each document listed in Qatar's privilege logs and respectfully request that the Court order the immediate production of all 82 withheld documents.  At a minimum, Plaintiffs respectfully ask that the Court order Qatar to submit the withheld documents for *in camera* review.  Qatar, remarkably, opposes even that request, asserting that the supposed "absolute inviolability" of the documents—the same documents that it has already shared with over 75 different people, mostly United States lobbyists and public relations consultants, and has exposed to review by the Department of Justice and that are in the hands of Defendants and third parties—precludes *in camera* review by a United States District Court.  That assertion is meritless on its face.  Courts, of course, routinely hold that *in camera* review is proper to evaluate a claim of privilege.  *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 714 (1974) (proper for district court to order *in camera* review of White House tapes subject to claim of executive privilege); *Black v. Sheraton Corp. of America*, 564 F.2d 550, 553 (D.C. Cir. 1977) ("The *in camera* inspection is a valuable technique for protecting the confidentiality of government documents while verifying a claim of privilege."); *Burks v. Islamic Republic of Iran*, No. 16-CV-1102 (CRC), 2020 WL 13303322, at *9 (D.D.C. Aug. 21, 2020) (holding that "district court may 'examine the privileged materials *in camera* to satisfy itself that invocation of the privilege was proper'").  *See also* Gov't Br. at 3.  Indeed, absent production of the withheld documents, *in camera* review is the only means available to evaluate the purported privileges that Qatar meritlessly asserts in its privilege logs, including based on  circular assertions that the content of the very documents being withheld supplies the justification for doing so.  *See, e.g.*, June 20, 2023 Letter from A. Berengaut, at 3 ("[T]he substance of the [withheld] communications reflect that Mr. Allaham had formed a special relationship and was working pursuant to that relationship when he received the [withheld] communications you identify.").

Qatar's Position

As briefed before the D.C. Circuit and addressed in Qatar's pending Motion to Vacate, ECF Nos. 175, 175-1, Qatar's privileges and immunities cover materials possessed by Qatar's third-party contractors and others in a special relationship with the Qatar mission. The United States agrees, *see id.* at 8-11, and Qatar respectfully requests that the Court grant its pending Motion to Vacate and hold that documents held by third-party contractors may be within the ambit of the privileges and immunities granted by the Vienna Convention on Diplomatic Relations and the Vienna Convention on Consular Relations ("Conventions") and other privileges derived from international comity, like the deliberative process privilege.

Qatar further respectfully requests that, consistent with the D.C. Circuit's guidance that courts of this circuit should "demonstrate due respect for . . . any sovereign interest expressed by a foreign state," the Court grant it a full opportunity to be heard regarding its assertion of privileges and immunities over the specific documents identified in its privilege logs. *Broidy Cap. Mgmt. LLC v. Muzin*, 61 F.4th 984, 987 (D.C. Cir. 2023) (citing *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987)).

Regarding the specific claims of privileges and immunities set forth in its privilege logs, Plaintiffs' specific objections fall into two general categories: (1) objections related to a purported lack of evidence that the withheld documents are "of the mission" and (2) objections related to a purported lack of reasonable expectation of privacy. Neither set of objections has merit. In addition, to the extent that Plaintiffs' position statement is intended to raise an objection to the timeliness of Qatar's privilege logs, that objection is baseless. Qatar served its substantially complete logs on June 8, as directed by the Court. *See* ECF No. 177, ¶ 3(a). Thereafter, when a defendant and a non-party subpoena recipient identified small additional sets of document as subject to production, Qatar promptly reviewed those documents and served two supplemental privilege logs on a "rolling basis" as expressly authorized by the Court's Order. *See* ECF No. 177, ¶ 3(c).

***Documents "Of the Mission."*** Plaintiffs' objection that Qatar's privilege log does not adequately substantiate that the withheld documents are "of the mission" for purposes of the Conventions is wrong. As the United States and Qatar agree, Article 24 of the VCDR applies to "documents possessed by outside parties with a special relationship to the mission," so long as the documents were either "provided by" the mission or "solicited by and incorporated information from archives or documents of the mission" and were created for reasons "essential to the functions of the mission and with reasonable expectations of continued confidentiality." ECF No. 175-1 at 9 (quoting U.S. Amicus Brief at 17–18). In addition, Article 27 applies to correspondence between the mission and contractors with whom Qatar shares a special relationship and expectations of confidentiality, where the correspondence "relat[es] to the mission and its functions." *See* ECF No. 175-1 at 16 & n.8.

The withheld documents meet this standard. Qatar's privilege claims involve communications and work product prepared by Qatar's contractors pursuant to their engagement and incorporate and reflect information received from the State about its foreign policy objectives. Certain documents also include the mission's requests for strategic advice and relay information about the State's diplomatic strategies and goals. Plaintiffs' suggestion that these documents are somehow "nondiplomatic" because they include individuals engaged in "lobbying and public relations work" is an overly restrictive limitation that is found nowhere in the Conventions' text. Many countries, including the United States, regard diplomacy as not limited to government-to-government interactions, but also efforts to build relationships in the host state and monitor the host state's media and public perceptions of the sovereign. *See* ECF No. 175-1 at 17–18. Where, as here, contractors engage in this important work of supporting a mission's public diplomacy efforts, documents in their possession that were created as part of this work for the mission and that incorporate information from the mission are subject to the Conventions' protections.

Plaintiffs also object to 29 privilege claims (Plaintiffs reference 31 entries, but Qatar has withdrawn its claim for two of the documents as part of the meet/confer process) on the basis that the email or chat

communications do not directly involve a member of the Qatari mission. The direct involvement of a mission party in an email or chat, however, is not dispositive of whether the substance of that communication meets the Conventions' standard to be "of the mission." Rather, Qatar has claimed privilege over documents that involve communications about work performed for the mission and incorporate information from the mission regarding its diplomatic objectives. Indeed, many of the chats and emails between non-mission parties to which Plaintiffs object include draft memoranda or other correspondence that was being prepared, reviewed, and edited by the participants for the purposes of subsequent transmission to the mission. Certain communications also include participants, each of which had a special relationship with the mission, sharing information among one another about the mission's requests for strategic advice or relaying information received from the mission regarding Qatar's diplomatic strategies and goals.

*Reasonable Expectation of Confidentiality*. Plaintiffs' argument that Qatar has asserted privileges and immunities over documents for which it did not have a reasonable expectation of privacy is also incorrect.

First, Plaintiffs contend that some withheld documents were not confidential because they were "sent to over thirty people." The number of recipients, however, is immaterial to the expectation of confidentiality. *See In re Prograf Antitrust Litig.*, No. 11-md-02242, 2013 WL 1868227, at *2 (D. Mass. May 3, 2013) ("There is no presumption that the privilege . . . is waived merely as a result of the number of people involved in a communication."); *Deffenbaugh Indus., Inc. v. Unified Gov't of Wyandotte Cnty./Kan. City, Kan.*, No. 20-2204, 2021 WL 1612099, at *10 (D. Kan. Apr. 26, 2021) ("The sheer number of people involved in the discussion does not invalidate the privilege."). Plaintiffs also assert for the first time in their position statement that a small number of unspecified chat recipients on these privilege log entries were not registered under FARA. Even presuming Plaintiffs are correct that no FARA registration existed for some individuals, FARA registration is not dispositive of the requisite special relationship for purposes of the VCDR. While FARA registration is one means by which to illustrate such a special relationship, FARA cannot be the exclusive means of establishing the scope of a multilateral treaty that applies in many countries where FARA does not exist. In this case, the special relationship is established not just by the substance of the withheld communications, but also illustrated by other documents that have been produced to Plaintiffs, including communications sent to this same chat group. Those communications confirm that the group regularly received mission correspondence, discussed meetings at the mission, and received updates regarding ongoing work for the mission, all of which the mission reasonably understood would remain confidential.

Second, Plaintiffs' objection to 31 privilege claims involving Joseph Allaham is unavailing for the same reason. Qatar sought Mr. Allaham's assistance with the performance of mission functions, and for that purpose formed a special relationship, even though that relationship was not reduced to a written services contract. The fact that Mr. Allaham was not registered under FARA as of the date of the withheld communication is also not dispositive. Mr. Allaham filed his FARA registration retroactively, to address work previously done for the mission. Here, the substance of the withheld communications reflect that Mr. Allaham had formed a special relationship and was working pursuant to that relationship when he received the communications over which Qatar has claimed privilege. Mr. Allaham's special relationship is also substantiated by additional documentation already produced to Plaintiffs, which Qatar identified for Plaintiffs in response to their request on July 3.

More broadly, Plaintiffs are wrong that Qatar lacked a reasonable expectation of confidentiality in light of FARA's inspection provisions. Qatar's position on this categorical objection is addressed in its pending Motion to Vacate. The United States has notably refrained from arguing that FARA's inspection provisions defeat a mission's reasonable expectation of confidentiality. *See* ECF No. 175-1 at 20-24.

*In Camera Review*. Finally, Qatar respectfully provides its position regarding Plaintiffs' request for *in camera* review of the logged documents. As a general matter, courts have recognized in routine privilege disputes that *in camera* review may be both unnecessary and overly intrusive in situations where the Court can "satisfy itself, without conducting an examination, that the privilege is sufficiently well founded." *Carl Zeiss Stiftung v.*

*V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318, 332 (D.D.C 1966), *aff'd sub nom. V.E.B. Carl Zeiss, Jena v. Clark*, 384 F.2d 979 (D.C. Cir. 1967). This principle applies *a fortiori* here, where the privilege at issue is a treaty right to absolute inviolability. *See* VCDR, Arts. 24, 27; *see also Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16, 18 (2d Cir. 2014) ("Where the diplomatic . . . documents of a foreign state are concerned, the district courts' usual practice of examining contested documents *in camera* may not be practicable." (emphasis in original)).

For these reasons, Qatar respectfully requests that the Court decline Plaintiffs' request to conduct blanket *in camera* review over every document on Qatar's privilege log. Instead, the Court should analyze Qatar's assertions of privileges and immunities in the first instance based on Qatar's legal arguments and privilege logs. After conducting this review, should the Court determine that Qatar's privilege log does not provide it sufficient information on which to sustain Qatar's claimed privilege or immunity, Qatar respectfully requests that it be given a reasonable opportunity to address the Court's need for additional information through supplementation of specific privilege log entries in a manner that responds to the Court's inquiries without revealing the privileged nature of the withheld document. If, after such supplementation, the Court still believes additional information is necessary to evaluate the privilege claims, *in camera* review of only those specific documents would be appropriate. Qatar respectfully submits that this more narrowly tailored approach, as opposed to Broidy's request for immediate *in camera* review of everything, will best take account of the sovereign right to inviolability while permitting the Court to meaningfully assess Qatar's assertions of privileges and immunities.

<u>Conclusion:</u>

The parties are available for a telephone conference with the Court regarding this matter at the following times next week: Monday after 2pm; Tuesday at 2pm or later; Wednesday at 2pm or later; Friday at any time. Please advise if any of those dates and times work for the Court.

Respectfully submitted,

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 16

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Joseph Allaham / Lexington Strategies

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|---|---|---|---|
| PRIV-ALLAHAM-001 | September 10, 2017 | Joey Allaham <joeyallaham@icloud.com> | <conciergenyc@stregis.com> | | | | VCDR - Arts. 24, 27 | Confidential email communication and memorandum regarding diplomatic strategy to achieve Qatar's foreign policy objectives, prepared by Nicolas Muzin for Qatar. | Confidential email communication and draft memorandum providing advice at the request of the mission and in furtherance of its articulated goals and strategy, regarding diplomatic strategy to achieve Qatar's foreign policy objectives, including essential work building positive perception of Qatar in the U.S. among government officials and public-opinion influencers, and addressing critique of Qatari domestic and foreign policy, expected to be maintained confidentially pursuant to the terms of the mission's contract with Stonington Strategies, which employed the memorandum's author Nicolas Muzin. *See* SSLLC_00000013- SSLLC_00000014. |
| PRIV-ALLAHAM-002 | August 27, 2017 | | | | | Joey Allaham; Nicolas Muzin; Jamal Benomar | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication incorporting message from Qatari official seeking advice regarding potential diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication copy/pasting message from Qatari official seeking advice regarding essential diplomatic efforts related to building positive public perception of Qatar in the United States in furtherance of the articulated goals and strategy of the mission and including work product regarding proposed response solicited by the Qatari official.  The communication involved individuals with whom the mission had a reasonable expectations of confidentiality, through the nature of mission's relationship with Nicolas Muzin and Joseph Allaham as well as the position of Jamal Benomar as a diplomatic officer of Morocco for whom Qatar reasonably expected communications between mission officials would remain confidential. |
| PRIV-ALLAHAM-003 | November 28, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Joseph Allaham / Lexington Strategies

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|---|---|---|---|
| PRIV-ALLAHAM-004 | November 29, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication with attachment between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-005 | November 30, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication with attachment between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential work on pending legislation related to Qatar and diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-006 | December 4, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-007 | December 8, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to build positive public perception of Qatar in the United States in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-008 | December 11, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to resolve blockade, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Joseph Allaham / Lexington Strategies

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|---|---|---|---|
| PRIV-ALLAHAM-009 | December 12, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential work on pending legislation related to Qatar and diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-010 | December 20, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential work on diplomatic efforts to build positive public perception of Qatar in the United States in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-011 | December 25, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to build positive public perception of Qatar in the United States in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-012 | December 30, 2017 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication with attachment between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to build positive public perception of Qatar in the United States and providing information for use by Qatar in meetings with U.S. individuals, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Joseph Allaham / Lexington Strategies

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|---|---|---|---|
| PRIV-ALLAHAM-013 | January 2, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential work on pending legislation related to Qatar and diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-014 | January 3, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication with attachment between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential work on pending legislation related to Qatar and diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-015 | January 4, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential work on pending legislation related to Qatar and diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-016 | January 6, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication with attachment between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential work on pending legislation related to Qatar and diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Joseph Allaham / Lexington Strategies

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|---|---|---|---|
| PRIV-ALLAHAM-017 | January 7, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-018 | January 9, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-019 | January 13, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication with attachment between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentialityin work performed for the mission, regarding essential work on pending legislation related to Qatar and diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-020 | January 15, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-021 | January 16, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Joseph Allaham / Lexington Strategies

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|---|---|---|---|
| PRIV-ALLAHAM-022 | January 17, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-023 | January 18, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-024 | January 19, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-025 | January 25, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication with attachment between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-026 | January 26, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication with attachment between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Joseph Allaham / Lexington Strategies

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|---|---|---|---|
| PRIV-ALLAHAM-027 | February 7, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication with attachment between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-028 | February 9, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding essential diplomatic efforts to build positive public perception of Qatar in the United States, in furtherance of the articulated goals and strategy of the mission and within the scope of work solicited by mission officials. |
| PRIV-ALLAHAM-029 | March 26, 2018 | | | | | Joey Allaham; Ali Al-Thawadi | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official and attachment related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication with attachment between Qatari official and individual with whom the mission had a special relationship and reasonable expectation of confidentiality in work performed for the mission, regarding Qatar's response to potential diplomatic and U.S. public relations impact of lawsuit filed by Elliott Broidy. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

CONFIDENTIAL – FILED UNDER SEAL

# EXHIBIT 17

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Nicolas Muzin / Stonington Strategies

| Privilege Identifier (Production Bates) | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **PRIV-MUZIN-001 (SSLLC_00000833)** | December 5, 2017 | Nicolas Muzin <nickmuzin@gmail com> | Greg Howard <ghoward@conovergould.com> | | | | VCDR - Arts. 24, 27 | Confidential email communication regarding diplomatic strategy to achieve Qatar's foreign policy objectives. | REDACTED portion of email communication between two FARA-registered agents restating information that the mission shared with one agent regarding its essential diplomatic priorities and suggesting a strategy related to congressional outreach to achieve that diplomatic goal in reponse to mission's guidance.   Qatar maintained a reasonable expectation of privacy in this communication based on the confidentiality terms of its contracts with IMS/Conover and Gould, which employed Mr. Howard, and Stonington Strategies, which employed Nicolas Muzin.  *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract);  SSLLC_00000013- SSLLC_00000014 (ECF No. 109-17). |
| **PRIV-MUZIN-002 (SSLLC_00000836)** | December 5, 2017 | Nicolas Muzin <nickmuzin@gmail com> | Greg Howard <ghoward@conovergould.com> | | | | VCDR - Arts. 24, 27 | Confidential email communication regarding diplomatic strategy to achieve Qatar's foreign policy objectives. | REDACTED portion of email communication between two FARA-registered agents restating information that the mission shared with one agent regarding its essential diplomatic priorities and suggesting a strategy related to congressional outreach to achieve that diplomatic goal in reponse to mission's guidance.   Qatar maintained a reasonable expectation of privacy in this communication based on the confidentiality terms of its contracts with IMS/Conover and Gould, which employed Mr. Howard, and Stonington Strategies, which employd Nicolas Muzin.  *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract);  SSLLC_00000013- SSLLC_00000014 (ECF No. 109-17). |
| **PRIV-MUZIN-003** | December 7, 2017 | | | | | Liam Swords; Nick Muzin; Michael Casey; Jacob Kass; Kevin Sexton; Kareem Abouelsoud; Karl Notturno; Chris Berardini; Jassim Mansour Al-Thani; Jamie Gallagher; Erin Pelton; Kevin Fitzmaurice; Jim Moran; Naser Wali; Vinoda Basnayake; Sara Al-Saadi; Monica Huegel; Jassim Al-Asmakh; Greg Howard; Mark Braden; Jeff Miller; Mohammed Abdulaziz Al-Attiyah; Dean Dilley; Carly Hawkins; Robert Crowe; Barry Bennett; Jeff Borda; Abdulla Al-Mohannadi; Jeff Klueter; Christopher Cushing; Sheikha Kaylee; Katie Lewis; Doug Barry; Heather Conover | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials scheduling meeting and discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication discussing efforts to improve public perception of Qatar in the U.S. in furtherance of the articulated goals and strategy of the mission, and including outreach from mission official regarding meeting with FARA-registered agents in relation to their work to assist Qatar in its essential diplomatic objectives. |

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Nicolas Muzin / Stonington Strategies

| Privilege Identifier (Production Bates) | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|---|---|---|---|
| PRIV-MUZIN-004 | December 14, 2017 | | | | | Liam Swords; Nick Muzin; Michael Casey; Jacob Kass; Kevin Sexton; Kareem Abouelsoud; Karl Notturno; Chris Berardini; Jassim Mansour Al-Thani; Jamie Gallagher; Erin Pelton; Kevin Fitzmaurice; Jim Moran; Naser Wali; Vinoda Banayake; Sara Al-Saadi; Monica Huegel; Jassim Al-Asmakh; Greg Howard; Mark Braden; Jeff Miller; Mohammed Abdulaziz Al-Attiyah; Dean Dilley; Carly Hawkins; Robert Crowe; Barry Bennett; Jeff Borda; Abdulla Al-Mohannadi; Jeff Klueter; Christopher Cushing; Sheikha Kaylee; Katie Lewis; Doug Barry; Heather Conover | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication discussing essential efforts to improve public perception of Qatar in the U.S. in furtherance of the articulated goals and strategy of the mission, shared only among mission officials and individuals whom Qatar had a special relationship, including FARA registered agents. |
| PRIV-MUZIN-005 | December 13, 2017 | | | | | Liam Swords; Nick Muzin; Michael Casey; Jacob Kass; Kevin Sexton; Kareem Abouelsoud; Karl Notturno; Chris Berardini; Jassim Mansour Al-Thani; Jamie Gallagher; Erin Pelton; Kevin Fitzmaurice; Jim Moran; Naser Wali; Vinoda Banayake; Sara Al-Saadi; Monica Huegel; Jassim Al-Asmakh; Greg Howard; Mark Braden; Jeff Miller; Mohammed Abdulaziz Al-Attiyah; Dean Dilley; Carly Hawkins; Robert Crowe; Barry Bennett; Jeff Borda; Abdulla Al-Mohannadi; Jeff Klueter; Christopher Cushing; Sheikha Kaylee; Katie Lewis; Doug Barry; Heather Conover | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing work product related to diplomatic and government-relations strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication reflecting work product provided to mission officials regarding analysis of public comments made by U.S. official as part of solicited work in furtherance of the articulated goals and strategy of the mission, shared only among mission officials and individuals whom Qatar had a special relationship, including FARA registered agents. |
| PRIV-MUZIN-006 | Claim withdrawn.  Entry intentionally left blank. | | | | | | | | |
| PRIV-MUZIN-007 | Claim withdrawn.  Entry intentionally left blank. | | | | | | | | |
| PRIV-MUZIN-008 | January 29, 2018 | | | | | Nick Muzin; Ali Al-Thawadi; Tareq Al-Saei | VCDR - Arts. 24, 27 Deliberative Process Privilege | Confidential chat communication with Qatari officials related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari officials and Nicolas Muzin discussing congressional outreach and reflecting articulation of Qatar's strategic priorities to achieve Qatar's essential foreign policy objectives, which the mission expected to remain confidential pursuant to the terms of its contract with Muzin.  *See* SSLLC_00000013- SSLLC_00000014 (ECF No. 109-17). |
| PRIV-MUZIN-009 | Claim withdrawn.  Entry intentionally left blank. | | | | | | | | |
| PRIV-MUZIN-010 | Claim withdrawn.  Entry intentionally left blank. | | | | | | | | |
| PRIV-MUZIN-011 | Claim withdrawn.  Entry intentionally left blank. | | | | | | | | |

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Nicolas Muzin / Stonington Strategies

| Privilege Identifier (Production Bates) | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|---|---|---|---|
| PRIV-MUZIN-012 | March 26, 2018 | | | | | Joey Allaham<br>Nick Muzin | VCDR - Arts. 24, 27 | Confidential chat communication drafting communication to Qatari official Sheikh Mohammed discussing work-product completed in relation to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between individuals Allaham and Muzin, with whom the mission maintained a special relationship and expectation of confidentiality over all work product prepared for the mission as established by the terms of Stonington Strategies' contract and the mission's agreement with Allaham, sharing draft communication prepared to be sent to Qatari official Sheikh Mohammed discussing work-product completed at the request of the mission and in furtherance of the mission's articulated goals and strategy, related to essential efforts of congressional outreach and work to improve public perception of Qatar in the U.S.  *See* SSLLC_00000013- SSLLC_00000014 (ECF No. 109-17). |
| PRIV-MUZIN-013 | September 10, 2017 | Nicolas Muzin <nick@stoningtonstrategies.com> | Joey Allaham <joey@stoningtonstrategies.com><br>Jamal Benomar <jamalbenomar1@gmail.com> | | Nicolas Muzin <nick@stoningtonstrategies.com> | | VCDR - Arts. 24, 27 | Confidential email communication and memorandum regarding diplomatic strategy to achieve Qatar's foreign policy objectives, prepared by Nicolas Muzin for Qatar. | Confidential email communication and draft memorandum providing advice at the request of the mission and in furtherance of the articulated goals and strategy of the mission, regarding essential efforts to build positive perception of Qatar in the U.S. among government officials and public-opinion influencers and to address critique of Qatari domestic and foreign policy, expected to be maintained confidentially pursuant to the terms of the mission's contract with Stonington Strategies, which employed the memorandum's author Nicolas Muzin. See SSLLC_00000013-SSLLC_00000014 (ECF No. 109-17). |
| PRIV-MUZIN-014 | September 10, 2017 | Nicolas Muzin <nick@stoningtonstrategies.com> | Joey Allaham <joey@stoningtonstrategies.com><br>Jamal Benomar <jamalbenomar1@gmail.com><br>Nicolas Muzin <nick@stoningtonstrategies.com> | | | | VCDR - Arts. 24, 27 | Confidential email communication and memorandum regarding diplomatic strategy to achieve Qatar's foreign policy objectives, prepared by Nicolas Muzin for Qatar. | Confidential email communication and draft memorandum providing advice at the request of the mission and in furtherance of the articulated goals and strategy of the mission, regarding essential efforts to build positive perception of Qatar in the U.S. among government officials and public-opinion influencers and to address critique of Qatari domestic and foreign policy, expected to be maintained confidentially pursuant to the terms of the mission's contract with Stonington Strategies, which employed the memorandum's author Nicolas Muzin.  *See*  SSLLC_00000013-SSLLC_00000014 (ECF No. 109-17). |
| PRIV-MUZIN-015 | September 10, 2017 | Nicolas Muzin <nick@stoningtonstrategies.com> | Joey Allaham <joey@stoningtonstrategies.com> | | | | VCDR - Arts. 24, 27 | Confidential email communication and memorandum regarding diplomatic strategy to achieve Qatar's foreign policy objectives, prepared by Nicolas Muzin for Qatar. | Confidential email communication and draft memorandum providing advice at the request of the mission and in furtherance of the articulated goals and strategy of the mission, regarding essential efforts to build positive perception of Qatar in the U.S. among government officials and public-opinion influencers and to address critique of Qatari domestic and foreign policy, expected to be maintained confidentially pursuant to the terms of the mission's contract with Stonington Strategies, which employed the memorandum's author Nicolas Muzin.  *See* SSLLC_00000013-SSLLC_00000014 (ECF No. 109-17). |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Nicolas Muzin / Stonington Strategies

| Privilege Identifier (Production Bates) | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|---|---|---|---|
| PRIV-MUZIN-016 | September 10, 2017 | | | | | | VCDR - Arts. 24, 27 | Confidential memorandum regarding diplomatic strategy to achieve Qatar's foreign policy objectives, prepared by Nicolas Muzin for Qatar. | Confidential draft memorandum providing advice at the request of the mission and in furtherance of the articulated goals and strategy of the mission, regarding essential efforts to build positive perception of Qatar in the U.S. among government officials and public-opinion influencers and to address critique of Qatari domestic and foreign policy, expected to be maintained confidentially pursuant to the terms of the mission's contract with Stonington Strategies, which employed the memorandum's author Nicolas Muzin.  See SSLLC_00000013-SSLLC_00000014 (ECF No. 109-17). |
| PRIV-MUZIN-017 | September 17,2017 | Nicolas Muzin <nick@stoningtonstrategies.com> | James Frinzi <james@stoningtonstrategies.com> | | | | VCDR - Arts. 24, 27 | Confidential email communication and memorandum regarding diplomatic strategy to achieve Qatar's foreign policy objectives, prepared by Nicolas Muzin for Qatar. | Confidential email communication and draft memorandum providing advice at the request of the mission and in furtherance of the articulated goals and strategy of the mission, regarding essential efforts to build positive perception of Qatar in the U.S. among government officials and public-opinion influencers and to address critique of Qatari domestic and foreign policy, expected to be maintained confidentially pursuant to the terms of the mission's contract with Stonington Strategies, which employed the memorandum's author Nicolas Muzin.  See SSLLC_00000013-SSLLC_00000014 (ECF No. 109-17). |
| PRIV-MUZIN-018 | September 15, 2017 | | | | | Ali Al-Thawadi; Nicolas Muzin | VCDR - Arts. 24, 27; Deliberative Process Privilege | Confidential chat communication with Qatari official related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between Qatari official and Muzin soliciting advice to further the articulated goals and strategy of the mission, regarding potential essential diplomatic objectives intended to influence public perception of Qatar in the U.S. and soliciting work product related to outreach to identified public opinion leaders, expected to be maintained confidentially pursuant to the terms of the mission's contract with Stonington Strategies.  See SSLLC_00000013-SSLLC_00000014 (ECF No. 109-17). |
| PRIV-MUZIN-019 | September 18, 2017 | Nicolas Muzin <nick@stoningtonstrategies.com> | Joey Allaham <joey@stoningtonstrategies.com> | | | | VCDR - Arts. 24, 27 | Confidential email communication and memorandum regarding diplomatic strategy to achieve Qatar's foreign policy objectives, prepared by Nicolas Muzin for Qatar. | Confidential email communication and draft memorandum providing advice at the request of the mission and in furtherance of the articulated goals and strategy of the mission, regarding essential efforts to build positive perception of Qatar in the U.S. among government officials and public-opinion influencers and to address critique of Qatari domestic and foreign policy, expected to be maintained confidentially pursuant to the terms of the mission's contract with Stonington Strategies., the memorandum's author.  See SSLLC_00000013- SSLLC_00000014 (ECF No. 109-17). |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Nicolas Muzin / Stonington Strategies

| Privilege Identifier (Production Bates) | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **PRIV-MUZIN-020 (SSLLC_00001974)** | November 30, 2017 | | | | | Sara Al-Saadi; Jamie Gallagher; Erin Pelton; Kevin Fitzmaurice; Jim Moran; Naser Wali; Vinoda Banayake; Monica Huegel; Jassim Al-Asmakh; Greg Howard; Mark Braden; Jeff Miller; Mohammed Abdulaziz Al-Attiyah; Dean Dilley; Carly Hawkins; Robert Crowe; Barry Bennett; Jeff Borda; Nick Muzin; Abdulla Al-Mohannadi; Jeff Klueter; Christopher Cushing; Sheikha Kaylee; Katie Lewis; Doug Barry; Heather Conover | | Confidential chat communication with Embassy officials scheduling meeting and discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. | REDACTED portion of confidential chat communication shared between mission officials and those with a special relationship to the mission scheduling meeting at the Qatari Embassy and summarizing for mission officials work product prepared by FARA-registered agent Gregory Howard related to essential work monitoring congressional activities in furtherance of the articulated goals and strategy of the mission. |

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 18

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Gregory Howard

| Privilege Identifier | Document Date | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|
| PRIV-HOWARD-001 | August 8, 2017 | Greg Howard; Kevin Fitzmaurice | VCDR - Arts. 24, 27 | Confidential chat communication and memoranda prepared for Embassy officials summarizing work-product related to proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between FARA registered agents, work product, and memorandum providing advice at the request of the mission regarding essential diplomatic efforts to build a positive public perception of Qatar in the United States, drawing from information provided by mission officials.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed the chat participants.  *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-002 | August 9, 2017 | Brendan Kelsay; Kevin Fitzmaurice; Liam Swords; Sara Al-Saadi; Jassim M Al-Thani | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between mission officials and FARA registered agents, with mission officials requesting guidance in approach regarding essential efforts to build a positive public perception of Qatar in the United States, reflecting the goals and strategy of the mission.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould.  *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-003 | August 10, 2017 | | VCDR - Arts. 24, 27 | Confidential memorandum prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential memorandum drafted by FARA registered agents as part of scope of work solicited by mission officials and reflecting proposal regarding essential diplomatic efforts related to building positive public perception of Qatar in the United States, reflecting the goals and strategy of the mission.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould |
| PRIV-HOWARD-004 | September 12, 2017 | Greg Howard; Brendan Kelsay | VCDR - Arts. 24, 27 | Confidential chat communication and memorandum prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between FARA registered agents and memorandum drafted as part of scope of work solicited by mission officials and reflecting proposal regarding essential diplomatic efforts related to building positive public perception of Qatar in the United States, reflecting the goals and strategy of the mission.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed the chat participants.  *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Gregory Howard

| Privilege Identifier | Document Date | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|
| PRIV-HOWARD-005 | September 13, 2017 | Greg Howard; Sara Al-Saadi | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy official reflecting Embassy's request for advice related to proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between a mission official and FARA registered agent, regarding a request from the mission to prepare work product related to essential efforts to build a positive public perception of Qatar in the United States, and reflecting the goals and strategy of the mission.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould.  See https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-006 | September 29, 2017 | Greg Howard; Chris Hayes; Jeff Klueter; Jassim M Al-Thani; Sara Al-Saadi | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials attaching memorandum summarizing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between mission officials and FARA registered agents and memorandum drafted as part of scope of work solicited by mission officials, regarding essential efforts to build positive public perception of Qatar in the United States, consistent with the goals and strategy of the mission.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed Gregory Howard.  See https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-007 | October 5, 2017 | Greg Howard; Liam Swords; Brendan Kelsay; Kevin Fitzmaurice; Chris Hayes | VCDR - Arts. 24, 27 | Confidential chat communication discussing proposed diplomatic strategy for Embassy to achieve Qatar's foreign policy objectives. | Confidential chat communication between FARA registered agents regarding essential diplomatic efforts related to building a positive public perception of Qatar in the United States, consistent with the goals and strategy of the mission.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed the chat participants.  See https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-008 | October 9, 2017 | Greg Howard; Liam Swords; Chris Hayes; Brendan Kelsay; Kevin Fitzmaurice | VCDR - Arts. 24, 27 | Confidential chat communication and memoranda prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between FARA registered agents and memoranda providing advice regarding essential diplomatic efforts related to building a positive public perception of Qatar in the United States addressed to and solicited by the embassy, and reflecting strategic priorities shared by mission officials.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed the chat participants.  See https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Gregory Howard

| Privilege Identifier | Document Date | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|
| PRIV-HOWARD-009 | October 16, 2017 | Greg Howard; Sara Al-Saadi; Mohammed Abdulaziz Al-Attiyah | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between mission officials and FARA registered agent, regarding essential diplomatic efforts related to building a positive perception of Qatar in the United States, consistent with the goals and strategy of the mission within the scope of work solicited by mission.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed Gregory Howard.  See https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-010 | October 17, 2017 | Greg Howard; Jeff Klueter; Sara Al-Saadi; Jassim M Al-Thani | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials attaching memorandum summarizing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between mission officials and FARA registered agents, attaching work product solicited by mission regarding essential diplomatic efforts to build a positive public perception of Qatar in the United States.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS, which employed Jeffrey Klueter, and Conover and Gould, which employed Gregory Howard.  See https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-011 | October 18, 2017 | Greg Howard; Jeff Klueter; Sara Al-Saadi | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy official attaching document summarizing proposed work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communications between mission official and FARA registered agent, attaching document summarizing solicited work product regarding essential diplomatic efforts to build a positive public perception of Qatar in the United States.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS, which employed Jeffrey Klueter, and Conover and Gould, which employed Gregory Howard.  See https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf |
| PRIV-HOWARD-012 | October 19, 2017 | Greg Howard; Sara Al-Saadi; Mohammed Abdulaziz Al-Attiyah | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between mission officials and FARA registered agent, regarding essential diplomatic efforts related to building a positive public perception of Qatar in the United States, within solicited scope of work and consistent with the goals and strategy of the mission.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed Gregory Howard.  See https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Gregory Howard

| Privilege Identifier | Document Date | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|
| PRIV-HOWARD-013 | October 22, 2017 | Greg Howard; Chris Hayes | VCDR - Arts. 24, 27 | Confidential chat communication and memorandum prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between FARA registered agents and memorandum addressed to mission officials and within the scope of work solicited by the mission, discussing essential diplomatic efforts related to building a positive public perception of Qatar in the United States, reflecting the goals and strategy of the mission.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed the chat participants.  *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-014 | October 23, 2017 | Greg Howard; Jeff Klueter; Sara Al-Saadi; Jassim M Al-Thani | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between mission officials and FARA registered agents, discussing work product solicited by the mission relating to essential efforts to build a positive public perception of Qatar in the United States, consistent with the goals and strategy of the mission.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed Gregory Howard.  *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-015 | October 23, 2017 | Greg Howard; Jeff Klueter; Sara Al-Saadi; Jassim M Al-Thani | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials attaching memorandum summarizing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between mission officials and FARA registered agents, attaching memorandum summarizing work product solicited by the mission relating to essential efforts to build positive public perceptions of Qatar in the United States, reflecting the goals and strategy of the mission.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS, which employed Jeffrey Klueter, and Conover and Gould, which employed Gregory Howard.  *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-016 | October 24, 2017 | Greg Howard; Jeff Klueter; Sara Al-Saadi | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy official requesting advice and attaching memoranda related to proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication and memorandum, shared between mission official and FARA registered agents, providing advice at the request of the mission regarding essential diplomatic efforts relating to building a positive public perception of Qatar in the United States, reflecting the strategic priorities of mission officials.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed Gregory Howard.  *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Gregory Howard

| Privilege Identifier | Document Date | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|
| PRIV-HOWARD-017 | October 28, 2017 | Greg Howard; Sara Al-Saadi | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy official discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between mission official and FARA registered agent, regarding essential diplomatic efforts within solicited scope of work relating to building a positive perception of Qatar in the United States, consistent with the goals and strategy of the mission. Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed Gregory Howard. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-018 | November 6, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication and attachments prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between FARA registered agents, and related work product, reflecting request from mission to prepare work product related to essential efforts building positive public perception of Qatar in the United States, consistent with the goals and strategy of the mission. Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed the chat participants. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-019 | November 6, 2017 | Greg Howard; Jeff Klueter; Sara Al-Saadi; Jassim M Al-Thani; Mohammed Abdulaziz Al-Attiyah | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials attaching memorandum summarizing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between mission officials and FARA registered agents providing advice and work product at the request of the mission regarding response to essential efforts building positive public perception of Qatar in the United States, consistent with the goals and strategy of the mission. Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed the chat participants. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-020 | November 7, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication and attachment reflecting work-product prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between FARA registered agents, and related work product, reflecting request from mission to prepare work product related to essential efforts building positive public perception of Qatar in the United States, consistent with the goals and strategy of the mission. Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS, which employed Jeffrey Klueter, and Conover and Gould, which employed Gregory Howard. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Gregory Howard

| Privilege Identifier | Document Date | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|
| PRIV-HOWARD-021 | November 10, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication and attachments prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between FARA registered agents, and related memoranda, reflecting request from mission to prepare work product related to essential efforts building positive public perception of Qatar in the United States, and reflecting goals and strategy of the mission.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed the chat participants.  *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-022 | November 16, 2017 | Greg Howard; Jeff Klueter; Jeff Borda; Jassim M Al-Thani; Sara Al-Saadi; Mohammed Abdulaziz Al-Attiyah | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between mission officials and FARA registered agents soliciting guidance from mission officials regarding solicited scope of work for press outreach related to Qatar's essential efforts to build positive public perception of Qatar in the United States.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed the chat participants.  *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-023 | November 21, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication discussing contents of documents maintained at Embassy and attachments prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between FARA registered agents discussing the content of mission documents physically maintained at and previously reviewed on the premises of the mission and attaching memorandum and work product solicited by mission related to essential work building positive public perception of Qatar in the United States, and reflecting goals and strategy of the mission.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed the chat participants.  *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-024 | November 26, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication and attachment prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between FARA registered agents sharing memorandum reflecting request from mission to prepare summary of efforts related to essential work building positive public perception of Qatar in the United States, and reflecting goals and strategy of the mission.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed the chat participants.  *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Gregory Howard

| Privilege Identifier | Document Date | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|
| PRIV-HOWARD-025 | November 27, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication and attachments prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between FARA registered agents employed by Conover and Gould, with associated work product solicited by mission, related to essential work building positive public perception of Qatar in the United States. Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed the chat participants. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-026 | November 27, 2017 | Greg Howard; Kevin Fitzmaurice | VCDR - Arts. 24, 27 | Confidential chat communication discussing documents maintained at Embassy related to Qatar's diplomatic strategy. | Confidential chat communication between FARA registered agents discussing the content of mission documents physically maintained at and previously reviewed on the premises of the mission. Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed the chat participants. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-027 | November 28, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication and attachments prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between FARA registered agents providing memorandum reflecting request from mission to prepare summary of efforts related to essential efforts building positive public perception of Qatar in the United States. Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed the chat participants. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-028 | November 28, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication and attachments prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between FARA registered agents circulating memorandum and work product reflecting request from mission to prepare summary of essential efforts related to building positive public perception of Qatar in the United States. Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed the chat participants. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-029 | November 29, 2017 | Greg Howard; Jeff Klueter; Sara Al-Saadi; Mohammed Abdulaziz Al-Attiyah | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials attaching document and discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between mission officials and FARA registered agents, and related attachment, reflecting request from mission to prepare summaries of information reflecting the essential strategic priorities of the mission. Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS, which employed Jeffrey Klueter, and Conover and Gould, which employed Gregory Howard. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Gregory Howard

| Privilege Identifier | Document Date | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|
| PRIV-HOWARD-030 | November 30, 2017 | Sara Al-Saadi; Mohammed Abdulaziz Al-Attiyah; Monica Huegel; Abdulla Al-Mohannadi; Carly Hawkins; Barry Bennett; Jeff Klueter; Liam Swords; Kevin Fitzmaurice; Jeff Borda; James Gallagher; Jeff Miller; Katie Lewis; Mark Braden; Erin Pelton; Sheikha Kaylee; Vinoda Basnayake; Robert Crowe; Dean Dilley; Christopher Cushing; Jim Moran; Nicolas Muzin; Doug Barry; Heather Conover | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials scheduling meeting and discussing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Confidential chat communication between mission officials and individuals with whom Qatar had a special relationship and reasonable expectations of confidentiality, including FARA registered agents, providing summary of essential diplomatic efforts within scope of work solicited by the mission related to building positive public perception of Qatar in the United States, and associated work product, shared only among mission officials and individuals whom Qatar had a special relationship, including FARA registered agents. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-031 | December 1, 2017 | Greg Howard; Liam Swords | VCDR - Arts. 24, 27 | Confidential chat communication discussing documents maintained at Embassy related to Qatar's diplomatic strategy. | Confidential chat communication between FARA registered agents discussing the content of mission documents physically maintained at and previously reviewed on the premises of the mission. Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed the chat participants. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-032 | December 12, 2017 | Greg Howard; Liam Swords; Kevin Fitzmaurice; Heather Conover; Jeff Borda; Doug Barry | VCDR - Arts. 24, 27 | Confidential chat communication and memoranda prepared for Embassy officials discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Chat communication between FARA registered agents regarding essential diplomatic efforts related to addressing critique of Qatari domestic and foreign policy, and memoranda prepared by agents at the request of the mission regarding same. Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed the chat participants. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |
| PRIV-HOWARD-033 | December 15, 2017 | Greg Howard; Jeff Klueter; Sara Al-Saadi; Jassim M Al-Thani | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy officials attaching memorandum summarizing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Chat communication between FARA registered agents and mission officials, and associated memorandum within scope of work solicited by mission, providing summary of essential efforts related to impacting public opinion regarding pending legislation related to Qatar and other strategic priorities of the mission. Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS, which employed Jeffrey Klueter, and Conover and Gould, which employed Gregory Howard. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |

**Broidy v. Muzin, 19-CV-00150-DLF**
**State of Qatar Privilege Log - Gregory Howard**

| Privilege Identifier | Document Date | Chat Participants | Privilege Claim(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|
| **PRIV-HOWARD-034** | December 15, 2017 | Greg Howard; Mohammed Abdulaziz Al-Attiyah | VCDR - Arts. 24, 27 | Confidential chat communication with Embassy official attaching memorandum summarizing work product related to diplomatic strategy to achieve Qatar's foreign policy objectives. | Chat communication between mission officials and FARA registered agent, and associated memorandum within scope of work solicited by mission, providing summary of essential efforts related to impacting public opinion regarding pending legislation related to Qatar and other strategic priorities of the mission.  Qatar expected such work product to be maintained confidentially pursuant to the terms of mission's contract with IMS and Conover and Gould, which employed Gregory Howard.  *See*  https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract). |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 19

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Heather Conover

| Privilege Identifier (Production Bates) | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Privilege(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|---|---|---|
| PRIV-CONOVER-001 (WH_CONOVER_00000188) | December 5, 2017 | Nicolas Muzin <nickmuzin@gmail.com> | Greg Howard <ghoward@conovergould.com> | | | VCDR - Arts. 24, 27 | Confidential email communication regarding diplomatic strategy to achieve Qatar's foreign policy objectives. | REDACTED portion of email communication between two FARA-registered agents restating information that the mission shared with one agent regarding its essential diplomatic priorities and suggesting a strategy related to congressional outreach to achieve that diplomatic goal in reponse to mission's guidance.  Qatar maintained a reasonable expectation of privacy in this communication based on the confidentiality terms of its contracts with IMS/Conover and Gould, which employed Mr. Howard, and Stonington Strategies, which employed Nicolas Muzin.  *See*  https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract);  SSLLC_00000013-SSLLC_00000014. |
| PRIV-CONOVER-002 (WH_CONOVER_00000185) | December 5, 2017 | Nicolas Muzin <nickmuzin@gmail.com> | Greg Howard <ghoward@conovergould.com> | | | VCDR - Arts. 24, 27 | Confidential email communication regarding diplomatic strategy to achieve Qatar's foreign policy objectives. | REDACTED portion of email communication between two FARA-registered agents restating information that the mission shared with one agent regarding its essential diplomatic priorities and suggesting a strategy related to congressional outreach to achieve that diplomatic goal in reponse to mission's guidance.  Qatar maintained a reasonable expectation of privacy in this communication based on the confidentiality terms of its contracts with IMS/Conover and Gould, which employed Mr. Howard, and Stonington Strategies, which employed Nicolas Muzin.  *See*  https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract);  SSLLC_00000013-SSLLC_00000014. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**Broidy v. Muzin, 19-CV-00150-DLF**
**State of Qatar Privilege Log - Heather Conover**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **PRIV-CONOVER-003**<br>**(WH_CONOVER_00000198)** | December 5, 2017 | Nicolas Muzin<br><nickmuzin@gmail.com> | Greg Howard<br><ghoward@conovergould.com> | | | VCDR - Arts. 24, 27 | Confidential email communication regarding diplomatic strategy to achieve Qatar's foreign policy objectives. | REDACTED portion of email communication between two FARA-registered agents restating information that the mission shared with one agent regarding its essential diplomatic priorities and suggesting a strategy related to congressional outreach to achieve that diplomatic goal in reponse to mission's guidance.  Qatar maintained a reasonable expectation of privacy in this communication based on the confidentiality terms of its contracts with IMS/Conover and Gould, which employed Mr. Howard, and Stonington Strategies, which employed Nicolas Muzin.  *See*  https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract); https://efile.fara.gov/docs/6205-Exhibit-AB-20170713-7.pdf (Conover and Gould Contract);  SSLLC_00000013-SSLLC_00000014. |

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 20

Broidy v. Muzin, 19-CV-00150-DLF
State of Qatar Privilege Log - Jeffrey Klueter / IMS

| Privilege Identifier | Document Date | Email - From | Email - To | Email - CC | Email - BCC | Privilege(s) | Description | Supplemental Description Pursuant to Court Order Dated July 28, 2023 |
|---|---|---|---|---|---|---|---|---|
| PRIV-KLUETER-001 | March 26, 2018 | Jeff Klueter <jeff@imsdc.com> | Dean Dilley <dean.dilley@squirepb.com> | | | VCDR - Arts. 24, 27 | Confidential email communication discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Email communication between registered FARA agent and counsel for Qatari mission, providing advice to mission regarding potential strategy to strengthen Qatari-U.S. relations through essential work building positive public perception of Qatar and congressional outreach, in furtherance of the articulated goals and strategy of the mission. Qatar maintained a reasonable expectation of confidentiality over this communication in light of Mr. Dilley's obligations as counsel and the confidentiality terms of Klueter/IMS's contract with the mission. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract). |
| PRIV-KLUETER-002 | April 1, 2019 | Monica Huegel <monica@imsdc.com> | Jeff Klueter <jeff@imsdc.com> | | | VCDR - Arts. 24, 27 | Confidential email communication and attachment related to fulfillment of contract related to diplomatic strategy to advance Qatar's foreign policy objectives. | Email communication preparing copies of work product that was created at the behest of Qatari mission and in furtherance of the articulated goals and strategy of the mission, related to Qatar's essential diplomatic interests during the pendency of Klueter/IMS's work on behalf of Qatar for physical transfer to the Qatari mission after conclusion of contracted-for work as directed by the confidentiality terms of Klueter/IMS's contract with the mission. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract). |
| PRIV-KLUETER-003 | April 1, 2019 | Monica Huegel <monica@imsdc.com> | Jeff Klueter <jeff@imsdc.com> | | | VCDR - Arts. 24, 27 | Confidential email communication and attachment related to fulfillment of contract related to diplomatic strategy to advance Qatar's foreign policy objectives. | Email communication preparing copies of work product that was created at the behest of Qatari mission and in furtherance of the articulated goals and strategy of the mission, related to Qatar's essential diplomatic interests during the pendency of Klueter/IMS's work on behalf of Qatar for physical transfer to the Qatari mission after conclusion of contracted-for work as directed by the confidentiality terms of Klueter/IMS's contract with the mission. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract). |
| PRIV-KLUETER-004 | March 26, 2018 | Jeff Klueter <jeff@imsdc.com> | Dean Dilley <dean.dilley@squirepb.com> | | | VCDR - Arts. 24, 27 | Confidential email communication discussing proposed diplomatic strategy to achieve Qatar's foreign policy objectives. | Email communication between registered FARA agent and counsel for Qatari mission, providing advice to mission regarding potential strategy to strengthen Qatari-U.S. relations through essential work building positive public perception of Qatar and congressional outreach, in furtherance of the articulated goals and strategy of the mission. Qatar maintained a reasonable expectation of confidentiality over this communication in light of Mr. Dilley's obligations as counsel and the confidentiality terms of Klueter/IMS's contract with the mission. *See* https://efile.fara.gov/docs/6442-Exhibit-AB-20171030-2.pdf (IMS Contract). |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 22

Message

| | |
|---|---|
| **From**: | Engle, Craig [Craig.Engle@arentfox.com] |
| **on behalf of** | Engle, Craig <Craig.Engle@arentfox.com> [Craig.Engle@arentfox.com] |
| **Sent**: | 10/25/2018 8:44:56 PM |
| **To**: | Armin Rosen [armin.rosen@gmail.com] |
| **CC**: | Jacob Allaham vlogs [josephallaham@gmail.com] |
| **Subject**: | Re: Inquiry from Tablet Magazine re: Joey Allaham |

Mr Allaham and Mr Benomar did had a working relationship with Qatar in 2017 and early 2018. That relationship has ended and out of respect to Mr Benomar who is currently in litigation over his work, we cannot comment any further.

Sent from my iPhone

On Oct 25, 2018, at 2:56 PM, Armin Rosen <armin.rosen@gmail.com> wrote:

> Just wanted to make sure you saw this—any possibility of getting a response on this later in the day?
>
> -Armin
> 240-393-2600
>
> On Thu, Oct 25, 2018 at 12:22 PM Armin Rosen <armin.rosen@gmail.com> wrote:
>> Mr Engle—
>>
>> Greetings from a reporter-at-large with Tablet Magazine. I am currently working on a story that touches on your client Joey Allaham's relationship with Jamal Benomar, who is a former high-ranking official at the UN. I am interested in the following:
>>
>> -Do Mr Allaham know Mr Benomar? Was Allaham ever in communication with Benomar in connection with his Qatar-related work?
>> -Were they ever in business together in any way? Did Benomar ever owe Allaham money, and does he currently?
>> -Did the Qataris ever employ Benomar? What was Allaham's sense of Benomar's role with Qatar?
>> -Lastly, what did the "reviewing them" text message from Allaham that Mother Jones published last week mean? https://www.motherjones.com/politics/2018/10/how-a-disgraced-republican-fundraiser-is-exposing-qatars-shadowy-lobbying-offensive/
>>
>> Thank you for your help—I am working on a very tight deadline and need a response as soon as possible.
>>
>> Armin
>> +1-240-393-2600 (Also on WhatsApp and Signal)

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distribute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

Allaham0000714

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 23

Message

**From**: Greg Menken [gmenken@5wpr.com]
**Sent**: 9/8/2017 6:05:09 PM
**To**: Nicolas Muzin [nickmuzin@gmail.com]; Ronn Torossian [rtorossian@5wpr.com]
**CC**: Joey Allaham [joeyallaham@icloud.com]
**Subject**: RE: story

Our strategy revolved around the understanding that the FARA filing would have been picked up and led to coverage. This would certainly have been the case. By putting it out early, most of the coverage was based on the Odwyers piece, which was a good story and includes strong quotes from Nick – not pushing Qatar to Iran, etc.

The plan here was to "rip off the band aid" – get the coverage out of the way in the first week or two, then go from there. From a media perspective, we don't see this as having much more legs. The story has been written. So while a couple of other pubs may pick it up, we see the media on it slowing down over the next week.

I think this will die down and people will start to relax.

The bottom line is that if Qatar wants the narrative to change, both from the media and Jewish leadership, they need to start taking positive steps – which is why they hired Nick. And the fact they have a guy like Nick willing to stick his neck out in the belief that Qatar is ready to change, is the best thing they have going for them.

Once that happens, the narrative will change. That is the ultimate goal.

Greg

**From:** Nicolas Muzin [mailto:nickmuzin@gmail.com]
**Sent:** Friday, September 08, 2017 1:37 PM
**To:** Ronn Torossian <rtorossian@5wpr.com>
**Cc:** Joey Allaham <joeyallaham@icloud.com>; Greg Menken <gmenken@5wpr.com>
**Subject:** Re: story

yes, let's keep it from going to wash post, and keep me from becoming Corey lewandowski

On Fri, Sep 8, 2017 at 1:27 PM, Ronn Torossian <rtorossian@5wpr.com> wrote:

> What I am saying is that this isn't so BIG a story.  Odwyers ran it as we want – our thinking was right.

**Ronn Torossian**
President & CEO



**5W Public Relations**

**T** 212-999-5585

RTorossian@5wpr.com
NEW YORK | 5WPR.COM

Top 15 Independent U.S. PR Agency

---

**From:** Joey Allaham [mailto:joeyallaham@icloud.com]
**Sent:** Friday, September 08, 2017 1:27 PM
**To:** Ronn Torossian
**Cc:** Nicolas Muzin; Greg Menken
**Subject:** Re: story

Ronn this is 2 month old I don't know where your head is

Sent from my iPhone

On Sep 8, 2017, at 1:22 PM, Ronn Torossian <rtorossian@5wpr.com> wrote:

> https://www.bloomberg.com/news/articles/2017-07-27/qatar-hires-firm-founded-by-trump-aide-others-amid-crisis

> this is big.

Allaham0001063

**Ronn Torossian**
President & CEO


<image001.gif>


**5W Public Relations**

**T** 212-999-5585


<image002.png><image003.gif><image004.png>

RTorossian@5wpr.com
NEW YORK | 5WPR.COM

Top 15 Independent U.S. PR Agency

---

**From:** Joey Allaham [mailto:joeyallaham@icloud.com]
**Sent:** Friday, September 08, 2017 1:21 PM
**To:** Nicolas Muzin
**Cc:** Greg Menken; Ronn Torossian
**Subject:** Re: story


It's going bigger

On phone on George Klein he got a call to have the Jews leaders boycut

[ ] [ ] [ ] [ ] [ ]


Sent from my iPhone

On Sep 8, 2017, at 1:19 PM, Nicolas Muzin <nickmuzin@gmail.com> wrote:

> what's your sense of the direction that the coverage is taking, and where it could
> go the next few days? do you sense it dying down or just getting bigger.

CONFIDENTIAL

jewish leaders are being spooked away from taking meetings, which is hurting us.

Allaham0001065

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 24

[9/7/17, 7:01:54 AM] Joey: http://gulfnews.com/news/gulf/qatar/qatar-in-bid-to-boost-ties-with-israel-us-1.2086394

[9/7/17, 7:02:06 AM] Joey: I think it's a great article

[9/7/17, 8:20:23 AM] Nick Muzin: Is this a Saudi/Emirati outlet? Not great

[9/7/17, 8:20:47 AM] Joey: Yes . UAE

[9/7/17, 8:21:19 AM] Joey: I think it could have been a lot worse

[9/7/17, 8:38:56 AM] Jamal  Benomar : This an UAE outfit. The article basically plays on the Arab public anti Isreal and anti Jewish bias by presenting Qatar as the one spending money on courting the devil!

[9/7/17, 8:52:18 AM] Joey: I think it's good . Thier media been playing them that they are in bed with Iran and many articles past month . I think this will give it a balance . They will never write anything good no matter what . Each side is attacking with whatever info they have . war of information .

[9/7/17, 2:14:34 PM] Nick Muzin: 2 more meetings went amazingly well. 3 home runs this week

[9/7/17, 5:56:37 PM] Nick Muzin: Just learned some information not yet public - UAE giving $10 million to Texas for hurricane relief. Will be announced later tonight or tomorrow. They are calling around Capitol Hill offices to tell members and ask for urgent meetings.

[9/7/17, 6:00:01 PM] Nick Muzin: https://www.google.com/amp/s/www.bizjournals.com/houston/news/2017/09/07/foreign-countries-offer-harvey-relief-aid.amp.html

[9/7/17, 6:24:20 PM] Joey: I think we can do better with james on this

[9/7/17, 6:24:35 PM] Joey: Did u ever talk to them about it ? Giving money to Texas ?

[9/7/17, 6:24:53 PM] Nick Muzin: Yes I proposed it but got no response

[9/7/17, 6:25:03 PM] Nick Muzin: I sent article to Ali

[9/7/17, 7:06:33 PM] Nick Muzin: War is on! Elliott Broidy called Mike Makovsky and told him he can't meet with Qatar, or Broidy will pull funding from JINSA. We need to lock down these meetings before Broidy gets to other Jewish leaders

[9/7/17, 7:54:39 PM] Jamal  Benomar : This is incredible!

[12/13/17, 9:32:37 AM] Joey: GM

Doha needs a one page on jon bachelor show

Nick if you do the first 4 and will do the rest

Objective

How is it important

Expected outcome

Brief abt the show

What arrangments needed?


Is Malcolm invovled?

Details on who are the guests? What subjects will be discussed?

Malcolm spoke abt hosting Hassan in the same show… are we doing that as well in Doha?

[12/13/17, 9:33:22 AM] Nick Muzin: Sure. Is the idea to have the radio

Host go out to Doha and do a show from there? Call me

[12/13/17, 9:33:42 AM] Joey: Yes .

[12/13/17, 2:37:01 PM] Nick Muzin: Just heard from Corker's team in the senate that

CONFIDENTIAL

Allaham0001089

in January Trump will decertify the Iran deal and reimpose sanctions. This will be a major problem for the Qataris

[12/13/17, 2:38:24 PM] Jamal  Benomar : How do you think it will affect Q?

[12/13/17, 2:40:26 PM] Nick Muzin: Because the focus will turn to how qatar is â€œcozying up to Iranâ€, which has been the new emphasis in the lobbying (away from Hamas). Then members of congress, in their rush to seem tough on Iran, will lump Qatar and Iran together and say both need to be punished

[12/13/17, 3:14:59 PM] Joey: Hope it can be stopped

[12/13/17, 3:17:35 PM] Jamal  Benomar : https://www.al-monitor.com/pulse/en/originals/2017/12/europe-lobbying-iran-deal-congress-jcpoa.amp.html?__twitter_impression=true

[12/18/17, 11:06:23 AM] Nick Muzin: Funds from Embassy received

[12/18/17, 12:19:38 PM] Nick Muzin: Elliot Broidy File Dec18 17b.pdf â€¢ ?16 pages <?attached>

[12/18/17, 7:36:21 PM] Nick Muzin: Dec 18 memo.docx â€¢ ?2 pages <?attached>

[12/18/17, 7:36:51 PM] Nick Muzin: Memo on Iran

[12/18/17, 7:57:00 PM] Joey: I think adding Iran and Turkey were only 2 countries offered milk and eggs after the blocked took place where mothers had no milk to feed their infants  . Whatever trade deals were to supply the people of Qatar with food so they donâ€™t starve . The blocked forced them to do so .

[12/18/17, 7:57:30 PM] Joey: From Dershowitz. We need to get to tickets ASAP and more keep on asking

Hi - Alan and I are wondering if anything else needs to be done for our Jan. Trip? Can you please let us know our travel information when it is finalized. Thank you so much, Carolyn

[12/18/17, 9:42:56 PM] Joey: http://english.alarabiya.net/en/News/gulf/2017/12/19/Al-Thani-family-members-hold-first-opposition-meeting-against-Emir-of-Qatar.html

[3/2/18, 9:42:16 AM] Nick Muzin: Jamal and Joey, I know we discussed meeting all three of us together to try and resolve issues. I can be in New York at 1 pm on Monday. Would you like to meet?

[3/3/18, 10:42:50 PM] Nick Muzin: https://www.documentcloud.org/documents/4393655-Letter-From-Elliott-Broidy-to-Qatari-Ambassador.html

[3/6/18, 2:35:35 PM] Jamal  Benomar : Sorry I didn't respond to your earlier message. I am out of town this week. I will be happy to meet early next week.

[3/6/18, 5:31:17 PM] Nick Muzin: Great to hear from you. I think meeting soon is best for all of us. Please let me know if Monday early afternoon works, either in New York or DC.

[3/30/18, 6:02:32 PM] Jamal  Benomar : ?This message was deleted.

CONFIDENTIAL

Allaham0001090

CONFIDENTIAL – FILED UNDER SEAL

# EXHIBIT 25

**More Weekend Weddings**
(May 30, 2017 <u>Politico</u>)

**At Neocon Think Tank, Steve Bannon Bashes Qatar and Praises Saudi Arabia**
(October 25, 2017 <u>The Intercept</u>)

**Steve Bannon's Already Murky Middle East Ties Deepen**
(Anita Kumar And Ben Wieder, October 23, 2017, <u>McClatchy Washington Bureau</u>)

**Donald Trump's New Fundraiser's Israel Connection**
(May 26, 2016 <u>Haaretz</u>)

**Meet Elliott Broidy, Donald Trump's New Shady Fundraiser**
(Itay Hod, May 25, 2016, <u>The Wrap</u>)

**Dallas-Area Names Among Top Donors**
(Tom Benning, April 20, 2013, <u>The Dallas Morning News</u>)

**Hevesi Has Support Letters**
(Rick Karlin, November 6, 2012, <u>Times Union</u>)

**NY's Cuomo: Two Firms Settle Role in Pay-to-Play**
(February 8, 2010 <u>Reuters</u>)

**REAL ESTATE; Pension Funds, CIM tie probed; The developer paid middleman Villalobos $16 million to secure investments from CalPERS, CalSTERS.**
(Stuart Pfeifer and David Zahniser, December 26, 2009, <u>Los Angeles Times</u>)

CONFIDENTIAL

**More Weekend Weddings**
May 30, 2017
Politico



-- **Joel Mowbray**, founder of Fourth Factor Consulting, a strategic consulting firm that works with mostly Silicon Valley tech companies, on Sunday married Valeria Bystritskaia, who was Miss Germany 2011 and competed in Miss Universe. Fun facts: she speaks five languages and shares the same immigration attorney as Melania Trump, Michael Wildes. **Joel** is a former fellow at the Foundation for the Defense of Democracies. The wedding was in Aspen: all the guests stayed at the St. Regis and the ceremony was outdoors with a chuppah in the grass and the trees and mountains as the backdrop. Festivities kicked off Friday night with a Shabbat dinner at Chabad in Aspen. On Saturday, after Shabbat, guests enjoyed scotch and cigars. The couple met in synagogue at Kiddush last May, the first Shabbat after Passover. He went up to go talk to her and asked her where she was from (her favorite question): She replied: "From everywhere around the world" and promptly walked away. Pic by Ross Daniels Photographyhttp://bit.ly/2qvhKcH ... http://bit.ly/2rx6sVw ... http://bit.ly/2s9wbAz

SPOTTED: Ted and Heidi Cruz, Ed and Marie Royce, David Panton, Larry Mizel, Martin and Rivka Rapaport, their children Ezi and Penina, Sander and Tracy Gerber, Eric and Yvette Edidin, Arie Lipnick, **Elliott Broidy**, Adam Ross, David Panton, Noah Pollak, Martin Rapaport, Travis Allen, David and Donna Keene, Rich Miniter, Rex Elsass, Reid Spitz, David and Hila Brog, wedding planner Jason Burns.

CONFIDENTIAL

**At Neocon Think Tank, Steve Bannon Bashes Qatar and Praises Saudi Arabia**

October 25, 2017

The Intercept

The **Intercept_**

Former White House chief strategist Steve Bannon made a rare public appearance Monday at the Hudson Institute, a neoconservative Washington think tank. Bannon, who recently returned to his position as chair of the far-right website Breitbart, defended President Donald Trump's Middle East policies, arguing the administration's engagement with the Muslim world has been successful.

"What's been accomplished in a very short period of time to me is amazing," said Bannon.

Bannon was especially proud of Trump's summit in the Saudi Arabian capital Riyadh last May, where the president joined Egyptian strongman Abdel Fattah al-Sisi and Saudi King Salman in placing their hands on a white glowing orb to commemorate the opening of a new counterterror center. Bannon said the meeting sparked "tectonic plate shifts" throughout the Middle East. "I don't think he's got the credit for the summit," Bannon said of Trump. "It was important for the Muslim world. It was important for the Arab world. It was important to show that the United States is fully engaged."

Bannon pointed out that in the weeks after the summit, Saudi Arabia and the United Arab Emirates escalated their feud with Qatar. The conference served as a staging ground for a major offensive in the public relations campaign against Qatar, part of a long-simmering feud between the tiny Gulf Sheikdom and other U.S. allies on the Arabian Peninsula. And Bannon, who has financial ties to the UAE, was wading in.

"The single most important thing that's happening in the world is the situation in Qatar," Bannon said. "Qatar finally had to be called to account for the continual funding for the Muslim Brotherhood, continual funding for Hamas."

The former top White House adviser also pointed to the change in the Saudi monarchy's line of succession to appoint Mohammed Bin Salman, the king's hawkish son, as an heir. The change sparked a crackdown in Saudi Arabia, with the government rounding up and detaining prominent clerics, regime critics, activists, and a journalist,

according to the New York Times. Bannon appeared to approve of the crackdown.

"If you look at Saudi Arabia, they've had a pretty big fundamental change since the summit," he said. "The deputy crown prince is now the crown prince. I think it was two weeks ago or three weeks ago, there were 1,000 clerics rounded up or put under house arrest or whatever. I realize that the opposition party in the New York Times refer to most of them as 'liberal scholars.'"

The fact Bannon was speaking at all was unusual. He joined a roster of other notable speakers, including former Obama administration Defense Secretary Leon Panetta, former CIA Director David Petraeus, and Sen. Tom Cotton, R-Ark., a leading Iran hawk on Capitol Hill.

Panetta had argued in the past that Bannon's policies actually fuel recruitment for Islamic extremists. He said that Trump's travel ban, which Bannon was an architect of, "fed ISIS a major argument that I think will help them in recruiting and that increases the chances of a potential attack in this country." He also said it was "wrong" for Bannon to have been appointed to the National Security Council. Panetta was booked through his speaking agency for an undisclosed fee and told McClatchy he wasn't aware that Bannon would be there.

All the marquee speakers hit similar notes on Qatar. "Qatar, frankly, has a mixed record," said Panetta. "We know they've provided support, financial support, for the Muslim Brotherhood, for Hamas, for elements of Al Qaeda, and the Taliban. And the problem is, they can't have it both ways."

In June, Saudi Arabia, the UAE, Egypt, and Bahrain cut ties with Qatar and imposed a punishing blockade, accusing the country of supporting groups, like Al Qaeda and the Taliban. There is truth to the accusation, but Saudi Arabia also funds extremist groups, and experts have suggested that the move to punish Qatar may be more about the country's decision to maintain ties with Iran, its funding for the Islamist populists of the Muslim Brotherhood, and the other Persian

Allaham0001093

Gulf states' dissatisfaction with Al Jazeera, the Qatari state-run news channel.

The Trump administration initially responded to the feud by sending mixed messages. While Secretary of State Rex Tillerson urged the Persian Gulf states to end the blockade, Trump praised it, tweeting, "Perhaps this will be the beginning of the end to the horror of terrorism!"

Bannon made clear which side he took. Saudi Arabia and the UAE had a "well-thought-out plan," he said, and the measures those countries took reflected their commitment at the Riyadh summit to cut off funding for terror groups. "I'm not a foreign policy expert by far, but I took a very hard line on that," he said. "It's well within the rights of people we agreed with at that summit — there was going to be an effort for a 100 percent cutoff of radical Islamic terrorism."

The showdown has been a cash cow for American lobbying and PR firms that are lining up on both sides to sway American policymakers and the public, including Bannon. Just hours before the conference Monday, McClatchy reported that a PR firm with close ties to Bannon, SCL Social Limited, was paid over $300,000 by the UAE to post negative ads about Qatar on social media. That's on top of millions paid to a constellation of PR firms and lobbyists that push the UAE and Saudi lines in D.C.

Qatar also has its own army of lobbyists, even paying former Attorney General John Ashcroft's firm $2.5 million for just three months of work.

Asked by former Pakistani ambassador to Washington, Husain Haqqani, the event's moderator and a Hudson official, about his ties to SCL Social Limited, Bannon said he had "nothing to do" with the company. Upon entering the White House, however, Bannon had disclosed that he had between $1 million and $5 million stake in a company called Cambridge Analytica, which shares the same leadership and ownership as SCL Social Limited.

At the conference, Panetta and Petraeus both condemned Qatar for its behavior and offered only light condemnation of other Persian Gulf states for supporting extremism. If there was any confusion about the main target of the event, a copy of an ominously titled documentary, "Qatar: A Dangerous Alliance," could be found at every seat. The documentary also featured a speaker from the Middle East Institute, which recently accepted a $20 million donation from the UAE.

Asked about the appropriateness of interviewing Bannon — whose Breitbart News strategized with some neo-Nazi figures — on the topic of extremism, Haqqani said, "Mine was not a fawning, supportive interview." He added, "The man has an opinion, we should hear it."

Despite the one-sided subject matter at the conference, Hudson Institute public affairs head David Tell denied the think tank takes any UAE or other Persian Gulf money. "Hudson has not ever accepted financial contributions from the UAE government or anyone connected thereto — and would not as a matter of formal institutional policy," Stewart said.

**The Hudson Institute did not clarify whether it coordinated with foreign governments in a non-financial manner. The UAE has been active in Washington's think tank world, offering funding and coordinating with others that serve its agenda. McClatchy reported that some of the funding for the Monday event was provided by Elliott Broidy, a prominent Trump fundraiser.**

The lone dissenter from the anti-Qatar consensus was Rep. Hank Johnson, D-Ga., who appeared on a panel of congressional leaders. He criticized Saudi Arabia in front of his notably uncomfortable colleagues, Reps. Brad Sherman, D-Calif., and Michael McCaul, R-Texas. He called Wahhabism, the state-backed conservative Islamic movement in Saudi Arabia, "the greatest exporter" of extremist ideology, a message that seemed at odds with the conference's top-line themes.

Allham0001094

## Steve Bannon's Already Murky Middle East Ties Deepen

McClatchy DC BUREAU

Anita Kumar And Ben Wieder
October 23, 2017
McClatchy Washington Bureau

Shortly after Donald Trump's chief strategist Steve Bannon left the White House, a company with close ties to him was hired by the United Arab Emirates to launch a social media campaign against its Arab neighbor, Qatar.

It was part of a multimillion-dollar effort by several Middle Eastern nations to isolate Qatar that received a boost when Trump criticized the country that for years had been a critical regional ally.

The UAE is paying $330,000 to a firm with the same parent company as Cambridge Analytica, the business Trump employed to reach voters with hyper-targeted online messaging during the campaign, to blast Qatar on Facebook and Twitter, among other sites, according to federal records.

Bannon, who remains one of Trump's closest advisers, has long had an interest in the region. He has huddled with UAE officials behind closed doors, visited the country as recently as last month and pushed for a group of Middle Eastern nations, including the UAE, in their bitter dispute with Qatar.

On Monday, Bannon is scheduled to speak at a day-long conference in Washington organized by the Hudson Institute, a conservative think tank and paid for by multiple donors, entitled "Countering Violent Extremism: Qatar, Iran, and the Muslim Brotherhood."

The speech follows Bannon's September meeting in the UAE with its crown prince, Sheikh Mohammed bin Zayed al-Nahyan. The two weren't strangers: Bannon, Trump's son-in-law Jared Kushner and ousted National Security Adviser Michael Flynn met with the crown prince at Trump Tower during the presidential transition in December. That meeting triggered controversy, as the UAE hadn't notified the outgoing Obama administration about the visit as is customary.

The UAE also helped broker a meeting in January between a Bannon friend, Blackwater founder Erik Prince, and a Russian close to President Vladimir Putin to try to establish a back-channel line of communication to Moscow for Trump just days before Trump's inauguration, according to the Washington Post; Prince met with the Russian in the Seychelle islands off East Africa.

Prince lives in the UAE and had a multimillion dollar contract with that government to assemble a mercenary security force there. His firm also does security work in Africa, much of it for Chinese interests. But Bannon has encouraged Prince to move back to the U.S. and run for office, and in recent weeks, Prince has begun to publicly consider a primary challenge to Wyoming GOP Sen. John Barrasso.

The UAE, Saudi Arabia, Bahrain and Egypt cut off all ties with Qatar in June, supposedly in response to its alleged support of terrorism and ties to Iran, and mounted a blockade against the nation. Trump abruptly began accusing Qatar of funding terrorism despite its importance as host to al Udeid, the largest American military base in the Middle East, home to nearly 10,000 troops.

"The U.S. has a pretty substantial presence across the Middle East, but al Udeid is the most important," said Mara Karlin, who worked at the Defense Department during the prior two administrations and is now a professor at the Johns Hopkins School of Advanced International Studies.

Bannon, who through a spokesman declined to comment for this story, has said little publicly about Qatar. But Breitbart News, the far-right website he ran before going into the White House and where he is now once again ensconced, published more than 80 Qatar-related headlines since the blockade began, most of which were critical of the nation.

"Jihad-Friendly Qatar May Have Inspired Former Gitmo Detainees to Return to Terror," declared a June 15 headline.

Another, 10 days later, read "Report: Qatari Ruling Family Importing Hezbollah Fighters for Protection."

Bannon has said he is planning to start a global

Allaham0001095

conference series through Breitbart. "We are in advance discussions about having Breitbart sponsor a major security conference in sub-Saharan Africa, the Persian Gulf, central Europe, and East Asia, in early to mid-2018," he told Bloomberg recently.

Trump's comments attacking Qatar this summer were at odds with what other administration officials were saying. Secretary of State Rex Tillerson had called for the Gulf countries to resolve the dispute. "We certainly would encourage the parties to sit down together and address these differences," he said.

"Many people felt blindsided because they were getting mixed messages," said Marc Lynch, director of the project on Middle East Political Science at George Washington University. "Trump's tweets really undermined the administration."

Tillerson is traveling to the Middle East, where he has planned stops in Saudi Arabia and Qatar to discuss the Gulf dispute with leaders from both countries.

H.E. Sheikh Saif bin Ahmed Al-Thani, director of the government communications office for Qatar, said his country — aided in part by an agreement with the U.S. — has done more to combat terrorism than any other nation in the region. He said there has been no shift in U.S. policy toward Qatar and declined to respond to questions about Bannon.

"While Qatar works openly and transparently with the United States and its allies to share information and fight terrorism wherever it exists, UAE spends its energy and resources hacking websites and planting fake news stories," he said. "When that doesn't work, they pay to spread disinformation about Qatar through advertising and social media. That is their choice, but it won't change the facts."

Representatives of the UAE and Saudi Arabia declined to comment.

The conflict – and Trump's apparent willingness to encourage it – spurred a costly and coordinated, multi-faceted campaign. The situation began to escalate last May, when the UAE orchestrated the hacking of Qatari news and social media sites to plant incendiary quotes falsely attributed to Qatar's emir.

In Washington, it set off a feeding frenzy in influence circles, with the Gulf states on both sides forking over more than $7 million in new contracts since June to influence-peddlers, including former Attorney General John Ashcroft's law firm and the Podesta Group, co-founded by a longtime ally of Hillary Clinton, according to federal records.

**Another firm, the Harbour Group was paid more than $2.5 million by the UAE for work between October 2016 and March 2017, according to the most recent filing available, and signed a contract with the Royal Embassy of Saudi Arabia 11 days before the blockade was announced paying the firm $80,000 per month. Harbour, which has represented the UAE for 15 years, declined to comment.**

"Since very little is actually happening on the ground, they're ramping up the propaganda," Lynch said.

Those attending Monday's conference in Washington will be given copies of a new documentary with a strong point of view about the Middle East conflict. "Qatar: A Dangerous Alliance," supposedly has been watched by more than 10 million viewers online and is now available on Amazon.

The event features two other keynote speakers, former Defense Secretary Leon Panetta and former CIA Director David Petraeus, both of whom worked in the Obama administration. They were hired to speak through Washington Speakers Bureau, where they are clients. Bannon is not listed as a client on the website and the company did not respond to a request for comment.

Panetta , who said in an interview that he was not aware Bannon was speaking at the event, called the administration's rhetoric on Qatar a "knee-jerk reaction" to the blockade.

**One of the donors is Elliott Broidy, a Los Angeles-based investment manager who serves as a deputy finance chair for the Republican National Committee, according to a person with knowledge of the arrangement who was not authorized to speak publicly. Broidy, who also sits on the board of the Republican Jewish Coalition, referred questions to the Hudson**

Allaham0001096

**Institute, which did not return calls.**

SCL Social Limited, which shares the same ownership and leadership as Cambridge Analytica, recently disclosed a $330,000 contract with the National Media Council of UAE for "a wide range of services specific to a global media campaign," according to Foreign Agents of Registration Act records. It received $166,500 Sept. 20.

Bannon, who served as White House chief strategist until August, retained an ownership stake in Cambridge Analytica worth $1 million to $5 million when he entered the White House, according to his financial disclosure report. He had served as vice president and secretary for Cambridge Analytica and received a monthly consulting fee for his work before resigning his position there in August 2016. Bannon was supposed to sell the stake while he served in the administration as part of his ethics agreement and obtained a certificate of divestiture in April 2017 to defer taxes on the potential sale. However, there's no indication that he actually sold the stake, as he never filed the transaction report that's required after the purchase or sale of any asset.

Another of the company's owners is Robert Mercer, the billionaire who spent millions of dollars helping Trump get elected. Cambridge Analytica didn't respond to a request for comment.

The House Intelligence Committee, which is looking into whether Trump associates worked with Russia to meddle in the 2016 election, has questioned Cambridge Analytica, according to the Daily Beast.

SCL had a $75,000 budget specifically for pushing social media during the United National General Assembly that included ad buys exhorting a boycott of Qatar on Facebook, Twitter, Google AdWords, YouTube and Outbrain, an online advertiser. The ads primary target audience were non-governmental organizations, foreign diplomats and specific reporters, according to the records.

But there were signs that the campaign may not have worked, at least not with the president.

Trump's tone on Qatar softened in the weeks after Bannon left the White House, placing a greater emphasis on the need for a resolution to the conflict. At the U.N. in September, Trump met with Qatari Emir Tamim bin Hamad Al Thani, emphasizing the deep ties between the two countries while failing to respond to questions about his previous allegations.

"We've been friends a long time; people don't realize that," Trump said. "And we are right now in a situation where we're trying to solve a problem in the Middle East, and...I have a very strong feeling that it will be solved pretty quickly."

CONFIDENTIAL

Allaham0001097

**Donald Trump's New Fundraiser's Israel Connection**
May 26, 2016
Haaretz



Elliott Broidy, the American-Jewish venture capitalist and the deposed chairman of Tel Aviv-based Markstone Capital Partners, has been appointed deputy chairman of a fundraising organization for Republican presidential candidate Donald Trump's campaign.

Broidy was removed as chairman of Markstone Capital after admitting to paying nearly $1 million in bribes to pension fund managers in New York State. He is still thought to have extensive political ties in Israel.

Broidy's appointment as vice chairman of the Trump Victory Fund, a joint fundraising committee sponsored by Trump and the Republican National Committee, comes just weeks after Steven Mnuchin, a Jewish Hollywood film producer and former Goldman Sachs executive, was named Trump's national finance chairman.

About a decade and a half ago, Broidy decided to combine a Zionist act and a business opportunity in establishing a major venture capital fund that would operate in Israel. He used his ties with Alan Hevesi, the New York state comptroller at the time, who was also active in the Jewish community, to raise $250 million for the fund from the New York State pension fund, which had $100 billion under its management in the time.

The stated Zionist mission of the fund as well as Broidy's ties meant that there was a lot of politics involved in establishing Markstone Capital. In mid-2003, when Israel's finance minister, and now prime minister, Benjamin Netanyahu, visited New York and met with finance officials from New York's state government, the matter of the establishment of Markstone also came up.

Following that visit, the chairman of Israel's Histadrut labor federation at the time, Amir Peretz, approached American labor union leaders asking for their help with the new fund. That brought in an additional $50 million for Markstone.

In the end, however, Markstone turned out to be one of the most resounding financial failures in the history of the Israel capital market. Broidy

was removed as its chairman in late 2009 after being accused of paying bribes to New York pension fund managers, allegations that he ultimately admitted to, acknowledging giving nearly a million dollars to state officials in return for the pension funds' investment of roughly $250 million in Markstone Capital.

Broidy, who invested in the past in several Israeli startup companies, is understood to have extensive political ties in Israel. He was also a regular dinner partner of the late Prime Minister Ariel Sharon.

**Meet Elliott Broidy, Donald Trump's New Shady Fundraiser**

Itay Hod
May 25, 2016
The Wrap



Just weeks after naming Madoff-money grabbing, poor-person evicting moneyman Steven Mnuchin, as his fundraiser-in-chief, Trump tapped venture capitalist Eliott Broidy as the vice-chair of the Trump Victory Fund, a joint fundraising committee between Trump and the Republican National Committee.

In 2009, Broidy pleaded guilty to committing a felony by giving nearly $1 million in illegal gifts to state officials in order to secure a lucrative deal with New York's public pension fund for his then-firm Markstone Capital Partners.

Broidy avoided jail time by blowing the whistle on the same people who accepted his bribes. He admitted to ponying up $75,000 for an all-expanses paid luxury trip to Jerusalem, which included first-class tickets, luxury hotel suites, a helicopter tour, and a personal driver for New York State's comptroller and his family.

According to a 2009 New York Times article, "Prosecutors said the state invested $250 million in Markstone after Mr. Broidy showered officials with gifts and favors, including trips, payouts to friends and relatives, and a secret investment in an obscure movie called 'Chooch,' produced by an official's brother."

Broidy also paid $380,000 to a state official's brother and another $90,000 to the girlfriend of another top official in the New York comptroller's office.

In return, Briody's firm pocketed a cool $18 million in management fees, a sum the company was forced to forfeit after the scandal was exposed.

Broidy did not respond to TheWrap's request for comment.

With the help of his new finance team, Trump is now tapping Hollywood for cash, looking to secure support from donors and special interest groups — including investor Thomas Barrack Jr., who's hosting Trump's first glitzy Los Angeles fundraiser on Wednesday evening.

The posh event will be the first of as many as 50 fundraisers. Guests paying $25,000 per person will receive a photo and can attend the reception and dinner. Anyone paying $100,000 per couple becomes a member of the host committee and also gets a Republican National Committee Regent membership, according to the Los Angeles Times.

The Trump campaign expects the LA-area fundraiser to bring in $5 million, double the $2-2.5 million they originally sought.

The event comes as Democrats in Hollywood are growing increasingly nervous about the escalating rhetoric between Bernie Sanders and Hillary Clinton, and its potential impact on the general election. As one insider told TheWrap recently, "There is growing hysteria in Hollywood right now around Donald Trump. People are terrified of the possibility of him in the White House."

CONFIDENTIAL

Allaham0001099

**Dallas-Area Names Among Top Donors**

*The Dallas Morning News*

Tom Benning
April 20, 2013
The Dallas Morning News

The mega-donors who fueled the unprecedented fundraising for the George W. Bush Presidential Center included philanthropists, corporate leaders, GOP kingmakers, ambassadors and a couple of Middle Eastern countries.

But prominent North Texas boosters - especially early on - provided the high-dollar driving force behind the more than $500 million in donations that poured into the center at Southern Methodist University.

More than 160 donors have their names chiseled on a wall at the Bush Center, signifying that they gave $1 million or more. About a third reside in the Dallas area, and many helped jump-start George W. Bush's political career.

The elite donor group gave the Bush Center at least $278 million and probably much more than that, according to a Dallas Morning News analysis.

"The selection of Dallas and SMU has to be considered a big part of their success," said Dallas developer Harlan Crow, whose family donated $10 million. "For Texas to honor our native son, it's just the right thing to do."

The Bush Center - set to be dedicated Thursday and open to the public May 1 - has proved a fundraising powerhouse.

More than 325,000 donors helped the center surpass the initial goal of $300 million to build the complex and launch the George W. Bush Institute, a public policy think tank.

"Some donations were large. Most were small," said Mark Langdale, president of the George W. Bush Foundation, which funds the center.

Even though the Bush Center must release general financial information, it's difficult to ascertain the center's full fiscal picture. The center, like other presidential libraries, it isn't required to disclose specific gifts or donors' names, and not all names were released.

'Who's who' of Dallas

Most donors will be listed in the "Freedom Registry," which visitors will be able to scroll through on two computers near the center's entrance. The names of major donors are etched on the wall, which The News reviewed this week.

The group is a veritable "who's who" of Dallas' elite: Kenneth and Ruth Collins Altshuler, Rusty and Deedie Rose, the Hunt family, Gene and Jerry Jones, Jan and Trevor Rees-Jones, Tom and Cinda Hicks, and Sarah and Ross Perot Jr.

That local focus was by design.

Bush said in an interview that part of SMU's appeal was that "the alumni base pledged they would help fund the facility." Cary Maguire, an SMU trustee emeritus, said area support was crucial in proving the "viability" of the city and university.

"The Bush committee could've looked at other universities," said Maguire, who gave $1 million. "It was important to show good faith that the university and the community was really behind it."

Bush's vast political network also features prominently among the large donor group.

A dozen former ambassadors gave major gifts, as did former Treasury Secretary Hank Paulson, former Commerce Secretary Don Evans and former Labor Secretary Elaine Chao.

Among the notable GOP boosters are casino mogul Sheldon Adelson, the late Dallas businessman Fred Meyer, the late Houston homebuilder Bob Perry, Dallas businessman Harold Simmons and Amway co-founder Richard DeVos.

Included are about 30 "pioneers," who raised more than $100,000 for a Bush presidential campaign, according to data by Texans for Public Justice, which tracks campaign funds. Nearly 20 were "rangers" for Bush's re-election, meaning they raised more than $200,000.

All told, the Bush Center's known mega-donors directly gave at least $480,000 to Bush's two presidential campaigns, according to a News

Allaham0001100

review of campaign finance databases maintained by the Center for Responsive Politics.

Donor secrecy

The secretive nature of high-dollar donations to presidential libraries often raises questions, though legislation to require more transparency has repeatedly fizzled.

Meredith McGehee, policy director for the Campaign Legal Center watchdog group, said the biggest issues are presidents raising money in office and the "pitfalls of access, influence and conflict of interest."

Unlike political campaigns, presidential library fundraisers can take foreign donations. Kuwait and the United Arab Emirates, for instance, each gave the Bush Center $1 million or more after Bush left office.

There have also been connections between presidential pardons and library donations. Former President Bill Clinton pardoned Marc Rich - accused of tax evasion - after the financier's ex-wife donated to Clinton's library.

**An initial review of the Bush Center's major donors showed no apparent ties to pardons.**

**But a top Bush Center booster, California investor Elliott Broidy, pleaded guilty in 2009 to a role in a corruption scandal.** Another big donor, Dallas oilman and major SMU supporter Edwin L. Cox, had his son pardoned by former President George H.W. Bush.

Bush Center officials declined to discuss individual donors and focused instead on how the center's George W. Bush Institute has been a particular draw for philanthropists, corporations and others. The think tank centers on issues like education reform, global health and military service.

Among those giving specifically to the institute, which launched in late 2009: The News Corp. Foundation, AT&T, the Sid W. Richardson Foundation and the Bass Foundation.

"We share the Bushes' commitment to improving public education in Texas and around the country," said former U.S. Rep. Pete Geren, D-Fort Worth, who heads the Richardson and Bass foundations. "We're pleased to see the progress they've already made."

Allaham0001101

**Hevesi Has Support Letters**
Rick Karlin
November 6, 2012
Times Union



Former state Comptroller Alan Hevesi has some supporters -- nine of them, at least.

The disgraced politician, who in April 2011 was sentenced to between one and four years for his role in a "pay to play" corruption scheme involving the state pension fund, is up for a parole hearing next week. The precise day he goes before the state parole board hasn't been set, according to prison officials.

So far, Hevesi has nine letters in support of parole and one letter against it, said officials.

It's unclear who is supporting the former comptroller and who is against him, or what the letters say: While the state Department of Corrections and Community Supervision can say how many letters they have received supporting or opposing a given parole, details of those letters are confidential.

A former assemblyman and New York City comptroller, the Queens Democrat served as state comptroller from 2002 to December 2006, when he resigned in a plea bargain stemming from his improper use of a state car and driver to serve his ailing wife.

**Then in 2010, Hevesi pleaded guilty to approving a $250 million investment in the state pension fund in exchange for gifts and campaign contributions from California-based businessman Elliott Broidy.**

For approving the investment, Hevesi received more than half a million dollars in political donations as well as luxury trips to Israel and Italy for him and his family. The case resulted in reforms and added oversight to the pension system.

Hevesi has done his time in the Mid-State Correctional Facility in Oneida.

**NY's Cuomo: Two Firms Settle Role in Pay-to-Play**
February 8, 2010
Reuters



Israeli venture capital firm Markstone Capital Group LLC will pay $18 million to settle its role in an ongoing corruption probe of New York state's pension fund, Attorney General Andrew Cuomo said on Monday.

Wetherly Capital Group, a placement agent that served as a broker for investment companies eager to invest the state's pension fund, will return $1 million associated with the pension investments, Cuomo said in a statement.

"Wetherly has also agreed to exit the placement agent business," the Democratic attorney general said.

Cuomo said $120 million has been collected for the state and its $126 billion pension fund from a probe into the way placement agents exploited their political ties under former Democratic Comptroller Alan Hevesi to win lucrative investment contracts for their clients.

Five people have pleaded guilty in the two-year probe.

Markstone describes itself as a private equity fund. Founding partner Elliott Broidy resigned in December, pleaded guilty to a felony and has been cooperating with Cuomo's probe.

**Broidy gave gifts, political contributions and other "benefits" worth more than $1 million to the top decision makers at the state pension fund, Cuomo said.**

The money Markstone is returning is its investment fees for what became a $250 million investment by the state pension fund, Cuomo said.

Former Wetherly Capital associate Julio Ramirez also pleaded guilty to charges that said stemmed from "corrupt arrangements" between Ramirez and Henry Morris, a top fund raiser for New York state's former comptroller, Cuomo said.

Morris, whose lawyer says he is not guilty, faces numerous charges, including securities fraud, bribery and money laundering.

Wetherly, based in Los Angeles, has also served as a placement agent for Calpers, the California Public Employees' Retirement System, the biggest public pension fund in the world.

Cuomo said Wetherly helped three California-based private equity funds, Ares Management LLC, Freeman Spogli & Co and Levine Leichtman Capital Partners, win business from New York state's pension fund. Morris got part of Wetherly's fees for the placements, Cuomo said.

CONFIDENTIAL

Allaham0001103

**REAL ESTATE; Pension Funds, CIM tie probed; The developer paid middleman** Los Angeles Times
**Villalobos $16 million to secure investments from CalPERS, CalSTERS.**

Stuart Pfeifer and David Zahniser
December 26, 2009
Los Angeles Times

Real estate developer CIM Group Inc. has built a reputation as a big-city turnaround artist, transforming dreary business districts from downtown Los Angeles to Washington, D.C., with pricey loft apartments, trendy retailers and leafy pedestrian malls.

Founded in 1994 by two Israeli immigrants and an investment banker who once worked with junk-bond king Michael Milken, CIM has made its mark on some of the more recognizable developments in Southern California, including Santa Monica's Third Street Promenade.

Along the way, Hollywood-based CIM has secured billions of dollars in pension fund investments and tens of millions of dollars in public subsidies -- chiefly by locating many of its projects in struggling neighborhoods where grants, loans and other forms of taxpayer help were readily available.

In recent weeks, its voracious appetite for public investment landed CIM in the public spotlight.

Recently released documents show that CIM paid former Los Angeles Deputy Mayor Alfred J.R. Villalobos nearly $16 million in fees for securing investments from the California Public Employees' Retirement System and the California State Teachers' Retirement System.

CIM has not been accused of any wrongdoing, but CalPERS officials said they were unaware of the amounts CIM and others had paid to Villalobos and other so-called placement agents, who lobby pension funds on behalf of big money managers. CalPERS officials have also hired an outside law firm to determine whether the fees and investments were proper.

CalPERS has a $466-million balance in a CIM fund initially pitched by Villalobos, and over the last decade has agreed to invest nearly $1.9 billion with the company.

In Los Angeles, meanwhile, the Securities and Exchange Commission has asked former Fire and Police Pensions board member Elliott Broidy to

disclose his communications with CIM and other firms, according to court documents.

**Broidy pleaded guilty Dec. 3 to a felony corruption charge in New York, admitting that he paid $1 million in gifts to public pension officials there to win $250 million in investment capital for his private equity fund.**

**While on the Los Angeles board, Broidy voted in 2007 to invest $30 million in CIM. At that time, CIM had $500,000 invested in Markstone Capital Partners, a fund that Broidy managed. CIM said the investment was personally staked by the company's principals, not pension money.**

Fire and Police Pensions board President George Aliano said he was not aware of the relationship between Broidy and CIM until recently, and criticized CIM for not disclosing it. "For me, it will be difficult to invest in them" in the future, Aliano said.

Executives at the company, which employs 200 workers, declined to be interviewed for this article but answered some questions in writing.

In a statement, CIM said it had provided state pension officials "ample disclosures concerning its use of placement agents" such as Villalobos and did not want to distract from the ongoing investigations.

The company did not address Aliano's complaints, but said it had been "a pioneer in the adaptive reuse of California downtown real estate to meet the demands of a nationwide trend toward urban living."

CIM's growing list of projects and properties includes the Ralphs supermarket in downtown Los Angeles, the Lady Luck Hotel & Casino in Las Vegas and downtown renewal projects from Anaheim to San Jose.

"They were in the Hollywood market before most of the players went there. They were in Santa Monica before the Third Street Promenade took off. They have been ahead of the curve," said Bob

Allaham0001104

Safai, a commercial real estate broker with Madison Partners.

CIM's founders first met by chance in 1987 when two friends from Israel -- Shaul Kuba and Avi Shemesh -- showed up at the home of Richard Ressler to talk about landscaping his property.

Shemesh and Kuba both grew up in Herzliya, a city outside Tel Aviv. They served in the same brigade of the Israeli army and arrived in the United States at the same time. By the 1980s, Shemesh had a landscaping and contracting company and Kuba had an electrical business.

Ressler, who holds a law degree and MBA from Columbia University, had spent part of that decade handling mergers and acquisitions for Drexel Burnham Lambert, the firm made famous by Milken.

The three men formed CIM in 1994, adopting a three-letter name that "does not stand for anything in particular," the company said. That year, CIM began acquiring properties in Santa Monica, where city officials were trying to revitalize a dormant pedestrian mall just a few blocks from the ocean.

By 1997, CIM owned a handful of buildings on or near the Third Street Promenade. The buildings now house retailers such as J. Crew and Banana Republic.

Those acquisitions helped drive the transformation of the pedestrian-oriented district from a series of vacant storefronts into a bustling entertainment strip, said Dan Weinstein, a placement agent who has pitched CIM funds to pension officials in California, New Mexico and Texas.

"They went in there and made a bet on Third Street Promenade," said Weinstein, a managing partner with Wetherly Capital Group. "And Third Street Promenade went on to set the tone for the rebirth of outdoor shopping."

CIM broadened its reach by the end of the 1990s to include Brea, where city leaders also were looking to remake a sleepy downtown. The company developed nearly 200,000 square feet of retail space while incorporating loft apartments and chain restaurants, a formula it would replicate in other business districts and redevelopment zones.

Brea's redevelopment agency used the power of eminent domain to forcibly acquire much of the land, then sold it below market value to CIM. The city also paid CIM to build restrooms, parking and sidewalks, improvements that made CIM's buildings more valuable when it sold them a few years later.

Looking to finance an expanding list of projects, CIM began courting big-money investors such as CalPERS and the California State Teachers' Retirement System. It hired Villalobos, who had previously served as a CalPERS board member, to pitch its fund to state pension officials.

As the real estate market continued its climb, pension agencies across the nation followed CalPERS' lead, committing hundreds of millions of dollars to CIM's Real Estate Investment Trust and CIM Fund III, both of which focused on the acquisition of urban properties.

While retirement systems in New York, Texas and Arizona allocated hundreds of millions of dollars to CIM funds, cities such as Sacramento, Anaheim and San Jose provided various forms of financial help to the company's development projects.

CIM was especially successful in Los Angeles, where officials have offered at least $58 million in loans and grants. The most recent: a $30-million federal loan to help CIM attract Cirque du Soleil to the Kodak Theatre at the Hollywood & Highland shopping center.

Taxpayer subsidies helped CIM deliver double-digit returns to its investors for much of the decade. The company, however, said such financial help comprised only 2% of the billions of dollars it has invested so far. It would not provide a dollar value for that help or say how many deals are pending.

"The vast majority of CIM's investments have not required or used agency or any form of public financial incentives," the company said.

Several CIM projects have been delayed -- some indefinitely -- following the collapse of the nation's real estate and credit markets. Yet even before the downturn, CIM had begun turning to other sectors for profits, including the energy and water sectors.

In 2007, the company persuaded CalPERS to

Allaham0001105

invest up to $200 million in a CIM Infrastructure Fund, which placed an emphasis on renewable energy such as wind, solar and geothermal power.

A year later, a joint venture of CIM and Renewable Resources Group -- a firm headed by Ari Swiller, a friend of and fundraiser for L.A. Mayor Antonio Villaraigosa -- bought 48,000 acres of land in Kern County that had been sought by the Los Angeles Department of Water and Power for wind farm development.

Days after it purchased the land for $48 million, the venture sold less than half of it to the city of Vernon for $42 million.

While other real estate firms have seen their private-sector financing dry up, CIM has been able to rely on public pension systems such as CalPERS. Those financial ties can only help CIM, said Harry Mavrogenes, executive director of San Jose's redevelopment agency.

"They've done a credible job of delivering the projects in a tough environment," he said. "The real estate market isn't what it was, and they delivered on the projects they were supposed to."

Allaham0001106

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 26



Nicolas Muzin
202.858.1100
www.stoningtonstrategies.com
nick@stoningtonstrategies.com

# Memo

| To: | Jamal Benomar |
|---|---|
| From: | Nick Muzin |
| Re: | Upcoming challenges |
| Date: | December 18, 2017 |

In the past few days, through conversations on Capitol Hill, with people who work in the Administration, and contacts in the Jewish community, we have learned that in January 2018, the Trump Administration will de-certify the JCPOA (Iran nuclear deal) and begin an intense focus on countering Iran's influence in the Middle East. This may include outlining potential military action. Iran is likely to surpass North Korea as the threat du jour in American media.

A top staffer for Senator Bob Corker, Chairman of the Senate Foreign Relations Committee, told me last week that President Trump will decertify the deal in January. This confirmation came on the same day that U.N. Ambassador Nikki Haley made a presentation in front of a missile fired at the Riyadh airport, which she claimed was of Iranian origin, in violation of the United Nations Security Council Resolution.

The Iran angle presents a unique challenge, as Qatar's enemies will pounce on this as an opportunity to further tarnish Qatar's reputation in Washington. Indeed, over the past several weeks, our opponents' talking points have shifted away from "Qatar supports Hamas and Muslim Brotherhood" and towards "Qatar cozies up to Iran," signaling their new line of attack.

We know that Qatar has been forced to gain a closer relationship to Iran as a result of the blockade, where food must be imported, and flights rerouted over Iranian airspace. However, in recent days there have been several unfortunate news stories which tend to exaggerate the appearance of warming relations between the countries. Consider:

- Financial Tribune reported on December 18 that a number of major Iranian private lenders have established relationships with Qatar National Bank, following a meeting of an Iranian delegation with top officials in Doha.

- Al-Bawaba reported on December 17 that Iran and Qatar have signed an MOU to boost sports cooperation.

- IFP (Iran Front Page) News reported on December 16 that Qatar would use Iran's Kish Island to host teams for the 2022 World Cup.

- Al-Jazeera reported on December 3 that the blockade has benefited Turkey and Iran as trading partners of Qatar.

*The Firm to See*

Allaham0001107



Nicolas Muzin
202.858.1100
www.stoningtonstrategies.com
nick@stoningtonstrategies.com

Each of these stories can be dismissed as insignificant, or "fake news" on their own; but taken together, and especially after Doha normalized its ties with Iran in late August, the cumulative effect sends a signal to Americans that Qatar is on the wrong side in one of the most impactful foreign policy conflicts in the world. After January, the topic of containing Iran will once again be front and center in Congress and in the American media. Having Qatar seen as siding with Iran, will cause a myriad of problems on Capitol Hill.

Already there is letter (dated December 15) circulating on Capitol Hill calling for the Department of Defense to reassess the Al Udeid Airbase, and make contingency plans to transfer it either to Jordan, UAE or back to Saudi Arabia. The letter cites potential military conflict with Iran as reason for not keeping the base in Doha. These types of initiatives will only increase once the Iran conflict comes back to the center of American consciousness.

Doha should be prepared to take steps or make statements to demonstrate its distance from Iran and solidarity with the United States. Having this situational awareness in advance will ensure that Doha is not caught flatfooted by the Trump announcement in January, and is able to respond swiftly in a way that earns goodwill in the United States and does not leave room for our enemies to make baseless accusations.

The Firm to See

CONFIDENTIAL

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 27

Message

**From**:        Joey Allaham [josephallaham@gmail.com]
on behalf of    Joey Allaham <josephallaham@gmail.com> [josephallaham@gmail.com]
**Sent**:        6/21/2018 3:40:48 PM
**To**:          armin.rosen@gmail.com
**Subject**:     Just to make sure the corrected statement you can use


We are proud of the work that Mort Klein  has done and all the other Jewish leaders working in
collaboration with the Emir and other members of the Qatari Royal Family. Mr. Klein made great strides
for the American Jewish community and Israel. These accomplishments, some public and some will remain
private- go far beyond what many other leaders of the Jewish community and state officials have achieved
with Qatar.   In regards to the donations that were made, money went to important causes that are
extremely dear to me and my family.

Sent from my iPhone

CONFIDENTIAL                                                            Allaham0000772

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 28

Message

___

**From**:          Seth Frantzman [seth@jpost.com]
**on behalf of**   Seth Frantzman <seth@jpost.com> [seth@jpost.com]
**Sent**:          6/21/2018 2:54:30 PM
**To**:            'Joey Allaham' [josephallaham@gmail.com]
**Subject**:       RE: Jerusalem Post inquiry Qatar


Great, I'll add this to our piece,

The Jerusalem Post
Opinion Editor
+972-2-531-5487
02-531-5487

\*The Jerusalem Post Opinion section does not remunerate contributors. By submitting this piece you accept that The Jerusalem Post has the right to print it; if you have sent it elsewhere or do send it elsewhere it is your obligation to inform The Jerusalem Post.

Note: This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. Access to this e-mail by anyone other than the intended is unauthorised. The views, opinions, conclusions and other informations expressed in this electronic mail are intended solely for the recipient and may not be quoted, copied or disseminated without permission. If you are not the intended recipient, destroy this message.

___

**From:** Joey Allaham [mailto:josephallaham@gmail.com]
**Sent:** Thursday, June 21, 2018 6:14 PM
**To:** Seth Frantzman <seth@jpost.com>
**Subject:** Re: Jerusalem Post inquiry Qatar

I like to update the statement pls

> We are proud of the work that Mort Klein  have done and all the other Jewish leaders working in collaboration with the Emir and other members of the Qatari Royal Family. Mr. Klein  have made great strides for the American Jewish community and Israel. These accomplishments, some public and some will remain private- go far beyond what many other leaders of the Jewish community and state officials have achieved with Qatar.   In regards to the donations that were made, money went to important causes that are extremely dear to me and my family.


Sent from my iPhone

On Jun 21, 2018, at 10:42 AM, Seth Frantzman <seth@jpost.com> wrote:

> Just so we are clear, do you mind if we quote this?

> We are proud of the work that Mort Klein and Mr Dershowitz have done and all the other Jewish leaders working in collaboration with the Emir and other members of the Qatari Royal Family. Mr. Klein and Mr Dershowitz have made great strides for the American Jewish community and Israel. These accomplishments, some public and some will remain private- go far beyond what many other leaders of the Jewish community and state officials have achieved with Qatar.   In regards to the donations that were made, money went to important causes that are extremely dear to me and my family.

CONFIDENTIAL                                                    Allaham0000727

The Jerusalem Post
Opinion Editor
+972-2-531-5487
02-531-5487

\*The Jerusalem Post Opinion section does not remunerate contributors. By submitting this piece you accept that The Jerusalem Post has the right to print it; if you have sent it elsewhere or do send it elsewhere it is your obligation to inform The Jerusalem Post.

Note: This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. Access to this e-mail by anyone other than the intended is unauthorised. The views, opinions, conclusions and other informations expressed in this electronic mail are intended solely for the recipient and may not be quoted, copied or disseminated without permission. If you are not the intended recipient, destroy this message.

**From:** Joey Allaham [mailto:josephallaham@gmail.com]
**Sent:** Thursday, June 21, 2018 5:52 PM
**To:** Seth Frantzman <seth@jpost.com>
**Subject:** Re: Jerusalem Post inquiry Qatar

We are proud of the work that Mort Klein and Mr Dershowitz have done and all the other Jewish leaders working in collaboration with the Emir and other members of the Qatari Royal Family. Mr. Klein and Mr Dershowitz have made great strides for the American Jewish community and Israel. These accomplishments, some public and some will remain private- go far beyond what many other leaders of the Jewish community and state officials have achieved with Qatar.   In regards to the donations that were made, money went to important causes that are extremely dear to me and my family.

Sent from my iPhone

On Jun 21, 2018, at 10:15 AM, Seth Frantzman <seth@jpost.com> wrote:

> We wrote a piece that will come out this Friday basically arguing that Qatar's "Jewish strategy" of outreach has backfired despite its successes early on. Our assessment was that Qatar made some mistakes through scrambling to work with different people and appearing to throw money around; and that despite good intentions, it has now burned some bridges. It seems to have now moved on from this outreach and that raises questions about what comes next. I had not been aware of your work until recently but had interviewed Mort and many others others involved.
>
> I'm not necessarily sure there are more pieces to be written at the moment, but I wanted to reach out because I'd seen all the other stories about you and seen your statement. I'm still left wondering about how serious Qatar was and also about whether they were motivated by their own view of the outsized role of Jews in the US, and I'm wondering if they will air their Al-Jazeera documentary now that some of those, like ZOA, have condemned them.
>
>
> The Jerusalem Post
> Opinion Editor
> +972-2-531-5487

Allaham0000728

02-531-5487

*The Jerusalem Post Opinion section does not remunerate contributors. By submitting this piece you accept that The Jerusalem Post has the right to print it; if you have sent it elsewhere or do send it elsewhere it is your obligation to inform The Jerusalem Post.

Note: This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. Access to this e-mail by anyone other than the intended is unauthorised. The views, opinions, conclusions and other informations expressed in this electronic mail are intended solely for the recipient and may not be quoted, copied or disseminated without permission. If you are not the intended recipient, destroy this message.

**From:** Joey Allaham [mailto:josephallaham@gmail.com]
**Sent:** Thursday, June 21, 2018 5:31 PM
**To:** Seth Frantzman <seth@jpost.com>
**Subject:** Re: Jerusalem Post inquiry Qatar

I know who you are ...admire your writings
Tell me what you are looking for

Sent from my iPhone

On Jun 21, 2018, at 10:01 AM, Seth Frantzman <seth@jpost.com> wrote:

> Good morning,
>
> I'm a writer for The Jerusalem Post who has been following the Qatar story for more than a year, including its lobbying efforts. I read through some of the latest pieces at Tablet, Mother Jones and elsewhere as well as the FARA filing for Lexington and wondered if you'd like to speak to us about what happened with Qatar, either on background or for a piece we looking at doing. We are off for Shabbat/weekend in a few hours, but my home email is below,
>
> Seth J. Frantzman
> The Jerusalem Post
> Opinion Editor
> sfrantzman@gmail.com
>
> *The Jerusalem Post Opinion section does not remunerate contributors. By submitting this piece you accept that The Jerusalem Post has the right to print it; if you have sent it elsewhere or do send it elsewhere it is your obligation to inform The Jerusalem Post.
>
> Note: This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. Access to this e-mail by anyone other than the intended is unauthorised. The views, opinions, conclusions and other informations expressed in this electronic mail are intended solely for the recipient and may not be quoted, copied or disseminated without permission. If you are not the intended recipient, destroy this message.

Allaham0000729

CONFIDENTIAL – FILED UNDER SEAL

# EXHIBIT 29

Message

**From**: Joey Allaham [josephallaham@gmail.com]
on behalf of    Joey Allaham <josephallaham@gmail.com> [josephallaham@gmail.com]
**Sent**: 6/21/2018 3:40:20 PM
**To**: chernikoff@forward.com
**Subject**: Just to make sure the corrected statement you can use

We are proud of the work that Mort Klein  has done and all the other Jewish leaders working in
collaboration with the Emir and other members of the Qatari Royal Family. Mr. Klein made great strides
for the American Jewish community and Israel. These accomplishments, some public and some will remain
private- go far beyond what many other leaders of the Jewish community and state officials have achieved
with Qatar.   In regards to the donations that were made, money went to important causes that are
extremely dear to me and my family.

Sent from my iPhone

CONFIDENTIAL                                                                    Allaham0000773

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 30

Message

---

**From**:     info@joeyallaham.me [info@joeyallaham.me]
**Sent**:      6/20/2018 10:02:38 PM
**To**:        pink@forward.com
**Subject**:   Re: [Qatar] from Aiden Pink


Hello Aiden,
Answering your questions:
We are proud of the work that Mort Klein and Mr Dershowitz have done.
Working in collaboration with the Emir and other members of the Qatari
Royal Family, Mr. Klein and Mr Dershowitz actually achieved important
accomplishments for the American Jewish community and Israel - far
beyond what many other leaders of the Jewish community have achieved
with Qatar. While in kind donations were made for Mr. Klein, they are
important causes not beyond the usual scope of Qatari philanthropy and
should speak for itself.

Thanks,
Joey

CONFIDENTIAL

Allaham0000739

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 31

Message

---

| | |
|---|---|
| **From**: | Joey Allaham [josephallaham@gmail.com] |
| **on behalf of** | Joey Allaham <josephallaham@gmail.com> [josephallaham@gmail.com] |
| **Sent**: | 6/21/2018 3:18:08 PM |
| **To**: | Armin Rosen [armin.rosen@gmail.com] |
| **Subject**: | Re: Quick question for Tablet Magazine story re: ZOA |

I'm sure we will be in touch
But I like to add off the records
I'm sure we will be in touch.
Just stopping documentary alone was worth everything. I don't think people understand how damaging the
documentary was- if it went public many reputations would have been deeply tarnished.  In addition there were
many confidential achievements that I am unable to discuss for now

Sent from my iPhone

On Jun 21, 2018, at 10:53 AM, Armin Rosen <armin.rosen@gmail.com> wrote:

So Rumaihi was at your table, in other words?

On Thu, Jun 21, 2018 at 10:49 AM, Joey Allaham <josephallaham@gmail.com> wrote:
We are proud of the work that Mort Klein and Mr Dershowitz have done and all the other
Jewish leaders working in collaboration with the Emir and other members of the Qatari Royal
Family. Mr. Klein and Mr Dershowitz have made great strides for the American Jewish
community and Israel. These accomplishments, some public and some will remain private- go
far beyond what many other leaders of the Jewish community and state officials have achieved
with Qatar.   In regards to the donations that were made, money went to important causes that
are extremely dear to me and my family.

Sent from my iPhone

> On Jun 21, 2018, at 10:35 AM, Armin Rosen <armin.rosen@gmail.com> wrote:
>
> Mr Allaham—
>
> Greetings once again from Tablet. Quick question for a story I am working on for later today:
Was Ahmed Al Rumaihi sitting at the table you purchased for the ZOA dinner on November 12,
2017? Was the $50,000 payment to the ZOA reported in your FARA disclosure related to the
ZOA dinner in any way?
>
> Thank you, and please try to get back to me as soon as possible.
>
> Armin Rosen
> 240-393-2600

CONFIDENTIAL

Allaham0000781

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 32

Message

| | |
|---|---|
| **From**: | Joey Allaham [josephallaham@gmail.com] |
| **on behalf of** | Joey Allaham <josephallaham@gmail.com> [josephallaham@gmail.com] |
| **Sent**: | 6/21/2018 2:51:21 PM |
| **To**: | Helen Chernikoff [chernikoff@forward.com] |
| **Subject**: | Re: Correct statement |

Sorry the right one that you can use .
This is it

We are proud of the work that Mort Klein and Mr Dershowitz have done and all the other Jewish leaders working in collaboration with the Emir and other members of the Qatari Royal Family. Mr. Klein and Mr Dershowitz have made great strides for the American Jewish community and Israel. These accomplishments, some public and some will remain private- go far beyond what many other leaders of the Jewish community and state officials have achieved with Qatar.   In regards to the donations that were made, money went to important causes that are extremely dear to me and my family.

Sent from my iPhone

On Jun 21, 2018, at 10:43 AM, Helen Chernikoff <chernikoff@forward.com> wrote:

> I'm sorry I still don't understand.
>
> HELEN CHERNIKOFF
> Editor | News
> Forward.com
> 125 Maiden Lane, 8th Floor, NYC, NY 10038
> @thesimplechild
> About Us| Donate| Subscribe
> *********************************
> Get more Forward in your inbox: Sign up for our newsletters
>
> On Thu, Jun 21, 2018 at 10:32 AM, Joey Allaham <josephallaham@gmail.com> wrote:
> Prob bets to say
> In regards of the donations ..
>
> Sent from my iPhone
>
> On Jun 21, 2018, at 10:18 AM, Helen Chernikoff <chernikoff@forward.com> wrote:
>
>> Thank you for this.
>>
>> Can you tell me what you mean by "in kind of the donations" ...
>>
>> HELEN CHERNIKOFF
>> Editor | News
>> Forward.com
>> 125 Maiden Lane, 8th Floor, NYC, NY 10038
>> @thesimplechild
>> About Us| Donate| Subscribe

CONFIDENTIAL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Get more Forward in your inbox: Sign up for our newsletters

On Wed, Jun 20, 2018 at 7:19 PM, Joey Allaham <josephallaham@gmail.com>
wrote:

> We are proud of the work that Mort Klein and Mr Dershowitz have
> done.  Working in collaboration with the Emir and other members of the Qatari
> Royal Family, Mr. Klein and Mr Dershowitz actually achieved important
> accomplishments for the American Jewish community and Israel - far beyond
> what many other leaders of the Jewish community have achieved with Qatar.
> While in kind of the donations were made , they are important causes and that I
> deeply believe in
>
> Sent from my iPhone

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 34

**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 6000

**Via Electronic Mail**                                      June 20, 2023

Daniel R. Benson
1633 Broadway
New York, NY 10019
(212) 506-1700
DBenson@kasowitz.com

Dear Daniel:

I write on behalf of the State of Qatar ("Qatar") in response to your June 15, 2023 letter in which you object, on behalf of plaintiffs Elliott Broidy and Broidy Capital Management LLC ("Broidy"), to Qatar's assertion of privileges and immunities in its June 8, 2023 privilege logs.

To begin, Qatar confirms that it has complied with the Court's May 3, 2023 Order and has (a) served a substantially complete log that asserts its claimed privileges and immunities over the documents and information identified by Defendants or non-party subpoena recipients which are subject to production but for an assertion of privilege or immunity by Qatar; and (b) informed the relevant Defendants or non-party subpoena recipients regarding the documents and information subject to production for which Qatar has determined not to assert its privileges. Consistent with the Order, Qatar is prepared to initiate the process of meeting and conferring with you regarding your objections to Qatar's asserted privileges and immunities. Questions regarding the productions made by Defendants or non-party subpoena recipients should be directed to the applicable Defendant or non-party subpoena recipient.

Regarding the substance of your objections to Qatar's privilege log, your letter reiterates several of Broidy's categorical objections to the applicability of Qatar's privileges and immunities, which were briefed before the D.C. Circuit and are addressed in Qatar's motion to vacate, ECF Nos. 175, 175-1. We refer you to our motion to vacate for our responses on these points. Your letter also raises several specific objections to Qatar's privilege log, to which we provide the following responses to facilitate the meet-and-confer process.

_First_, your letter takes issue with Qatar's withholding of documents that discuss "diplomatic strategy to achieve Qatar's foreign policy objectives." You argue that "lobbying and public relations" professionals cannot be involved in "formulating [Qatar's] foreign policy." As we have previously demonstrated, however, many countries (including the United States), regard diplomacy as not limited to government-to-government interactions, but also efforts to build relationships in the host state and monitor the host state's media and public perceptions of the sovereign. _See_ ECF No. 175-1 at 17–18. Such work is often termed "public diplomacy." _See, e.g.,_ U.S. Department of State Under Secretary for Public Diplomacy and Public Affairs, https://www.state.gov/bureaus-offices/under-secretary-for-public-diplomacy-and-public-affairs/ (last visited June 19, 2023). As for your argument that Qatar's privileges cannot extend

June 20, 2023
Page 2

to third-party consultants hired to engage in these functions, this is the essence of Broidy's categorical objection that was the subject of Qatar's motion to vacate.

*Second*, we disagree with your suggestion that the withheld documents should be submitted to the Court for *in camera* review. As a preliminary matter, it is premature to discuss how the Court will address privilege disputes prior to the completion of our meet-and-confer process. In any event, *in camera* review is not the preferred method for resolving privilege disputes in the first instance. *See, e.g.*, *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318, 332 (D.D.C 1966), *aff'd sub nom. V.E.B. Carl Zeiss, Jena v. Clark*, 384 F.2d 979 (D.C. Cir. 1967) ("The court may be able to satisfy itself, without conducting an examination, that the privilege is sufficiently well founded, and if it does, divulgence even *in camera* is both unnecessary and improper."). This principle applies *a fortiori* here, where the privilege at issue is a treaty right to absolute inviolability. *See* VCDR, Arts. 24, 27; *see also Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16, 18 (2d Cir. 2014) ("Where the diplomatic . . . documents of a *foreign* state are concerned, the district courts' usual practice of examining contested documents *in camera* may not be practicable." (emphasis in original)).

*Third*, regarding Qatar's assertions of privilege under Article 24 of the VCDR, as explained in Qatar's motion to vacate, Article 24 applies to "documents possessed by outside parties with a special relationship to the mission," so long as the documents were either "provided by" the mission or "solicited by and incorporated information from archives or documents of the mission" and were created for reasons "essential to the functions of the mission and with reasonable expectations of continued confidentiality." ECF No. 175-1 at 9 (quoting U.S. Amicus Brief at 17–18). The withheld documents meet this standard. As reflected in Qatar's privilege log, the documents involve communications and work product prepared by Qatar's contractors pursuant to their engagement and incorporate and reflect information received from the State about its foreign policy objectives. Certain documents also include the mission's requests for strategic advice and relay information about the State's diplomatic strategies and goals.

*Fourth*, the withheld documents are likewise protected by Article 27. Contrary to your letter, nothing in Article 27 limits its protections to correspondence "exclusively between the Qatar Embassy and Qatar." Rather, as set out in Qatar's motion to vacate, Article 27 applies to correspondence between the mission and contractors with whom Qatar shares a special relationship and expectations of confidentiality, where the correspondence "relat[es] to the mission and its functions." *See* ECF No. 175-1 at 16 & n.8. As you note, approximately half of the privilege log entries involve communications by mission officials to the contractor who are engaged to assist with mission functions. These types of communications are covered by Article 27. Article 27 also applies with equal force to correspondence involving Qatar's former contractors when those contractors are communicating in relation to their prior work for the mission.

*Fifth*, your assertion that Qatar "lacked sufficient objectively reasonable expectations of [the] documents' confidentiality" to assert a claim under the Vienna Convention is without merit. Insofar as you argue that documents shared with FARA-registered agents cannot be confidential in light of FARA's inspection provisions, that categorical objection is addressed in our motion to vacate. *See* ECF No. 175-1 at 20-24. You also argue that several withheld documents were sent to "more than 30 individuals," but the number of recipients is immaterial to the expectation of confidentiality. *See In re Prograf Antitrust Litig.*, No. 11-md-02242, 2013 WL 1868227, at *2 (D.

June 20, 2023
Page 3

Mass. May 3, 2013) ("There is no presumption that the privilege . . . is waived merely as a result of the number of people involved in a communication."); *Deffenbaugh Indus., Inc. v. Unified Gov't of Wyandotte Cnty./Kan. City, Kan.*, No. 20-2204, 2021 WL 1612099, at *10 (D. Kan. Apr. 26, 2021) ("The sheer number of people involved in the discussion does not invalidate the privilege.").

<u>Sixth</u>, regarding the deliberative process privilege, you object that the privilege cannot apply to documents held by Qatar's contractors. That is incorrect, as explained in our motion to vacate. Ample case law confirms that the deliberative process privilege remains available for documents involving private consultants. *See, e.g.*, *Gonzalez Ramos v. ADR Vantage, Inc.*, 2020 WL 409283, at *1 (D.D.C. Jan. 26, 2020) (upholding U.S. Department of Agriculture's claim of privilege over "drafts of a workplace Climate Assessment report" created by private consultant). Under principles of international comity, Qatar may likewise claim the privilege over documents held and created by its contractors. *See* ECF No. 175-1, at 27–28.

<u>Finally</u>, as to the indicia of the requisite special relationship between Qatar and its contractors, we disagree with your position that FARA registration and written contracts are the exclusive means of demonstrating the existence of such a relationship. Specifically:

1.     With respect to Joseph Allaham, you argue that he did not have a special relationship with the mission based on his FARA registration period and lack of a written contract with the mission. That Mr. Allaham did not have a written agreement with the mission, however, does not defeat the existence of a special relationship. Qatar sought Mr. Allaham's assistance with the performance of mission functions, and for that purpose formed a special relationship, even though that relationship was not reduced to a written services contract. The fact that Mr. Allaham was not registered under FARA as of the date of the withheld communication is not dispositive. Mr. Allaham filed his FARA registration retroactively, to address work previously done for the mission. *See* June 15, 2018 Allaham Short-Form Registration Statement ¶ 11 (describing, in past tense, that "[t]he registrant . . . expanded its activities to include fostering better international relations within the gulf region and with the leadership in the Jewish community in the United States. This included FARA and non-FARA activity and working with other consultants to Qatar."). The date of Mr. Allaham's FARA registration is accordingly not controlling. Rather, the substance of the communications reflect that Mr. Allaham had formed a special relationship and was working pursuant to that relationship when he received the communications you identify. *See* PRIV-MUZIN-006, PRIV-MUZIN-007, PRIV-MUZIN-012.

2.     With respect to Jeffrey Klueter, you object to the withholding of communications that post-date his registration period. Mr. Klueter's contract with the mission, which is publicly available as an exhibit to his FARA registration forms, contains certain provisions related to maintaining the confidentiality of all communications and work-product performed pursuant to the contract, including after his registration period ended. *See* Exhibit B to Registration Statement at 3-4 (attaching Oct. 20, 2017 Consulting Services Agreement, ¶ 5). The April communications you challenge relate to these obligations. Accordingly, while outside his term of registration, these documents were sent in connection with Mr. Klueter's continued special relationship and are within the ambit of the VCDR. *See* PRIV-KLUETER-002, PRIV-KLUETER-003.

June 20, 2023
Page 4

      3.     With respect to Gregory Howard, you likewise object to the withholding of March 2018 communications that post-date his registration period.  As noted on the privilege log, these communications were sent to mission officials and a number of contractors, and evidence an intent to share mission-related information with a limited group of individuals with whom the mission shares a special relationship.  *See* PRIV-MUZIN-009, PRIV-MUZIN-010, PRIV-MUZIN-011.  On this basis, the documents were withheld and listed on the privilege log.  Nevertheless, Qatar is willing to meet and confer regarding its continued withholding of these documents.

             *       *       *

     We are available to meet and confer on Wednesday (June 21) or Thursday (June 22).

                                     Sincerely,

                                     /s/

                                   Alexander A. Berengaut

cc:    Stephen J. Obermeier
       Jeffrey A. Udell
       Eric Roman

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 35

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT 36

## 12072322863@s.whatsapp.net Greg Howard (owner)

### 12034641409@s.whatsapp.net Isaac Arnsdorf

OK. I'll take a look

2017-09-29 08:13:00

Kushner Ties to Blockading Countries 07192017.docx

Attach  bdd2112c-ee98-49d4-a27a-3389a30bf176.docx

2017-09-29 11:03:00

The calendar you made is excellent. Have you already done the work of looking through FARA disclosures for contacts with those authors or their organizations? Do you have a tally of which organizations or individuals published the most op/eds?

2017-09-29 11:37:00

Thank you.

2017-09-29 11:54:00

To the best of my knowledge, none of the authors have filed. They tend to get money from high-wealth, pro-Israel GOP donors, which we believe are directed by Richard Mintz at Harbour.

2017-09-29 11:55:00

ATTACH  aaaa61eb-b8ae-4d24-bfa6-c0f6cf3e18bd.jpg



2017-09-29 11:56:00

ATTACH  6654d80e-6009-4066-8e42-7646eda2fd93.jpg



2017-09-29 11:56:00

HOWARD000499



ATTACH  8d5f1eef-7de7-42e8-8325-d8442a8630ad.jpg

2017-09-29 11:56:00

Here's an excellent example of the real deal: a guy who says flat out that he is working for UAE/KSA and who has definitely not FARA filed. He tried to get this through the WaPO, but I tipped of a friend who works there.

2017-09-29 11:57:00

right, i don't mean if the authors filed. i mean did they have any meetings or phone calls with the lobbyists that the lobbyists disclosed in their filings? i.e. richard mintz meets with them on tuesday and their op/ed comes out on wednesday

2017-09-29 11:57:00

Oh, no, but in the FDD dossier I sent, if you click on the live links, you can see email traffic about specific pieces and/or events

2017-09-29 11:58:00

not Wednesday instruction and thursday piece runs, but pretty close

2017-09-29 11:59:00

Is FDD persuasive with the WH?

2017-09-29 12:17:00

Sorry. Butt dial.

2017-09-29 12:18:00

I'm not sure about that. I know they have a lot of clout in Congress

2017-09-29 12:19:00

Same with CEP, which is Joe Lieberman, Fran Townsend Et al

2017-09-29 12:20:00

HOWARD000500

It's been kind of a 1-2 punch – They used Trump to start it off and then begin working congress hard.

2017-09-29 12:21:00

Yeah that's true about congress

2017-09-29 12:21:00

There are a bunch of emails between Otaiba and FDD

2017-09-29 12:23:00

And, in the most recent email dump, a bunch of them between OTAIBA ln the Middle East Institute, to which they just gave $20 million. That's Richard Clark's group

2017-09-29 12:24:00

Right, but to what end. Have to be able to show impact

2017-09-29 12:26:00

Yeah. Clarke has been a vicious opponent in NY Post and other places, I think. Should be in the calendar.

2017-09-29 13:10:00

HOWARD000501



Pat Mancino <pat@ncusar.org>

**Fwd: Opinion Editorial in the Washington Post on Middle East and Qatar**
1 message

**Mark Morozink** <mark@ncusar.org>                                        Thu, Jun 29, 2017 at 10:06 AM
To: Pat Mancino <pat@ncusar.org>

---------- Forwarded message ----------
From: **Mark Morozink** <mark@ncusar.org>
Date: Thu, Jun 29, 2017 at 10:02 AM
Subject: Fwd: Opinion Editorial in the Washington Post on Middle East and Qatar
To: Pat Mancino <pat@ncusar.org>

---------- Forwarded message ----------
From: **Richard J. Phillips** <rjphillips@phillipscompany.com>
Date: Thu, Jun 29, 2017 at 8:02 AM
Subject: Opinion Editorial in the Washington Post on Middle East and Qatar
To: "mark@ncusar.org" <mark@ncusar.org>
Cc: "john@ncusar.org" <john@ncusar.org>

I hope this email finds you well. I am working with a coalition of leaders in the Middle East representing UAE, Saudi Arabia and Egypt. As you know, in recent weeks, the governments of these countries learned that Qatar was financing terror groups and they have taken action to sever ties and establish economic sanction against Qatar. These nations see the U.S. as a critical economic partner as well as a partner in the war against global terrorism.

We have an opportunity to publish an opinion-editorial in the Washington Post and we are writing to ask if your organization, and more specifically, Dr. John Duke Anthony, would be willing to author this article. We are under pressure to deliver this article quickly and have developed a draft. However, we are willing to accept any edits you would believe necessary.

We ask for your support and help as we send the world a message about the strong partnership between the U.S. and the Middle East and our united commitment against global terrorism and economic cooperation.

I can be reached at rjphillips@phillipscompany.com with any questions. If necessary, we can schedule a call. I reside in the U.S. and can work directly with you to ensure that the article is published in the Washington Post to your specifications.

My best,

HOWARD000508



## Arab Pressure on Qatar is Rare Opportunity to Unite Europe, Middle East and the World Against Terrorism

The revelation that Qatar has been supporting and financing terrorism both regionally in the Middle East and across the world should not have been a surprise to world leaders. Europe has long ignored both intelligence and outward signs of Al Thani's support for terror groups.

There is clear proof that Qatar has backed Islamic terrorism and paid ransom money to militant groups in Syria and Iraq. During the 2011 Arab Spring, Qatar offered financial support and media coverage through Al Jazeera and other outlets to the Muslim Brotherhood, Hamas and militant groups in Libya.

Qatar has long been the darling of the West. It has won the right to host the World Cup in 2022. The nation has supported charitable work in the United States during Hurricane Katrina and Rita and has made strategic investments throughout the West building relationships with local politicians and establishing itself as a friend to Western institutions of higher learning and the non-profit sector.

But this diplomacy has masked a "two-faced approach" to international relations. Qatar is the poster child for expediency. Taking both sides and playing both sides, Qatar has successfully played the dutiful partner of the West while financing terrorism under the table.

Enter the Arab leaders of Egypt, Saudi Arabia, UAE and Bahrain. The decision to hold Qatar accountable is long overdue and demonstrates a serious commitment of Arab leaders to end terrorism. The United States must stand with these Arab leaders who had the courage to come together and force Qatar to end its support for terrorism. This is a rare opportunity for Europe to partner with Arab leaders in the region and make a stand for peace and unity in the world. If Europe does not stand against terror, it will certainly invite it.

Certainly, there are risks. Yes, the viability of the World Cup is threatened. Yes, there are potential economic risks to Qatari trade with the United States. But should we sacrifice the safety of our citizens and the world for economic gain?

The Qatari people deserve more. They deserve our support as they demand accountability of the Al Thani regime. Economic sanctions and the blockade threaten the stability of Qatar's economy and could lead to higher food and transportation costs, shortages, a pull-back on construction projects and potential long-term damage to Qatar Airways. But the Qatari people are strong and proud. Qatar is a rich country. Already, neighboring countries from Turkey to Iran are moving food and supplies to the region. This is not a humanitarian crisis. Rather, this is an opportunity for the world to unite against terrorism and demand change and accountability.

To restore relations with its Arab neighbors, Qatar must take visible steps to demonstrate its willingness to change. This includes ending support of Palestinian Hamas and the Muslim Brotherhood and other regional jihadist groups. Qatar must end its economic cooperation with Iran and ensure that it's the news organization Al Jazeera ceases to be a platform for propaganda and "fake news."

Egypt, Saudi Arabia and other Arab leaders in the region have given the world a rare opportunity to unite against global terrorism and extremism. Europe and the West should fully support them in their call to action against Qatar.

The United States should stand side-by-side with Arab leaders and demand change. Already, the blockade and swift response shows real promise. Qatar's foreign minister Mohammed bin Abdulrahman Al Thani has demonstrated a willingness to address demands and there are real reasons to believe that a swift end to this crisis is imminent.

The United States' decision to move forward with the sale of up to 72 F-15 fighter jets to Qatar is disturbing. But President Trump has signaled support for the decision by Arab leaders to sever diplomatic ties with their neighbor.

The United States has a clear choice. Remain on the sidelines and allow others to take a leadership role against extremist groups and the financing of terror regimes. Or the U.S. can take a leadership role and partner with Arab leaders and support real change in Qatar.

This is not a symbolic move. This is real action that will have real consequences to the long-term security of both Europe and the Middle East. We can sacrifice our security for economic gain and a false sense of diplomacy, or we can unite with our Middle Eastern partners and change the tide of history.



Rich Phillips

President

Phillips & Company

+1 512-680-4305

rjphillips@phillipscompany.com

Draft Article - Qatar and Terrorism v. 2.0 - U.S..docx
2993K

HOWARD000510